# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| APOTEX INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1194 (RMU) |
| ) | |
| FOOD AND DRUG ADMINISTRATION, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## NOTICE OF FILING ADMINISTRATIVE RECORD

Federal defendants hereby file the certified administrative record in the above-captioned

matter.  The record, consisting of seven documents designated Tabs 1 through Tab 7, is appended

hereto.

Respectfully submitted,

Of Counsel:

DANIEL MERON                          PETER D. KEISLER
General Counsel                       Assistant Attorney General

SHELDON T. BRADSHAW                   EUGENE M. THIROLF
Chief Counsel, Food and Drug Division Director
                                      Office of Consumer Litigation
ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

_____/s/_____

WENDY S. VICENTE                      ANDREW E. CLARK
Associate Chief Counsel               Attorney
                                      Office of Consumer Litigation
U.S. Dept. of Health & Human Services U.S. Department of Justice
Office of the General Counsel         P.O. Box 386
5600 Fishers Lane                     Washington, D.C.  20044
Rockville, MD  20857                  Tel:  (202) 307-0067
(301) 827-7138                        Fax:  (202) 514-8742

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Notice of Filing Administrative Record to be served via the District Court's electronic filing (ECF) system upon:

Arthur Y. Tsien
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C.  20036-2220
*Counsel for Plaintiff Apotex Inc.*

William A. Rakoczy
Amy D. Brody
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60610
*Counsel for Plaintiff Apotex Inc.*

this 5th day of July, 2007.

_____/s/_____
Andrew E. Clark



## CERTIFICATE

Pursuant to the provisions of Rule 44 of the Federal Rules of Civil Procedure, I hereby

certify that Cecelia M. Parise, Regulatory Policy Advisor to the Director, Office of

Generic Drugs, Center for Drug Evaluation and Research, United States Food and Drug

Administration, whose declaration is attached, has custody of official records of the

United States Food and Drug Administration.

In witness whereof, I have, pursuant to the provision of Title 42, United States Code,

Section 3505, and Staff Manual Guide 1410.23(1)(a)(6)(ii) (May 18, 2005), hereto set my

hand and caused the seal of the Department of Health and Human Services to be affixed

this 3ʳᵈ day of July, 2007.

                                        *Gloria Ortega*

                    *for*  Carolyn Kachovec, Acting Director
                           Division of Dockets Management
                           Office of Management Programs
                           Office of Management
                           Food and Drug Administration

                           By direction of the Secretary of
                               Health and Human Services

DECLARATION OF CECELIA M. PARISE

Cecelia M. Parise declares as follows:

1. I am Regulatory Policy Advisor to the Director, Office of Generic Drugs, Center for Drug Evaluation and Research, United States Food and Drug Administration (FDA).

2. In this capacity, I have custody of official records of FDA.

3. Attached is a copy of an index to the administrative record in <u>Apotex v. FDA</u>, Civil Action No. 07-CV-1194 (D.D.C.).

4. Copies of the administrative record are part of the official records of FDA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _July 3, 200.7_

_Cecelia M. Parise_

Cecelia M. Parise

ADMINISTRATIVE RECORD FOR
APOTEX v. FDA, No. 07-CV-1194 (D.D.C.)

1.    Facsimile of Letter to Sheldon T. Bradshaw, Chief Counsel from Peter O. Safir,
      Covington & Burling re: Omeprazole Patent Litigation and requesting the final approval
      for ANDA Nos. 76-048 and 75-785 be revoked pursuant to the attached Judgment
      Dated: 6/15/07          Received: 6/15/07

2.    Facsimile of Letter to Sheldon T. Bradshaw, Chief Counsel from Peter O. Safir,
      Covington & Burling re: requesting the final approval of ANDA Nos. 76-048 and 75-785
      be revoked pursuant to attached May 25 Order and June 15 Judgment
      Dated: 6/19/07          Received: 6/19/07

3.    Letter to Sheldon T. Bradshaw, Chief Counsel from Jay P. Lefkowitz and William A.
      Rakoczy, Kirkland & Ellis re: response from Impax and Apotex regarding AstraZeneca's
      request that FDA revoke the approval of ANDA Nos. 76-048 and 75-785 w/Exhibits
      Dated: 6/21/07

4.    Facsimile of Letter to Sheldon T. Bradshaw, Chief Counsel and Elizabeth Dickinson from
      Peter O. Safir, Covington & Burling re: AstraZeneca's response to the 6/21/07 letter from
      Apotex and Impax
      Dated: 6/25/07          Received: 6/25/07

5.    Facsimile to Liz Dickinson from Peter Safir transmitting 6/26/07 Order denying Apotex
      and Impax's motions for partial stay, pending appeal, of the 6/14/07 judgment in the
      omeprazole patent litigation
      Dated: 6/26/07          Received: 6/26/07

6.    Letter to Apotex Corp. from Gary J. Buehler converting the final approval of ANDA 76-
      048 to tentative approval
      Dated: 6/28/07

7.    Letter to Impax Laboratories, Inc. from Gary J. Buehler converting the final approval of
      ANDA 75-785 to tentative approval
      Dated: 6/28/07

# Tab 1



# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

**FACSIMILE**

| DATE | | | TOTAL PAGES W/COVER |
|---|---|---|---|
| June 15, 2007 | | | 17 |

| FROM | EMAIL | FAX | TEL |
|---|---|---|---|
| Peter O. Safir | psafir@cov.com | 202-778-5162 | 202-662-5162 |

| TO | FAX | TEL |
|---|---|---|
| Sheldon Bradshaw<br>Food and Drug Administration | 301-827-3054 | |
| Elizabeth Dickinson<br>Office of the Chief Counsel | 301-827-3054 | |
| Gary Buehler<br>Office of Generic Drugs | 240-276-9327 | |
| Errol Taylor<br>Milbank, Tweed, Hadley & McCloy | 212-822-5545 | |
| Robert Silver<br>Cohen and Pokotilow, Ltd. | 215-751-1142 | |
| Jeffrey Toney<br>Sutherland, Asbill & Brennann | 404-853-8806 | |

**REMARKS**

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE ADDRESSEE SHOWN ABOVE. IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE. ANY REVIEW, DISSEMINATION OR USE OF THIS TRANSMISSION OR ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND MAIL THE ORIGINAL TO US AT THE ABOVE ADDRESS.

SUITE NUMBER:

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

PETER O. SAFIR

TEL 202.662.5162
FAX 202.778.5162
PSAFIR @ COV.COM

June 15, 2007

**BY FACSIMILE**

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Re:    *In re Omeprazole Patent Litigation, M-21-81 (BSJ): ANDA Nos. 76-048 and 75-785*

Dear Mr. Bradshaw:

    We represent AstraZeneca, Plaintiffs in the *In re Omeprazole Patent Litigation,* M-21-81 (BSJ). On June 14, 2008 the Court entered the attached Judgment ordering that the effective date of approval of ANDA Nos. 76-048 and 75-785 shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires. (See Court Order at ¶¶ 3, 6). The pediatric exclusivities are measured from the April 20, 2007 expiration dates for the two patents-in-suit, U.S. Patent Nos. 4,786,505 and 4,853,230.

    AstraZeneca respectfully requests that, pursuant to the Court's Judgment, the FDA immediately revoke the final approval of ANDA Nos. 76-048 (Apotex Corp. (Torpharm) and ANDA No. 75-785 (Impax Laboratories, Inc.) and return the status of the applications to tentatively approved through at least October 20, 2007, the date that the applicable pediatric exclusivities expire.

                        Respectfully submitted,

                        Peter O. Safir

COVINGTON & BURLING LLP

June 15, 2007
Page 2

Enclosure

cc:    Elizabeth Dickinson, Esq.,
        Office of the Chief Counsel
        5600 Fishers Lane, Room 6-05
        Rockville, Maryland 20857
        301-827-3054 (f)

        Gary Buehler, Director
        Office of Generic Drugs
        7500 Standish Place
        Rockville, MD 20855
        240-276-9327 (f)

        Errol B. Taylor, Esq. Counsel for Plaintiffs
        Milbank, Tweed, Hadley & McCloy LLP
        1 Chase Manhattan Plaza
        New York, NY  10005
        212-822-5545 (f)

        Robert S. Silver, Esq., Outside Counsel for Apotex
        Caesar, Rivise, Bernstein,
        Cohen and Pokotilow, Ltd.
        1635 Market Street
        11th Floor
        Philadelphia, PA 19103-2212
        215-751-1142 (f)

        Jeffrey J. Toney, Esq., Outside Counsel for Impax
        Sutherland, Asbill & Brennann LLP
        999 Peachtree Street, NE
        Atlanta, Georgia 30309-3996
        404-853-8806 (f)

CHAMBERS OF
**HON. BARBARA S. JONES**
UNITED STATES DISTRICT COURT
FOLEY SQUARE
NEW YORK, NEW YORK 10007
TEL.: (212) 805-6185
FAX: (212) 805-6191

## FAX COVER SHEET

To:    Errol B. Taylor
       Attorney for Plaintiffs
       Fax: 212-822-5545

       Note to Plaintiffs' counsel: Please forward to all Second Wave Defense Counsel.

06/15/2007 16:42 Case 1:07-cv-01194-RMU COVINGTON & BURLING LLP 10 WEST 9240276932? Document 7-3 Filed 07/05/2007 Page 6 of 18 NO. 255 P05

06/15/2007 10:23 FAX 212 805 6191 HONORABLE BARBARA JONES @002/005

MEMORANDUM

To: Second Wave Counsel

From: Monique M. Mendez (212.805.6190)
Law Clerk to the Honorable Barbara S. Jones

Date: June 15, 2007

Re: Final Judgment

It has been brought to the Court's attention that there was a typo in the last paragraph of the Final Judgment, which was faxed to the parties on June 14, 2007. This fax contains the corrected judgment to be docketed.

M.M.M.

06/15/2007 16:42 Case 1:07-cv-01194-RMU COVINGTON & BURLING LLP 10 WEST 7 9240276932 Filed 07/05/2007 Page 7 of 18 NO.255 D06

08/15/2007 10:23 FAX 212 805 8101     HONORABLE BARBARA JONES     @003/008

⊕ COPY MAILED/ FAXED TO:
COUNSEL FOR PLTFF(S):
COUNSEL FOR DFT(S):by Marsh
PLTFF PRO SE:
DFT PRO SE:
DATE: 6/14/07
MDL Docket NO: 1291  MMM
M-21-81 (BSJ)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
                                 :
In re OMEPRAZOLE PATENT LITIGATION :
                                 :
---------------------------------x
                                 :
ASTRAZENECA AB, et al.,          :
                                 :     00 Civ. 6749 (BSJ)
            Plaintiffs,          :
                                 :
       v.                        :
                                 :
MYLAN LABORATORIES INC., et al., :
                                 :
            Defendants.          :
---------------------------------x
                                 :
ASTRAZENECA AB, et al.,          :
                                 :     03 Civ. 6057 (BSJ)
            Plaintiffs,          :
                                 :
       v.                        :
                                 :
LABORATORIOS DR. ESTEVE, S.A.,   :
et al.,                          :
                                 :
            Defendants.          :
---------------------------------x
                                 :
ASTRAZENECA AB, et al.,          :
                                 :     00 Civ. 4541 (BSJ)
            Plaintiffs,          :     03 Civ. 8719 (BSJ)
                                 :
       v.                        :
                                 :
LEK PHARMACEUTICAL AND CHEMICAL  :
CO., D.D., et al.,               :
                                 :
            Defendants.          :
---------------------------------x
                                 :
ASTRAZENECA AB, et al.,          :
                                 :     01 Civ. 9351 (BSJ)
            Plaintiffs,          :
                                 :

06/15/2007   16:42    COVINGTON & BURLING LLP 10 WEST → 92402769327    NO.255    D07

08/15/2007 10:23 FAX  212 805 6181    HONORABLE BARBARA JONES    @004/008

```
                    v.                    :
                                          :
APOTEX CORP., et al.,                     :
                                          :
            Defendants.                   :
-------- --------------------------x
                                          :
ASTRAZENECA AB, et al.,                   :
                                          :       00 Civ. 7597 (BSJ)
            Plaintiffs,                    :       01 Civ. 2998 (BSJ)
                                          :
                    v.                    :
                                          :
IMPAX LABORATORIES, INC.,                 :
                                          :       Judgment
            Defendant.                    :
-------- --------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

This matter having come to trial on the merits before the undersigned Honorable Barbara S. Jones (without a jury), and the Court having duly rendered its Opinion and Order dated May 31, 2007, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

### APOTEX

1.    Defendants Apotex Corp., Apotex Inc., and TorPharm, Inc. (collectively "Apotex") have failed to meet their burden of proving that the asserted claims (claim 1, 5, 6, and 10) of U.S. Patent No. 4,786,505 ("the '505 Patent") and asserted claims (claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230 Patent" are invalid.

2.    Apotex infringed claims 1, 5, 6, and 10 of the '505 Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 5)5(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).  Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

    3.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. · 355a(b)(2)(B) expires.

### IMPAX

    4.    Defendant Impax Laboratories, Inc. ("Impax") has
failed to meet its burden of proving that the asserted claims
(1, 5, 6, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent") and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

    5.    Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,
Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).
Impax's omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 75-785,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and
10, and '230 Patent claims 1, 6, 7, 10, and 13.

    6.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. · 355a(b)(2)(B) expires.

### MYLAND AND ESTEVE

    7.    Defendants Mylan Laboratories Inc., and Mylan
Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,
S.A., and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")
have failed to meet their burden of proving that the asserted
claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.
4,786,505 ("the '505 Patent") and the asserted claims (1, 6, 7,
8, 9, 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230
Patent" are invalid.

    8.    The omeprazole formulation described in ANDA No. 75-
876 of Defendants Mylan and Esteve, which was the subject of the
Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505
Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15)
of the '230 Patent, either literally or under the doctrine of
equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and
Esteve have willfully infringed the '505 and '230 Patents are
dismissed as moot.

### LEK

10    The omeprazole formulations described in ANDA Nos.
75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek
Service Inc. (collectively "Lek"), which were the subject of
the Court's May 31, 2007 Opinion and Order do not infringe the
asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and
the asserted claims (1, 6, 8, 10, 11, and 13) of the '230
Patent, either literally or under the doctrine of equivalents.

### ALL PARTIES

11    The Parties reserve the right to assert remaining
claims not the subject of this order or the Court's previous
orders and opinions, and to seek or oppose damages, enhanced
damages, attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to
Federal Rule of Civil Procedure 54(b), the Clerk of Court shall
enter final judgment pursuant to paragraphs 1 through 10.

06/15/2007 10:23 FAX  212 806 8181    HONORABLE BARBARA JONES    ☒008/008

SO ORDERED:

_Barbara S. Jones_
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
June /4, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x
                                      :    M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION :    MDL Docket No. 1291
                                      :
--------------------------------------x
                                      :
ASTRAZENECA AB, et al.,               :
                                      :    00 Civ. 6749 (BSJ)
          Plaintiffs,                 :
                                      :
          v.                          :
                                      :
MYLAN LABORATORIES INC., et al.,      :
                                      :
          Defendants.                 :
--------------------------------------x
                                      :
ASTRAZENECA AB, et al.,               :
                                      :    03 Civ. 6057 (BSJ)
          Plaintiffs,                 :
                                      :
          v.                          :
                                      :
LABORATORIOS DR. ESTEVE, S.A.,        :
et al.,                               :
                                      :
          Defendants.                 :
--------------------------------------x
                                      :
ASTRAZENECA AB, et al.,               :
                                      :    00 Civ. 4541 (BSJ)
          Plaintiffs,                 :    03 Civ. 8719 (BSJ)
                                      :
          v.                          :
                                      :
LEK PHARMACEUTICAL AND CHEMICAL       :
CO., D.D., et al.,                    :
                                      :
          Defendants.                 :
--------------------------------------x
                                      :
ASTRAZENECA AB, et al.,               :
                                      :    01 Civ. 9351 (BSJ)
          Plaintiffs,                 :
                                      :

|  |  |
|---|---|
| v. | : |
| APOTEX CORP., et al., | : |
| Defendants. | : |

----------------------------------x

|  |  |  |
|---|---|---|
| ASTRAZENECA AB, et al., | : | |
| | : | 00 Civ. 7597 (BSJ) |
| Plaintiffs, | : | 01 Civ. 2998 (BSJ) |
| | : | |
| v. | : | |
| | : | |
| IMPAX LABORATORIES, INC., | : | |
| | : | **Judgment** |
| Defendant. | : | |

----------------------------------x

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

This matter having come to trial on the merits before the undersigned Honorable Barbara S. Jones (without a jury), and the Court having duly rendered its Opinion and Order dated May 31, 2007, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

### APOTEX

1.    Defendants Apotex Corp., Apotex Inc., and TorPharm, Inc. (collectively "Apotex") have failed to meet their burden of proving that the asserted claims (claim 1, 5, 6, and 10) of U.S. Patent No. 4,786,505 ("the '505 Patent") and asserted claims (claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230 Patent" are invalid.

2.    Apotex infringed claims 1, 5, 6, and 10 of the '505 Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 505(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

    3.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. § 355a(b)(2)(B) expires.

                              **IMPAX**

    4.    Defendant Impax Laboratories, Inc. ("Impax") has
failed o meet its burden of proving that the asserted claims
(1, 5, 6, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent" and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

    5.    Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,

Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

Impax's omeprazole formulations sold, offered for sale, used and

imported into the United States, described in ANDA No. 75-785,

and which were the subject of the Court's May 31, 2007 Opinion

and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and

10, and '230 Patent claims 1, 6, 7, 10, and 13.

6.  Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective

date of approval for the aforementioned products and related

ANDAs shall be not earlier than October 20, 2007, the date on

which the six-month period of pediatric exclusivity under 21

U.S.C. § 355a(b)(2)(B) expires.

## MYLAND AND ESTEVE

7.  Defendants Mylan Laboratories Inc., and Mylan

Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,

S.A. and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")

have failed to meet their burden of proving that the asserted

claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.

4,785,515 ("the '505 Patent") and the asserted claims (1, 6, 7,

8, 9. 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230

Patent" are invalid.

8.  The omeprazole formulation described in ANDA No. 75-

876 of Defendants Mylan and Esteve, which was the subject of the

Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505

Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15)

of the '230 Patent, either literally or under the doctrine of

equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and

Esteve have willfully infringed the '505 and '230 Patents are

dismissed as moot.

## LEK

10    The omeprazole formulations described in ANDA Nos.

75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek

Service, Inc. (collectively "Lek"), which were the subject of

the Court's May 31, 2007 Opinion and Order do not infringe the

asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and

the asserted claims (1, 6, 8, 10, 11, and 13) of the '230

Patent, either literally or under the doctrine of equivalents.

## ALL PARTIES

11    The Parties reserve the right to assert remaining

claims not the subject of the Court's previous orders and

opinions, and to seek or oppose damages, enhanced damages,

attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to

Federal Rule of Civil Procedure 54(b), the Clerk of Court shall

enter final judgment for Astrazeneca, pursuant to paragraphs 1

through 11.

SO ORDERED:

_____
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June /4, 2007

# Tab 2

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

## FACSIMILE

| DATE | TOTAL PAGES W/COVER |
|------|---------------------|
| June 19, 2007 | 32 |

| FROM | EMAIL | FAX | TEL |
|------|-------|-----|-----|
| Safir, Peter | psafir@cov.com | 020-7778-5162 | 202-662-5162 |

| TO | FAX | TEL |
|----|-----|-----|
| Sheldon T. Bradshaw, Chief Counsel<br>Food and Drug Administration | 301-827-3054 | 301-827-1137 |
| Elizabeth Dickinson, Esq., Office of the Chief Counsel<br>Food and Drug Administration | 301-827-3054 | |
| Gary Buehler, Director, Office of Generic Drugs<br>Food and Drug Administration | 240-276-9327 | |
| Errol B. Taylor, Esq.<br>Milbank Tweed Hadley & McCloy LLP | 212-822-5430 | |
| Robert S. Silver, Esq., Outside Counsel for Apotex<br>Caesar, Rivise, Bernstein, Cohen and Pokotilow, Ltd. | 215-751-1142 | |
| Jeffrey J. Toney, Esq., Outside Counsel for Impax<br>Sutherland, Asbill & Brennann LLP | 404-853-8806 | |

**REMARKS**

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE ADDRESSEE SHOWN ABOVE. IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE. ANY REVIEW, DISSEMINATION OR USE OF THIS TRANSMISSION ON ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND MAIL THE ORIGINAL TO US AT THE ABOVE ADDRESS.

**SUITE NUMBER:**    1059E

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

PETER O. SAFIR
TEL 202.662.5162
FAX 202 778.5162
PSAFIR@COV.COM

June 19, 2007

## VIA FACSIMILE

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857

Re:     *In re Omeprazole Patent Litigation*, M-21-81 (BSJ):
        ANDA Nos. 76-048 and 75-785

Dear Mr. Bradshaw:

Further to our June 14 letter enclosing the Court's June 14 Judgment in *In re Omeprazole Patent Litigation*, M-21-81 (BSJ) against Apotex and Impax, we now enclose the Court's May 25 Order. In the May 25 Order, the Court denied Impax's motion to dismiss for lack of subject matter jurisdiction. The Court held that even though the patents had expired, it had jurisdiction during the pediatric exclusivity period to order the relief granted on June 14 pursuant to § 271(e)(4)(A) and its inherent equitable powers. (May 25 Order at 12). Apotex belatedly raised jurisdictional arguments similar to Impax's when objecting to the now-entered June 14 Judgment. Accordingly, the Court considered Apotex's arguments before entry of that Judgment.

On June 15, Apotex filed a motion to reconsider the June 14 Order and to stay the relief pending reconsideration. The Court entered a June 15 Judgment (also enclosed) denying the motion for reconsideration and the stay. The June 15 Judgment succinctly restates the Court's previous finding that the June 14 Order was proper. Impax has also filed a motion to reconsider the June 14 Order and to stay relief; the Court has not yet ruled on this motion.

Additionally, Astra has requested further relief to effectuate the § 271(e)(4)(A). The parties submitted additional briefing yesterday regarding this requested relief. We will inform the FDA should the Court issue a Judgment regarding the additional relief.

Given that the Court has clearly determined that it continues to have jurisdiction and has issued an order resetting the approval date under § 271(e)(4), Astra again requests that FDA should take the same position it did in the Duragesic matter and

COVINGTON & BURLING LLP

Sheldon T. Bradshaw, Esq., Chief Counsel
June 19, 2007
Page Two

immediately implement the Court's Order and revoke the approvals to avoid further erosion
of Astra's Pediatric exclusivity period.

Respectfully submitted,

Peter O. Safir

Enclosures

cc:   Elizabeth Dickinson, Esq.,
      Gary Buehler, Director
      Errol B. Taylor, Esq.
      Robert S. Silver, Esq., Outside Counsel for Apotex
      Jeffrey J. Toney, Esq., Outside Counsel for Impax

06/18/07 18:21 FAX 202 662 6830 COVINGTON & BURLINGTON Case 1:07-cv-01154-RMU Document 74 Filed 07/05/2007 Page 5 of 33 @004

05/25/2007 08:53 FAX 212 805 6191 HONORABLE BARBARA JONES @002/027

**ORDER OF MAY 25, 2007**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ASTRAZENECA AB, et al,          :
                  Plaintiffs,   :
                                :
          vs.                   :        00 Civ. 7597(BSJ)
                                :
IMPAX LABORATORIES, INC.        :        01 Civ. 2998(BSJ)
                  Defendants.   :
------------------------------------x
                                :        M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION :     MDL Docket No. 1291
                                :
                                :        <u>Order</u>
------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

     Presently before the Court is Impax Laboratories, Inc.'s

Motion to Dismiss for Lack of Subject Matter Jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the

reasons set forth below, Impax's motion is DENIED.

**Background**

     This is a patent infringement action brought by Plaintiffs

AstraZeneca AB, Aktiebolaget Hässle, KBI-E Inc., KBI Inc., Astra

Pharmaceuticals, L.P., and AstraZeneca, LP (collectively

"Plaintiffs," "AstraZeneca," or "Astra") against Impax

Laboratories, Inc. ("Impax"), a manufacturer of generic

pharmaceutical products in the United States.  Astra alleges

infringement of U.S. Patent Numbers 4,786,505 and 4,853,230 (the

"'505 Patent" and the "'230 Patent," respectively), which cover

the Prilosec® formulation.

     **A. Statutory Background**

1

Resolution of this matter requires the Court to analyze three distinct statutory provisions; therefore, the Court will provide a brief overview of the relevant provisions. For a detailed explanation, see Mylan Labs., Inc. v. Thompson, 389 F.3d 12'2 (D.C. Cir. 2004); Barr Labs., Inc. v. Thompson, 238 F. Supp. 2d 236 (D.D.C. 2002).

### 1. The Hatch-Waxman Amendments

21 U.S.C. § 355(j), a provision of the 1984 Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act ("FDCA"), "creates an approval shortcut for applicants seeking to market generic versions of approved drugs." Thompson, 389 F.3d at 1274-75. Section 355(j) permits a generic applicant to file an abbreviated new drug application ("ANDA") with the U.S. Food and Drug Administration ("FDA") certifying that the generic version is bioequivalent to an approved drug, and thus avoid having to conduct its own clinical trials. Id. at 1275. The ANDA must include "a certification, that for each of the patents applicable to the pioneer drug, the proposed generic drug would not infringe the patent because (I) the patent information has not been filed; (II) the patent has expired; (III) the patent will expire on a stated date; or (IV) the patent is invalid or will not be infringed by the manufacture, use or sale of the drug for which the abbreviated application applicant seeks approval." 21 U.S.C. § 355(j)(2)(A)(viii), cited in Mylan

2

Labs., Inc. v. Leavitt, No. 07-579, 2007 WL 1241884, at *2
(D.D.C. Apr. 30, 2007). These certifications are referred to as
Paragraphs I, II, III, and IV, respectively.

35 U.S.C. § 271(e)(2), a patent statute, also enacted in
the Hatch-Waxman Amendments, creates a cause of action for
patent infringement based solely upon the filing of an ANDA
containing a Paragraph IV certification. Eli Lilly & Co. v.
Medtronic, Inc., 496 U.S. 661, 676 (1990). Section 271(e)(4)
sets out the exclusive remedies available in a patent
infringement action under § 271(e)(2):

> For an act of infringement described in paragraph (2)—
> (A the court shall order the effective date of any
> approval of the drug or veterinary biological product
> in the infringement to be a date which is not earlier
> than the date of expiration of the patent which has
> been infringed,
> (B injunctive relief may be granted against an
> infringer to prevent the commercial manufacture, use,
> offer to sell, or sale within the United States or
> importation into the United States of an approved drug
> or veterinary biological product, and
> (C damages or other monetary relief may be awarded
> against an infringer only if there has been commercial
> manufacture, use, offer to sell, or sale within the
> United States or importation into the United States of
> an approved drug or veterinary biological product.

35 U.S.C. § 271(e)(4).

### 2. The Period of Market Exclusivity

In 1997, in an effort to encourage the pediatric testing of
drugs, Congress passed the Food and Drug Administration
Modernization Act, Pub. L. No. 105-115, 111 Stat. 2296 (1997),

3

which grants manufacturers of drugs that agree to conduct
pediatric studies, six months of market exclusivity for their
products. Ass'n of Am. Physicians & Surgeons, Inc. v.
U.S.F.D.A., 226 F. Supp. 2d 204, 206 (D.D.C. 2002). 21 U.S.C. §
355a, the "pediatric exclusivity" provision, authorizes a patent
holder to receive a six-month period of market exclusivity
beyond the patent's expiration date, if the patent holder "has
satisfactorily conducted pediatric testing of its drug upon the
FDA's request." Thompson, 389 F.3d at 1275. This provision
serves as an incentive for a drug patent holder to conduct
expensive and difficult pediatric studies of a drug that the FDA
believes may have a beneficial pediatric use. Thompson, 389
F.3d at 1276; cf. Ass'n of Am. Physicians & Surgeons, 226 F.
Supp. 2d at 206 (noting that "[b]ecause of the expense and
difficulty in finding substantial pediatric populations to
undergo tests, along with the ethical complications associated
with testing new drugs on children, many drugs are tested for
safety and effectiveness in adults only").

      "If the FDA makes a request and the NDA holder satisfies
that request's requirement, pediatric exclusivity provides for a
six-month delay in the effective date of the pending ANDAs."
Barr Labs., 238 F. Supp. 2d at 241. The effect of the grant of
pediatric exclusivity depends on the type of certification
included in the ANDA. If the drug is the subject of a Paragraph

                                  4

ll or Paragraph III certification, "the period during which an application may not be approved under . . . . [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires (including any patent extensions)." 21 U.S.C. § 355a(c)(2)(A). If the drug is the subject of a Paragraph IV certification "and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires (including any patent extensions)." 21 U.S.C. § 355a(c)(2)(B).

As an initial matter, the Court notes that AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B). This period of pediatric exclusivity is set to expire on October 20, 2007.

**B. The Present Case**

In April 2000, Impax sent Astra notice that it had submitted an abbreviated new drug application ("ANDA") to the FDA seeking approval to engage in the commercial manufacture, use, or sale of its 10-mg and 20-mg omeprazole products, called "Omeprazole Delayed Release Capsules 10 and 20 mg," as generic versions of Astra's Prilosec® product. As part of its ANDA, Impax included a Paragraph IV Certification, as described in 21

5

U.S.C. § 355(j)(2)(A)(vii)(IV), stating that the '505 and '230
patents "[are] invalid or will not be infringed by the
manufacture, use, or sale of the new drug." (Second Am. Compl.
Against Impax (hereinafter "Second Am. Compl.") ¶¶ 12, 24.)

On May 15, 2000, Plaintiffs filed their initial Complaint
alleging that Impax committed an act of infringement under 35
U.S.C. § 271(e)(2) with respect to the '505 and '230 patents, by
filing an ANDA seeking approval from the FDA to engage in the
commercial manufacture, use, or sale of its 10- and 20-mg
Omeprazole Delayed Release Capsules, prior to the expiration of
the '505 and '230 patents. (Second Am. Compl. ¶¶ 11, 16, 28.)
On January 8, 2002, Impax sent Astra notice that it had
"submitted an amendment to ANDA 75-785, providing for the
addition of a 40mg strength" Omeprazole Delayed Release Capsule.
(Trial Ex. 1128.)

On November 8, 2002, Impax obtained final approval of its
ANDAs and in September 2004, began to market and sell its
generic products. (Impax's Mem. of Law in Supp. of its Mot. to
Dismiss Under Rule 12(b)(1) for Lack of Subject Matter
Jurisdiction (hereinafter "Def.'s Motion") at 2.) With leave of
Court, Plaintiffs filed a Second Amended Complaint on March 1,
2005, adding allegations of direct, contributory, and inducing
infringement under 35 U.S.C. § 271(a), (b), and (c),
respectively, and a demand for damages. (Second Am. Compl. ¶¶

6

19a-20, 31a-32.) On February 14, 2005, Impax filed its Answer and Counterclaims to Plaintiffs' Second Amended Complaint. Impax asserted counterclaims of invalidity and non-infringement, and demanded a jury trial on Plaintiffs' infringement claims and its counterclaims. (Impax Answer & Countercls. ¶ 235.) In order to include Impax in the consolidated Second Wave Bench Trial,[1] Plaintiffs agreed to dismiss with prejudice their claims for damages under § 271(a)-(c). In January 2006, the Court severed and stayed Impax's antitrust counterclaims pending the resolution of the patent infringement action, and ordered Plaintiffs to submit a voluntary dismissal of the damages claims. (Order Denying Impax's Claim to Jury Trial, Jan. 13, 2006.)

The case was tried to the Court sitting without a jury for 42 trial days, starting April 3, 2006 and ending June 14, 2006. Post-trial findings of fact and conclusions of law were fully submitted on August 1, 2006. The '505 and '230 patents expired on April 20, 2007, while a final decision was sub judice.

---

[1] The Second Wave Trial included the following defendant pharmaceutical corporations: Mylan Laboratories Inc., Mylan Pharmaceuticals Inc., Esteve Quimica, S.A., Laboratorios Dr. Esteve, S.A., Apotex Corp., Apotex Inc., Torpharm Inc., Lek Pharmaceutical and Chemical Company D.D., Lek USA, Inc., and Impax Laboratories, Inc.
[2] In addition, the Court ordered that, upon entry of Astra's dismissal, Impax's jury demand would be struck. (Jan. 13, 2006 Order at 9.) On February 26, 2006, this Court denied Impax's motion for reconsideration. On March 2, 2006, the Federal Circuit denied Impax's petition for a writ of mandamus. Impax has filed a petition for certiorari in the Supreme Court of the United States.

7

## Discussion

On April 23, 2007, Impax filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Impax asserts that upon the expiration of the '505 and '230 patents on April 20, 2007, the Court was divested of jurisdiction over Plaintiffs' claims for patent infringement under 35 U.S.C. § 271(a)-(c) and § 271(e)(2).

### A. Legal Standard for Dismissal

A motion to dismiss for lack of subject matter jurisdiction presents only a procedural question, and does not raise issues unique to patent law. Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380-81 (Fed. Cir. 2002). Accordingly, the Court must apply regional circuit law, in this case Second Circuit law, in resolving Impax's motion to dismiss. Id. Federal Rule of civil Procedure 12(b)(1) provides for dismissal of a claim when the court "lacks . . . jurisdiction over the subject matter." F. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir 2000). Plaintiffs bear the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Makarova, 201 F.3d at 113; Faggionato v. Lerner, No. 06 CV 2614 2007 WL 959102, at *5 (S.D.N.Y. Mar. 30, 2007).

8

"Jurisdictional allegations must be shown affirmatively and may
not be inferred favorably to the party asserting them."
Foggianito, 2007 WL 959102 at *5.  In resolving a motion to
dismiss for lack of subject matter jurisdiction, the Court may
refer to evidence outside the pleadings.  Makarova, 201 F.3d at
113.

### B. Expiration of the '230 and '505 Patents Does Not Render Astra's Claims Moot

In support of its motion to dismiss, Impax argues that the
Court lacks jurisdiction over the present controversy because
"Astra has no remaining claim for relief against Impax."  (See
Def.'s Motion at 3.)  Impax's argument can be summarized as
follows  Under the Patent Act, Plaintiffs are entitled to only
two remedies for infringement of the '505 and '230 patents:
damages under 35 U.S.C. § 284, or an injunction under 35 U.S.C.
§ 283.  Because Astra dismissed with prejudice all of its claims
for damages, the only remedy available to Astra was an
injunction under 35 U.S.C. § 283.  Upon expiration of the
patents  Astra is no longer entitled to injunctive relief under
§ 283, and Astra's claims for infringement under 35 U.S.C. §
271(e)(2) "expired."  Thus, Impax asserts that Astra's claims
for patent infringement are now moot and the Court's subject

9

matter jurisdiction over the claims has "dissolve[d]." (Def.'s Motion at 3).[3]

The Court disagrees. Mootness "refers to "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) [and] continue throughout [the] existence" of the litigation.[4] U.S. Parole Comm'n v. Geraghty, 445 U.S. 383, 395-97 (1980) (quoting Henry Paul Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack 395 U.S. 486, 496-97 (1969) (citation omitted).

The Plaintiffs here have a legally cognizable interest, or "personal stake," in this litigation. See U.S. Parole Comm'n v. Geraghty, 445 U.S. at 396-96. So we are concerned only with whether the issues before the court are still "live." The "central question . . . is whether a change in the circumstances

---

[3] In addition, Impax contends the Pennsylvania District Court's decision in Pfizer, Inc. v. Mylan Pharm., Inc., No.02 CV 1628, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006), dictates dismissal of Astra's claims against Impax. This Court di agrees. Pfizer v. Mylan is not binding precedent on this Court. Nor does it consider the detailed statutory analysis, upon which this Court relies.

[4] "The rule that [courts] lack jurisdiction to consider the merits of a moot case is . branch of the constitutional command that the judicial power extends only to cases or controversies." Powell v. McCormack 395 U.S. 486, 49" (1969) (citing Sibron v. New York, 392 U.S. 40, 57 (1968)). But see Honig v. Doe, 484 U.S. 305, 330 (1988) (Rehnquist, C.J., concurring) (arguing that mootness doctrine is primarily prudential and not constitutionally based), cited in Erwin Chemerinsky, Federal Jurisdiction § 2.5 (4th Ed. 2003).

that prevailed at the beginning of the litigation have
forestalled any occasion for meaningful relief." 13A Charles
Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
3533.3 (2d ed. 1984). In other words, whether the expiration of
the '505 and '230 patents has rendered Plaintiff's claims moot
depends on the availability of any judicial relief. See Earth
Island Inst. v. United States Forest Serv., 442 F.3d 1147, 1157
(9th Cir. 2006) (In deciding whether a case is moot, "[t]he
question is not whether the precise relief sought at the time of
the application for an injunction was filed is still available.
The question is whether there can be any effective relief.").

No one disputes that if the patent holder is seeking
damages it may maintain a cause of action past the expiration
of the patents. See Clark v. Wooster, 119 U.S. 322, 325 (1886)
(expiration of the patents does not deprive the court of
jurisdiction to grant monetary relief). But if the patent
holder is seeking an injunction under § 283 "to prevent the
violation of any right secured by patent," 35 U.S.C. § 283, the
patent must still be in effect in order for the court to grant
relief because upon the expiration of the patent, the right to
exclude others from practicing the claimed invention also
expires Kearns v. Chrysler Corp., 32 F.3d 1541, 1550 (Fed.
Cir. 1914) ("Thus, when the rights secured by a patent are no
longer protectable by virtue of expiration or unenforceability,

11

entitlement to injunctive relief becomes moot because such relief is no longer available."); see also Sears, Roebuck & Co. v. Stiffel, Co., 376 U.S. 225, 230 (1964); Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed Cir. 2001) ("The District Court cannot enjoin the Computer Companies from infringing an expired patent."). Because the '505 and '230 patents have expired, Astra is no longer entitled to an injunction under § 283.

However, the unavailability of money damages or an injunction under § 283 does not automatically render the entire controversy before the Court "moot." For the reasons set forth below, the Court finds that because Plaintiffs are entitled to judicial relief -- either under the Court's equitable power or 35 U.S.C. § 271(e)(4)(A) -- the case is not moot, and the Court has jurisdiction over Plaintiffs' claims for patent infringement.

**1. Equitable Relief**

In Roche Prods., Inc. v. Bolar Pharm. Co. Inc., 733 F.2d 853 (1934), cert denied, 469 U.S. 856 (1984), the Federal Circuit held that the expiration of the patents did not render the case before it moot, nor did it deprive the court of the power to grant alternative forms of equitable relief. In Roche, the plaintiff requested a permanent injunction against infringement by Bolar, the defendant. Id. at 865. After the

12

motion was fully briefed, but prior to oral argument, the patent at issue expired. _Id._ The Court held that the case was not moot "because although the initially requested order [was] no longer . . . necessary, other remedies can be fashioned to give Roche relief against Bolar's past infringement," such as "an order to confiscate and destroy the data which Bolar . . . generated during its infringing activity." _Id._ (citation omitted. In accordance with _Roche_, the Court finds that although the expiration of the '505 and '230 patents precludes it from granting Astra an injunction under § 283, the expiration of the patents has not divested the Court of the power to issue other forms of equitable relief.[5]

Contrary to Impax's assertion, _Kearns_ does not dictate a different result. In analyzing its previous decision in _Roche_, the Federal Circuit in _Kearns_ found that "[t]he post-expiration relief discussed in _Roche_ was intended to return the parties to the status quo before infringement (e.g. destruction of data obtained as a result of infringement) and was not intended to

---

[5] Having properly obtained jurisdiction over the present controversy, the Court is not automatically divested of it upon the expiration of the patents. _See_ John R. Kennel, Luchas Martin, et al., _Corpus Juris Secundum Patents_ § 434 ("Where jurisdiction is once acquired, it is not ousted by the expiration of the patent during the pendency of the suit, but continues for the purpose of an accounting." (citing _Rice & Adams Corp. v. Lathrop_, 278 U.S. 509 (1929)); _see also Rice & Adams Corp._, 278 U.S. at 514-15 ("Jurisdiction of the court sitting in equity, having been rightfully invoked, was not lost . . . by the expiration of the patent pending final decree. . . . [I]f the case was one for equitable relief when the suit was instituted, the mere fact that the ground for such relief expired by the expiration of the patent, would not take away jurisdiction, and preclude the court from proceeding to grant . . . incidental relief . . . .").

13

prohibit future use of the invention." Kearns, 32 F.3d at 1550.
The court noted that "[i]mportantly, the relief was also
considered in the context of harm to a patent owner that had
been selling the patented product. Thus, deferral of
competition by an infringer who had entered the market
prematurely, i.e., before the patent expired, was considered as
a means of equitably compensating the patent owner." Id.
Similarly, in this case, were the Court to find the patents
valid and infringed and issue an order pursuant to 35 U.S.C. §
27.(e)(1)(A) directing Impax's ANDA to have a delayed effective
date, such an order would have the effect of returning the
parties to the status quo before infringement -- that is before
Impax filed its ANDA with a Paragraph IV certification. As will
be discussed in more detail below, an order directing withdrawal
of final FDA approval of Impax's ANDA and delaying the effective
date would require Impax to wait until the expiration of Astra's
six-month period of pediatric exclusivity before it could re-
enter the market to sell its generic products. This remedy
would put the parties in the position they would have been in
had the act of infringement never occurred: It would subject
Impax to Astra's six month period of pediatric exclusivity, as
it would have been had it filed an ANDA with a Paragraph II or
Paragraph III certification. Moreover, such an order would give
effect to, and is in accordance with the goal of the statutory

14

scheme enacted by Congress when it authorized the grant of
market exclusivity to patent holders who conduct pediatric
studies. See Ass'n of Am. Physicians & Surgeons, 226 F. Supp.
2d at 2)6 ("[I]n an effort to encourage pediatric testing,
Congress passed the Food and Drug Administration Modernization
Act," under which "[d]rug manufacturers that agreed to conduct
these pediatric tests could receive six months of market
exclusivity for their products.").

### 2. Relief under 35 U.S.C. § 271(e)(4)(A)

In addition to the judicial relief available under the
Court's equitable power, 35 U.S.C. § 271(e)(4)(A) independently
provides a remedy. Contrary to Impax's assertion the expiration
of the patents does not "eliminate[] any Section 271(e)(2) claim
that may have existed." (See Def.'s Motion at 3.)  Section
271(e)(1) states that

> it shall be an act of infringement to submit an
> application under 505(j) of the Federal Food, Drug,
> and Cosmetic Act or described in section 505(b)(2) of
> such Act for a drug claimed in a patent or the use of
> which is claimed in a patent, if the purpose of such
> submission is to obtain approval under such Act to
> engage in the commercial, use or sale of a drug
> claimed in a patent or the use of which is claimed in
> a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2). Section 271(e)(2) creates "a new (and
somewhat artificial) act of infringement" based solely upon the
filing of an ANDA containing a Paragraph IV certification "that

15

is in error as to whether the commercial, manufacture, use, or sale of the new product (none of which has actually occurred) violates the relevant patent." <u>Eli Lilly & Co. v. Medtronic, Inc.</u>, 496 U.S. 661, 676-79 (1990).

35 U.S.C. Section 271(e)(4) sets out the remedies that are available for an act of infringement under § 271(e)(2). In addition to injunctive relief under § 271(e)(4)(B), and damages or other monetary relief under § 271 (e)(4)(C), Section 271(e)(1)(A) provides an alternative form of relief to which Astra is still entitled. Section 271(e)(4)(A) states that upon finding an act of infringement, "the court shall order the effective date of any approval of the drug or veterinary biological product in the infringement to be a date which is <u>not earlier than the date of expiration of the patent</u> which has been infringed." 35 U.S.C. § 271(e)(4)(A) (emphasis added).

Impax asserts that the remedy under 271(e)(4)(A) is only available prior to the expiration of the patents. In support, Impax cites a section of legislative history from 1984, prior to the enactment of the statutory provisions authorizing the grant of pediatric exclusivity, which states that:

> If the infringing party has begun commercial marketing of the drug, damages, and other monetary relief and injunctive may be awarded for the infringement and to prevent further infringement. In addition, the FDA would be mandated to <u>change the effective date of the approved ANDA to the expiration of the infringed patent</u>.

16

H.R. Rep. No. 98-857, pt. 1, at 46 (1984). However, this is not
the language contained in the statute. The statute states that
"the court shall order the effective date . . . to be a date
<u>which is not earlier than the date of the expiration of the
patent</u> which has been infringed." 35 U.S.C. § 271(e)(4)
(emphasis added). Had Congress intended to limit relief under
271(e)(4)(A) to an order mandating the effective date of the
ANDA to be the date of the expiration of the patent, it could
have written the provision to say that. But it did not.
Rather, the clear and unambiguous language of the statute sets
the date of the expiration of the patent only as the earliest
effective date a court may order. The Court will not "accept
[Impax's] invitation to ignore [the] language which Congress saw
fit to enact" and search the legislative history for a contrary
meaning. <u>United States v. McGoff</u>, 831 F.2d 1071, 1080 & n.19
(D.C. Cir. 1987) ("Only the most extraordinary showing of
contrary intentions in the legislative history will justify
departure from the plain and unambiguous language of the
statute." (quoting <u>United States v. Albertini</u>, 472 U.S. 675, 680
(1985)).

The statutory language of 271(e)(4)(A) also fails to limit
the Court's power to issue a remedy to the term of the patent.
Section 271(e)(4)(A) must be read in conjunction with 21 U.S.C.

17

§ 355a, the statutory provision governing the grant of a six-
month period of market exclusivity to a patent holder who
completes FDA-requested pediatric studies. 21 U.S.C. § 355a
"authorizes an extra six-month 'pediatric exclusivity' period
_following expiration of a drug patent_ for a patent holder that
has satisfactorily conducted pediatric testing of its drug upon
the FDA's request." Mylan Labs., Inc. v. Thompson, 389 F.3d
1272, 1275 (D.C. Cir. 2004) (emphasis added). The statute
provides that if the drug is the subject of a Paragraph IV
certification "and in the patent infringement litigation
resulting from the certification the court determines that the
patent is valid and would be infringed, the period during which
an application may not be approved under [21 U.S.C. §
355(j)(5)(B)] shall be extended by a period of six months after
the date the patent expires (including any patent extensions)."
Id. at 276. Nothing in the language of 21 U.S.C. §
355a(c)(2)(B) requires the Court to render its decision prior to
the expiration of the patents.

Imax contends that "'pediatric exclusivity' does not
rescue Astra's claims" because "pediatric exclusivity is a
reward bestowed by the FDA on pharmaceutical companies for
testing drug products on young patients[,] . . . [i]t does not,
however extend the terms of the patents." (Def's Motion at 4.)
The Court agrees that the six-month period of pediatric

18

exclusivity does not extend the term of the patents, but it does grant the patent holder a period of market exclusivity, which this Court has the power to enforce. Accordingly, the Court finds that relief under § 271(e)(4)(A) does not become moot when the patents expire but the period of pediatric exclusivity is still in effect.

Such a result is in accordance with the Federal Circuit's decision in Alza Corp. v. Mylan Labs., Inc., 391 F.3d 1365 (Fed. Cir. 2004). In Alza, the patent was due to expire in July 2004. Id. at 368. The Federal Circuit stated in a decision rendered on December 10, 2004 -- after the expiration of the patents -- that "following the Food and Drug Administration's approval of pediatric use of [the drug], the patent will now expire on January 23, 2005." Id. The parties conceded that the case would be moot after January 23, 2005. Id. at n.3. Although the Vermont District Court's decision in Alza was rendered prior to the expiration of the patents, the Federal Circuit did not find that the case became moot upon expiration of the patent, nor did it find that it lost jurisdiction over the appeal upon expiration of the patent. Instead, the court asserted jurisdiction over the appeal and affirmed the district court's decision that the patents were neither anticipated nor obvious, and that the patent was not unenforceable due to inequitable conduct. Id. at 1373.

In support of its motion to dismiss, Impax asserts that the
Court is powerless to enforce the period of pediatric
exclusivity because section 355a requires a "court
determin[ation] that the patent is valid and would be infringed"
in order for the ANDA with a Paragraph IV certification to be
subject to the period of pediatric exclusivity.  Thus Impax
contends that because the patents expired while the
determination of validity and infringement was sub judice, Astra
has lost its right to its six-month period of pediatric
exclusivity under 21 U.S.C. § 355a.  The Court declines to reach
such an anomalous result.

Had Impax filed a Paragraph II or Paragraph III
certification, it would have been automatically subject to
Astra's six-month period of pediatric exclusivity prior to
receiving final approval of its ANDA.  See 21 U.S.C. §
355a(c)(2)(B).  Instead, Impax filed a Paragraph IV
certification, and while the patent litigation was pending, it
obtained final approval of its ANDAs and began to manufacture
and sell its generic products.  Simply because the statutory
provisions do not address the specific fact pattern before us
does not mean that Astra is not entitled to the six-month period
of market exclusivity that it earned by conducting the requested
pediatric studies.

20

In this regard <u>Ranbaxy Labs. Lim.</u> v. United <u>States Food &
Drug Admin.</u>, 307 F. Supp. 2d 15 (D.D.C. 2004), is instructive.
In <u>Ranbaxy</u>, the generic drug manufacturer, Ranbaxy Labs.,
received tentative approval of its ANDAs during the course of
litigation. <u>Id.</u> at 18. "After the summary judgment decision, .
. . the court indicated to Ranbaxy and Pfizer [the patent
holder], that the court's schedule would not allow for a trial
until after the January 29, 2004, expiration of the '216
patent.' <u>Id.</u> at 17. In response the parties entered into a
stipulation of dismissal providing that because the '216 was set
to expire before the court could accommodate a trial, the
"action; would be dismissed as moot upon the . . . expiration of
the '216 patent." <u>Id.</u> at 17.

Ranbaxy sought confirmation from the FDA that it would
receive final approval of its ANDA upon expiration of the
patent, irrespective of Pfizer's period of pediatric
exclusivity. <u>Id.</u> at 18. Ranbaxy argued that because it had
received tentative approval of its ANDAs, upon expiration of the
patents the ANDAs "automatically gained or were entitled to
gain, immediate effective approval . . . because the patent
litigation became moot at the very instant the patents expired."
<u>Id.</u> at 19. In addition, Ranbaxy asserted a similar argument to
that made by Impax in support of the present motion: Ranbaxy
argued 'that the preconditions for delaying an ANDA on the basis

21

of pediatric exclusivity provided for in Section 505(a)(c)(2)(B)

[anc. 21 U.S.C. § 355a(b)(2)(b)] (governing Paragraph IV

submissions) could not be satisfied unless Pfizer obtained a

ruling that the [relevant] patent was valid and would be

infringed, which it was unlikely to do in view of the district

court's schedule." Id. at 18.

By letter dated January 28, 2004, "the FDA issued an

administrative decision indicating that Ranbaxy's ANDA would not

be approved until after the expiration of Pfizer's pediatric

exclusivity on July 29, 2004." Id. "The FDA concluded that an

ANDA applicant will be subject to any pediatric exclusivity that

attaches to a patent where the ANDA applicant has filed a

paragraph IV certification, was sued by the NDA holder or patent

owner within 45 days, and the litigation is unresolved on the

merits and the 30-month stay has not run when the patent

expires." Id. at 18 (citation omitted).

Although the facts of Ranbaxy differ from the case before

us, the Court finds that the FDA's reasoning is equally

applicable to the case at bar. In Ranbaxy, "the FDA concluded

that the absence of a [statutory] provision addressing

unresolved patent litigations in the Paragraph IV certification

context did not mean that Congress intended to exclude such

circumstances from the pediatric exclusivity provision."

Ranbaxy 307 F. Supp. 2d at 19. According to the FDA, Ranbaxy's

"alternative reading . . . would undercut the purpose of the
pediatric exclusivity and invite anomalies and manipulation of
the statute." Id. Similarly, the Court finds that Impax's
interpretation of the statutory provisions would create an
anomalous result that is at odds with Congress's goal in
enacting § 355a.

Accordingly, the Court concludes that if it determines that
the '505 and '230 patents are valid and infringed, it may issue
an order pursuant to 35 U.S.C. § 271(e)(4)(A) recognizing
Astra's six-month period of pediatric exclusivity under 21
U.S.C. § 355a(c)(2)(B), and mandating that the effective date of
approval of Impax's ANDA is no earlier than the date on which
the pediatric exclusivity ends -- that is October 20, 2007.
Such an order does not extend the term of the patents, but
instead gives effect to a period of market exclusivity which
Congress has bestowed upon brand manufacturers who incur the
costly task of conducting pediatric studies of pharmaceutical
drugs. See S. Report No. 105-43, at 51 (1997); see also Assoc.
of Am. Physicians and Surgeons, Inc. v. U.S.F.D.A., 226 F. Supp.
2d 204, 206 (D.D.C. 2002).

3. Impax's ANDA Did Not Automatically Convert from a
Paragraph IV to a Paragraph II Certification

In support of its assertion that upon patent expiration,
Astra no longer has a claim under § 271(e)(2), Impax contends

23

that upon patent expiry, its Paragraph IV certification was
automatically converted to a Paragraph II certification thereby
eliminating Astra's claim for infringement under § 271(e)(2).
Impax cites <u>Ranbaxy</u> in support of this proposition; however,
<u>Ranbaxy</u> does not mandate such a result.

In <u>Ranbxy</u>, the FDA determined that upon patent expiry,
Ranbaxy was required to amend its certification pursuant to 21
C.F.R. § 374.94(a)(12)(viii)(C)(1), which requires an ANDA
applicant to amend its certification "if, at any time before the
effective date of approval of the application, the applicant
learns that the submitted certification is no longer accurate."
The FDA decided that upon expiration of the patents, the
Paragraph IV certification converted to a Paragraph II
certification -- even though Ranbaxy failed to amend its
certification -- and "under a Paragraph II certification, the
statute provides for a delayed ANDA approval for six months
beyond the expiration of the patent." <u>Ranbaxy</u>, 374 F. Supp. 2d
at 18. Thus, Ranbaxy was subject to the six-month period of
pediatric exclusivity (even in the absence of a court order
triggering § 355a(c)(2)(D)). The District Court for the
District of Columbia affirmed this decision, finding that at the
"magic moment" the patents expired "the Paragraph IV
certification became invalid, and either converted as a matter
of law to Paragraph II certifications or became inaccurate,

24

thereby creating an obligation on Ranbaxy's part to amend its
ANDAs to reflect patent expiry and an inability on the part of
the FDA to approve the ANDAs in their inaccurate form." Id. at
21.

Ranbaxy's ANDA is distinguishable from Impax's ANDA.  In
Ranbaxy, the generic applicant had only received "tentative"
approval prior to the expiration of the patent.  In the case at
bar, Impax received final approval of its ANDA on November 8,
2002, prior to the trial on the merits and the expiration of the
patents.  Once an application is finally approved, the applicant
is no longer under an obligation to amend its patent
certification.  See 21 C.F.R. § 314.94(A)(12)(viii)(C)(i)
(requiring amendments before the effective date of approval).
Thus, the rationale behind the automatic conversion of a
Paragraph IV certification to a Paragraph II certification does
not apply.  Accordingly, the Court finds that Impax's Paragraph
IV certification did not convert to a Paragraph II certification
upon expiration of the patents, and Astra still has a viable
claim for infringement under 271(e)(2).[6]

\* \* \*

---

[6] An order pursuant to § 271(e)(4)(A) would have the effect of converting
Impax's final approval to an approval with a delayed effective date, which
under the FDA's own regulations is a "tentative" approval. See Mylan v.
Thompson, 389 F.3d 1272, 1281 (D.C. Cir. 2004) (citing 21 C.F.R. §
314.105(c)). Whether such a change in the "factual and legal landscape"
would impose an obligation on Impax to amend its Paragraph IV certification
and subsequently convert the certification to a Paragraph II certification,
is not a question before us. See Mylan, 389 F.3d at 1284. The Court
properly leaves that issue, if it arises, to be resolved by the FDA.

The Court concludes that this is not a case in which the court is powerless to "undo the effects of conduct that was not prevented by the time of decision." Wright & Miller, supra (citing Roche and other cases). Instead, an effective remedy is possible and within the Court's power -- either under 35 U.S.C. § 271(e)(4)(A) or the Court's general equitable powers. Accordingly, the case is not moot and the Court has jurisdiction over Astra's claim for infringement under 35 U.S.C. § 271(e)(2).

**Conclusion**

For the foregoing reasons, Impax's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

New York, New York
May 25, 2007

26

ORDER OF JUNE 15, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :    M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION :        MDL Docket No. 1291
                                        :
----------------------------------------x
                                        :
ASTRAZENECA AB, et al.,                 :
                                        :    00 Civ. 6749 (BSJ)
              Plaintiffs,               :
                                        :
       v.                               :
                                        :
MYLAN LABORATORIES INC., et al.,        :
                                        :
              Defendants.               :
----------------------------------------x
                                        :
ASTRAZENECA AB, et al.,                 :
                                        :    03 Civ. 6057 (BSJ)
              Plaintiffs,               :
                                        :
       v.                               :
                                        :
LABORATORIOS DR. ESTEVE, S.A.,          :
et al.,                                 :
                                        :
              Defendants.               :
----------------------------------------x
                                        :
ASTRAZENECA AB, et al.,                 :
                                        :    00 Civ. 4541 (BSJ)
              Plaintiffs,               :    03 Civ. 8719 (BSJ)
                                        :
       v.                               :
                                        :
DEK PHARMACEUTICAL AND CHEMICAL         :
CO., D.D., et al.,                      :
                                        :
              Defendants.               :
----------------------------------------x
                                        :
ASTRAZENECA AB, et al.,                 :
                                        :    01 Civ. 9351 (BSJ)
              Plaintiffs,               :
                                        :

v.               :

APOTEX CORP., et al.,      :

          Defendants.    :

-------------------------------x

ASTRAZENECA AB, et al.,     :

            Plaintiffs,    :

v.               :

IMPAX LABORATORIES, INC.,    :

          Defendant.    :

-------------------------------x

     00 Civ. 7597 (BSJ)
     01 Civ. 2998 (BSJ)

     **Judgment**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

The Court is in receipt of Defendants Apotex Corp.,

Apotex Inc., and TorPharm, Inc.'s (collectively "Apotex")

letter dated June 15, 2007 requesting the Court reconsider

paragraph 3 of the June 14, 2007 Order and to stay the

effect of the Order pending reconsideration.

As recognized by the Court of Appeals for the District

of Columbia in <u>Mylan v. Thompson</u>, 389 F.3d 1272 (D.C. Cir.

2004), "the patent remedy statute directs that upon a

finding of infringement the district court establish a new

effective date for approval which is 'not earlier than the

date of the expiration of the patent which has been

infringed.'" <u>Id.</u> at 1282 (quoting 35 U.S.C. §

271(e(4)(A)). Moreover, the Court of Appeals held that

the Food and Drug Administration could change its final

approval of an ANDA following a district court's order finding that the generic version of the drug infringed a patent.

Apotex's argument regarding the issuance of a permanent injunction will be addressed after briefing on the issue is complete.

Application DENIED.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June 15, 2007

# Tab 3

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Jay P. Lefkowitz
To Call Writer Directly:
212 446-4970
lefkowitz@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 21, 2007

**BY FACSIMILE AND E-MAIL**

Sheldon T. Bradshaw, Esq.
Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, MD 20857

RE:    *In re Omeprazole Patent Litigation*, M-21-81 (BSJ)
           ANDA Nos. 75-785 and 76-048

Dear Mr. Bradshaw:

On June 15, 2007, counsel for AstraZeneca requested that FDA "immediately revoke the final approval of ANDA No. 76-048 ... and ANDA No. 75-785 ... and return the status of the applications to tentatively approved through at least October 20, 2007, the date that the applicable pediatric exclusivities expire." Letter from P. Safir to S. Bradshaw [the "Safir Letter"], June 15, 2007, at 1 (attached as Exh. 1). On June 18, 2007, FDA requested that Apotex Inc. (the sponsor of ANDA No. 76-048) and Impax Laboratories, Inc. (the sponsor of ANDA No. 75-785) submit a written response to AstraZeneca's request. Apotex and Impax appreciate the opportunity to be heard on this matter, and respectfully submit the following joint response. For the reasons that follow, we believe that the Agency should determine that AstraZeneca is not eligible or entitled to pediatric exclusivity against Apotex or Impax, and thus that there is no basis for rescinding or converting those companies' longstanding final approvals.

As you are aware, the district court overseeing the omeprazole patent litigation, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), recently entered an order directing that "the effective date of approval for the [Apotex and Impax] ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." *See* Judgment, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), June 15, 2007, at ¶¶ 3 & 6 (attached as Exh. 2). Apotex and Impax have appealed that judgment to the Federal Circuit, and each has moved the Federal Circuit to stay the district court's judgment pending appeal.

Chicago        Hong Kong        London        Los Angeles        Munich        New York        San Francisco

Sheldon Bradshaw
June 21, 2007
Page 2

### KIRKLAND & ELLIS LLP

This matter raises particularly important issues regarding the Agency's authority to make and enforce pediatric exclusivity determinations, and Apotex and Impax thus request that the Agency take this opportunity to offer its own considered views on the matter of AstraZeneca's eligibility for pediatric exclusivity in this case. Given the magnitude of these issues, we hope that the Agency will express its views in response to this letter and, if necessary, directly to the Federal Circuit.

As set forth in greater detail below, we believe that the district court's judgment is based on an erroneous determination that AstraZeneca is entitled to a period of pediatric exclusivity for its Prilosec®-branded omeprazole drug products. *See, e.g.,* Order Denying Impax's Motion to Dismiss for Lack of Subject-Matter Jurisdiction [the "Order on Motion to Dismiss"], *In re Omeprazole Patent Litigation,* M-21-81 (BSJ), May 25, 2007, at 5 (attached as Exh. 3) ("AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B). This period of pediatric exclusivity is set to expire on October 20, 2007."); *id.* at 17-19 (holding that § 271(e)(4)(a) gives the court "power to enforce" the pediatric "period of ... exclusivity"). Given that FDA is charged with the responsibility for administering and enforcing the pediatric exclusivity provisions of the Hatch-Waxman Act, we believe that the Agency is not only authorized, but obligated, to render its own reasoned view on that matter.

By law, FDA is vested with the exclusive statutory authority to determine whether a brand manufacturer is entitled to pediatric exclusivity, and courts thus routinely accord full *Chevron* deference to the Agency's determination of whether a brand manufacturer is entitled to pediatric exclusivity against a particular generic applicant.. *See, e.g., Mylan Labs., Inc. v. Thompson,* 332 F. Supp. 2d 106, 118 (D.D.C. 2004) (holding that "issues relating to the ANDA's approval and the applicability of the pediatric exclusivity provisions" are "subject areas that have clearly been entrusted to the FDA by Congress," and deferring to FDA's determination that Mylan was barred by Alza's pediatric exclusivity for Duragesic®), *aff'd* 389 F.3d 1272 (D.C. Cir. 2004); *see also Mylan Labs., Inc. v. Leavitt,* __ F. Supp. 2d __, 2007 WL 1241844, *8-*9 (D.D.C. April 30, 2007) (deferring to FDA's determination that Teva was barred by Pfizer's pediatric exclusivity for Norvasc® but Apotex was not); *see also* 21 U.S.C. § 355a(d) (granting FDA authority to determine whether pediatric studies submitted by a brand manufacturer are adequate); *id.* § 355a(f) (requiring FDA to "publish a notice of any determination that the requirements of subsection (d) of this section have been met and that submissions and approvals under subsection (b)(2) or (j) of section 355 of this title for a drug will be subject to the provisions of this section"); FDA, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999) (setting forth FDA's standards for determining whether a brand manufacturer is entitled to pediatric exclusivity).

In this case, however, the district court determined that AstraZeneca was entitled to pediatric exclusivity—and, thus, that the court could "enforce" that period of pediatric exclusivity under 35 U.S.C. § 271(e)(4)(a)—without the benefit of any input from the Agency. As a result, the district court was not able to defer to the Agency's views on this matter, and Apotex and Impax respectfully submit that it is incumbent on the Agency to set the record straight on this matter.

**KIRKLAND & ELLIS LLP**

As the district court and AstraZeneca have acknowledged, both of the patents at issue in the omeprazole litigation expired on April 20, 2007—long after FDA had granted final approval to those ANDAs, long after Apotex and Impax had acted on those lawful final approvals by commercially marketing drug products manufactured under their respective ANDAs, and prior to any finding that either of these two parties infringed the expired patents or that the expired patents were valid.    Given those circumstances, the district court's determination that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax is erroneous. Indeed, the Agency just recently held in the amlodipine besylate matter (FDA Docket No. 07-N-123) that a finally approved ANDA is "not blocked by [a brand manufacturer's] pediatric exclusivity ... under the literal terms of the [pediatric exclusivity] statute," and that the "ANDA's approval cannot be delayed."    Letter from G. Buehler to Amlodipine Besylate ANDA Applicants [the "Amlodipine Decision"], Apr. 19, 2007, at 5 n.4 (citing 21 U.S.C. § 355a(c)(2)(A)-(B)) (attached as Exh. 3).  Thus, just as Mylan's ANDA for Norvasc®-equivalent amlodipine besylate tablets was not subject to Pfizer's pediatric exclusivity in that matter, neither Apotex's ANDA nor Impax's ANDA is barred by AstraZeneca's pediatric exclusivity in this case.  In the Agency's words, the final approval of those ANDAs "cannot be delayed." *Id.*

The district court's judgment in the *Omeprazole* litigation does not preclude the Agency from issuing its own determination regarding AstraZeneca's eligibility for pediatric exclusivity. Indeed, we respectfully submit, the Agency is compelled to do so.  As the Supreme Court recently recognized, "a court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only* if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (emphasis added).  Thus, where a prior judicial determination interprets or applies an ambiguous statute, an administrative agency lawfully may "choose a different construction, since the agency remains the authoritative interpreter (within the limits of reason) of such statutes." *Id.* at 983.

As a result, prior judicial pronouncements do not bind an administrative agency otherwise entitled to *Chevron* deference, and such determinations cannot substitute for reasoned agency decisionmaking once the issue is submitted to the Agency. *See, e.g., Teva Pharms. USA, Inc. v. FDA [Pravastatin]*, 441 F.3d 1, 4-5 (D.C. Cir. 2006) (holding that "FDA mistakenly thought itself bound by our decisions in *Teva I* and *Teva II*," vacating the Agency's decision as arbitrary and capricious, and remanding case to the Agency with instructions to "bring its experience and expertise to bear in light of competing interests at stake and make a reasonable policy choice" notwithstanding the D.C. Circuit's prior interpretation of the Hatch-Waxman Act) (citations and quotations omitted).

*Brand X* is particularly instructive. That case involved a challenge to FCC's administrative decision to classify high-speed internet access ("broadband") as an "information service" rather than a "telecommunications service" under the Telecommunications Act of 1996.  Several parties challenged that determination on the ground that FCC's interpretation was foreclosed by a prior Ninth Circuit decision holding that broadband was best considered to be a "telecommunications service"—a conclusion the court had reached despite the fact that it "was

3

Sheldon Bradshaw
June 21, 2007
Page 4

### KIRKLAND & ELLIS LLP

not reviewing an administrative proceeding and the [FCC] was not a party." *Id.* at 978-80. When the petitioners' consolidated challenges to FCC's decision were assigned to the Ninth Circuit, that court agreed that its prior interpretation trumped the agency's contrary conclusion and vacated FCC's interpretation as contrary to law. *Id.* at 982.

The Supreme Court reversed. It explained that "allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute … would allow a court's interpretation to override an agency's," in direct contravention of "*Chevron*'s premise … that it is for agencies, not courts, to fill statutory gaps." *Id.* As a result, the Court held, "only a judicial precedent holding that a statute unambiguously forecloses the agency's interpretation … displaces a conflicting agency construction," *id.* at 982-83, such that "before a judicial construction of a statute, whether contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction." *Id.* at 985. Because the Ninth Circuit's prior decision was not expressly based on the unambiguous text of the Telecommunications Act, the Court gave FCC's contrary application of the statute full *Chevron* deference and dismissed the petitioners' challenge to FCC's administrative decision.

The same principle applies here. As in *Brand X*, the court in this case concluded that AstraZeneca was entitled to pediatric exclusivity despite the fact that it was not reviewing an administrative proceeding; despite the fact that the Agency was not a party to the case; despite the fact that the patents-in-suit had expired; despite the fact that Apotex and Impax had been approved and on the market for years; despite the fact that the Agency has never awarded, and indeed could not award, AstraZeneca pediatric exclusivity against Apotex or Impax; and without even soliciting the Agency's views. Moreover, the district court did not even purport to base its assertion that AstraZeneca is entitled to pediatric exclusivity on the text (much less the unambiguous text) of the relevant statutory provisions at all. Instead, it purported to base its decision on FDA's prior administrative determination in the fluconazole case—which it then expressly conceded to be distinguishable. *See* Order on Motion to Dismiss at 21-23 (discussing *Ranbaxy Labs. Ltd. v. FDA [Fluconazole]*, 307 F. Supp. 2d 15 (D.D.C. 2004)); *see also id.* at 25 ("Ranbaxy's ANDA is distinguishable from Impax's ANDA").

Thus, pursuant to *Brand X* and under the D.C. Circuit's decision in the *Pravastatin* case, the Agency is not remotely bound by the district court's determination that AstraZeneca is entitled to pediatric exclusivity. To the contrary, it is obligated to "bring its experience and expertise to bear" and render its own reasoned determination regarding AstraZeneca's eligibility for such exclusivity. *See Pravastatin*, 441 F.3d at 5.

Here, of course, there is no basis for awarding AstraZeneca pediatric exclusivity against Apotex or Impax. As the district court itself acknowledged, the *Fluconazole* case is distinguishable. In that case, FDA held that Ranbaxy's *then-tentatively approved* fluconozole ANDA was subject to pediatric exclusivity because Ranbaxy was required to convert its paragraph IV certification to a paragraph II certification upon patent expiration. *Ranbaxy*, 307 F. Supp. 2d at 18. Here, by contrast, both Apotex and Impax had *final approval for years* and actively were engaged in commercial marketing at the time the patents expired.

4

Sheldon Bradshaw
June 21, 2007
Page 5

KIRKLAND & ELLIS LLP

As a result, neither Apotex nor Impax were required to update their respective patent certifications upon patent expiration. That is the conclusion FDA reached with respect to Mylan's ANDA in the amlodipine case, *see Amlodipine Decision* at 5 n.4—which the district court did not even cite, much less discuss—and it is the same conclusion that the district court eventually reached in this case. *See Order on Motion to Dismiss* at 23 ("Impax's ANDA did not automatically convert from a Paragraph IV to a Paragraph II certification.") (capitalization modified); *id.* at 25 ("Once an application is finally approved, the applicant is no longer under an obligation to amend its patent certification.") (citing 21 C.F.R. § 314.94(A)(12)(viii)(C)(i)).

Nor does the Agency's decision in the fentanyl patch matter require a different result. As the court acknowledged in this case, the district court's 271(e)(4)(a) order in that case issued well *before* patent expiration, *see Order on Motion to Dismiss* at 19—as did FDA's determination that Alza was entitled to a period of pediatric exclusivity for its fentanyl patch drug products. *See Mylan Labs., Inc. v. Thompson [Fentanyl Patch]*, 389 F.3d 1272, 1277 (D.C. Cir. 2004) (noting that the district court issued its 271(e)(4)(a) order on March 24, 2004, some four months prior to the patent's July 23, 2004 expiration, and that FDA determined that Alza was entitled to pediatric exclusivity on June 22, 2004, more than one month prior to the patent's expiration).

While the district court dismissed the significance of those facts, they are dispositive—not only because the Agency squarely held in the amlodipine matter that pediatric exclusivity does *not* apply to ANDAs that (like Apotex's and Impax's ANDAs) have final approval at the time of patent expiration, *see Amlodipine Decision* at 5 n.4, but because they call into question the jurisdiction of the district court to enter a 271(e)(4)(a) order in the first instance.[1] Nothing in the statute or the fentanyl patch matter suggests, much less compels the conclusion, that final approvals issued years ago can be rescinded or converted where the Agency determines that the brand manufacturer is not entitled to a period of pediatric exclusivity. To hold otherwise would, by fiat, replace non-existent pediatric exclusivity with an unlawful patent term extension.

Given *Brand X*'s holding that administrative agencies are free to interpret and apply statutes entrusted to their care independent of prior judicial determinations about the meaning and application of those statutes, and *Pravastatin*'s requirement that agencies are obligated to "bring [their] experience and expertise to bear" in these circumstances, Apotex and Impax respectfully submit that the Agency is obligated to address the district court's erroneous determination—reached without the benefit of the Agency's views, and in direct conflict with the Agency's recent decision on this very subject—that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax. This matter has "clearly been entrusted to the FDA by

---

[1]    At least one court has held that patent expiration divests the federal courts of subject matter jurisdiction to enter an effective order under 35 U.S.C. § 271(e)(4). *See Pfizer, Inc. v. Mylan Labs., Inc.*, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006) (dismissing § 271(e)(2)(A) claims against ANDA-filer after patent expiration for lack of subject matter jurisdiction, even though pediatric exclusivity still exists). Given the significance of these issues, FDA at least should stay its hand until the Federal Circuit can address the propriety of the district court's order on appeal.

Sheldon Bradshaw
June 21, 2007
Page 6

### KIRKLAND & ELLIS LLP

Congress," *Mylan*, 332 F. Supp. 2d at 118, and the Agency has both the authority and obligation to set the record straight by following its recent decision in the amlodipine matter—a decision that already has garnered substantial deference from the courts, *see Mylan*, __ F. Supp. 2d __, 2007 WL 1241884 at *8-*9, and which conclusively rejects the proposition that AstraZeneca is entitled to pediatric exclusivity in this case.

Accordingly, FDA should hold that AstraZeneca is not eligible or entitled to pediatric exclusivity against Apotex or Impax, and thus that there is no basis for rescinding or converting those companies' longstanding final approvals.

Respectfully submitted,

_Jay Lefkowitz_
Jay P. Lefkowitz, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
(212) 446-4970 (phone)
(212) 446-4900 (fax)

*Counsel for Impax Laboratories, Inc.*

_William Rakoczy /ms_
William A. Rakoczy
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, Illinois 60610
(312) 222-6301 (phone)
(312) 222-6321 (fax)

*Counsel for Apotex Inc.*

cc:    Elizabeth Dickinson, Esq., *Office of the Chief Counsel*
Gary Buehler, *Office of Generic Drugs*
Peter Safir, Esq., *Covington & Burling LLP*
Errol B. Taylor, Esq., *Milbank Tweed Hadley & McCloy LLP*
Robert S. Silver, Esq., *Caeser, Rivise, Bernstein, Cohen and Pokotilow, Ltd.*
Jeffrey J. Toney, Esq., *Sutherland, Asbill & Brennan LLP*

6

# Exhibit 1

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW    WASHINGTON
WASHINGTON, DC 20004-2401    NEW YORK
TEL 202.662.6000    SAN FRANCISCO
FAX 202.662.6291    LONDON
WWW.COV.COM    BRUSSELS

PETER O. SAFIR

TEL 202.662.5162
FAX 202.778.5162
PSAFIR@COV.COM

June 15, 2007

**BY FACSIMILE**

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Re:    _In re Omeprazole Patent Litigation, M-21-81 (BSJ); ANDA Nos. 76-048 and 75-785_

Dear Mr. Bradshaw:

We represent AstraZeneca, Plaintiffs in the _In re Omeprazole Patent Litigation_, M-21-81 (BSJ). On June 14, 2008 the Court entered the attached Judgment ordering that the effective date of approval of ANDA Nos. 76-048 and 75-785 shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires. (See Court Order at ¶¶ 3, 6). The pediatric exclusivities are measured from the April 20, 2007 expiration dates for the two patents-in-suit, U.S. Patent Nos. 4,786,505 and 4,853,230.

AstraZeneca respectfully requests that, pursuant to the Court's Judgment, the FDA immediately revoke the final approval of ANDA Nos. 76-048 (Apotex Corp. (Torpharm) and ANDA No. 75-785 (Impax Laboratories, Inc.) and return the status of the applications to tentatively approved through at least October 20, 2007, the date that the applicable pediatric exclusivities expire.

Respectfully submitted,

Peter O. Safir

COVINGTON & BURLING LLP

June 15, 2007
Page 2

Enclosure

cc:    Elizabeth Dickinson, Esq.,
Office of the Chief Counsel
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Gary Buehler, Director
Office of Generic Drugs
7500 Standish Place
Rockville, MD 20855
240-276-9327 (f)

Errol B. Taylor, Esq. Counsel for Plaintiffs
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
212-822-5545 (f)

Robert S. Silver, Esq., Outside Counsel for Apotex
Caesar, Rivise, Bernstein,
Cohen and Pokotilow, Ltd.
1635 Market Street
11th Floor
Philadelphia, PA 19103-2212
215-751-1142 (f)

Jeffrey J. Toney, Esq., Outside Counsel for Impax
Sutherland, Asbill & Brennann LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309-3996
404-853-8806 (f)

06/15/2007    17:24    COVINGTON & BURLING LLP 10 WEST → 914048538906    NO.259    P04

08/15/2007 10:23 FAX  212 805 6191          HONORABLE BARBARA JONES    @001/008

CHAMBERS OF
**HON. BARBARA S. JONES**
UNITED STATES DISTRICT COURT
FOLEY SQUARE
NEW YORK, NEW YORK 10007
TEL.:  (212) 805-6185
FAX:  (212) 805-6191

## FAX COVER SHEET

To:    Errol B. Taylor
       Attorney for Plaintiffs
       Fax: 212-822-5545

Note to Plaintiffs' counsel: Please forward to all Second Wave Defense Counsel.

06/15/2007    17:24    COVINGTON & BURLING LLP 10 WEST → 914048538806    NO.259    D05

06/15/2007 10:23 FAX  212 805 8191    HONORABLE BARBARA JONES    @002/008

MEMORANDUM

To: Second Wave Counsel

From: Monique M. Mendez (212.805.6190)
      Law Clerk to the Honorable Barbara S. Jones

Date: June 15, 2007

Re: Final Judgment

    It has been brought to the Court's attention that there was a typo in the last paragraph of the Final Judgment, which was faxed to the parties on June 14, 2007. This fax contains the corrected judgment to be docketed.

                              M.M.M.

06/15/2007   17:24   COVINGTON & BURLING LLP 10 WEST → 914048538806     NO.259   P06

08/15/2007 10:23 FAX  212 805 8181     HONORABLE BARBARA JONES     @003/008

COPY MAILED / FAXED TO:
COUNSEL FOR PLTFF(S) ✓
COUNSEL FOR DFT(S) Highland
PLTFF PRO SE:
DFT PRO SE:
DATE: 6/14/07
BY: MHM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :   M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION  :   MDL Docket No. 1291  MHM
                                    :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :
              Plaintiffs,           :   00 Civ. 6749 (BSJ)
                                    :
        v.                          :
                                    :
MYLAN LABORATORIES INC., et al.,    :
                                    :
              Defendants.           :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :   03 Civ. 6057 (BSJ)
              Plaintiffs,           :
                                    :
        v.                          :
                                    :
LABORATORIOS DR. ESTEVE, S.A.,      :
et al.,                             :
                                    :
              Defendants.           :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :   00 Civ. 4541 (BSJ)
              Plaintiffs,           :   03 Civ. 8719 (BSJ)
                                    :
        v.                          :
                                    :
LEK PHARMACEUTICAL AND CHEMICAL     :
CO., D.I., et al.,                  :
                                    :
              Defendants.           :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :   01 Civ. 9351 (BSJ)
              Plaintiffs,           :
                                    :

06/15/2007    17:24    COVINGTON & BURLING LLP 10 WEST → 914048538806    NO.259    P07

08/15/2007 10:23 FAX  212 805 8191    HONORABLE BARBARA JONES    @004/008

       v.    :

APOTEX CORP., et al.,    :
                  :
        Defendants.    :
-------------------------------x
ASTRAZENECA AB, et al.,    :
                  :    00 Civ. 7597 (BSJ)
        Plaintiffs,    :    01 Civ. 2998 (BSJ)
                  :
       v.    :

INPAX LABORATORIES, INC.,    :
                  :    **Judgment**
        Defendant.    :
-------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

     This matter having come to trial on the merits before the

undersigned Honorable Barbara S. Jones (without a jury), and the

Court having duly rendered its Opinion and Order dated May 31,

2007, it is hereby

     ORDERED, ADJUDGED and DECREED as follows:

## APOTEX

     1.    Defendants Apotex Corp., Apotex Inc., and TorPharm,

Inc. (collectively "Apotex") have failed to meet their burden of

proving that the asserted claims (claim 1, 5, 6, and 10) of U.S.

Patent No. 4,786,505 ("the '505 Patent") and asserted claims

(claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230

Patent" are invalid.

     2.    Apotex infringed claims 1, 5, 6, and 10 of the '505

Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 5)5(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).  Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

3.  Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. · 355a(b)(2)(B) expires.

## IMPAX

4.  Defendant Impax Laboratories, Inc. ("Impax") has
failed to meet its burden of proving that the asserted claims
(1, 5, 7, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent" and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

5.  Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,

Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV),

Impak's omeprazole formulations sold, offered for sale, used and

imported into the United States, described in ANDA No. 75-785,

and which were the subject of the Court's May 31, 2007 Opinion

and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and

13, and '230 Patent claims 1, 6, 7, 10, and 13,

   6.   Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective

date of approval for the aforementioned products and related

ANDAs shall be not earlier than October 20, 2007, the date on

which the six-month period of pediatric exclusivity under 21

U.S.C. ·· 355a(b)(2)(B) expires.

## MYLAN AND ESTEVE

   7.   Defendants Mylan Laboratories Inc., and Mylan

Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,

S.A. and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")

have failed to meet their burden of proving that the asserted

claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.

4,786,505 ("the '505 Patent") and the asserted claims (1, 6, 7,

8, 9, 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230

Patent") are invalid.

   8.   The omeprazole formulation described in ANDA No. 75-

876 of Defendants Mylan and Esteve, which was the subject of the

Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505 Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15) of the '230 Patent, either literally or under the doctrine of equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and Esteve have willfully infringed the '505 and '230 Patents are dismissed as moot.

### LEK

10    The omeprazole formulations described in ANDA Nos. 75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek Service Inc. (collectively "Lek"), which were the subject of the Court's May 31, 2007 Opinion and Order do not infringe the asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and the asserted claims (1, 6, 8, 10, 11, and 13) of the '230 Patent, either literally or under the doctrine of equivalents.

### ALL PARTIES

11    The Parties reserve the right to assert remaining claims not the subject of this order or the Court's previous orders and opinions, and to seek or oppose damages, enhanced damages, attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to Federal Rule of Civil Procedure 54(b), the Clerk of Court shall enter final judgment pursuant to paragraphs 1 through 10.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           June 14, 2007

06/15/2007    17:24    COVINGTON & BURLING LLP 10-WEST → 914048538806          NO.259    P12

08/14/2007 11:52 FAX  212 805 8191          HONORABLE BARBARA JONES                        @002/007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
                                     :     M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION   :     MDL Docket No. 1291
                                     :
-------------------------------------x

ASTRAZENECA AB, et al.,              :
                                     :     00 Civ. 6749 (BSJ)
               Plaintiffs,           :
                                     :
       v.                            :
                                     :
MYLAN LABORATORIES INC., et al.,     :
               Defendants.           :
-------------------------------------x

ASTRAZENECA AB, et al.,              :
                                     :     03 Civ. 6057 (BSJ)
               Plaintiffs,           :
                                     :
       v.                            :
                                     :
LABORATORIOS DR. ESTEVE, S.A.,       :
et al.,                              :
                                     :
               Defendants.           :
-------------------------------------x

ASTRAZENECA AB, et al.,              :
                                     :     00 Civ. 4541 (BSJ)
               Plaintiffs,           :     03 Civ. 8719 (BSJ)
                                     :
       v.                            :
                                     :
LEK PHARMACEUTICAL AND CHEMICAL      :
CO., D.D., et al.,                   :
               Defendants.           :
-------------------------------------x

ASTRAZENECA AB, et al.,              :
                                     :     01 Civ. 9351 (BSJ)
               Plaintiffs,           :

```
                    v.                      :
                                            :
         APOTEX CORP., et al.,              :
                                            :
                    Defendants.             :
    --------------------------------------x
                                            :
         ASTRAZENECA AB, et al.,            :
                                            :   00 Civ. 7597 (BSJ)
                    Plaintiffs,             :   01 Civ. 2998 (BSJ)
                                            :
                    v.                      :
                                            :
         IMPAX LABORATORIES, INC.,          :
                                            :   Judgment
                    Defendant.              :
    --------------------------------------x
```

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

This matter having come to trial on the merits before the undersigned Honorable Barbara S. Jones (without a jury), and the Court having duly rendered its Opinion and Order dated May 31, 2007, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

### APOTEX

1.    Defendants Apotex Corp., Apotex Inc., and TorPharm, Inc. (collectively "Apotex") have failed to meet their burden of proving that the asserted claims (claim 1, 5, 6, and 10) of U.S. Patent No. 4,786,505 ("the '505 Patent") and asserted claims (claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230 Patent" are invalid.

2.    Apotex infringed claims 1, 5, 6, and 10 of the '505 Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 5)5(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

3.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. § 355a(b)(2)(B) expires.

## IMPAX

4.    Defendant Impax Laboratories, Inc. ("Impax") has
failed to meet its burden of proving that the asserted claims
(1, 5, 6, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent") and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

5.    Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,

Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV),

Impax's omeprazole formulations sold, offered for sale, used and

imported into the United States, described in ANDA No. 75-785,

and which were the subject of the Court's May 31, 2007 Opinion

and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and

10, and '230 Patent claims 1, 6, 7, 10, and 13.

6.     Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective

date of approval for the aforementioned products and related

ANDAs shall be not earlier than October 20, 2007, the date on

which the six-month period of pediatric exclusivity under 21

U.S.C. § 355a(B)(2)(B) expires.

### MYLAND AND ESTEVE

7.     Defendants Mylan Laboratories Inc., and Mylan

Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,

S.A. and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")

have failed to meet their burden of proving that the asserted

claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.

4,786,505 ("the '505 Patent") and the asserted claims (1, 6, 7,

8, 9, 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230

Patent" are invalid.

8.     The omeprazole formulation described in ANDA No. 75-

876 of Defendants Mylan and Esteve, which was the subject of the

Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505
Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15)
of the '230 Patent, either literally or under the doctrine of
equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and
Esteve have willfully infringed the '505 and '230 Patents are
dismissed as moot.

### LEK

10    The omeprazole formulations described in ANDA Nos.
75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek
Service Inc. (collectively "Lek"), which were the subject of
the Court's May 31, 2007 Opinion and Order do not infringe the
asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and
the asserted claims (1, 6, 8, 10, 11, and 13) of the '230
Patent, either literally or under the doctrine of equivalents.

### ALL PARTIES

11    The Parties reserve the right to assert remaining
claims not the subject of the Court's previous orders and
opinion, and to seek or oppose damages, enhanced damages,
attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to
Federal Rule of Civil Procedure 54(b), the Clerk of Court shall
enter final judgment for Astrazeneca, pursuant to paragraphs 1
through 11.

06/15/2007   17:24   COVINGTON & BURLING LLP 10 WEST → 914048538906          NO.259   P17
   08/14/2007 11:53 FAX  212 805 8191          HONORABLE BARBARA JONES          ☑007/007

SO ORDERED:

_Barbara S. Jones_
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June 14, 2007

# Exhibit 2

08/14/2007 11:52 FAX  212 805 6191        HONORABLE BARBARA JONES                    ☰002/007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :  M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION :  MDL Docket No. 1291
                                    :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :
            Plaintiffs,             :  00 Civ. 6749 (BSJ)
                                    :
        v.                          :
                                    :
MYLAN LABORATORIES INC., et al.,    :
                                    :
            Defendants.             :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :  03 Civ. 6057 (BSJ)
            Plaintiffs,             :
                                    :
        v.                          :
                                    :
LABORATORIOS DR. ESTEVE, S.A.,      :
et al.,                             :
                                    :
            Defendants.             :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :  00 Civ. 4541 (BSJ)
            Plaintiffs,             :  03 Civ. 8719 (BSJ)
                                    :
        v.                          :
                                    :
LEK PHARMACEUTICAL AND CHEMICAL     :
CO., D.D., et al.,                  :
                                    :
            Defendants.             :
------------------------------------x
                                    :
ASTRAZENECA AB, et al.,             :
                                    :  01 Civ. 9351 (BSJ)
            Plaintiffs,             :
                                    :

```
                    v.                    :
                                          :
APOTEX CORP., et al.,                     :
                                          :
              Defendants.                 :
----------------------------------------- x
                                          :
ASTRAZENECA AB, et al.,                   :
                                          :   00 Civ. 7597 (BSJ)
              Plaintiffs,                 :   01 Civ. 2998 (BSJ)
                                          :
                    v.                    :
                                          :
IMPAX LABORATORIES, INC.,                 :
                                          :   Judgment
              Defendant.                  :
----------------------------------------- x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

This matter having come to trial on the merits before the undersigned Honorable Barbara S. Jones (without a jury), and the Court having duly rendered its Opinion and Order dated May 31, 2007, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

## APOTEX

1.     Defendants Apotex Corp., Apotex Inc., and TorPharm, Inc. (collectively "Apotex") have failed to meet their burden of proving that the asserted claims (claim 1, 5, 6, and 10) of U.S. Patent No. 4,786,505 ("the '505 Patent") and asserted claims (claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230 Patent" are invalid.

2.     Apotex infringed claims 1, 5, 6, and 10 of the '505 Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 5)5(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

3.     Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. § 355a(b)(2)(B) expires.

**IMPAX**

4.     Defendant Impax Laboratories, Inc. ("Impax") has
failed to meet its burden of proving that the asserted claims
(1, 5, 6, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent") and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

5.     Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,
Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).
Impax's omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 75-785,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and
10, and '230 Patent claims 1, 6, 7, 10, and 13.

    6.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. § 355a(B)(2)(B) expires.

## MYLAND AND ESTEVE

    7.    Defendants Mylan Laboratories Inc., and Mylan
Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,
S.A. and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")
have failed to meet their burden of proving that the asserted
claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.
4,785,515 ("the '505 Patent") and the asserted claims (1, 6, 7,
8, 9, 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230
Patent" are invalid.

    8.    The omeprazole formulation described in ANDA No. 75-
876 of Defendants Mylan and Esteve, which was the subject of the
Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505 Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15) of the '230 Patent, either literally or under the doctrine of equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and Esteve have willfully infringed the '505 and '230 Patents are dismissed as moot.

## LEK

10    The omeprazole formulations described in ANDA Nos. 75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek Services Inc. (collectively "Lek"), which were the subject of the Court's May 31, 2007 Opinion and Order do not infringe the asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and the asserted claims (1, 6, 8, 10, 11, and 13) of the '230 Patent, either literally or under the doctrine of equivalents.

## ALL PARTIES

11    The Parties reserve the right to assert remaining claims not the subject of the Court's previous orders and opinion, and to seek or oppose damages, enhanced damages, attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to Federal Rule of Civil Procedure 54(b), the Clerk of Court shall enter final judgment for Astrazeneca, pursuant to paragraphs 1 through 11.

Milbank Tweed               6/14/2007 3:54:52 PM    PAGE    7/007    Fax Server

06/14/2007 11:53 FAX  212 805 6191          HONORABLE BARBARA JONES                    ☒007/007

SO ORDERED:

*Barbara S. Jones*
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            June 14, 2007

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
ASTRAZENECA AB, et al,            :
              Plaintiffs,        :
      vs.                        :        00 Civ. 7597 (BSJ)
                                 :
IMPAX LABORATORIES, INC.         :        01 Civ. 2998 (BSJ)
              Defendants.        :
------------------------------x
                                 :        M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION :      MDL Docket No. 1291
                                 :
                                 :        **Order**
                                 :
------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is Impax Laboratories, Inc.'s

Motion to Dismiss for Lack of Subject Matter Jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the

reasons set forth below, Impax's motion is DENIED.

**Background**

Th.s is a patent infringement action brought by Plaintiffs

AstraZeneca AB, Aktiebolaget Hässle, KBI-E Inc., KBI Inc., Astra

Pharmaceuticals, L.P., and AstraZeneca, LP (collectively

"Plaintiffs," "AstraZeneca," or "Astra") against Impax

Laboratories, Inc. ("Impax"), a manufacturer of generic

pharmaceutical products in the United States.  Astra alleges

infringement of U.S. Patent Numbers 4,786,505 and 4,853,230 (the

"'505 Patent" and the "'230 Patent," respectively), which cover

the Prilosec® formulation.

**A. Statutory Background**

1

Resolution of this matter requires the Court to analyze three distinct statutory provisions; therefore, the Court will provide a brief overview of the relevant provisions. For a detailed explanation, see Mylan Labs., Inc. v. Thompson, 389 F.3d 1272 (D.C. Cir. 2004); Barr Labs., Inc. v. Thompson, 238 F. Supp. 2d 236 (D.D.C. 2002).

### 1. The Hatch-Waxman Amendments

21 U.S.C. § 355(j), a provision of the 1984 Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act ("FDCA"), "creates an approval shortcut for applicants seeking to market generic versions of approved drugs." Thompson, 389 F.3d at 1274-75 Section 355(j) permits a generic applicant to file an abbreviated new drug application ("ANDA") with the U.S. Food and Drug Administration ("FDA") certifying that the generic version is bioequivalent to an approved drug, and thus avoid having to conduct its own clinical trials. Id. at 1275. The ANDA must include "a certification, that for each of the patents applicable to the pioneer drug, the proposed generic drug would not infringe the patent because (I) the patent information has not been filed; (II) the patent has expired; (III) the patent will expire on a stated date; or (IV) the patent is invalid or will not be infringed by the manufacture, use or sale of the drug for which the abbreviated application applicant seeks approval." 21 U.S.C. § 355(j)(2)(A)(viii), cited in Mylan

2.

Milbank Tweed          5/25/2007 10:23:03 AM    PAGE   5/028    Fax Server

05/25/2007 08:53 FAX  212 805 6191       HONORABLE BARBARA JONES                    ☙004/027

Labs., Inc. V. Leavitt, No. 07-579, 2007 WL 1241884, at *2

(D.D.C. Apr. 30, 2007). These certifications are referred to as

Paragraphs I, II, III, and IV, respectively.

        35 U.S.C. § 271(e)(2), a patent statute, also enacted in

the Hatch-Waxman Amendments, creates a cause of action for

patent infringement based solely upon the filing of an ANDA

containing a Paragraph IV certification. Eli Lilly & Co. v.

Medtronic, Inc., 496 U.S. 661, 676 (1990). Section 271(e)(4)

sets out the exclusive remedies available in a patent

infringement action under § 271(e)(2):

> For an act of infringement described in paragraph (2)-
> (A  the court shall order the effective date of any
> approval of the drug or veterinary biological product
> in the infringement to be a date which is not earlier
> than the date of expiration of the patent which has
> been infringed,
> (B  injunctive relief may be granted against an
> infringer to prevent the commercial manufacture, use,
> offer to sell, or sale within the United States or
> importation into the United States of an approved drug
> or veterinary biological product, and
> (C  damages or other monetary relief may be awarded
> against an infringer only if there has been commercial
> manufacture, use, offer to sell, or sale within the
> United States or importation into the United States of
> an approved drug or veterinary biological product.

35 U.S.C. § 271(e)(4).

### 2. The Period of Market Exclusivity

        In 1997, in an effort to encourage the pediatric testing of

drugs, Congress passed the Food and Drug Administration

Modernization Act, Pub. L. No. 105-115, 111 Stat. 2296 (1997),

which grants manufacturers of drugs that agree to conduct

pediatric studies, six months of market exclusivity for their

products. Ass'n of Am. Physicians & Surgeons, Inc. v.

U.S.F.D.A., 226 F. Supp. 2d 204, 206 (D.D.C. 2002). 21 U.S.C. §

355a, the "pediatric exclusivity" provision, authorizes a patent

holder to receive a six-month period of market exclusivity

beyond the patent's expiration date, if the patent holder "has

satisfactorily conducted pediatric testing of its drug upon the

FDA's request." Thompson, 389 F.3d at 1275. This provision

serves as an incentive for a drug patent holder to conduct

expensive and difficult pediatric studies of a drug that the FDA

believes may have a beneficial pediatric use. Thompson, 389

F.3d at 1276; cf. Ass'n of Am. Physicians & Surgeons, 226 F.

Supp. 2d at 206 (noting that "[b]ecause of the expense and

difficulty in finding substantial pediatric populations to

undergo tests, along with the ethical complications associated

with testing new drugs on children, many drugs are tested for

safety and effectiveness in adults only").

     "If the FDA makes a request and the NDA holder satisfies

that request's requirement, pediatric exclusivity provides for a

six-month delay in the effective date of the pending ANDAs."

Barr Labs., 238 F. Supp. 2d at 241. The effect of the grant of

pediatric exclusivity depends on the type of certification

included in the ANDA. If the drug is the subject of a Paragraph

II or Paragraph III certification, "the period during which an application may not be approved under . . . . [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires (including any patent extensions)." 21 U.S.C. § 355a(c)(2)(A). If the drug is the subject of a Paragraph IV certification "and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires (including any patent extensions)." 21 U.S.C. § 355a(c)(2)(B).

As an initial matter, the Court notes that AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B). This period of pediatric exclusivity is set to expire on October 20, 2007.

**B. The Present Case**

In April 2000, Impax sent Astra notice that it had submitted an abbreviated new drug application ("ANDA") to the FDA seeking approval to engage in the commercial manufacture, use, or sale of its 10-mg and 20-mg omeprazole products, called "Omeprazole Delayed Release Capsules 10 and 20 mg," as generic version of Astra's Prilosec® product. As part of its ANDA, Impax included a Paragraph IV Certification, as described in 21

5

Milbank Tweed          5/25/2007 10:23:08 AM    PAGE  8/028    Fax Server

05/25/2007 08:54 FAX  212 805 8181        HONORABLE BARBARA JONES                    ☒007/027

U.S.C. § 355(j)(2)(A)(vii)(IV), stating that the '505 and '230
patents "[are] invalid or will not be infringed by the
manufacture, use, or sale of the new drug." (Second Am. Compl.
Against Impax (hereinafter "Second Am. Compl.") ¶¶ 12, 24.)

On May 15, 2000, Plaintiffs filed their initial Complaint
alleging that Impax committed an act of infringement under 35
U.S.C. § 271(e)(2) with respect to the '505 and '230 patents, by
filing its ANDA seeking approval from the FDA to engage in the
commercial manufacture, use, or sale of its 10- and 20-mg
Omeprazole Delayed Release Capsules, prior to the expiration of
the '505 and '230 patents." (Second Am. Compl. ¶¶ 11, 16, 28.)
On January 8, 2002, Impax sent Astra notice that it had
"submitted an amendment to ANDA 75-785, providing for the
addition of a 40mg strength" Omeprazole Delayed Release Capsule.
(Trial Ex. 1128.)

On November 8, 2002, Impax obtained final approval of its
ANDAs and in September 2004, began to market and sell its
generic products. (Impax's Mem. of Law in Supp. of its Mot. to
Dismiss Under Rule 12(b)(1) for Lack of Subject Matter
Jurisdiction (hereinafter "Def.'s Motion") at 2.) With leave of
Court, Plaintiffs filed a Second Amended Complaint on March 1,
2005, adding allegations of direct, contributory, and inducing
infringement under 35 U.S.C. § 271(a), (b), and (c),
respectively, and a demand for damages. (Second Am. Compl. ¶¶

19a-20, 31a-32.)  On February 14, 2005, Impax filed its Answer

and Counterclaims to Plaintiffs' Second Amended Complaint.

Impax asserted counterclaims of invalidity and non-infringement,

and demanded a jury trial on Plaintiffs' infringement claims and

its counterclaims.  (Impax Answer & Countercls. ¶ 235.)  In

order to include Impax in the consolidated Second Wave Bench

Trial,[1] Plaintiffs agreed to dismiss with prejudice their claims

for damages under § 271(a)-(c).  In January 2006, the Court

severed and stayed Impax's antitrust counterclaims pending the

resolution of the patent infringement action, and ordered

Plaintiffs to submit a voluntary dismissal of the damages

claims.  (Order Denying Impax's Claim to Jury Trial, Jan. 13,

2006.)[2]

The case was tried to the Court sitting without a jury for

42 trial days, starting April 3, 2006 and ending June 14, 2006.

Post-trial findings of fact and conclusions of law were fully

submitted on August 1, 2006.  The '505 and '230 patents expired

on April 20, 2007, while a final decision was <u>sub judice</u>.

---

[1] The Second Wave Trial included the following defendant pharmaceutical
corporations:  Mylan Laboratories Inc., Mylan Pharmaceuticals Inc., Esteve
Quimica, S.A., Laboratories Dr. Esteve, S.A., Apotex Corp., Apotex Inc.,
Torpharm Inc., Lek Pharmaceutical and Chemical Company D.D., Lek USA, Inc.,
and Impax Laboratories, Inc.
[2] In addition, the Court ordered that, upon entry of Astra's dismissal,
Impax's jury demand would be struck.  (Jan. 13, 2006 Order at 9.)  On February
26, 2006, this Court denied Impax's motion for reconsideration.  On March 2,
2006, the Federal Circuit denied Impax's petition for a writ of mandamus.
Impax has filed a petition for certiorari in the Supreme Court of the United
States.

**Discussion**

On April 23, 2007, Impax filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Impax asserts that upon the expiration of the '505 and '230 patents on April 20, 2007, the Court was divested of jurisdiction over Plaintiffs' claims for patent infringement under 35 U.S.C. § 271(a)-(c) and § 271(e)(2).

**A. Legal Standard for Dismissal**

A motion to dismiss for lack of subject matter jurisdiction presents only a procedural question, and does not raise issues unique to patent law. Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380-81 (Fed. Cir. 2002). Accordingly, the Court must apply regional circuit law, in this case Second Circuit law, in resolving Impax's motion to dismiss. Id. Federal Rule of civil Procedure 12(b)(1) provides for dismissal of a claim when the court "lacks . . . jurisdiction over the subject matter." F. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiffs bear the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Makarova, 201 F.3d at 113; Faggionato v. Lerner, No. 06 CV 2614 2007 WL 959102, at *5 (S.D.N.Y. Mar. 30, 2007).

8

Milbank Tweed       5/25/2007 10:23:03 AM   PAGE  11/028   Fax Server

05/25/2007 08:54 FAX  212 805 6191        HONORABLE BARBARA JONES                    ☑010/027

"Jurisdictional allegations must be shown affirmatively and may

not be inferred favorably to the party asserting them."

Faqgianito, 2007 WL 959102 at *5.  In resolving a motion to

dismiss for lack of subject matter jurisdiction, the Court may

refer to evidence outside the pleadings.  Makarova, 201 F.3d at

113.

### B. Expiration of the '230 and '505 Patents Does Not Render Astra's Claims Moot

In support of its motion to dismiss, Impax argues that the

Court lacks jurisdiction over the present controversy because

"Astra has no remaining claim for relief against Impax."  (See

Def.'s Motion at 3.)  Impax's argument can be summarized as

follows  Under the Patent Act, Plaintiffs are entitled to only

two remedies for infringement of the '505 and '230 patents:

damages under 35 U.S.C. § 284, or an injunction under 35 U.S.C.

§ 283.  Because Astra dismissed with prejudice all of its claims

for damages, the only remedy available to Astra was an

injunction under 35 U.S.C. § 283.  Upon expiration of the

patents  Astra is no longer entitled to injunctive relief under

§ 283, and Astra's claims for infringement under 35 U.S.C. §

271(a)(2) "expired."  Thus, Impax asserts that Astra's claims

for patent infringement are now moot and the Court's subject

9

matter jurisdiction over the claims has "dissolve[d]." (Def.'s Motion at 3).[3]

The Court disagrees. Mootness "refers to "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) [and] continue throughout [the] existence" of the litigation.[4] U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 395-97 (1980) (quoting Henry Paul Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack 395 U.S. 486, 496-97 (1969) (citation omitted).

The Plaintiffs here have a legally cognizable interest, or "personal stake," in this litigation. See U.S. Parole Comm'n v. Geraghty, 445 U.S. at 396-96. So we are concerned only with whether the issues before the court are still "live." The "central question . . . is whether a change in the circumstances

---

[3] In addition, Impax contends the Pennsylvania District Court's decision in Pfizer, Inc. v. Mylan Pharm., Inc., No.02 CV 1628, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006), dictates dismissal of Astra's claims against Impax. This Court disagrees. Pfizer v. Mylan is not binding precedent on this Court. Nor does it consider the detailed statutory analysis, upon which this Court relies.

[4] "The rule that [courts] lack jurisdiction to consider the merits of a moot case is a branch of the constitutional command that the judicial power extends only to cases or controversies." Powell v. McCormack 395 U.S. 486, 491 (1969) (citing Sibron v. New York, 392 U.S. 40, 57 (1968)). But see Bowen v. Doe, 484 U.S. 305, 330 (1988) (Rehnquist, C.J., concurring) (arguing that mootness doctrine is primarily prudential and not constitutionally based), cited in Erwin Chemerinsky, Federal Jurisdiction § 2.5 (4th Ed. 2003).

that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.3 (2d ed. 1984). In other words, whether the expiration of the '503 and '230 patents has rendered Plaintiff's claims moot depends on the availability of any judicial relief. See Earth Is. Inst. v. United States Forest Serv., 442 F.3d 1147, 1157 (9th Cir. 2006) (In deciding whether a case is moot, "[t]he question is not whether the precise relief sought at the time of the application for an injunction was filed is still available. The question is whether there can be any effective relief.").

No one disputes that if the patent holder is seeking damages it may maintain a cause of action past the expiration of the patents. See Clark v. Wooster, 119 U.S. 322, 325 (1886) (expiration of the patents does not deprive the court of jurisdiction to grant monetary relief). But if the patent holder is seeking an injunction under § 283 "to prevent the violation of any right secured by patent," 35 U.S.C. § 283, the patent must still be in effect in order for the court to grant relief because upon the expiration of the patent, the right to exclude others from practicing the claimed invention also expires  Kearns v. Chrysler Corp., 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("Thus, when the rights secured by a patent are no longer protectable by virtue of expiration or unenforceability,

11

Milbank Tweed          5/25/2007 10:23:03 AM   PAGE 14/028   Fax Server

05/25/2007 08:53 FAX 212 805 8181        HONORABLE BARBARA JONES                    @013/027

entitlement to injunctive relief becomes moot because such relief is no longer available."); see also Sears, Roebuck & Co. v. Stiffel, Co., 376 U.S. 225, 230 (1964); Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed Cir. 2001) ("The District Court cannot enjoin the Computer Companies from infringing an expired patent."). Because the '505 and '230 patents have expired. Astra is no longer entitled to an injunction under $ 283.

However, the unavailability of money damages or an injunction under $ 283 does not automatically render the entire controversy before the Court "moot." For the reasons set forth below, the Court finds that because Plaintiffs are entitled to judicial relief -- either under the Court's equitable power or 35 U.S.C. $ 271(e)(4)(A) -- the case is not moot, and the Court has jurisdiction over Plaintiffs' claims for patent infringement.

### 1. Equitable Relief

In Roche Prods., Inc. v. Bolar Pharm. Co. Inc., 733 F.2d 853 (1984), cert. denied, 469 U.S. 856 (1984), the Federal Circuit held that the expiration of the patents did not render the case before it moot, nor did it deprive the court of the power to grant alternative forms of equitable relief. In Roche, the plaintiff requested a permanent injunction against infringement by Bolar, the defendant. Id. at 865. After the

12

motion was fully briefed, but prior to oral argument, the patent
at issue expired.  _Id._  The Court held that the case was not
moot "because although the initially requested order [was] no
longer . . . necessary, other remedies can be fashioned to give
Roche relief against Bolar's past infringement," such as "an
order to confiscate and destroy the data which Bolar . . .
generated during its infringing activity."  _Id._ (citation
omitted.  In accordance with _Roche_, the Court finds that
although the expiration of the '505 and '230 patents precludes
it from granting Astra an injunction under § 283, the expiration
of the patents has not divested the Court of the power to issue
other forms of equitable relief.[5]

Contrary to Impax's assertion, _Kearns_ does not dictate a
different result.  In analyzing its previous decision in _Roche_,
the Federal Circuit in _Kearns_ found that "[t]he post-expiration
relief discussed in _Roche_ was intended to return the parties to
the status quo before infringement (e.g. destruction of data
obtained as a result of infringement) and was not intended to

---

[5] Having properly obtained jurisdiction over the present controversy, the
Court is not automatically divested of it upon the expiration of the patents.
_See_ John R. Kennel, Luchas Martin, et al., Corpus Juris Secundum Patents §
43a ("Where jurisdiction is once acquired, it is not ousted by the expiration
of the patent during the pendency of the suit, but continues for the purpose
of an accounting." (citing Rice & Adams Corp. v. Lathrop, 278 U.S. 509
(1929)); _see also_ Rice & Adams Corp., 278 U.S. at 514-15 ("Jurisdiction of
the court sitting in equity, having been rightfully invoked, was not lost . .
. by the expiration of the patent pending final decree. . . . [I]f the case
was one for equitable relief when the suit was instituted, the mere fact that
the ground for such relief expired by the expiration of the patent, would not
take away jurisdiction, and preclude the court from proceeding to grant . . .
incidental relief . . . .").

Milbank Tweed          5/25/2007 10:23:03 AM    PAGE 16/028    Fax Server

05/25/2007 08:55 FAX  212 805 6191        HONORABLE BARBARA JONES          ✉015/027

prohibit future use of the invention." Kearns, 32 F.3d at 1550.
The court noted that "[i]mportantly, the relief was also
considered in the context of harm to a patent owner that had
been selling the patented product. Thus, deferral of
competition by an infringer who had entered the market
prematurely, i.e., before the patent expired, was considered as
a means of equitably compensating the patent owner." Id.
Similarly, in this case, were the Court to find the patents
valid and infringed and issue an order pursuant to 35 U.S.C. §
271(e)(4)(A) directing Impax's ANDA to have a delayed effective
date, such an order would have the effect of returning the
parties to the status quo before infringement -- that is before
Impax filed its ANDA with a Paragraph IV certification. As will
be discussed in more detail below, an order directing withdrawal
of final FDA approval of Impax's ANDA and delaying the effective
date would require Impax to wait until the expiration of Astra's
six-month period of pediatric exclusivity before it could re-
enter the market to sell its generic products. This remedy
would put the parties in the position they would have been in
had the act of infringement never occurred: It would subject
Impax to Astra's six-month period of pediatric exclusivity, as
it would have been had it filed an ANDA with a Paragraph II or
Paragraph III certification. Moreover, such an order would give
effect to, and is in accordance with the goal of the statutory

14

scheme enacted by Congress when it authorized the grant of
market exclusivity to patent holders who conduct pediatric
studies. See Ass'n of Am. Physicians & Surgeons, 226 F. Supp.
2d at 206 ("[I]n an effort to encourage pediatric testing,
Congress passed the Food and Drug Administration Modernization
Act," under which "[d]rug manufacturers that agreed to conduct
these pediatric tests could receive six months of market
exclusivity for their products.").

### 2. Relief under 35 U.S.C. § 271(e)(4)(A)

In addition to the judicial relief available under the
Court's equitable power, 35 U.S.C. § 271(e)(4)(A) independently
provides a remedy. Contrary to Impax's assertion the expiration
of the patents does not "eliminate[] any Section 271(e)(2) claim
that may have existed." (See Def.'s Motion at 3.) Section
271(e)(2) states that

> it shall be an act of infringement to submit an
> application under 505(j) of the Federal Food, Drug,
> and Cosmetic Act or described in section 505(b)(2) of
> such Act for a drug claimed in a patent or the use of
> which is claimed in a patent, if the purpose of such
> submission is to obtain approval under such Act to
> engage in the commercial, use or sale of a drug
> claimed in a patent or the use of which is claimed in
> a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2). Section 271(e)(2) creates "a new (and
somewhat artificial) act of infringement" based solely upon the
filing of an ANDA containing a Paragraph IV certification "that

15

05/25/2007 08:58 FAX  212 505 8191          HONORABLE BARBARA JONES                    ☑017/027

is in error as to whether the commercial, manufacture, use, or
sale of the new product (none of which has actually occurred)
violates the relevant patent." Eli Lilly & Co. v. Medtronic,
Inc., 496 U.S. 661, 676-79 (1990).

35 U.S.C. Section 271(e)(4) sets out the remedies that are
available for an act of infringement under § 271(e)(2).  In
addition to injunctive relief under § 271(e)(4)(B), and damages
or other monetary relief under § 271 (e)(4)(C), Section
271(e)(1)(A) provides an alternative form of relief to which
Astra is still entitled. Section 271(e)(4)(A) states that upon
finding an act of infringement, "the court shall order the
effective date of any approval of the drug or veterinary
biological product in the infringement to be a date which is <u>not
earlier than the date of expiration of the patent</u> which has been
infringed."  35 U.S.C. § 271(e)(4)(A) (emphasis added).

Impax asserts that the remedy under 271(e)(4)(A) is only
available prior to the expiration of the patents.  In support,
Impax cites a section of legislative history from 1984, prior to
the enactment of the statutory provisions authorizing the grant
of pediatric exclusivity, which states that:

> If the infringing party has begun commercial marketing
> of the drug, damages, and other monetary relief and
> in unctive may be awarded for the infringement and to
> prevent further infringement.  In addition, the FDA
> would be mandated to change the effective date of the
> approved ANDA to the expiration of the infringed
> patent.

16

H.R. Rep. No. 98-857, pt. 1, at 46 (1984). However, this is not
the language contained in the statute. The statute states that
"the court shall order the effective date . . . to be a <u>date
which is not earlier than the date of the expiration of the
patent which has been infringed.</u>" 35 U.S.C. § 271(e)(4)
(emphasis added). Had Congress intended to limit relief under
271(e)(1)(A) to an order mandating the effective date of the
ANDA to be the date of the expiration of the patent, it could
have written the provision to say that. But it did not.
Rather, the clear and unambiguous language of the statute sets
the date of the expiration of the patent only as the earliest
effective date a court may order. The Court will not "accept
[Impax's] invitation to ignore [the] language which Congress saw
fit to enact" and search the legislative history for a contrary
meaning  <u>United States v. McGoff</u>, 831 F.2d 1071, 1080 & n.19
(D.C.Cir. 1987) ("Only the most extraordinary showing of
contrary intentions in the legislative history will justify
departure from the plain and unambiguous language of the
statute " (quoting <u>United States v. Albertini</u>, 472 U.S. 675, 680
(1985)).

    The statutory language of 271(e)(4)(A) also fails to limit
the Court's power to issue a remedy to the term of the patent.
Section 271(e)(4)(A) must be read in conjunction with 21 U.S.C.

17

§ 355a, the statutory provision governing the grant of a six-
month period of market exclusivity to a patent holder who
completes FDA-requested pediatric studies.  21 U.S.C. § 355a
"authorizes an extra six-month 'pediatric exclusivity' period
following expiration of a drug patent for a patent holder that
has satisfactorily conducted pediatric testing of its drug upon
the FDA's request."  Mylan Labs., Inc. v. Thompson, 389 F.3d
1272, 1275 (D.C. Cir. 2004) (emphasis added).  The statute
provides that if the drug is the subject of a Paragraph IV
certification "and in the patent infringement litigation
resulting from the certification the court determines that the
patent is valid and would be infringed, the period during which
an application may not be approved under [21 U.S.C. §
355(j)(5)(B)] shall be extended by a period of six months after
the date the patent expires (including any patent extensions)."
Id. at 276.  Nothing in the language of 21 U.S.C. §
355a(c)(2)(B) requires the Court to render its decision prior to
the expiration of the patents.

     Impax contends that "'pediatric exclusivity' does not
renoue Astra's claims" because "pediatric exclusivity is a
reward bestowed by the FDA on pharmaceutical companies for
testing drug products on young patients[,] . . . [i]t does not,
however, extend the terms of the patents."  (Def's Motion at 4.)
The Court agrees that the six-month period of pediatric

18

exclusivity does not extend the term of the patents, but it does grant the patent holder a period of market exclusivity, which this Court has the power to enforce.  Accordingly, the Court finds that relief under § 271(e)(4)(A) does not become moot when the patents expire but the period of pediatric exclusivity is still in effect.

Such a result is in accordance with the Federal Circuit's decision in Alza Corp. v. Mylan Labs., Inc., 391 F.3d 1365 (Fed. Cir. 2004).  In Alza, the patent was due to expire in July 2004. Id. at 368.  The Federal Circuit stated in a decision rendered on December 10, 2004 -- after the expiration of the patents -- that "following the Food and Drug Administration's approval of pediatric use of [the drug], the patent will now expire on January 23, 2005."  Id.  The parties conceded that the case would be moot after January 23, 2005.  Id. at n.3.  Although the Vermont District Court's decision in Alza was rendered prior to the expiration of the patents, the Federal Circuit did not find that the case became moot upon expiration of the patent, nor did it find that it lost jurisdiction over the appeal upon expiration of the patent.  Instead, the court asserted jurisdiction over the appeal and affirmed the district court's decision that the patents were neither anticipated nor obvious, and that the patent was not unenforceable due to inequitable conduct.  Id. at 1373.

19

In support of its motion to dismiss, Impax asserts that the
Court is powerless to enforce the period of pediatric
exclusivity because section 355a requires a "court
determin[ation] that the patent is valid and would be infringed"
in order for the ANDA with a Paragraph IV certification to be
subject to the period of pediatric exclusivity. Thus Impax
contends that because the patents expired while the
determination of validity and infringement was sub judice, Astra
has lost its right to its six-month period of pediatric
exclusivity under 21 U.S.C. § 355a. The Court declines to reach
such an anomalous result.

Had Impax filed a Paragraph II or Paragraph III
certification, it would have been automatically subject to
Astra's six-month period of pediatric exclusivity prior to
receiving final approval of its ANDA. See 21 U.S.C. §
355a(c)(2)(B). Instead, Impax filed a Paragraph IV
certification, and while the patent litigation was pending, it
obtained final approval of its ANDAs and began to manufacture
and sell its generic products. Simply because the statutory
provisions do not address the specific fact pattern before us
does not mean that Astra is not entitled to the six-month period
of market exclusivity that it earned by conducting the requested
pediatric studies.

05/25/2007 08:56 FAX  212 805 8191·        HONORABLE BARBARA JONES                    ☒022/027
· 1

In this regard <u>Ranbaxy Labs. Lim. V. United States Food &</u>
<u>Drug Admin.</u>, 307 F. Supp. 2d 15 (D.D.C. 2004), is instructive.
In <u>Ranbaxy</u>, the generic drug manufacturer, Ranbaxy Labs.,
received tentative approval of its ANDAs during the course of
litigation. <u>Id.</u> at 18, "After the summary judgment decision, .
. . the court indicated to Ranbaxy and Pfizer [the patent
holder], that the court's schedule would not allow for a trial
until after the January 29, 2004, expiration of the '216
patent.' <u>Id.</u> at 17. In response the parties entered into a
stipulation of dismissal providing that because the '216 was set
to expire before the court could accommodate a trial, the
"action would be dismissed as moot upon the . . . expiration of
the '215 patent." <u>Id.</u> at 17.

Ranbaxy sought confirmation from the FDA that it would
receive final approval of its ANDA upon expiration of the
patent, irrespective of Pfizer's period of pediatric
exclusivity. <u>Id.</u> at 18, Ranbaxy argued that because it had
received tentative approval of its ANDAs, upon expiration of the
patents the ANDAs "automatically gained or were entitled to
gain immediate effective approval . . . because the patent
litigation became moot at the very instant the patents expired."
<u>Id</u> at .9. In addition, Ranbaxy asserted a similar argument to
that made by Impax in support of the present motion: Ranbaxy
argued that the preconditions for delaying an ANDA on the basis

21

of pediatric exclusivity provided for in Section 505(a)(c)(2)(B)
[and 21 U.S.C. § 355a(b)(2)(b)] (governing Paragraph IV
submissions) could not be satisfied unless Pfizer obtained a
ruling that the [relevant] patent was valid and would be
infringed, which it was unlikely to do in view of the district
court's schedule." Id. at 18.

By letter dated January 28, 2004, "the FDA issued an
administrative decision indicating that Ranbaxy's ANDA would not
be approved until after the expiration of Pfizer's pediatric
exclusivity on July 29, 2004." Id. "The FDA concluded that an
ANDA applicant will be subject to any pediatric exclusivity that
attaches to a patent where the ANDA applicant has filed a
paragraph IV certification, was sued by the NDA holder or patent
owner within 45 days, and the litigation is unresolved on the
merits and the 30-month stay has not run when the patent
expires." Id. at 18 (citation omitted).

Although the facts of Ranbaxy differ from the case before
us, the Court finds that the FDA's reasoning is equally
applicable to the case at bar. In Ranbaxy, "the FDA concluded
that the absence of a [statutory] provision addressing
unresolved patent litigations in the Paragraph IV certification
context did not mean that Congress intended to exclude such
circumstances from the pediatric exclusivity provision."
Ranbaxy 307 F. Supp. 2d at 19. According to the FDA, Ranbaxy's

22

"alternative reading . . . would undercut the purpose of the pediatric exclusivity and invite anomalies and manipulation of the statute." Id. Similarly, the Court finds that Impax's interpretation of the statutory provisions would create an anomalous result that is at odds with Congress's goal in enacting § 355a.

Accordingly, the Court concludes that if it determines that the '505 and '230 patents are valid and infringed, it may issue an order pursuant to 35 U.S.C. § 271(e)(4)(A) recognizing Astra's six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B), and mandating that the effective date of approval of Impax's ANDA is no earlier than the date on which the pediatric exclusivity ends -- that is October 20, 2007. Such an order does not extend the term of the patents, but instead gives effect to a period of market exclusivity which Congress has bestowed upon brand manufacturers who incur the costly task of conducting pediatric studies of pharmaceutical drugs. See S. Report No. 105-43, at 51 (1997); see also Assoc. of Am. Physicians and Surgeons, Inc. v. U.S.F.D.A., 226 F. Supp. 2d 204, 206 (D.D.C. 2002).

### 3. Impax's ANDA Did Not Automatically Convert from a Paragraph IV to a Paragraph II Certification

In support of its assertion that upon patent expiration, Astra no longer has a claim under § 271(e)(2), Impax contends

23

that upon patent expiry, its Paragraph IV certification was
automatically converted to a Paragraph II certification thereby
eliminating Astra's claim for infringement under § 271(e)(2).
Impax cites Ranbaxy in support of this proposition; however,
Ranbaxy does not mandate such a result.

In Ranabxy, the FDA determined that upon patent expiry,
Ranbaxy was required to amend its certification pursuant to 21
C.F.R. § 314.94(a)(12)(viii)(C)(1), which requires an ANDA
applicant to amend its certification "if, at any time before the
effective date of approval of the application, the applicant
learns that the submitted certification is no longer accurate."
The FDA decided that upon expiration of the patents, the
Paragraph IV certification converted to a Paragraph II
certification -- even though Ranbaxy failed to amend its
certification -- and "under a Paragraph II certification, the
statute provides for a delayed ANDA approval for six months
beyond the expiration of the patent." Ranbaxy, 374 F. Supp. 2d
at 18.  Thus, Ranbaxy was subject to the six-month period of
pediatric exclusivity (even in the absence of a court order
triggering § 355a(c)(2)(B)).  The District Court for the
District of Columbia affirmed this decision, finding that at the
"magic moment" the patents expired "the Paragraph IV
certification became invalid, and either converted as a matter
of law to Paragraph II certifications or became inaccurate,

24

thereby creating an obligation on Ranbaxy's part to amend its ANDAs to reflect patent expiry and an inability on the part of the FDA to approve the ANDAs in their inaccurate form." Id. at 21.

Ranbaxy's ANDA is distinguishable from Impax's ANDA. In Ranbaxy, the generic applicant had only received "tentative" approval prior to the expiration of the patent. In the case at bar, Impax received final approval of its ANDA on November 8, 2002, prior to the trial on the merits and the expiration of the patents. Once an application is finally approved, the applicant is no longer under an obligation to amend its patent certification. See 21 C.F.R. § 314.94(A)(12)(viii)(C)(i) (requiring amendments before the effective date of approval). Thus, the rationale behind the automatic conversion of a Paragraph IV certification to a Paragraph II certification does not apply. Accordingly, the Court finds that Impax's Paragraph IV certification did not convert to a Paragraph II certification upon expiration of the patents, and Astra still has a viable claim for infringement under 271(e)(2).[6]

* * *

_____

[6] An order pursuant to § 271(e)(4)(A) would have the effect of converting Impax's final approval to an approval with a delayed effective date, which under the FDA's own regulations is a "tentative" approval. See Mylan v. Thompson, 389 F.3d 1272, 1281 (D.C. Cir. 2004) (citing 21 C.F.R. § 314.105(a)). Whether such a change in the "factual and legal landscape" would impose an obligation on Impax to amend its Paragraph IV certification and subsequently convert the certification to a Paragraph II certification, is not a question before us. See Mylan, 389 F.3d at 1284. The Court properly leaves that issue, if it arises, to be resolved by the FDA.

25

05/25/2007 08:57 FAX  212 805 6191 · ·   HONORABLE BARBARA JONES                    @027/027

The Court concludes that this is not a case in which the court is powerless to "undo the effects of conduct that was not prevented by the time of decision." Wright & Miller, supra (citing Roche and other cases). Instead, an effective remedy is possible and within the Court's power -- either under 35 U.S.C. § 271(e)(4)(A) or the Court's general equitable powers. Accordingly, the case is not moot and the Court has jurisdiction over Astra's claim for infringement under 35 U.S.C. § 271(e)(2).

**Conclusion**

For the foregoing reasons, Impax's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

New York, New York
May 25, 2007

26

# Exhibit 4



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

April 18, 2007

Dear ANDA Applicant/Holder for Amlodipine Besylate Tablets:

This letter addresses issues related to the timing of potential approvals of abbreviated new drug applications (ANDAs) that reference Norvasc tablets. This letter construes the provisions of the Drug Price Competition and Patent Term Restoration Act of 1984 (known as the Hatch-Waxman Amendments or Hatch-Waxman), codified at 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. §§ 156, 271, 282, and does not necessarily apply to changes made in the Medicare Modernization Act (MMA) of 2003.[1]

As you are aware, Pfizer Inc. (Pfizer) manufactures and markets Norvasc, a besylate salt of amlodipine, indicated for the treatment of hypertension and angina. Pfizer had listed two patents with FDA, asserting that they claim Norvasc and would be infringed by the marketing of generic versions of the product. The later of these patents, Patent No. 4,879,303 ('303 patent), expired on March 25, 2007, so that these patents, by themselves, no longer bar the marketing of generic versions of Pfizer's product. Several companies have submitted ANDAs for approval to market generic versions of Norvasc. Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (Mylan) filed the first ANDA to market a generic version of Norvasc and had challenged Pfizer's patents by submitting the first "paragraph IV certifications" to those patents with its application. FDA approved Mylan's ANDA in October 2005, and Mylan began marketing its product on March 23, 2007. On or about the same day, Pfizer began marketing a generic version of Norvasc.

Pfizer and Mylan now contend that the approvals of the other ANDAs for amlodipine besylate are blocked by Pfizer's "pediatric exclusivity" until September 25, 2007. Mylan contends, alternatively, that the approvals of its competitors' ANDAs are blocked by Mylan's "180-day marketing exclusivity" until September 19, 2007.[2] Resolution of whether pending ANDAs referencing Norvasc are blocked either by Pfizer's pediatric exclusivity or Mylan's 180-day exclusivity involves a number of legal issues, some of first impression for the agency. Part of the analysis requires FDA to determine the effect of a recent Federal Circuit decision in patent litigation between Pfizer and Apotex Inc. (Apotex), another ANDA applicant for amlodipine besylate who filed a paragraph IV certification after Mylan had submitted its certification. On March 22, 2007, the Federal Circuit ruled that the three claims in the '303 patent that Pfizer asserted that Apotex infringed were invalid as obvious. *Pfizer Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (March 22, 2007) (the *Apotex* decision).

---

[1]  The 1984 Hatch-Waxman provisions govern most issues related to ANDA approval for amlodipine besylate tablets. Although certain provisions of Hatch-Waxman have been superseded by changes made in the MMA, the 180-day exclusivity provisions of the MMA apply only to applications for which the first ANDA with a paragraph IV certification was filed after December 3, 2003. Mylan's ANDA was filed before December 3, 2003, and hence is governed by the pre-MMA provisions with respect to 180-day exclusivity.

[2]  Mylan has claimed in its submissions to FDA that its 180-day exclusivity commenced on March 23, 2007 and would expire on September 23, 2007. See Petition for Stay of Action, Docket 2006P-0116 (March 26, 2007) (http://www.fda.gov/ohrms/dockets/dockets/07p0116/07p-0116-psa0001-01-vol1.pdf). However, 180 days after March 23 is September 19.

2007N-0123

LET 2

The questions presented by the pending applications and exclusivity claims include: (1) whether the *Apotex* decision is effective upon issuance of the opinion or upon issuance of the mandate, for purposes of determining the application of Pfizer's pediatric exclusivity; (2) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approval of the Apotex ANDA; (3) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approvals of the remaining ANDAs; and (4) whether Mylan's eligibility for 180-day exclusivity blocks approval of ANDAs after the expiration of Pfizer's patent. These questions are addressed in turn in the Discussion section below.

<u>Regulatory Background</u>

A. <u>Patent Listing and Certification</u>

The Hatch-Waxman Amendments permit the submission of ANDAs for approval of generic versions of approved drug products. 21 U.S.C. § 355(j). Under the procedure established in Hatch-Waxman, NDA sponsors are required to list patents that protect their approved drug substances, drug products, or approved methods of use, 21 U.S.C. § 355(b)(1); FDA publishes those patents in FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" (the Orange Book); and ANDA applicants are required to certify whether their proposed drug products infringe those listed patents. 21 U.S.C. § 355(j)(2)(A)(vii). As to each patent listed in the Orange Book for the listed drug referenced, an ANDA applicant can certify that 1) such patent information has not been filed (paragraph I certification); 2) the patent has expired (paragraph II certification); 3) the date the patent will expire (paragraph III certification); or 4) the patent is invalid or not infringed by the drug product proposed in the ANDA (paragraph IV certification). *Id.*

In the case of paragraph I and paragraph II certifications, the patent does not serve as a barrier to ANDA approval. A paragraph I or paragraph II certification permits immediate effective approval of the ANDA. 21 U.S.C. § 355(j)(5)(B)(i). If an applicant files a paragraph III certification, approval may be made effective when the patent expires. 21 U.S.C. § 355(j)(5)(B)(ii).

If an applicant seeks to challenge a listed patent and to obtain approval before the patent expires, it must provide a paragraph IV certification certifying that "in the opinion of the applicant and to the best of his knowledge" the patent is "invalid or will not be infringed by the manufacture, use or sale of the [drug described in the ANDA]." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The applicant with a paragraph IV certification must notify the patent owner and NDA holder of its paragraph IV certification and of the basis of its belief that the patent is invalid or not infringed. 21 U.S.C. § 355(j)(2)(B). The filing of a paragraph IV certification "for a drug claimed in a patent or the use of which is claimed in a patent" is an act of infringement. 35 U.S.C. § 271(e)(2)(A). This enables the NDA holder and patent owner to sue the ANDA applicant. If the patent owner or NDA holder brings a patent infringement suit against the ANDA applicant within 45 days after receiving notice of the paragraph IV certification, the suit triggers an automatic stay of FDA approval for 30 months from the date the patent owner or NDA holder received notice of the certification ("30-month stay"). 21 U.S.C. § 355(j)(5)(B)(iii). If the patent owner or NDA holder does not bring suit within 45 days after it has received notice of the paragraph IV certification, the unexpired patent will not, by itself, bar FDA's approval of the ANDA, even if patent litigation is subsequently commenced outside the 45-day period and is ongoing at the time the requirements for approval are met. See *id.*

2

B. 180-Day Exclusivity

To provide an incentive for ANDA applicants to be the first to challenge a listed patent and remove patent barriers to approval, Congress provided that:

> [I]f the [ANDA] contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection . . . [containing] such a certification, the application shall be made effective not earlier than one hundred eighty days after
>
> (I) the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
>
> (II) the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv)(2002).

Although this statutory provision is commonly characterized as granting "180-day exclusivity" to the first applicant to submit an ANDA containing a paragraph IV certification challenging a patent, the statute does not provide for that result directly. Instead, this end is accomplished by delaying the approval of subsequent ANDAs *containing a paragraph IV certification* until 180 days after the exclusivity period for the first ("previous") applicant has been triggered. *If the first applicant's ANDA no longer contains a valid paragraph IV certification when it is ready for approval, the first applicant is not eligible for exclusivity.* Similarly, when subsequent applicants' ANDAs do not contain paragraph IV certifications, their approval is not delayed under the plain language of this statutory provision.

C. Pediatric Exclusivity

The pediatric exclusivity statute, enacted as part of the Food and Drug Administration Modernization Act (FDAMA) and renewed in the Best Pharmaceuticals for Children Act (BPCA), provides an incentive for NDA sponsors to conduct pediatric studies that FDA has requested. Although this incentive for doing pediatric studies is commonly referred to as "pediatric exclusivity," a grant of pediatric exclusivity alone does not guarantee that an NDA will be free of generic competition while the exclusivity is in effect. Instead, as FDA has opined and the D.C. Circuit has affirmed, the applicability of pediatric exclusivity to prevent approval of a particular applicant's ANDA depends on the outcome of that applicant's patent challenges, if any. *See Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004). Specifically, the statute states that if the approved product has completed the pediatric exclusivity requirements and is subject to

> (i) "a listed patent for which a [paragraph II] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires;"
>
> (ii) "a listed patent for which a [paragraph III] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires;"

(iii)     "a listed patent for which a [paragraph IV] certification has been submitted . . . , and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires."

21 U.S.C. § 355a(c)(2)(A)-(B).

## Factual Background

On July 31, 1992, FDA approved Pfizer's new drug application (NDA) for amlodipine besylate tablets, which Pfizer began marketing later that year under the brand name Norvasc. Pfizer listed two patents with respect to Norvasc: Patent 4,572,909 ('909 patent), originally due to expire on July 31, 2006, and the '303 patent, originally due to expire on March 25, 2007. Pfizer conducted pediatric studies requested by FDA and, on November 27, 2001, FDA granted Pfizer pediatric exclusivity for Norvasc pursuant to 21 U.S.C. § 355a. Pediatric exclusivity, by delaying approval of ANDAs for six months after the expiration date for a patent, had the potential to block approvals of ANDAs referencing Norvasc until January 31, 2007, with respect to the '909 patent, and until September 25, 2007, with respect to the '303 patent. Because this period with respect to the '909 patent has expired, that patent is no longer relevant to the issues discussed in this letter.

In May 2002, Mylan filed an ANDA for amlodipine besylate, and was the first to file a paragraph IV certification to the '303 patent pursuant to 21 U.S.C. § 355(j)(5)(B)(iv). Pfizer sued Mylan for patent infringement. *Pfizer Inc. v. Mylan Labs. Inc.*, No. 02-cv-1628 (W.D. Pa.). However, because Pfizer did not file its lawsuit within 45 days of receiving notice of Mylan's paragraph IV certification, the filing of the lawsuit did not result in the 30-month stay of approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii). In October 2005, FDA approved Mylan's ANDA.

In February 2007, the district court in the patent litigation between Mylan and Pfizer entered judgment for Pfizer that Mylan had infringed the '303 patent. *Pfizer Inc. v. Mylan Labs., Inc.*, No. 02-cv-1628, 2007 U.S. Dist. LEXIS 14417 (W.D. Pa. Feb. 27, 2007). On March 16, 2007, the district court amended the judgment and enjoined the approval of Mylan's ANDA until the '303 patent expired. *Id.*, 2007 U.S. Dist. LEXIS 18699 (Mar. 16, 2007).[3] Mylan appealed that judgment and sought a stay of the district court's injunction. The Federal Circuit granted the stay. *Pfizer Inc. v. Mylan Labs, Inc.*, No. 2007-1194 (Mar. 23, 2007). Mylan began marketing its product on March 23, 2007.

Apotex, Inc. (formerly Torpharm, Inc.) filed an ANDA for amlodipine besylate, which contained a paragraph IV certification to the '303 patent. On July 20, 2003, Pfizer sued Apotex for patent infringement. In January 2006, the district court held the patent was valid and infringed. *Pfizer, Inc. v. Apotex*, No. 03C 5289, 2006 U.S. Dist. LEXIS 95778 (N.D. Ill. January 29, 2006). The Federal Circuit reversed in the opinion noted above, finding that Apotex's amlodipine besylate

---

[3] When an NDA holder or patent owner sues the ANDA applicant and wins — that is, the court hearing the patent infringement litigation finds the patent valid and infringed — the Patent Code provides that "the court shall order the effective date of any approval of the drug * * * involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A).

4

tablets did not infringe claims 1-3 of the '303 patent, because those claims were invalid for obviousness. See *Apotex* decision. The Federal Circuit did not address the validity of the remaining claims of the patent, presumably because those were not claims on which Pfizer had sued Apotex. On April 5, 2007, Pfizer filed a motion in the Federal Circuit, seeking a rehearing and/or rehearing en banc of the *Apotex* decision. This motion stayed issuance of the mandate pending its resolution under Rule 41(d)(1) of the Federal Rules of Appellate Procedure (FRAP).

At midnight on March 25, 2007, the '303 patent expired. Pfizer submitted a letter to FDA dated March 25, 2007, contending that approval of Apotex's ANDA was barred by Pfizer's pediatric exclusivity, at least until the Federal Circuit's mandate issues.

On March 26, 2007, Mylan submitted to FDA a Petition for Stay of Action requesting that the FDA refrain from taking any action to approve any ANDA for amlodipine besylate tables until Mylan's 180-day exclusivity expires. According to Mylan, the 180-day exclusivity for amlodipine besylate tablets had been triggered when it commenced marketing on March 23, and is due to expire on September 19, 2007. Also on March 26, Mylan sued FDA in the U.S. District Court for the District of Columbia, alleging that it was entitled to 180-day exclusivity as to the '303 patent and requesting that the court enjoin FDA from approving additional ANDAs for amlodipine until the merits of its claim for 180-day exclusivity could be heard. *Mylan Labs., Inc.* v. *Leavitt*, CA No. 07-579 (RMU)(D.D.C.).

FDA determined that it was unprepared to immediately resolve all of the legal questions raised by the pending applications and exclusivity claims, and would benefit from soliciting the views and legal arguments of the interested parties. FDA informed the court that it proposed to seek comments to be submitted by April 4, 2007, and to issue its determination by April 11, 2007. The court memorialized FDA's proposal, and enjoined FDA from implementing any ANDA approval decisions, once made, until 5:00 PM on April 13, 2007 to allow the court to review FDA's decisions. *Mylan Labs*, CA No. 07-579 (RMU), Order (March 26, 2007). FDA subsequently moved the court for an extension of time, until April 18, 2007, to issue its determination, which the court granted.

By letter dated March 28, 2007, FDA requested comments on five specific questions from Pfizer and the ANDA applicants for amlodipine besylate tablets. FDA created a docket for collecting the comments and posting them on the internet, and posted its letter requesting comments to give other interested parties an opportunity to comment on the questions FDA raised. (http://www.fda.gov/ohrms/dockets/dockets/07n0123/07n0123.htm) Several parties expressed a range of opinions on the questions FDA posed. See *Id.* After receiving and considering submissions from interested parties, FDA reaches the following conclusions.

## Discussion

### 1. For Purposes of Pediatric Exclusivity, the *Apotex* Decision Will Not be Effective until Issuance of the Mandate.

Under the language of the statute, pediatric exclusivity operates by delaying the approval of an ANDA for six months after a patent expires.[4] The operative subsection of the statute varies

---

[4]    In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. §355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. See Comments of Synthon Pharmaceuticals, Inc. at 4. However,

according to the certification submitted by the ANDA applicant. When the ANDA applicant, such as Apotex, submits a paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B). As discussed in greater detail below, FDA has previously opined, and concludes below, that this provision means that pediatric exclusivity does *not* apply when the ANDA applicant prevails in its patent challenge – that the court determines that the patent is *invalid* or would *not* be infringed, and that construction has been acknowledged as appropriate by a court. Accordingly, this provision governs the application of pediatric exclusivity, at least with respect to Apotex.

In determining the effect of the *Apotex* decision on Pfizer's pediatric exclusivity claim, the first issue that FDA must resolve is to ascertain the meaning of the phrase "the court determines" for purposes of the statutory provision quoted above. Specifically, FDA must decide whether the Federal Circuit "determined" invalidity when it issued its opinion or will not "determine" validity or infringement until the mandate issues. Because the Court of Appeals' opinion is not effective until the mandate issues, Pfizer argues that the Federal Circuit will not have determined invalidity until that time. Apotex and others have asserted that the March 22, 2007 date of the issuance of the Federal Circuit opinion is the operative date.

FDA finds that the operative phrase – "the court determines" – is ambiguous as to the action it describes. Congress could have been more precise in indicating the action by the court to which it was referring, as it has done in other statutes. Compare, e.g., 26 U.S.C. § 7481(a) (finality is determined "upon mandate" issued by Court of Appeals or Supreme Court) with 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa)–(bb) (approval "shall be made effective on the date on which the court enters judgment reflecting the decision; or the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed."). Instead, it chose a phrase that, as the comments submitted to FDA reflect, is susceptible to more than one interpretation. On the one hand, the use of the present tense in the word "determines" could suggest that the issuance of the opinion itself is sufficient. Indeed, one dictionary definition of "determine" is "to come to a decision . . . as the result of investigation or reasoning." Webster's Third New International Dictionary (2002) at 616 (definition 1.c). Under this view, a court "determines" validity and infringement when it issues an initial ruling to that effect.

On the other hand, the choice of the word "determines" suggests the fixing or settling of rights and obligations. The dictionary definitions of "determine" include: "to fix conclusively or authoritatively," "to settle a question or controversy about," "to settle or decide by choice of alternatives or possibilities." *Id.* (definitions 1.a, 1.b, and 1.d.). See also Webster's II New Riverside University Dictionary (1994) at 369 ("[t]o end or decide by final, esp. judicial action") (definition 1.b). Under this view, where an appellate court is reversing the district court's judgment below, the parties' rights and obligations continue to be governed by the district court determination until the appellate court issues its mandate effectuating its judgment.

The Federal Rules of Appellate Procedure provide some additional guidance regarding which should be the relevant time frame for determining generally when the Federal Circuit's decision is effective. The rules themselves do not conclusively resolve the issue: FRAP 36 states that a judgment is entered when it is noted on the docket, while FRAP 41(c) states that the mandate is

---

before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the approval status of Mylan's ANDA from approved to tentatively approved.

effective when issued. However, the 1998 advisory committee notes to FRAP 41(c) state that "[a] court of appeals judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." These notes have been cited with approval by courts, *Mercer v. Duke Univ.*, 401 F.3d 199, 212 n.7 (4th Cir. 2005); *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 248 n.5 (N.D.N.Y. 2005); *United States v. Swan*, 327 F. Supp. 2d 1068, 1071-72 (D. Neb. 2004), and no commenters have cited any authority to FDA that would indicate that the advisory committee notes do not state the current rule regarding finality of appellate court decisions.[5] Therefore, under these rules, until the mandate issues, the parties continued to be bound by the district court judgment.

In FDA's view, the phrase "the court determines" in section 355a(c)(2)(B), in the context of a federal court of appeals reversing a district court judgment, should be read as the date the mandate issues for several reasons. When the district court decides a patent issue, FDA applies that decision, unless it is stayed, in determining issues related to ANDA approval. The district court decision continues to control the rights of the parties until the appellate court mandate issues. Thus, the vital date under this scheme is when the rights of the parties become fixed by the decision of the court of appeals, that is, the date the mandate issues. This understanding of the phrase "the court determines" is further supported by the dictionary definitions of "determine" that use the terms "fixing" and "settling," and by the practice under the FRAP, as reflected in the advisory committee notes and as accepted by courts. Furthermore, as a matter of policy, FDA believes that the parties to paragraph IV litigation are best served by a rule that, consistent with the statutory language, errs on the side of greater finality. Such a rule reduces the possibility that an appellate court opinion will be relied on and then overturned (through an adverse opinion after rehearing or rehearing en banc) in very short order. Accordingly, FDA concludes that, in determining the applicability of pediatric exclusivity, this language requires FDA to await issuance of the mandate before giving effect to an appellate court opinion that would overturn a district court's ruling.

In this case, therefore, for purposes of determining the applicability of Pfizer's pediatric exclusivity, FDA will continue to be governed by the district court decision upholding the validity of the patent unless or until the mandate is issued, effectuating the appellate court's judgment.[6] As a result, all of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity. If the mandate does not issue before September 25, 2007, when the pediatric exclusivity expires, Pfizer and Mylan will have no additional competition during the interim period and thus will obtain the full benefit that could be derived under pediatric and 180-day marketing exclusivity. In that event, the remaining issues discussed in this letter will be moot. However, given the possibility that the mandate making the panel decision effective may issue before September 25, 2007, FDA will continue with its analysis.

---

[5] Several commenters have cited an FDA Guidance document issued in March 2000. See, e.g., Mylan Comments at 2; Pfizer comments at 2. FDA is not relying on this guidance document, however, because it relates to a different statutory provision, with different language, context, and purposes.

[6] In this case, the district court found patent validity and infringement and the appellate court opinion found invalidity. Under these circumstances, FDA here declines to give effect to the appellate court's judgment of invalidity until the mandate issues and the patent and pediatric exclusivity attached to the patent block ANDA approvals in the interim. We note, however, that the agency's position on this also suggests that, had the district court found invalidity and the appellate court reached the contrary conclusion of validity and infringement, the converse would also be true: in spite of the appellate court opinion finding invalidity and infringement, ANDAs could be approved (or could retain their approvals) and neither the patent itself nor pediatric exclusivity would attach to that patent to block such approvals unless and until the mandate issued.

## 2. Apotex will Cease to be Subject to Pfizer's Exclusivity if the Mandate Issues before September 25, 2007.

This is the first time that FDA has been called upon to determine whether an ANDA applicant is subject to the innovator's pediatric exclusivity when the ANDA applicant has received a *favorable* court decision in its paragraph IV litigation but has not yet obtained final approval when the patent expires. The pediatric exclusivity provisions address several scenarios in terms of the status of the ANDA applications, but there are several scenarios that they fail to address, including this one.

The statute provides that, where the ANDA applicant submits paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B). Based on this language, FDA determines that the converse must also be true – if in paragraph IV litigation a court determines that a patent is *invalid* or *not infringed*, pediatric exclusivity will not bar approval of that applicant's ANDA. This is the implicit meaning and logical interpretation of subsection 355a(c)(2)(B), otherwise, the qualification in that provision regarding the victory for the patent holder in the patent litigation would make no sense and would be superfluous, at least as to any ANDA that did not receive final approval before the patent expired. In addition, this outcome is consistent with the goals of the 180-day exclusivity statute which encourages patent challenges to remove barriers to approval. As noted, FDA had previously opined that this was the logical interpretation of 355a(c)(2)(B), although FDA was not directly applying that interpretation at that time. *See Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d at 124 (D.D.C. 2004) ("As the FDA has correctly noted in its papers, § 355a(c)(2)(B) would apply 'where an ANDA applicant submits a paragraph IV certification, and prevails in the patent litigation.'")(dicta, citing Federal Defendants' Memorandum In Opposition to Plaintiffs' Motion for Preliminary Injunction and Summary Judgment and In Support of Cross Motion for Summary Judgment at 38 (July 8, 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004). FDA therefore concludes that, where an applicant has challenged a patent and has received a decision of invalidity or non-infringement, that applicant will not be subject to the NDA holder's pediatric exclusivity once that decision becomes effective.

FDA has previously been called upon to address other gaps in the pediatric exclusivity provisions. Specifically, the paragraph III and paragraph IV provisions are silent on the applicability of pediatric exclusivity to delay ANDA approvals where an ANDA applicant has a paragraph III or IV certification and has not received final approval at the time the patent expires. In determining the operation of the statute in those circumstances, FDA has relied on the broader certification scheme under Hatch-Waxman.

It has been FDA's longstanding view that, when a patent expires before pending patent litigation is resolved, ANDA applicants who have not received final effective approval are required under Hatch-Waxman, to change their paragraph III and paragraph IV certifications to paragraph II certifications. Because, upon patent expiry, all ANDA applicants are presumed to have paragraph II certifications, the paragraph II provision of the pediatric exclusivity statute, 21 U.S.C. § 355a(c)(2)(A)(i), would control. The D.C. Circuit has upheld this approach in two recent decisions. *See Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106, 124 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

8

In considering these earlier determinations regarding the switch to paragraph II certifications with today's decision regarding the non-applicability of pediatric exclusivity to applicants who prevail in patent litigation, FDA determines as follows. When the '303 patent expired on March 25, 2007, all of the unapproved ANDAs were required to change (or deemed to have changed) to paragraph II certifications and became subject to Pfizer's pediatric exclusivity at that time. That is their status during the period before the mandate issues. However, FDA believes that the language of the statute manifests a clear Congressional intent that pediatric exclusivity not block the approval of an ANDA where the ANDA applicant has prevailed in the paragraph IV patent litigation and therefore creates an exception to the application of the Hatch-Waxman certification provisions. Thus, if and when the mandate finalizing the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.

### 3. If the Mandate Issues Before the Expiration of Pediatric Exclusivity on September 25, 2007, ANDAs Other than Apotex May Not be Eligible for Immediate Approval.

Although Apotex is the only ANDA applicant to have obtained a favorable decision on the merits against Pfizer in the amlodipine besylate patent litigation, several commenters maintain that all or some of the other ANDAs should not be blocked by Pfizer's pediatric exclusivity because of the *Apotex* decision. Some maintain that, once the patent is declared invalid, it should be presumed delisted from the Orange Book. See Medco Comments at 7. That would mean that no ANDA applicants would be required to maintain their certifications to that patent, and pediatric exclusivity, by its literal terms, would not bar any approvals.

Others maintain that, once a patent is found invalid in litigation against one party, the patent owner is collaterally estopped from asserting infringement claims based on that patent against additional defendants. See, e.g. *Blonder-Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350 (1971). They argue that, applying collateral estoppel, all applicants who submitted paragraph IV certifications should be considered victorious in their individual patent litigation against Pfizer. At that point, they continue, the analysis applied to Apotex's ANDA should be applied to them as well so that their ANDAs would not be blocked by pediatric exclusivity. This would mean, according to at least one commenter, that ANDAs containing paragraph IV certifications at the time of patent expiration would be eligible for approval, while those containing paragraph III certifications would be blocked. See Teva Comments at 11-13.

Other commenters noted, however, that the *Apotex* decision addressed only claims 1-3 of an 11 claim patent. These commenters assert that the patent should stay listed in the Orange Book because some of the claims have not been declared invalid. See Mylan Comments at 1-2; Daiichi Sankyo Inc. Comments at 2. Nevertheless, another commenter maintains that there are no viable claims remaining for these products once claims 1-3 are declared invalid. See Caraco Pharmaceutical Labs, Ltd. at 3.

Patents are required to be listed in FDA's Orange Book if they claim the approved drug substance, approved drug product, or an approved method of use. 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53. If the remaining claims do not provide a basis on which to list the patent (i.e., do not claim the approved drug substance, drug product, or an approved method of use), the patent would no longer be eligible for listing in the Orange Book. In such a case, the patent must be withdrawn by Pfizer and any pediatric exclusivity that attached to the patent will no longer serve as a barrier to ANDA approval. If, on the other hand, one or more of the remaining claims claims the approved drug substance, approved drug product, or approved method of use, the patent can remain properly listed until the expiration of pediatric exclusivity. In such a case, the patent should remain in the Orange Book and the remaining unapproved ANDAs are potentially subject to Pfizer's pediatric exclusivity.

9

It is not clear to FDA, based on the current record, whether the remaining claims of the '303 patent would provide a valid basis to list the patent if claims 1-3 are invalid. Moreover, FDA has long maintained that its has neither the expertise nor the resources to resolve patent issues and does not make independent determinations of the merits or applicability of patent claims. 59 Fed. Reg. 50338, 50342-43, 50345, 50349, 50352 (1994). FDA's ministerial role in the listing process has been upheld. *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1348-49 (Fed. Cir. 2003); *aaiPharma, Inc. v. Thompson*, 296 F.3d 227, 243 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp 2d 1, 7-8 (D.D.C. 2004).

Because FDA lacks both relevant information and expertise to resolve this issue based on the information before it, in the absence of further judicial or other action clarifying the status of the patent, FDA will assume the '303 patent remains validly listed. If one or more of the remaining claims qualified the patent for listing as of the time the patent expired, all of the remaining ANDAs who had paragraph III and paragraph IV certifications at the time of patent expiry are required to maintain their paragraph II certifications. As such, those ANDAs will be blocked by Pfizer's pediatric exclusivity.

### 4. Mylan's Eligibility for 180-day Exclusivity Does Not Extend Beyond the Expiration of the Patent.

Mylan asserts that regardless of the applicability of pediatric exclusivity, all of the remaining ANDAs are subject to Mylan's 180-day exclusivity, which, if viable, would expire on September 19, 2007. Most commenters assert that it is well settled that 180-day exclusivity does not extend beyond the expiration of the patent. See, e.g., Apotex Comments at 8; Teva Comments at 6-7. Although Mylan acknowledges FDA's longstanding position that 180-day exclusivity expires with the patent, Mylan urges FDA to change that position, at least in the circumstances here, where the 180-day exclusivity has been triggered and begun to run before the patent expires.

By the terms of the statute, when a listed patent expires, a paragraph IV certification is no longer accurate. In these circumstances, the statute and FDA's regulations require ANDA applicants to change from a paragraph IV certification stating that the patent "is invalid or will not be infringed" to a paragraph II certification stating "that such patent has expired." 21 U.S.C. § 355(j)(2)(A)(vii)(II),(IV); 21 C.F.R. § 314.94(a)(12)(viii)(C) ("an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate"). In cases where an applicant neglects to amend its certification to a paragraph II certification after a patent expires, FDA will treat it as having done so. This approach was upheld in *Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F. Supp. 2d 340 (D.N.J. 2003) and *Ranbaxy Labs., Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

As noted above, applications with paragraph II certifications are eligible for immediate effective approval; the patent ceases to be a barrier to that approval upon its expiration. 21 U.S.C. § 355(j)(2)(A)(ii); 21 U.S.C. § 355(j)(5)(B)(i)(where an applicant files a paragraph II certification, approval of the applicant's ANDA "may be made effective immediately"); 21 C.F.R. § 314.94(a)(12)(viii). Thus, consistent with the statutory language and purpose of 180-day exclusivity, FDA has consistently construed the statute to award 180-day exclusivity based upon paragraph IV certifications only to unexpired patents. See 59 Fed. Reg. 50338, 50348 (stating "a patent is deemed to be relevant [for exclusivity purposes] until the end of the term of the patent or applicable 180-day period, whichever occurs first"). Because only subsequent applicants with valid paragraph IV certifications are blocked by 180-day exclusivity, and

because paragraph IV certifications cease to be accurate once the patent expires, the patent and 180-day exclusivity based on a paragraph IV certification to that patent cease to prevent approval of subsequent ANDAs once the patent expires.[7] See *Ranbaxy Labs., Ltd.* v. *Leavitt,* 469 F.3d 120, 126 (D.C. Cir. 2006)("[T]he first generic applicant may no longer retain exclusivity when the patent has expired.").

This plain language reading of the statute effectuates the statutory goals. The 180-day exclusivity provisions were drafted to give ANDA applicants an incentive to be first to challenge a listed patent and remove that patent as a barrier to approval. Once a listed patent expires and is no longer a barrier to ANDA approval, there is no longer a need to provide an incentive to challenge it in court. Thus, an expired patent does not serve as the basis for a 180-day exclusivity award and 180-day exclusivity does not extend beyond the life of the patent.

Mylan has argued that 21 U.S.C. § 355a(k) compels the conclusion that 180-day exclusivity extends beyond the date the patent expires. See Mylan comments at 7-8. That section provides that:

> If [180-day exclusivity period] overlaps with a 6-month [pediatric exclusivity] period . . ., so that the applicant for approval of a drug under section 505(j) entitled to the 180-day period under that section loses a portion of the 180-day period to which the applicant is entitled for the drug, the 180-day period shall be extended from
> > (1) the date on which the 180-day period would have expired by the number of days of overlap, if the 180-day period would, but for application of this subsection, expire after the 6-month exclusivity period; or
> > (2) the date on which the 6-month exclusivity period expires, by the number of days of the overlap if the 180-day period would, but for application of this subsection, expire during the six-month exclusivity period.

21 U.S.C. § 355a(k). On its face, this section is inapplicable here because Mylan is approved and is not subject to Pfizer's pediatric exclusivity and, thus, there is no 180-day exclusivity to restore. No commenters appear to contend otherwise.

Instead, Mylan argues that, by providing, in circumstances not applicable here, that 180-day exclusivity will follow pediatric exclusivity, Congress must have been assuming that 180-day exclusivity survives patent expiration. See Mylan comments at 7-8. If Mylan were correct, then section 355a(k) would conflict with FDA's longstanding understanding of the Hatch-Waxman statutory provisions governing 180-day exclusivity, as discussed above, which FDA believes to be compelled by the plain language of the statute. Thus, Mylan is essentially arguing that section 355a(k) repealed part of the Hatch-Waxman 180-day exclusivity provisions.

For one federal statute to repeal another:

---

[7] We note that if Mylan were correct and 180-day exclusivity continued to block approvals of ANDAs with paragraph IV certifications after the patent expired (essentially ignoring the automatic switch of the certifications to paragraph II), 180-day exclusivity would block ANDAs containing paragraph IV certification but not those containing paragraph III certifications under the plain language of 21 U.S.C § 355(j)(5)(B)(iv). This would have the perverse effect of punishing applicants who took the risk of challenging a patent with a paragraph IV certification in order to remove a barrier to approval and to reward those applicants who sat back and waited for the patent to expire. This result is clearly inconsistent with the intent and logic of Hatch-Waxman. Thus, the fact that section 355(j)(5)(B)(iv) by its terms blocks only ANDAs containing paragraph IV certifications -- the only ANDA that can be approved before the expiration of an applicable patent -- indicates that Congress did not intend exclusivity to extend beyond patent expiration.

11

[T]he intention of the legislature to repeal must be clear and manifest. . . . In practical terms, this "cardinal rule" means that in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 189 (1978) (citations omitted). The "irreconcilable conflict" required is a conflict

in the sense that there is a positive repugnancy between [the two statutes] or that they cannot mutually coexist. It is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem.

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (emphasis added). Here, there is no evidence that Congress ever affirmatively indicated that it intended to repeal or change the operation of the 180-day exclusivity provision in enacting section 355a(k).

Nor can Mylan show that the 180-day provisions in Hatch-Waxman and section 355a(k) are irreconcilable because it is possible to construe them in a way that they can mutually coexist. By its terms, section 355a(k) only addresses the curtailment of exclusivity to which the applicant is otherwise "entitled." As explained above, under Hatch-Waxman, the applicant is not entitled to exclusivity after the patent expires. That means, in reconciling the statutes, that the application of section 355a(k) is limited to the situation where there is more than one patent and the two exclusivity periods are each attached to different patents. Thus, one patent may expire, and pediatric exclusivity would start to run, but the ANDA applicant could still be eligible for 180-day exclusivity on a later patent that had not yet expired. If that 180-day exclusivity period were triggered by a court decision on the later patent, it would be running at the same time the ANDA was blocked from approval by the pediatric exclusivity on the earlier patent.

Indeed, the legislative history demonstrates that Congress intended to address this narrow situation by adding 21 U.S.C. § 355a(k) to restore the exclusivity to which the ANDA applicant was entitled but which otherwise would have been lost because the pediatric exclusivity on another patent blocked final effective approval:

The amendment gives the filer of an [ANDA] who challenges a patent no more and no less time to market his drug exclusively before subsequent [ANDAs] for the drug may be approved then it would have received but for the intervening period of pediatric exclusivity.

For example, the committee understands that there may be instances in which 2 patents on a drug are challenged in an [ANDA], and that, in subsequent litigation, a court holds the first patent to expire to be valid and infringed, and the second patent to expire to be invalid. If the section [355(b)(1), 21 U.S.C.] drug is granted a period of pediatric exclusivity with respect to the first patent, and if the court decision, which triggers the beginning of ANDA exclusivity, falls 60 days before that period of pediatric exclusivity begins (that is, 60 days before the first patent will expire), the ANDA exclusivity will overlap with the pediatric exclusivity for 120 days. In the absence of the pediatric exclusivity, the holder of the [ANDA] would enjoy at most 120 days to market its drug before a subsequent [ANDA] for the drug could be approved. But for the amendment, because of pediatric exclusivity, the holder of the [ANDA] would enjoy no ANDA exclusivity, because

12

the first 120 days of the pediatric exclusivity period would run over the last 120 days of its ANDA exclusivity period.

S. Rep. No. 107-79, at 6-7 (2001); see also *id.* at 14 ("[Section 9 of BPCA] specifies that, when the pediatric exclusivity period for a drug overlaps with a period of ANDA exclusivity for the drug, the period of ANDA exclusivity is extended by an amount necessary to ensure that the holder of ANDA exclusivity enjoys the same possibility of exclusive commercial marketing as that the holder would have enjoyed in the absence of pediatric exclusivity, no more and no less."). This language confirms both that Congress intended only the limited application of section 355a(k) and that this section can be construed consistently with the Hatch-Waxman exclusivity provisions. Thus, "[b]ecause the statutes are not irreconcilable and there is no convincing evidence that the later act was intended as a substitute, . . . . a repeal by implication did not occur." *United States v. Williams*, 216 F.3d 1099, 1102 (D.C. Cir. 2000).

Furthermore, the statute also does not distinguish, as Mylan proposes, between situations in which 180-day exclusivity has been awarded and triggered at the time of patent expiry and cases in which it has not. See Mylan Comments at 12-14. Although Mylan correctly notes that the obligation to update a patent certification only applies before the effective date of approval, *id.* at 14; Mylan's Petition for Stay at 3, and thus approved applications (such as Mylan's) have no continuing obligation to update their patent certifications, this does not mean that 180-day exclusivity for an approved application extends beyond the date the patent expires. On the contrary, if all of the remaining unapproved applications change to a paragraph II certification when the patent expires, as they are required to do, they will no longer be applications containing paragraph IV certifications that are blocked by the previous application containing a paragraph IV certification. This is the case regardless of whether Mylan's application, which has been approved, is also required to change its certification. As a result, because all unapproved applications must change to a paragraph II certification when the patent expires, and applications with paragraph II certifications are not blocked by 180-day exclusivity, for all intents and purposes, Mylan's 180-day exclusivity will terminate with the expiration of the patent regardless of the fact that Mylan itself is no longer obligated to change its certification upon patent expiry.

## Conclusion

In sum, FDA has concluded:

- All of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity.
- If and when the mandate effectuating the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.
- FDA cannot determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity at that time.
- Mylan's 180-day marketing exclusivity terminated when the patent expired.

If you have any questions regarding this letter please contact Cecelia Parise,
Regulatory Policy Advisor to the Director, Office of Generic Drugs at 240-276-9319

Sincerely,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research
Food and Drug Administration

cc:  Pfizer Inc.

14

# Tab 4

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

**FACSIMILE**

**DATE**

June 25, 2007

**TOTAL PAGES W/COVER**

8

| FROM | EMAIL | FAX | TEL |
|------|-------|-----|-----|
| Safir, Peter | psafir@cov.com | 020-778-5162 | 202-662-5162 |

| TO | FAX | TEL |
|----|-----|-----|
| Sheldon T. Bradshaw, Chief Counsel<br>Food and Drug Administration | 301-827-3054 | 301-827-1137 |
| Elizabeth Dickinson, Esq., Office of the Chief Counsel<br>Food and Drug Administration | 301-827-3054 | |
| Gary Buehler, Director, Office of Generic Drugs<br>Food and Drug Administration | 240-276-9327 | |
| Errol B. Taylor, Esq.<br>Milbank Tweed Hadley & McCloy LLP | 212-822-5545 | |
| Robert S. Silver, Esq., Outside Counsel for Apotex<br>Caesar, Rivise, Bernstein, Cohen and Pokotilow, Ltd. | 215-751-1142 | |
| Jeffrey J. Toney, Esq., Outside Counsel for Impax<br>Sutherland, Asbill & Brennann LLP | 404-853-8806 | |

**REMARKS**

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE ADDRESSEE SHOWN ABOVE. IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE. ANY REVIEW, DISSEMINATION OR USE OF THIS TRANSMISSION OR ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND MAIL THE ORIGINAL TO US AT THE ABOVE ADDRESS.

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW    WASHINGTON
WASHINGTON, DC 20004-2401    NEW YORK
TEL 202.662.6000    SAN FRANCISCO
FAX 202.662.6291    LONDON
WWW.COV.COM    BRUSSELS

PETER O. SAFIR
TEL 202.662.5152
FAX 202.778.5152
PSAFIR@COV.COM

June 25, 2007

### BY FACSIMILE

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Elizabeth Dickinson, Esq., Office of Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-443-0739 (f)

> Re: *In re Omeprazole Patent Litigation*, M-21-81 (BSJ):
> ANDA Nos. 76-048 and 75-785

Dear Mr. Bradshaw and Ms. Dickinson,

On June 18, 2007, on behalf of AstraZeneca, we requested that FDA, pursuant to the June 15, 2007 Order of the U.S. District Court for the Southern District of New York ("Order"), immediately return the approval status of ANDA No. 76-048 and ANDA No. 75-785 to tentative approval through at least October 20, 2007 – the date that the pediatric exclusivity periods of the applicable patents expire.

On June 21, 2007, counsel for Impax Laboratories, Inc. ("Impax") and counsel for Apotex Inc. ("Apotex") submitted a letter ("the Impax/Apotex letter") asking FDA to overrule or ignore the court's Order. The arguments asserted in the Impax/Apotex letter are wholly without merit, and returning Impax's and Apotex's ANDAs to tentatively approved status until AstraZeneca's pediatric exclusivity periods expire is both required under applicable law and fully consistent with FDA precedent.

**I. The district court had proper jurisdiction to decide the case and issue its Order resetting the date of final ANDA approval to no earlier than October 20.**

The fundamental basis for the Impax/Apotex argument is their disagreement with the district court's May 25, 2007 Order. In the May 25 Order, the court thoroughly explained why Impax's arguments in its Motion to Dismiss for Lack of Subject Matter Jurisdiction

COVINGTON & BURLING LLP

Page 2 of 7

were incorrect, and the court accordingly held, among other things, that the patent infringement case was not moot, and the court had jurisdiction over AstraZeneca's claim for patent infringement under the "artificial" act of infringement patent statute, 35 U.S.C. § 271(e)(2). *See* May 25, 2007 Order at 12, 26.[1]

As the court held, AstraZeneca's claims for infringement under section 271(e)(2) did not become moot upon expiration of AstraZeneca's patents-in-suit, U.S. Patent Nos. 4,786,505 and 4,853,230. "Having properly obtained jurisdiction over the present controversy, the court is not automatically divested of it upon the expiration of the patents." May 25, 2007 Order at 13, fn. 5, citing *Corpus Juris Secundum Patents* § 434 and *Rice & Adams Corp. v. Lathrop*, 278 U.S. 509, 514-515 (1929). In holding that the court retained jurisdiction after the patents expired, the court followed precedent established by the Federal Circuit in *Alza Corp. v. Mylan Labs., Inc.*, 391 F.3d 1365 (Fed. Cir. 2004). In *Alza*, the Federal Circuit asserted jurisdiction over a patent litigation appeal and ruled on the merits of the case (which upheld the patent's validity and in effect enforced the plaintiff's pediatric exclusivity period) after the patent had expired. *Alza*, 391 F.3d at 1365.

The district court also properly rejected Impax's argument that the court unlawfully set the date of ANDA approval no earlier than the date that pediatric exclusivity expires. Section 271(e)(4), which sets forth the relief available for acts of infringement under section 271(e)(2), provides that upon finding an act of infringement, "the court shall order the effective date of any approval of the drug or veterinary biological product in the infringement to be a date which is *not earlier than* the date of expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A) (emphasis added). As the court noted, "[h]ad Congress intended to limit relief under 271(e)(4)(A) to an order mandating the effective date of the ANDA to be the date of the expiration of the patent, it could have written the provision to say that. But it did not." May 25, 2007 Order, at 17. The court concluded that the "clear and unambiguous language of the statute" sets the date of patent expiration "only as the *earliest* effective date a court may order." *Id.* (emphasis added). *See also Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1280 (D.C. Cir. 2004) ("if Congress has directly spoken to the precise question at issue, we must give effect to Congress's unambiguously expressed intent...") (internal citations omitted).

Reading the statutory patent infringement provisions in conjunction with the provisions governing pediatric exclusivity, the court held that it is within the court's power to order an application found to infringe under section 271(e)(2) to not obtain final approval until after the expiration of the pediatric exclusivity period. May 25, 2007 Order, at 18. The

---

[1] Impax/Apotex have filed for an emergency stay in the Court of Appeals for the Federal Circuit and have represented to the Court that FDA will not act until the Court has acted on their Motion. If this representation is correct, AstraZeneca respectfully requests that FDA rule immediately upon being notified of the Court's decision on that Motion.

statute provides six months of exclusivity "after the date the patent expires (including any patent extensions)" where a drug is the subject of a Paragraph IV certification if "in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed...." 21 U.S.C. § 355a(c)(2)(B). As the court observed, "[n]othing in the language of 21 U.S.C. § 355a(c)(2)(B) requires the Court to render its decision prior to the expiration of the patents." May 25, 2007 Order at 18.

The court further rejected Impax's assertion that because the patents had expired before the court had found the patents valid and infringed, one of the necessary requirements for enforcing pediatric exclusivity against an ANDA with a paragraph IV certification – that a "court determine that the patent is valid and would be infringed" – is not satisfied. The court adopted FDA's conclusion noted in *Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.* that "the absence of a [statutory] provision addressing unresolved patent litigations in the Paragraph IV certification context [does] not mean that Congress intended to exclude such circumstances from the pediatric exclusivity provision." May 25, 2007 Order, at 22, quoting *Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.*, 307 F. Supp. 2d 15, 19 (D.D.C. 2007), *aff'd Ranbaxy Labs. Ltd. v. FDA*, 96 Fed. Appx. 1 (D.C. Cir., Apr. 26, 2004). Denying AstraZeneca pediatric exclusivity simply because the patents had not yet been found valid and infringed at the time of patent expiry would "create an anomalous result that it at odds with Congress's goal in enacting § 355a." May 25, 2007 Order, at 23.

In addition, the court rejected Impax's argument that *Pfizer, Inc. v. Mylan Labs., Inc.*, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006) – the single case cited in the Impax/Apotex letter to suggest that the court may not have jurisdiction to order relief under section 271(e)(4)(A) – dictated dismissal of AstraZeneca's claims under section 271(e)(2). The court discussed and dismissed this argument, noting that "*Pfizer v. Mylan* is not binding precedent on this court. Nor does it consider the detailed statutory analysis, upon which this Court relies." May 25, 2007 Order, at 10, fn. 3.

## II.    Where a district court has proper jurisdiction to decide questions of patent infringement, FDA respects the relief ordered by the court.

It has been settled that, in accordance with *Mylan Labs., Inc., v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004), FDA implements relief ordered by a district court under section 271(e)(4)(A) when the district court had jurisdiction to decide the patent infringement case. *See also* 21 C.F.R. § 314.107(e) (requiring applicants to submit a copy of the entry of the court's order or judgment to the Office of Generic Drugs within 10 working days of a final judgment, presumably so that FDA can give effect to the order).

In the Mylan case, the Vermont district court had held that Mylan infringed Alza's patents, and had ordered that "the effective date of any approval of Mylan's ANDA product shall be no earlier than the date of expiration of the '580 patent family." *Thompson*, 389 F.3d at 1277, quoting *ALZA v. Mylan*, 310 F. Supp. 2d 610, 637 (D. Vt. 2004). The Vermont district court's order did not address whether Mylan was subject to the patent's pediatric

COVINGTON & BURLING LLP

Page 4 of 7

exclusivity period or whether it could instead lawfully market its generic product upon patent expiry. Mylan and Alza then sought a determination from FDA, and the agency concluded that the district court's finding of infringement under section 271(e)(2) "transformed Mylan's ANDA approval into an approval with a delayed effective date, which is a tentative approval that cannot be made effective until FDA issues a letter granting final effective approval." *Thompson*, 389 F.3d at 1277 (internal quotations omitted).

Although the Vermont district court's section 271(e)(4)(A) order in the Mylan case issued before patent expiry, the date of patent expiry in relation to the date of the order is of no moment and does not compel any different result here from that reached by the court in the Mylan case. The only effect of the patent still being in force when the Vermont district court issued its order was on the basis for pediatric exclusivity, not its application. FDA determined that section 355a(c)(2)(A)(i) (the pediatric exclusivity provision for ANDAs with paragraph II certifications) was the appropriate pediatric exclusivity provision because the Vermont district court's order reset the approval date and rendered Mylan's ANDA tentatively approved, therefore, upon patent expiry, Mylan's paragraph IV certification would no longer be accurate and it would convert to a paragraph II certification. *Id.* at 1278.

The Mylan case establishes that once a court resets an ANDA approval date under section 271(e)(4), the approval must be revoked and any previously granted pediatric exclusivity applies. The only effect of the patents having already expired is that pediatric exclusivity blocks Impax and Apotex under 21 U.S.C. § 355a(c)(2)(B) (the provision governing the operation of pediatric exclusivity where an ANDA contains a paragraph IV certification) rather than section 355a(c)(2)(A)(i). Section 355a(c)(2)(B) applies here because at the point that the district court issued its Order granting relief under section 271(e)(4)(A), the Impax and Apotex ANDAs still had final approval (so they had not been required to convert to paragraph II certifications), and section 355a(c)(2)(B)'s requirements for granting relief where the infringing ANDA contains a paragraph IV certification were satisfied. Section 355a(c)(2)(B) sets the pediatric exclusivity period in such cases to six months after patent expiry, and is implemented through the district court Order under 35 U.S.C. § 271(e)(4).

III.    **Contrary to assertions in the Impax/Apotex letter, the district court's Order does not conflict with or usurp FDA's authority.**

FDA, not the district court, determined that AstraZeneca is entitled to pediatric exclusivity. Indeed, the district court made no decision regarding whether AstraZeneca was entitled to pediatric exclusivity. *See, e.g.,* the May 25, 2007 Order, at 5 (noting by way of background "[a]s an initial matter" that "AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B)" which is "set to expire on October 20, 2007."). FDA exercised its statutory authority under 21 U.S.C. § 355a(d) when the agency determined that the pediatric studies submitted by AstraZeneca were adequate to support pediatric exclusivity and granted pediatric exclusivity to the AstraZeneca patents at issue. FDA accordingly published the exclusivity expiration date – October 20, 2007 – in the

COVINGTON & BURLING LLP

Page 5 of 7

Orange Book. *See* 21 U.S.C. § 355a(f). The district court simply exercised its power to enforce patent laws by ordering relief under section 271(e)(4)(A). *See, e.g., Thompson*, 389 F.3d at 1279, n. 5 ("[T]he court owes no deference to the FDA's interpretation of 35 U.S.C. § 271(e)(4)(A), a patent statute provision which the FDA is not charged with administering...."). The relief ordered enforces the pediatric exclusivity period that FDA had previously granted to AstraZeneca.

## IV. The Court's order is fully consistent with FDA's decision in the amlodipine besylate matter.

The Impax/Apotex letter cites FDA's decision in the recent amlodipine besylate matter (FDA Docket No. 07-N-123) to support its bald assertion that "the district court's determination that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax is erroneous" given the facts that the patents expired after Apotex and Impax had final approval and had already been marketing their products and before the district court ruled on the patent litigation. *See* Impax/Apotex letter, at 3. The Impax/Apotex letter's reliance on FDA's administrative decision in the amlodipine matter is inapt.

FDA decided in the amlodipine matter that "pediatric exclusivity does not apply when the ANDA applicant *prevails* in its patent challenge...." Letter from Gary Buehler to Amlodipine Besylate ANDA Applicants (Apr. 19, 2007) ("Amlodipine Letter"), at 6 (emphasis added). Contrary to the Impax/Apotex letter's assertion, however, FDA did *not* conclude that "pediatric exclusivity does *not* apply" to ANDAs that "have final approval at the time of patent expiration...." Impax/Apotex letter, at 5, citing the Amlodipine Letter at 5, fn. 4 (emphasis in original). Indeed, as FDA noted in the amlodipine decision, the ANDA at issue in that decision would have been subject to the brand name manufacturer's pediatric exclusivity if the generic company had lost its patent litigation in the district court — as here — and had the district court's injunction not been stayed by the Federal Circuit.[2]

---

[2] FDA noted the following in the amlodipine decision:

> In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. § 355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. However, before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the

(continued...)

COVINGTON & BURLING LLP

Page 6 of 7


The reason that Mylan's approval of amlodipine was not blocked by Pfizer's pediatric exclusivity was because there was no finding in effect that Mylan infringed the Pfizer patent, not that Mylan was already approved. Thus, FDA's decision in the amlodipine matter is consistent with the agency's and the court's position in the Mylan case: an ANDA with final approval converts to tentative approval upon a district court finding the patent valid and infringed. *See Thompson,* 332 F. Supp. 2d at 111.

Here, the Impax and Apotex applications became tentatively approved pursuant to the district court's Order and the court's application of 35 U.S.C. § 271(e)(4)(A). The court's Order setting the effective date of approval of the Impax and Apotex applications to no earlier than October 20, 2007 is a result entirely consistent with the amlodipine decision.

\*　　　\*　　　\*

After Impax and Apotex lost their patent litigation suits in the district court, the court properly exercised its jurisdiction and authority in patent infringement litigation to order relief under of 35 § U.S.C. 271(e)(4)(A), and set the effective date of approval to be no earlier than October 20, 2007. The decision in the Mylan case, which did not rest on whether the patent at issue expired before or after the court found the patent valid and infringed, controls in this case. In accordance with the Order and with FDA's traditional respect for judicial decisions in patent matters, FDA must return Impax's and Apotex's ANDAs to tentative approval status, and the applications may not be granted final approval before the expiration of the pediatric exclusivity period.

Respectfully Submitted,

Peter O. Safir


approval status of Mylan's ANDA from approved to tentatively approved.
Amlodipine Letter at 5-6, n. 4 (internal citations omitted).

COVINGTON & BURLING LLP

Page 7 of 7

cc:

Gary Buehler, Director
Office of Generic Drugs
7500 Standish Place
Rockville, MD 20855
240-276-9327 (f)

Errol B. Taylor, Esq.
Counsel for Plaintiff
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
212-822-5545 (f)

Robert S. Silver, Esq., Outside Counsel for Apotex
Caesar, Rivise, Bernstein,
Cohen and Pokotilow, Ltd.
1635 Market Street
11th Floor
Philadelphia, PA 19103-2212
215-751-1142 (f)

Jeffrey J. Toney, Esq., Outside Counsel for Impax
Sutherland, Asbill & Brennann LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309-3996
404-853-8806 (f)

# Tab 5

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

**FACSIMILE**

DATE

June 26, 2007

TOTAL PAGES W/COVER

5

| FROM | EMAIL | FAX | TEL |
|------|-------|-----|-----|
| Peter Safir | psafir@cov.com | 202-778-5162 | 202-662-5162 |

| TO | | FAX | TEL |
|------|------|-----|-----|
| Ms. Liz Dickinson | | 301-443-0739 | |

REMARKS

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE ADDRESSEE SHOWN ABOVE. IT MAY CONTAIN INFORMATION THAT IS
PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE. ANY REVIEW, DISSEMINATION OR USE OF THIS
TRANSMISSION OR ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED
THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND MAIL THE ORIGINAL TO US AT THE ABOVE ADDRESS.

SUITE NUMBER:    1061A

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### 717 MADISON PLACE, N.W.
### WASHINGTON, D.C. 20439

JAN HORBALY
CLERK

TELEPHONE: (202) 633-6550
FAX: (202) 633-9623



## FAX MATERIAL COVER SHEET

TO: **Errol Taylor**

FROM: **S. McKEW - CLERKS OFFICE**

This is page 1 of **4** pages being transmitted.

Day sent: **6/26/07**

Message/Instructions:

***************************************************
### FOR QUESTIONS, CALL (202) 633-6550
### FOR RETURN FAX, DIAL (202) 633-9623
***************************************************

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

## IN RE OMEPRAZOLE PATENT LITIGATION

2007-1414, -1416

ASTRAZENECA AB, AKTIEBOLAGET HASSLE,
KBI-E, INC., KBI INC., and ASTRAZENECA, LP,

Plaintiffs-Appellees,

v.

APOTEX CORP., APOTEX, INC.,
and TORPHARM, INC.,

Defendants-Appellants,

and

IMPAX LABORATORIES, INC.,

Defendants-Appellants,

ON MOTION

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MAYER, Circuit Judge.

NEWMAN, Circuit Judge.

## O R D E R

Apotex Corp. et al. and Impax Laboratories, Inc. each move for a partial stay, pending appeal, of the June 14, 2007 judgment of the United States District Court for the Southern District of New York. AstraZeneca AB et al. oppose. Apotex replies

AstraZeneca sued Apotex and Impax for infringement. The patent in suit expired on April 20, 2007. The district court entered judgment of infringement on June 14, 2007. The district court's judgment includes an order that states "the effective date of approval for the . . . products and related ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." Apotex and Impax move to stay that portion of the judgment.

To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor. Hilton v. Braunskill, 481 U.S. 770, 778 (1987). In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990).

The district court indicated it had the authority to issue the disputed portion of the judgment pursuant to 35 U.S.C. § 271(e)(4)(A), which states that the court shall order the effective date of any ANDA to be "not earlier than the date of the expiration of the patent which has been infringed." In a May 25, 2007 order, the district court noted that the statute does not expressly require the date of approval to be the date of expiration of the patent, but instead a date "not earlier than" the expiration of the patent, and thus the district court determined that it had the authority to order that the date of any ANDA approval be not earlier than the expiration of the pediatric exclusivity period. To support its determination, the district court noted that one of the

statutes governing pediatric exclusivity, 21 U.S.C. § 356a(b)(2)(B), states that the period during which an ANDA may not be approved "shall be extended by a period of six months after the date the patent expires".

We have considered the parties' arguments. No challenges to infringement or invalidity determinations have been made. The district court was faced with a difficult question, i.e., what relief may be afforded to a patentee who is entitled to a pediatric exclusivity period after expiration of the patent. Based upon the papers submitted, Apotex and Impax have not shown that they are likely to succeed in showing that the district court erred in reading 35 U.S.C. § 271(e)(4)(A) in conjunction with the pediatric exclusivity statute or that the harms weigh heavily in their favor.

Accordingly,

IT IS ORDERED THAT:

The motions are denied.

FOR THE COURT

JUN 2 6 2007
_____
Date

Pauline Newman
Circuit Judge

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

JUN 2 6 2007

JAN HORBALY
CLERK

cc:    Errol B. Taylor, Esq.
       Robert S. Silver, Esq.
       Blair M. Jacobs, Esq.

s8

2007-1414, -1416                    3

# Tab 6

 DEPARTMENT OF HEALTH & HUMAN SERVICES

Food and Drug Administration
Rockville, MD  20857

ANDA 76-048

Apotex Corp.
Attention: Tammy McIntire
2400 N. Commerce Parkway, Suite 400
Weston, FL  33326

Sent by Facsimile and U.S. Mail

Dear Ms. McIntire:

This is in reference to your abbreviated new drug application (ANDA) dated December 5, 2000, submitted pursuant to section 505(j) of the Federal Food, Drug, and Cosmetic Act (Act), for Omeprazole Delayed-release Capsules, 10 mg, 20 mg, and 40 mg.[1]

Your ANDA was approved on October 6, 2003, because the 30-month period identified in section 505(j)(5)(B)(iii) of the Act, during which time FDA was precluded from approving your ANDA, had expired. The October 6, 2003 approval pertained to the 10 mg and 20 mg strengths only; the agency letter of October 6, 2003, tentatively approved the 40 mg strength. The statute anticipates that in some cases an ANDA may be approved before litigation concerning the listed patents is completed. Section 505(j)(5)(B)(iii). This leaves open the possibility that, as happened with these products, the approved drug products will later be found to infringe a listed patent.

As you know, on June 14, 2007, Judge Barbara Jones of the United States District Court for the Southern District of New York, issued a Judgment in *In re Omeprazole Patent Litigation*, M-21-81 (BSJ) that affects the status of your ANDA. The court ordered that "Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of approval for the aforementioned products and related ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." See Judgment, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), at ¶ 3.

We are writing to inform you that, in light of this court order, the Agency hereby converts the final approval of ANDA 76-048 issued on October 6, 2003, to a tentative approval. Therefore, your ANDA is now **tentatively approved**. Final approval cannot be granted earlier than October 20, 2007.

---

[1] The reference listed drug (RLD) upon which you have based your ANDA, AstraZeneca's Prilosec Delayed-release Capsules, is subject to periods of patent protection and pediatric exclusivity. As noted in the Agency's publication titled Approved Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book"), the pediatric exclusivity periods of U.S. Patent Nos. 4,786,505 (the '505 patent) and 4,853,230 (the '230 patent) are scheduled to expire on October 20, 2007. The other patents listed in the Orange Book for Prilosec Delayed-release Capsules were not the subjects of litigation and therefore are not relevant to the action the Agency is taking in this letter.

Because the Agency is granting a tentative approval for this ANDA, when you believe that your ANDA may be considered for final approval, you must amend your ANDA to notify the Agency regarding whether circumstances have or have not arisen that may affect the effective date of final approval. To reactivate your ANDA, please submit an amendment at least 60 days (but not more than 90 days) prior to the date your ANDA will be eligible for final approval. This amendment should identify changes, if any, in the conditions under which the product was tentatively approved, and should include updated information such as final printed labeling, chemistry, manufacturing, and controls data as appropriate. Please note that this amendment should be submitted even if none of these changes were made. The amendment should be designated clearly in your cover letter as a MINOR AMENDMENT. In addition to this amendment, the Agency may request at any time prior to the final date of approval that you submit an additional amendment containing the information described above. Any changes in the conditions outlined in this ANDA as well as changes in the status of the manufacturing and testing facilities' compliance with current good manufacturing procedures are subject to Agency review before final approval of the ANDA will be made.

The drug products that are the subject of this ANDA may not be marketed without final Agency approval under section 505 of the Act. The introduction or delivery or introduction into interstate commerce of this drug before the effective final approval date is prohibited under section 301(d) of the Act.

For further information regarding this issue, please contact Cecelia Parise, R.Ph., Regulatory Policy Advisor to the Director, Office of Generic Drugs, at (240) 276-9310.

Sincerely yours,


Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research


cc:    Sheldon Bradshaw, Office of the Chief Counsel

---

**This is a representation of an electronic record that was signed electronically and this page is the manifestation of the electronic signature.**

---

/s/
- - - - - - - - - - - - - - - - - - - - -
Gary Buehler
6/28/2007 12:06:26 PM

# Tab 7

DEPARTMENT OF HEALTH & HUMAN SERVICES

Food and Drug Administration
Rockville, MD 20857

ANDA 75-785

Impax Laboratories, Inc.
Attention: Mark C. Shaw
30831 Huntwood Avenue
Hayward, CA 94544

Sent by Facsimile and U.S. Mail

Dear Mr. Shaw:

This is in reference to your abbreviated new drug application (ANDA) dated December 31, 1999, submitted pursuant to section 505(j) of the Federal Food, Drug, and Cosmetic Act (Act), for Omeprazole Delayed-release Capsules, 10 mg, 20 mg, and 40 mg.[1]

Your ANDA was approved on November 8, 2002, because the 30-month period identified in section 505(j)(5)(B)(iii) of the Act, during which time FDA was precluded from approving your ANDA, had expired. The November 8, 2002 approval pertained to the 10 mg and 20 mg strengths only; the agency letter of November 8, 2002, tentatively approved the 40 mg strength. The statute anticipates that in some cases an ANDA may be approved before litigation concerning the listed patents is completed. Section 505(j)(5)(B)(iii). This leaves open the possibility that, as happened with these products, the approved drug products will later be found to infringe a listed patent.

As you know, on June 14, 2007, Judge Barbara Jones of the United States District Court for the Southern District of New York, issued a Judgment in *In re Omeprazole Patent Litigation*, M-21-81 (BSJ) that affects the status of your ANDA. The court ordered that "Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of approval for the aforementioned products and related ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." See Judgment, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), at ¶ 6.

We are writing to inform you that, in light of this court order, the Agency hereby converts the final approval of ANDA 75-785 issued on November 8, 2002, to a tentative approval. Therefore, your ANDA is now **tentatively approved**. Final approval cannot be granted earlier than October 20, 2007.

---

[1] The reference listed drug (RLD) upon which you have based your ANDA, AstraZeneca's Prilosec Delayed-release Capsules, is subject to periods of patent protection and pediatric exclusivity. As noted in the Agency's publication titled Approved Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book"), the pediatric exclusivity periods of U.S. Patent Nos. 4,786,505 (the '505 patent) and 4,853,230 (the '230 patent) are scheduled to expire on October 20, 2007. The other patents listed in the Orange Book for Prilosec Delayed-release Capsules were not the subjects of litigation and therefore are not relevant to the action the Agency is taking in this letter.

Because the Agency is granting a tentative approval for this ANDA, when you believe that your ANDA may be considered for final approval, you must amend your ANDA to notify the Agency regarding whether circumstances have or have not arisen that may affect the effective date of final approval. To reactivate your ANDA, please submit an amendment at least 60 days (but not more than 90 days) prior to the date your ANDA will be eligible for final approval. This amendment should identify changes, if any, in the conditions under which the product was tentatively approved, and should include updated information such as final printed labeling, chemistry, manufacturing, and controls data as appropriate. Please note that this amendment should be submitted even if none of these changes were made. The amendment should be designated clearly in your cover letter as a MINOR AMENDMENT. In addition to this amendment, the Agency may request at any time prior to the final date of approval that you submit an additional amendment containing the information described above. Any changes in the conditions outlined in this ANDA as well as changes in the status of the manufacturing and testing facilities' compliance with current good manufacturing procedures are subject to Agency review before final approval of the ANDA will be made.

The drug products that are the subject of this ANDA may not be marketed without final Agency approval under section 505 of the Act. The introduction or delivery or introduction into interstate commerce of this drug before the effective final approval date is prohibited under section 301(d) of the Act.

For further information regarding this issue, please contact Cecelia Parise, R.Ph., Regulatory Policy Advisor to the Director, Office of Generic Drugs, at (240) 276-9310.

Sincerely yours,


Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research


cc:    Sheldon Bradshaw, Office of the Chief Counsel

**This is a representation of an electronic record that was signed electronically and this page is the manifestation of the electronic signature.**

/s/
- - - - - - - - - - - - - - - - - - - -
Gary Buehler
6/28/2007 12:05:35 PM