**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APOTEX INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 07-cv-01194-RMU |
| | ) |
| FOOD AND DRUG ADMINISTRATION, *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**APOTEX'S MEMORANDUM OF LAW IN
OPPOSITION TO FDA'S MOTION TO DISMISS**

William A. Rakoczy, D.C. Bar No. 489082
Amy D. Brody, D.C. Bar No. 478100
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301

Arthur Y. Tsien, D.C. Bar No. 411579
Kathryn E. Balmford, D.C. Bar No. 482279
OLSSON FRANK WEEDA TERMAN BODE MATZ PC
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212

Dated:  September 10, 2007

*Counsel for Apotex Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

I.    Statutory Background. ................................................................................................ 4

      A.    Brand Drugs – NDAs And Patent Listing Requirements. ...................................... 4

      B.    Generic Drugs – ANDAs And Patent Certifications. ............................................ 5

      C.    Pediatric Exclusivity. ............................................................................................ 7

II.   Factual Background. ................................................................................................... 8

      A.    The Reference-Listed Drug And Orange Book Patents. ......................................... 8

      B.    Apotex's ANDA No. 76-048 For Omeprazole Delayed-Release Capsules
            10 mg And 20 mg. ................................................................................................. 8

      C.    The New York District Court Judgment. ............................................................... 9

      D.    FDA's Unlawful Decision Revoking And Converting Apotex's Final
            Approval To A Tentative Approval. ...................................................................... 11

ARGUMENT ..................................................................................................................... 12

APOTEX HAS STATED A CLAIM FOR, AND IS ENTITLED TO, RELIEF UNDER
      THE APA FOR FDA'S ARBITRARY, CAPRICIOUS AND UNLAWFUL
      DECISION ................................................................................................................. 13

I.    Apotex Is Not Collaterally Attacking The New York Court's Order, But Rather
      FDA's Arbitrary And Slipshod Implementation Of That Order To Withdraw
      Apotex's Longstanding Approval Without Any Reasoned Basis Or Authority. ............... 14

II.   FDA Had No Lawful Authority Or Basis To Revoke Or Convert Apotex's
      Longstanding Approval Because There Is No Pediatric Exclusivity Applicable To
      Apotex's ANDA. ....................................................................................................... 15

      A.    Under The Agency's Own Binding Precedent, Pediatric Exclusivity
            Simply Does Not Apply To An ANDA, Like Apotex's Omeprazole
            ANDA Here, That Is Already Finally Approved Prior To Patent
            Expiration. ........................................................................................................... 16

      B.    FDA's Decision Violates The Plain Language Of The Relevant Statutes. ........... 20

i

C.      FDA's Slipshod Decision Is Not Entitled To Any Deference From This
        Court. ................................................................................................................ 22

III.    FDA Was Not Bound By, And Should Not Have Blindly "Implemented," The
        New York Court's Judgment. ........................................................................... 24

        A.      FDA Admits That The Agency Alone Has The Statutory Authority To
                Determine Whether An NDA-Holder Has Pediatric Exclusivity. ........................ 26

        B.      FDA Cannot Shirk Its Duties By Relying Blindly On The New York
                Court's Construction Of The Pediatric Exclusivity Statute, Which Does
                Not, And Indeed Cannot, Trump The Agency's Own Interpretation. .................. 27

        CONCLUSION ...................................................................................................... 31

# TABLE OF AUTHORITIES

## Federal Cases

\* *Am. Bioscience, Inc. v. Thompson,*
   269 F.3d 1077 (D.C. Cir. 2001) ................................................................. 26, 31

*Barnhart v. Walton,*
   535 U.S. 212 (2002) ........................................................................................ 22

\* *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
   489 U.S. 141 (1989) ........................................................................................ 20

*Bracco Diagnostics, Inc. v. Shalala,*
   963 F. Supp. 20 (D.D.C. 1997) ..................................................................... 17

*Bush-Quayle '92 Primary Comm. v. FEC,*
   104 F.3d 448 (D.C. Cir. 1997) ...................................................................... 17

\* *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) .................................................................................. 21, 22

\* *Columbia Broad. Sys., Inc. v. FCC,*
   454 F.2d 1018 (D.C. Cir. 1971) .................................................................... 17

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS,*
   300 F. Supp. 2d 32 (D.D.C. 2004) ................................................................ 17

*In re Barr Labs., Inc.,*
   930 F.2d 72 (D.C. Cir. 1991) .......................................................................... 4

*In re Sealed Case,*
   No. 04-5313, 2007 WL 2067029 (D.C. Cir. June 29, 2007) ...................... 12

*Ind. Mich. Power Co. v. Dep't of Energy,*
   88 F.3d 1272 (D.C. Cir. 1996) ...................................................................... 21

*Indep. Petroleum Ass'n of Am. v. Babbitt,*
   92 F.3d 1248 (D.C. Cir. 1996) ...................................................................... 17

*INS v. Cardoza-Fonseca,*
   480 U.S. 421 (1987) ........................................................................................ 23

*Kearns v. Chrysler Corp.,*
   32 F.3d 1541 (Fed. Cir. 1994) ...................................................................... 20

*Malcomb v. Island Creek Coal Co.,*
   15 F.3d 364 (4th Cir. 1994) .......................................................................... 24

   *\*Authorities upon which
   Apotex chiefly relies are
   marked with asterisks.*

iii

*Mova Pharms. Corp. v. Shalala*,
  140 F.3d 1060 (D.C. Cir. 1998) ........................................................ 21

\* *Mylan Labs., Inc. v. Leavitt*,
  484 F. Supp. 2d 109 (D.D.C. 2007) ........................................... 7, 16, 26

\* *Mylan Labs., Inc. v. Thompson*,
  332 F. Supp. 2d 106 (D.D.C. 2004) .......................................... 26, 30, 31

\* *Mylan Labs., Inc. v. Thompson*,
  389 F.3d 1272 (D.C. Cir. 2004) .............................................. 18, 19, 26

\* *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ............................................................ 28, 29

*Pfizer, Inc. v. Mylan Labs., Inc.*,
  No. 02cv1628, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006) ............... 6, 9

*Teva Pharms. USA, Inc. v. FDA*,
  182 F.3d 1003 (D.C. Cir. 1999) ..................................................... 5

\* *Teva Pharms. USA, Inc. v. FDA*,
  441 F.3d 1 (D.C. Cir. 2006) ...................................................... 28, 30

*Transactive Corp. v. United States*,
  91 F.3d 232 (D.C. Cir. 1996) ....................................................... 18

*United States v. Mead*,
  533 U.S. 218 (2001) ................................................................. 22

*Wash. Legal Found. v. Kessler*,
  880 F. Supp. 26 (D.D.C. 1995) .................................................. 4, 12

## Federal Statutes

21 U.S.C. § 355(b)(1) ...................................................................... 5

21 U.S.C. § 355(c)(2) ...................................................................... 5

21 U.S.C. § 355(j)(2)(A) ................................................................... 5

21 U.S.C. § 355(j)(2)(A)(vii) ............................................................. 5

21 U.S.C. § 355(j)(2)(B) ................................................................... 6

\* 21 U.S.C. § 355(j)(5)(B)(iii) ....................................................... 6, 22

\* 21 U.S.C. § 355a ........................................................................ 7

21 U.S.C. § 355a(c)(2)(B)................................................................................................ 21

21 U.S.C. § 355a(d) ......................................................................................................... 26

21 U.S.C. § 355a(f) .......................................................................................................... 26

\*  35 U.S.C. § 271(e)(4)(A) ............................................................................................. 6, 22

5 U.S.C. § 706(2) ............................................................................................................. 13

**Federal Regulations**

21 C.F.R. § 314.53(e)......................................................................................................... 5

**Other Authorities**

FDA, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under
Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999).............................. 26

Apotex respectfully submits this brief in opposition to FDA's Rule 12(b)(6) motion to dismiss Apotex's Complaint. In a cursory two-page letter, dated June 28, 2007, FDA unlawfully revoked the final approval of Apotex's generic omeprazole capsules. FDA's decision ignores and violates the Agency's own precedent and constitutes a complete abdication of the Agency's statutory authority and obligation. Apotex therefore filed this action to set aside FDA's decision as arbitrary, capricious and contrary to law under the Administrative Procedures Act ("APA"), and to enjoin the revocation of Apotex's lawful final approval. Apotex also moved for emergency injunctive relief, which remains pending, to alleviate the devastating and irreparable injury that Apotex continues to suffer as a direct result of FDA's unlawful decision. As discussed below and in Apotex's injunction papers,[1] because Apotex has stated a viable claim for, and indeed is entitled to, relief under the APA for FDA's unlawful conduct, the Court should deny FDA's baseless motion to dismiss in its entirety.[2] The Court also should enter immediate injunctive relief setting aside FDA's unlawful decision.

## INTRODUCTION

At issue here is the prescription anti-ulcer medication omeprazole, which AstraZeneca ("Astra") first marketed under the brand-name Prilosec®. Apotex had lawfully marketed lower-priced generic omeprazole to American consumers for **over 3 years** pursuant to an approval granted by FDA in 2003. To obtain that approval, Apotex filed an ANDA for generic omeprazole in December 2000 challenging Astra's Prilosec® patents. In response, Astra sued Apotex and triggered an automatic 30-month stay of FDA approval of Apotex's ANDA. After that stay expired, FDA granted final approval of Apotex's ANDA on October 6, 2003. When

---

[1] *See* Apotex's opening TRO/PI Brief (Dkt. Entry 3) and Reply Brief (Dkt. Entry 11), which Apotex respectfully incorporates by reference herein.

[2] For the same reasons, the Court also should reject the baseless arguments in Astra's so-called three-page "Response" (Dkt. Entry 25), which merely parrot the arguments in its TRO/PI opposition papers.

Astra deliberately chose not to seek a preliminary injunction, Apotex began commercially marketing its generic product shortly thereafter, ***and continued to do so after Astra's patents naturally expired on April 20, 2007***. Prior to patent expiration, no ruling on infringement or validity had occurred, and as FDA itself concedes, no exclusivity of any kind existed that would affect Apotex's final approval. The expiration of Astra's patents should have put an end to any possible impediment to Apotex's approval—as of that date, there was no possible exclusivity period.

But in an unprecedented administrative decision issued on June 28, 2007, ***well after patent expiration***, FDA stripped Apotex of the lawful final approval that it enjoyed for over 3 years. FDA based its cursory two-page letter decision solely on a order ***entered well after patent expiration*** by the district court hearing the patent action that purports to reset the effective date of Apotex's approval to the expiration of Astra's supposed "pediatric exclusivity" on October 20, 2007. Simply put, however, there is no such exclusivity against Apotex. FDA itself conclusively determined in another matter just two months before the decision under review here that pediatric exclusivity does not exist or apply to ANDAs that are already finally approved before patent expiration. The Agency therefore had no lawful basis or authority to rescind or convert Apotex's final approval. Nor was FDA bound by the patent court's order in any event, but rather was obligated to engage in independent and reasoned agency decision making on an issue that Congress delegated and entrusted solely to FDA, not the district court. No reasoning or analysis of any kind occurred here, let alone that required by statute. Far from it in fact—FDA completely abdicated its statutory obligation to determine the existence of pediatric exclusivity in the first instance. Such *ad hoc* decision making, which is bereft of any reasoning at all, is entitled to no deference from this Court.

FDA now moves to dismiss by trotting out—in 4 whole pages—many of the same baseless arguments from its TRO/preliminary injunction response. But such arguments did not hold water then, and should fare no better now. Indeed, FDA's concessions, express or implied, make clear that the Agency's decision cannot stand under any circumstances. FDA concedes that Apotex's ANDA was lawfully approved *years* before expiration of the relevant patents and any ruling on infringement or validity, and that such ruling occurred well after patent expiration. ***Nor does FDA dispute that, as of patent expiration on April 20, 2007, there was no pediatric exclusivity blocking or otherwise delaying Apotex's approval, which remained intact and perfectly lawful.*** FDA, moreover, does not even attempt to explain, much less justify, how such exclusivity was somehow revived or magically reappeared based on a ruling issued months after patent expiration—and for good reason, because there is none, statutory or otherwise. Absent such exclusivity (or, at the very least, some reasoned explanation from FDA as to why it applies here), FDA had no basis or authority to rescind or convert Apotex's lawful approval. No more is required for denial of the motion to dismiss, or to set aside FDA's decision as arbitrary, capricious and contrary to law under the APA. Rather than address the pediatric exclusivity question that underlies its decision, FDA dodges the issue entirely, suggesting that it was somehow bound to follow the New York Court's order regardless of whether there was any pediatric exclusivity or not. This head-in-the-sand approach is an unprecedented abdication of the Agency's statutory obligation to determine whether pediatric exclusivity applies in the first instance, not to mention an impermissible departure from the Agency's own binding precedent in the amlodipine matter.

FDA's characterization of this action as a collateral attack on another court also is meritless. Apotex does not—and indeed does not need to—collaterally attack the New York

Court's authority or order in this proceeding.  Quite the contrary, Apotex challenges the slipshod manner in which FDA blindly implemented that order without first considering whether, in fact, there is any pediatric exclusivity to begin with, just as the Agency has done in other matters and as Congress entrusted it to do.  Because there is no such exclusivity here and thus no basis to rescind Apotex's approval, and because this Court owes no deference to the arbitrary and capricious manner in which FDA blindly implemented and felt itself bound by the New York Court's order, the Court must deny FDA's motion and set aside the Agency's decision.[3]

## BACKGROUND

Apotex's well-pleaded allegations (which the Court must presume are true and from which it must draw all reasonable inferences in favor of Apotex, *see Washington Legal Foundation v. Kessler*, 880 F. Supp. 26, 31 (D.D.C. 1995)) that require denial of the motion, are as follows.

I.    **Statutory Background.**

This action arises in connection with the 1984 Hatch-Waxman Amendments, which amended the Federal Food, Drug, and Cosmetic Act ("FFDCA") and the patent laws "to get generic drugs into the hands of patients at reasonable prices—fast."  *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

A.    **Brand Drugs – NDAs And Patent Listing Requirements.**

A company that seeks to sell a new drug must file with FDA a New Drug Application ("NDA").  (*See* Compl. ¶ 10).  The applicant must include in its NDA, *inter alia*, technical data

---

[3] While not formally requesting that the Court convert Apotex's motion, FDA casually suggests that its motion to dismiss may be converted and treated as one for summary judgment.  (*See* FDA Mem. (Dkt. Entry 22) at 3 n.1).  Apotex disagrees to the extent that FDA has not even attempted to demonstrate that it is entitled to summary judgment in its favor, either factually or legally.  Moreover, FDA should not be permitted to further prejudice Apotex, which continues to suffer irreparable and devastating injury every day it goes without approval, by further delaying adjudication of Apotex's motion for emergency injunctive relief.

on the composition of the drug, the means for manufacturing it, clinical trial results establishing its safety and effectiveness, and labeling describing the use for which approval is requested. *See* 21 U.S.C. § 355(b)(1); (Compl. ¶ 10). The applicant also must submit information to FDA with respect to any patent that "claims the drug for which the application was submitted or which claims a method of using such drug . . . ." 21 U.S.C. § 355(c)(2); *see also* 21 U.S.C. § 355(b)(1); (Compl. ¶ 11). FDA publishes all such patent information in the "Orange Book." *See* 21 C.F.R. § 314.53(e); (Compl. ¶ 11).

**B.    Generic Drugs – ANDAs And Patent Certifications.**

Before 1984, a company seeking to market a generic version of an FDA-approved NDA drug had to complete expensive and time-consuming safety and efficacy studies on the drug, even though the NDA-holder already had established the drug's safety and efficacy. In 1984, Congress simplified the procedure for obtaining approval of generic drugs with the Hatch-Waxman Amendments to the FFDCA. Under Hatch-Waxman, "an abbreviated new drug application process allows applicants . . . to proceed more quickly to the marketplace." *Teva Pharms. USA, Inc. v. FDA*, 182 F.3d 1003, 1004 (D.C. Cir. 1999); (*see also* Compl. ¶ 12).

An ANDA applicant must establish that its generic drug product is bioequivalent to the NDA drug. *See* 21 U.S.C. § 355(j)(2)(A); (Compl. ¶ 12). The ANDA also must include a "certification" to any properly-listed Orange Book patent. *See* 21 U.S.C. § 355(j)(2)(A)(vii); (Compl. ¶ 13). The statute provides for the following four certification options: (I) that there is no patent information; (II) that the listed patent has expired, a so-called "paragraph II certification"; (III) that the ANDA applicant will not market its generic drug until after expiration of the listed patent, a so-called "paragraph III certification"; or (IV) that the listed patent is invalid and/or will not be infringed by the proposed drug, a so-called "paragraph IV certification." 21 U.S.C. § 355(j)(2)(A)(vii).

With certain exceptions not applicable here, an ANDA applicant seeking FDA approval to market its generic drug prior to the expiration of the Orange Book-listed patent must submit a paragraph IV certification and notify the patentee and NDA-holder of the factual and legal bases for that certification. *See* 21 U.S.C. § 355(j)(2)(B); (Compl. ¶ 14). The submission of an ANDA with a paragraph IV certification constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A), thereby vesting the district courts with subject matter jurisdiction to adjudicate whether the proposed generic drug infringes the subject patent before the drug has actually been marketed. (*See* Compl. ¶ 15).

If the patentee or NDA-holder does not bring suit against the ANDA applicant within 45 days of receiving the notice letter, the statute mandates that FDA "shall" approve the ANDA immediately, once FDA's approval requirements have been satisfied. *See* 21 U.S.C. § 355(j)(5)(B)(iii). If, however, the brand company brings suit within 45 days, FDA "shall" approve the ANDA immediately upon expiration of the 30-month stay referenced in the statute. *See id.*; (*see also* Compl. ¶ 16).

Before expiration of the 30-month stay, if the district court hearing the patent infringement suit decides that the patent is valid and infringed, the court may enter an order stating that the effective date of approval of the ANDA shall be a date that is not earlier than expiration of the patent. *See* 35 U.S.C. § 271(e)(4)(A); *see also* 21 U.S.C. § 355(j)(5)(B)(iii) (noting that § 271(e)(4)(A) relief applies only where the district court decides that the patent is infringed "before the expiration of such [30-month] period"); (Compl. ¶ 17). But the court has no jurisdiction or authority to enter such an order ***after the patent expires***. *See Pfizer, Inc. v. Mylan Labs., Inc.*, No. 02cv1628, 2006 WL 2990398, at *3 (W.D. Pa. Oct. 18, 2006) (dismissing § 271(e)(2)(A) claims against ANDA-filer after patent expiration for lack of

subject matter jurisdiction, even though pediatric exclusivity still had not, to the extent applicable, expired). FDA, moreover, may not revoke and/or convert the effective final approval of an ANDA after expiration of the relevant patent. (*See* Compl. ¶¶ 17-19).

### C. Pediatric Exclusivity.

In certain circumstances, if an NDA-holder conducts clinical studies in the pediatric population at FDA's request, FDA may award an additional six-month period of so-called marketing exclusivity, commonly known as "pediatric exclusivity." *See* 21 U.S.C. § 355a; (Compl. ¶ 20). This six-month period of exclusivity granted under Section 355a does *not* extend the term of any relevant patent, but rather merely attaches six months to the end of any other exclusivities already in existence. (*See* Compl. ¶¶ 21-22). Application of Section 355a delays the period during which FDA may approve certain pending ANDAs. (*Id.*)

More pertinent here, the six-month period of pediatric exclusivity granted by Section 355a does ***not*** apply to or otherwise delay ANDAs with paragraph IV certifications that are already finally approved, and for which there had been no court decision of infringement or validity, as of the date of patent expiration. (*See* Compl. ¶ 23). FDA reached this conclusion in an April 18, 2007 decision letter in a matter involving generic versions of the drug Norvasc® (amlodipine). (*See* AR[4] Tab 3, Ex. 4 at 5 n.4 (citing 21 U.S.C. § 355a(c)(2)(A)-(B)) (concluding that ANDAs that stand finally approved at the time the final blocking patent expires are "not blocked by [a brand manufacturer's] pediatric exclusivity . . . under the literal terms of the [pediatric exclusivity] statute"); Compl. ¶ 23). FDA's decision was upheld by Judge Urbina of this Court. *Mylan Labs., Inc. v. Leavitt*, 484 F. Supp. 2d 109 (D.D.C. 2007) ("*Amlodipine*"), *appeal pending*, No. 07-5156 (D.C. Cir.); (Compl. ¶ 23).

---

[4] References to "AR" are to the Administrative Record filed by FDA in this litigation (Dkt. Entry 7), on which FDA relies in its current motion to dismiss.

## II.    Factual Background.

### A.    The Reference-Listed Drug And Orange Book Patents.

The reference-listed drug upon which Apotex based its ANDA is Astra's Prilosec® (omeprazole) delayed-release capsules. (*See* Compl. ¶ 24). FDA first approved Prilosec® on September 14, 1989, pursuant to NDA No. 19-810. (*Id*.) This product is used for, among other things, the treatment of gastroesophageal reflux disease. (*Id*.) Astra submitted information on several patents for listing in the Orange Book in connection with Prilosec®, of which two are relevant here:  (a) U.S. Patent No. 4,786,505 ("the '505 patent"); and (b) U.S. Patent No. 4,853,230 ("the '230 patent"). (*Id*. ¶ 25). **The '505 and '230 patents both expired on April 20, 2007**. (*Id*. ¶ 26). FDA also awarded Astra a period of pediatric exclusivity in connection with Prilosec® that, **to the extent applicable**, expires on October 20, 2007. (*Id*. ¶¶ 27-28).

### B.    Apotex's ANDA No. 76-048 For Omeprazole Delayed-Release Capsules 10 mg And 20 mg.

On December 5, 2000, Apotex submitted ANDA No. 76-048 for generic omeprazole delayed-release capsules in, among others, 10 mg and 20 mg strengths. (*See* Compl. ¶ 29). Apotex's ANDA contains paragraph IV certifications to, among others, the listed '505 and '230 patents. (*Id*. ¶ 30). As required by statute and regulation, Apotex duly notified Astra of its ANDA and paragraph IV certifications, together with the legal and factual bases for those certifications. (*Id*.) In response to the filing and notice of Apotex's paragraph IV ANDA, Astra sued Apotex for alleged infringement of the '505 and '230 patents under 35 U.S.C. § 271(e)(2)(A) in the United States District Court for the Southern District of New York ("the New York Court"). (*Id*. ¶ 31). The only 30-month stay arising out of the New York action expired years ago in 2003. (*Id*. ¶ 32).

On October 6, 2003, FDA granted final approval of Apotex's ANDA 76-048 for the 10 mg and 20 mg products, finding that these generic products are safe and effective for use in accordance with the approved labeling. (*See* Compl. ¶ 33). Apotex commercially launched its 10 mg and 20 mg generic products soon thereafter, and had been providing its lower-priced generic version of this important medicine to consumers since that time. (*Id*. ¶ 34). At no time prior to patent expiration did Astra attempt to challenge Apotex's final effective approval or otherwise attempt to preclude the commercial marketing of Apotex's competing generic products. (*Id*. ¶ 37). In fact, Astra made the calculated decision not to seek any type of preliminary injunctive relief. Several other generic companies, including Mylan, Lek and Impax, also commercially launched and have been marketing competing generic omeprazole products for years as well. (*Id*. ¶ 35).

On April 20, 2007, the '505 and '230 patents-in-suit naturally expired before any adjudication of infringement or validity by the New York Court. (*See* Compl. ¶ 36). Because Apotex's ANDA was finally approved *years* before the patents expired and before any ruling on infringement or validity, it was not subject to any pediatric exclusivity. (*Id*. ¶ 38). In fact, as of the day the patents expired on April 20, 2007, FDA concedes that there was no pediatric exclusivity delaying, blocking or otherwise affecting Apotex's lawfully granted final approval.

### C.     The New York District Court Judgment.

The expiration of the '505 and '230 patents should have divested the New York Court of any jurisdiction to enter an order under § 271(e)(4)(A). *See Pfizer*, 2006 WL 2990398, at *3. Nevertheless, on June 14, 2007, despite the expiration of the patents, the New York Court entered judgment against Apotex and others under § 271(e)(2)(A). (*See* Compl. ¶ 39). Under that judgment, the New York Court concluded that Apotex's omeprazole products infringe certain claims of the '505 and '230 patents. (*Id*. ¶ 40). Despite the expiration of the '505 and

'230 patents, the New York Court also entered an order stating that "[p]ursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of approval for the aforementioned products and related ANDAs shall be not earlier than October 20, 2007, ***the date on which the six-month period of exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires***."   (AR Tab 3, Ex. 1 at ¶ 3 (emphasis added); Compl. ¶ 41).  As noted above, however, there was no pediatric exclusivity as to Apotex, because its ANDA was approved years before patent expiration and because there was no ruling on infringement before patent expiration.  FDA, in fact, had previously agreed.  The New York Court nonetheless erroneously assumed—and based its order solely on the erroneous determination—that such exclusivity exists as to Apotex, when it clearly does not.  As such, Apotex hoped that FDA would simply follow the law, indeed its own precedent, and set the record straight:  Apotex's approval could not be delayed or revoked on an exclusivity that does not exist.  After all, the question of whether Astra is entitled to such pediatric exclusivity is vested solely in FDA.  As it turns out, however, FDA, as noted below, would completely abdicate that responsibility, ignore its own binding precedent, and blindly defer to the New York Court's erroneous order.

Meanwhile, Apotex duly appealed the New York Court's judgment to the United States Court of Appeals for the Federal Circuit.  (*See* Compl. ¶ 43).  That appeal is pending.  (*Id.*) Apotex requested that the Federal Circuit stay that portion of the judgment purporting to reset the effective date of Apotex's approval to the expiration of Astra's pediatric exclusivity.  (*See id.* ¶¶ 44-50).  The Federal Circuit denied that motion, also erroneously assuming that Astra was entitled to pediatric exclusivity.  (*Id.*)  While Apotex asked FDA to weigh in and set the record straight, it refused to do so.  Apotex also filed an emergency motion to reconsider the Federal Circuit's denial of Apotex's motion to stay, which the Court also denied.  (*Id.*)

**D.    FDA's Unlawful Decision Revoking And Converting Apotex's Final Approval To A Tentative Approval.**

On June 15, 2007, Astra requested that FDA immediately revoke final approval of Apotex's ANDA until at least October 20, 2007, the date on which Astra's purported pediatric exclusivity expires. (*See* AR Tab 3, Ex. 1). Astra conveniently omitted that Apotex already had final approval; that such approval had been lawfully granted years before patent expiration or any infringement ruling; and that it was not entitled to such exclusivity as against Apotex.

On June 21, 2007, Apotex submitted a six-page letter to FDA with comments and legal arguments detailing the reasons why FDA should not, and indeed could not, lawfully revoke and/or convert the status of Apotex's final effective approval.[5] (*See* AR Tab 3; Compl. ¶ 53). Apotex fully explained why, under the Agency's own precedent in the amlodipine matter, there could be no pediatric exclusivity against Apotex, and thus no basis to rescind Apotex's longstanding and lawful final approval. (*See* AR Tab 3). On June 28, 2007, Apotex also requested that FDA refrain from taking any action until the Federal Circuit decides Apotex's emergency motion to reconsider, and until FDA could solicit comments and input from interested parties and the industry, just as the Agency had done in the amlodipine matter. (Compl. ¶ 54).

Nevertheless, on June 28, 2007, in a cursory two-page letter decision that included no legal analysis or support whatsoever, FDA revoked and converted Apotex's final approval to a tentative approval until the expiration of Astra's purported pediatric exclusivity on October 20, 2007. (*See* AR Tab 6; Compl. ¶¶ 55-56). FDA's decision does not address, and indeed ignores, the comments submitted by Apotex, as well as prior Agency precedent on the application of pediatric exclusivity. (*Id.*) In fact, the decision is devoid of any reasoning or analysis of any

---

[5] Apotex's 6/21/07 Letter to FDA was submitted jointly with Impax Laboratories, Inc.

kind on whether Astra is, in fact, entitled to such exclusivity against Apotex.  (*Id.*)  Rather, FDA simply and blindly defers and considers itself bound by the New York Court's erroneous assumption and determination that Astra is entitled to pediatric exclusivity.  Indeed, FDA merely states in a footnote that Prilosec® "is subject to periods . . . of pediatric exclusivity"—without any explanation as to how such exclusivity could possibly apply to an ANDA lawfully approved years before patent expiration and any ruling on infringement.  (*See* AR Tab 6 at 1 n.1).  The *only* "explanation" in FDA's letter was that the Agency's action was being taken "in light of [the New York Court] order."  (*Id.* at 1).

## ARGUMENT

"In resolving a motion to dismiss, the plaintiff's factual allegations must be presumed true and liberally construed in favor of the plaintiff."  *Wash. Legal Found.*, 880 F. Supp. at 31 (citing *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C. Cir. 1979)).  The plaintiff also "must be given every favorable inference that may be drawn from his allegations of fact."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint . . . ."  *In re Sealed Case*, No. 04-5313, 2007 WL 2067029 (D.C. Cir. June 29, 2007) (internal quotation marks and citation omitted).

FDA cannot satisfy that stringent standard here.  Simply put, there is no pediatric exclusivity applicable to Apotex's ANDA.  For this reason alone, FDA had no lawful basis to revoke or convert Apotex's final approval.  Drawing all reasonable inferences in favor of Apotex, as the Court must, Apotex clearly has stated a claim for, and is entitled to, relief under the APA for FDA's arbitrary, capricious and unlawful decision making.  The Court therefore should, and indeed must, deny FDA's baseless motion to dismiss, and enter an order granting Apotex emergency injunctive relief vacating the Agency's unlawful decision.

**APOTEX HAS STATED A CLAIM FOR, AND IS ENTITLED TO, RELIEF UNDER THE APA FOR FDA'S ARBITRARY, CAPRICIOUS AND UNLAWFUL DECISION**

Under the APA, the Court must set aside FDA's decision because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Here, FDA has revoked or converted Apotex's final approval solely on the basis of a court order that purports to reset the effective date of approval of Apotex's ANDA to the expiration of Astra's pediatric exclusivity on October 20, 2007. FDA's decision therefore rests and depends solely on the existence of pediatric exclusivity against Apotex. ***But there is no such pediatric exclusivity here to enforce against Apotex's ANDA.*** To the contrary, under FDA's own binding precedent and the plain language of the statute, pediatric exclusivity simply does not apply to Apotex's ANDA that was approved *years* before patent expiration and any ruling on infringement or validity. Nothing in the statute, FDA regulations or other Agency precedent permits FDA to revive that exclusivity out of thin air after expiration of the relevant patents. For this reason alone, FDA's decision is contrary to law.

Nor was FDA required to defer to a court order that erroneously assumes the existence of pediatric exclusivity. FDA, and FDA alone, is vested with the exclusive statutory authority to determine the existence of pediatric exclusivity. FDA was therefore required to bring its expertise and experience to bear in determining, in the first instance, whether Astra is even entitled to pediatric exclusivity against Apotex—it clearly is not. FDA was not remotely bound by the New York Court's order and erroneous assumption to the contrary. FDA's complete abdication of its statutory mandate and blind deference to the New York Court's order is arbitrary and capricious for this reason as well.

13

**I.**     **Apotex Is Not Collaterally Attacking The New York Court's Order, But Rather FDA's Arbitrary And Slipshod Implementation Of That Order To Withdraw Apotex's Longstanding Approval Without Any Reasoned Basis Or Authority.**

As an initial matter, FDA's entire motion hinges on the misguided notion that Apotex is somehow collaterally attacking, challenging or otherwise attempting to relitigate the New York Court's order in this proceeding.  (*See* FDA Mem. at 6-7).  Nothing could be further from the truth.  Apotex is properly challenging the propriety of that order before the Federal Circuit.  Here, in contrast, Apotex appropriately challenges FDA's decision to implement—and blindly defer to—that order (and the assumption that pediatric exclusivity applies to Apotex's ANDA) in violation of FDA's statutory obligation to engage in independent and reasoned agency decision making on an issue that Congress delegated and entrusted solely to FDA, not the New York Court hearing the patent case.  Thus, FDA's attempt to blur the lines between a purported collateral attack on the New York Court (which is not the case) and Apotex's efforts to right an administrative wrong created by FDA is disingenuous, at best.

FDA's absurd attempt to avoid, indeed punt, the issue of pediatric exclusivity entirely on the ground that it was only following orders fares no better.  The ***only*** possible basis for revoking or converting Apotex's longstanding approval was the purported existence of pediatric exclusivity applicable to Apotex's ANDA.  In other words, absent such exclusivity, there would be no ground, much less a reasonable one, for withdrawing Apotex's approval after expiration of the patents.  FDA's suggestion to the contrary is not only disingenuous, it is absurd.  Once again, the patents expired on April 20, 2007, and thus could provide no basis to rescind Apotex's approval, which admittedly leaves only Astra's purported period of pediatric exclusivity as the basis for FDA's decision.  Moreover, the New York Court did not pick the October 20, 2007 date out of thin air, but rather because it thought that was the date on which pediatric exclusivity expires.  FDA, in turn, revoked Apotex's final approval and determined that "[f]inal approval

14

cannot be granted earlier than October 20, 2007," the date that purported pediatric exclusivity expires. (AR Tab 6 at 1). This case therefore squarely turns on whether pediatric exclusivity exists as against Apotex (it does not), and whether FDA impermissibly abdicated its responsibility to make that determination in the first place in a reasoned fashion (it clearly did). FDA cannot insulate its decision from judicial review by hiding behind the New York Court's order. The Court, therefore, should reject FDA's repeated attempt to justify its arbitrary conduct under the guise that it was "only following orders."

Nor, as FDA suggests, would the relief that Apotex seeks "directly conflict" or "interfere" with the judgment of the New York Court. (*See* FDA Mem. at 7). The New York Court clearly delayed the effective date of Apotex's approval to the "***date on which the six-month period of exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires***." (AR Tab 6 at 1 (emphasis added)). This, of course, begs the question whether there was any such exclusivity as to Apotex to begin with—a question the New York Court did not, and respectfully could not, purport to answer. As discussed below, it is FDA's statutory mandate and obligation, not the New York Court's, to determine the existence of such exclusivity in the first instance. If no such exclusivity exists as to Apotex, as Apotex contends here, then FDA can easily reinstate Apotex's approval without interfering at all with the New York Court's judgment. That is all that Apotex seeks here, namely, for FDA to step up and satisfy its statutory obligation, which it has repeatedly shirked to date. For these reasons alone, FDA's motion to dismiss must be denied.

## II.    FDA Had No Lawful Authority Or Basis To Revoke Or Convert Apotex's Longstanding Approval Because There Is No Pediatric Exclusivity Applicable To Apotex's ANDA.

FDA granted Apotex final approval ***years*** before the '505 and '230 patents expired on April 20, 2007, and before any ruling on infringement or validity. In fact, no such ruling occurred until ***well after patent expiration***. Based on this lawful final approval, Apotex

rightfully began commercially marketing its generic omeprazole products in or about November 2003. Now, after Apotex had been marketing and selling its generic omeprazole products for well over three years, FDA has stripped Apotex of its final approval until the expiration of Astra's pediatric exclusivity. FDA's revocation of Apotex's final approval is erroneous and unlawful because it is based solely on a pediatric exclusivity period that simply does not exist as to Apotex.

A. **Under The Agency's Own Binding Precedent, Pediatric Exclusivity Simply Does Not Apply To An ANDA, Like Apotex's Omeprazole ANDA Here, That Is Already Finally Approved Prior To Patent Expiration.**

In a previous matter involving the drug amlodipine besylate, FDA conclusively determined that a finally-approved ANDA (like Apotex's ANDA here) "is not blocked by [an NDA-holder's] pediatric exclusivity . . . under the literal terms of the [pediatric exclusivity] statute," and that the "ANDA's approval cannot be delayed." (AR Tab 3, Ex. 4 at 5 n.4 (citing 21 U.S.C. § 355a(c)(2)(A) -(B))). FDA must apply the same rule to Apotex here.

More specifically, in the amlodipine matter, Mylan filed its ANDA in May 2002, which included a paragraph IV certification to Pfizer's listed '909 and '303 patents. (AR Tab 3, Ex. 4 at 4). Pfizer, however, did not bring a patent infringement suit within 45 days of receiving notice of Mylan's paragraph IV certification. (*Id.*) Consequently, Pfizer's untimely lawsuit did not result in the 30-month stay of ANDA approval provided for under 21 U.S.C. § 355(j)(5)(B)(iii). (*Id.*) Mylan's ANDA received final approval in October 2005, well before the '909 patent expired in July 2006 and the '303 patent expired in March 2007. (*Id.* at 4-5). ***Thus, FDA concluded that under the plain language of 21 U.S.C. § 355a, pediatric exclusivity did not apply to Mylan's ANDA***. (*Id.* at 5 n.4). This court (Urbina, J.) deferred to that decision. *See Mylan (Amlodipine)*, 484 F. Supp. 2d at 121-22.

16

So here, Apotex's ANDA was finally approved *years* before the patents expired and before any ruling on infringement and validity. Accordingly, just as Mylan's ANDA was not subject to Pfizer's pediatric exclusivity, Apotex's ANDA is not subject to Astra's pediatric exclusivity either. ***FDA even agrees that, as of patent expiration, there was no pediatric exclusivity as to Apotex.*** Absent such exclusivity, FDA had no basis or lawful authority to rescind or convert Apotex's final approval.

FDA has not articulated any reason, much less a legitimate one, for departing from the amlodipine precedent in this case. "[W]hen an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law." *Columbia Broad. Sys., Inc. v. FCC*, 454 F.2d 1018, 1026 (D.C. Cir. 1971). FDA has not done so here. As such, and for this reason alone, FDA's revocation of Apotex's final approval is arbitrary, capricious and contrary to law, and the motion to dismiss must be denied. *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996) (stating that an agency must afford similar treatment to comparable cases); *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 300 F. Supp. 2d 32, 42-43 (D.D.C. 2004) (finding HHS's denial of coverage was arbitrary and capricious due to agency's inconsistent treatment of similarly situated parties); *Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 27-28 (D.D.C. 1997) (granting injunctive relief based on FDA's disparate treatment of one product as a device and another product as a drug); *Bush-Quayle '92 Primary Comm. v. FEC*, 104 F.3d 448, 453 (D.C. Cir. 1997) (stating that should an agency change its course, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored") (quoting *Greater Boston Tel. Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *Transactive Corp. v. United States*, 91 F.3d 232, 237

(D.C. Cir. 1996) (finding Treasury acted arbitrarily in not conforming its electronic benefits transfer policies to its existing regulations or offering a 'reasoned analysis' for the difference).

The fact of the matter is that there is no reason to depart from the amlodipine precedent here in any case, especially where Apotex was lawfully approved years before the relevant patents expired, ***and where the infringement ruling and order on which FDA purportedly based its decision occurred well after patent expiration***. This is key and bears repeating—as of the date that the relevant patents expired, no one disputes (not FDA or Astra) that ***no pediatric exclusivity existed***, and that Apotex's final approval was perfectly lawful. In other words, any claim to pediatric exclusivity was effectively extinguished as of patent expiration. FDA's cursory decision essentially assumes, without any supporting authority or analysis, that the infringement ruling rendered well after patent expiration somehow magically revived or reinstated such pediatric exclusivity. But nothing in the controlling statute, FDA regulations or Agency precedent suggests, much less compels, this absurd result and Agency hocus pocus. To hold otherwise simply defies logic and common sense, and would, by fiat, effectively revive a pediatric exclusivity that no longer exists and extend the life of admittedly expired patents. FDA does not even attempt to explain how that pediatric exclusivity somehow reappeared months later when the New York Court issued its order. The fact is that such exclusivity did not and could not magically spring into existence again based on an order entered well after patent expiration.

For essentially the same reasons, FDA's exclusive reliance on *Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004) ("*Fentanyl II*"), which involved the drug fentanyl, for its argument that the Agency was somehow authorized and obligated to revoke or convert Apotex's final approval is sorely misplaced. (*See* FDA Mem. at 4-5). Unlike here, as all parties

agree, the district court's infringement ruling in the fentanyl matter occurred well ***before*** patent expiration, as did FDA's determination that the NDA-holder was entitled to a period of pediatric exclusivity for its fentanyl patch drug products. *See Mylan (Fentanyl II)*, 389 F.3d at 1277 (noting that the district court issued its § 271(e)(4)(a) order on March 24, 2004, some four months prior to the patent's July 23, 2004 expiration, and FDA determined that Alza was entitled to pediatric exclusivity on June 22, 2004, more than one month prior to the patent's expiration). FDA simply ignores these facts altogether, without support or authority, arguing that patent expiration is "irrelevant." (FDA Mem. at 4). Not so. On the contrary, that fact is dispositive here because FDA squarely concluded in the amlodipine matter that pediatric exclusivity does ***not*** apply to ANDAs (like Apotex's ANDA) that have final approval at the time of patent expiration. ***Thus, unlike the fentanyl matter, there was no pediatric exclusivity to enforce here as of April 20, 2007, when the patents expired.*** At bottom, nothing in the fentanyl matter suggests, much less compels, that a final approval issued years ago can be rescinded or converted based on an order finding the patents valid and infringed issued ***after those patents have expired***.[6]

   In fact, it bears emphasizing the striking and cavalier manner in which FDA simply continues to dismiss the relevance of patent expiration here. This fact is critical, and indeed key, not only to the application of pediatric exclusivity, but to the overall effect of FDA's decision here. By rescinding Apotex's approval based on a ruling issued after patent expiration, FDA has not only revived a pediatric exclusivity that no longer exists, but also effectively extended the terms of the expired patents. This is not only bad policy, but violates well-settled law that the subject matter of expired patents passes into the public domain and the free use of the public.

---

[6] The Court should reject the arguments in Astra's three-page "Response" (Dkt. Entry 25) for the same reasons.

*See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989) ("We have long held that after the expiration of a federal patent, the subject matter of the patent passes to the free use of the public as a matter of federal law." (citations omitted)); *id.* at 165 ("For almost 100 years it has been well established that in the case of an expired patent, the federal laws *do* create a federal right to 'copy and to use.'"); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires.").

Nor, as FDA suggests, is Apotex ignoring the fact that it lost its patent challenge in the district court—though that ruling is on appeal, and Apotex expects it to be reversed. Such exclusivity might be possible where the adverse patent ruling occurs **before** patent expiration. But it simply defies reason, as well as the statute and the prior amlodipine precedent, to apply pediatric exclusivity here where the ruling occurred well after patent expiration; well after the ANDA was finally approved; and well after pediatric exclusivity was admittedly already extinguished as to Apotex. To hold otherwise would revive the pediatric exclusivity out of thin air and, contrary to well-settled law (discussed above), effectively extend the term of the expired patents. FDA has provided no rationale or authority for such an absurd result.

*The bottom line is that, as of patent expiration on April 20, 2007, there was no longer any possibility for pediatric exclusivity as to Apotex.* Absent such exclusivity, FDA had no basis or lawful authority to rescind or convert Apotex's final approval. For this reason alone, FDA's decision cannot stand, and the current motion must be denied.

**B.    FDA's Decision Violates The Plain Language Of The Relevant Statutes.**

While it is impossible to discern from the two-page decision exactly on what statutory authority FDA purported to base its decision, that decision certainly cannot be squared with the plain language of the pediatric exclusivity statute either. The relevant provision states:

20

> [I]f the drug is the subject of a listed patent for which a certification has been submitted under subsection (b)(2)(A)(iv) or (j)(2)(A)(vii)(IV) of section 355 of this title, and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, ***the period during which an application may not be approved under*** section 355(c)(3) or ***section 355(j)(5)(B)*** of this title ***shall be extended by a period of six months after the date the patent expires*** (including any patent extensions).

21 U.S.C. § 355a(c)(2)(B) (emphasis added).  As FDA rightly recognized in the amlodipine matter, the unambiguous terms of the statute apply only to an ANDA that has not yet been approved.  Indeed, this provision on its face is limited to ANDAs that have not received a final effective approval.

Here, by contrast, Apotex's ANDA was finally approved *years* before the New York Court made any finding that Apotex infringed the patents or that the expired patents were valid.  FDA's decision therefore contravenes the plain language of the pediatric exclusivity statute as well.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (holding that an agency "must give effect to the unambiguously expressed intent of Congress"); *see also Mova Pharms. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) (finding that, although FDA has the power to interpret the FFDCA, it "does not thereby obtain a license to rewrite the statute"); *Ind. Mich. Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1276 (D.C. Cir. 1996) (rejecting agency's "treatment of th[e] statute" because it "is not an interpretation but a rewrite" and "destroys the *quid pro quo* created by Congress").

Even when read in conjunction with the rest of Hatch-Waxman, this provision does not authorize FDA to revive a pediatric exclusivity that no longer exists and revoke a lawful final approval.  Indeed, even the language of § 271(e)(4)(A), on which the New York Court's order was purportedly based, is limited on its face to approvals that are not yet effective.  *See* 35

U.S.C. § 271(e)(4)(A) ("the court shall order *the effective date* of any approval of the drug . . . *to be* a date which is not earlier than the date of the expiration of the patent" (emphasis added)).[7] The statute speaks in terms of future approvals "to be" granted.  More importantly, however, it refers to the date of patent expiration, not the expiration of pediatric exclusivity.  Nothing in either of the relevant statutes authorizes FDA to revive a pediatric exclusivity that no longer exists as to Apotex in order to revoke a lawful approval granted well before, and effective at the time of, patent expiration.

### C.    FDA's Slipshod Decision Is Not Entitled To Any Deference From This Court.

FDA also assumes that its decision here is somehow entitled to deference.  Wrong again.  The degree of *Chevron* deference afforded an Agency decision by a reviewing court always depends in significant part on the interpretive method used by the agency, as well as the care, consistency and manner in which the administrative decision was reached.  *See Barnhart v. Walton*, 535 U.S. 212, 222 (2002); *United States v. Mead*, 533 U.S. 218, 229-35 (2001).  In this case, however, there was no deliberative process or reasoned agency decision making at all, let alone anything to which a court could reasonably defer under *Chevron*.  Indeed, it is an understatement to say that FDA issued the decision under review without any care or formality, much less deliberation or reasoned agency decision-making.  Contrary to what the Agency has done in similar matters (most recently amlodipine), FDA admittedly did not address a single issue or argument raised by Apotex or Impax; did not solicit any comment or input from other interested parties; and issued a cursory two-page letter with no meaningful explanation of any kind.

---

[7] The literal language of Hatch-Waxman also provides that § 271(e)(4)(A) relief is only available when the infringement ruling occurs before expiration of the 30-month stay.  *See* 21 U.S.C. § 355(j)(5)(B)(iii) (noting that § 271(e)(4)(A) relief applies only where the district court decides that the patent is infringed "before the expiration of such [30-month] period").  In any case, nothing suggests that an infringement ruling that occurs well after patent expiration should have any effect on lawfully granted approvals.

In this regard, the Agency's conduct in the amlodipine matter is instructive, and speaks volumes about the Agency's outrageous conduct here. In amlodipine, FDA solicited comments and input on a variety of detailed questions and issues from all interested parties and the industry as a whole before acting. FDA even set up a special docket for such comments. FDA then considered all such submissions and comments in a detailed fourteen-page letter decision, which addressed each and every issue and question in a thorough and deliberative fashion.

Here, in contrast, FDA failed to respond at all to Apotex's and Impax's detailed submission (or Astra's for that matter). FDA did not address a single issue or argument, but rather issued a cursory two-page letter with no meaningful explanation of any kind for the basis of its decision (to the extent there is any), much less any care or formality. Indeed, FDA relegates the issue of pediatric exclusivity to a footnote with no explanation. In short, FDA impermissibly abdicated its role in determining the applicability of pediatric exclusivity, and failed to provide any meaningful explanation of the basis for its decision. This omission was especially egregious where, as here, the matter before FDA was unprecedented. Never before has FDA had to consider whether to pull a safe and effective generic product from the market after patent expiration, much less based on a patent ruling that occurred after patent expiration and a period of purported pediatric exclusivity that admittedly did not exist as to Apotex as of patent expiration. At the very least, FDA should have addressed the issue of pediatric exclusivity, including how it was supposedly revived and applies here, as well as the Agency's admitted departure from the amlodipine precedent. FDA's failure to do so renders its cursory, slipshod decision arbitrary and capricious, and therefore entitled to no deference from this Court.[8] For this reason too, FDA's motion must be denied.

---

[8] This, of course, is especially true where, as here, FDA's decision so clearly conflicts with the Agency's prior amlodipine precedent. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) ("An agency

### III.   FDA Was Not Bound By, And Should Not Have Blindly "Implemented," The New York Court's Judgment.

The New York Court erroneously assumed—and based its order solely on the premise—that Astra is entitled to pediatric exclusivity against Apotex.  As discussed above, there was no such exclusivity.  Nevertheless, FDA blindly deferred to, and felt bound by, that order and erroneous assumption, even though there is no such exclusivity against Apotex under the Agency's own binding precedent from amlodipine.  This, too, was arbitrary and capricious because FDA is not even remotely bound by the New York Court's order—especially not on the crucial question of whether there is pediatric exclusivity against Apotex.  On this crucial issue, FDA alone was obligated to bring its expertise and experience to bear.  It was not permitted to abdicate that responsibility.

FDA now freely admits—with pride it seems—that it blindly deferred to the New York Court's order without even a thought as to whether there is any pediatric exclusivity to apply here as to Apotex.  (*See* FDA Mem. at 5-6).  But FDA fails to provide any authority supporting its actions (or inactions as the case may be) for its baseless position that it had no discretion on an issue that Congress delegated and entrusted solely to FDA.  Not only did FDA have the discretion, but it was in fact obligated to engage in independent and reasoned decision making and bring its expertise and experience to bear on the issue of whether an NDA-holder is entitled to pediatric exclusivity.  By failing to do so, FDA engaged in arbitrary and capricious conduct that can only be remedied by this Court.

---

interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." (citations omitted)); *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 369 (4th Cir. 1994) ("When the agency's varying interpretations of a regulation have not been the result of the agency making considered changes in its policy, but rather of the agency simply acting inconsistently without explanation, however, 'the case for judicial deference is less compelling.'" (citations omitted)).

To begin with, the Court can and should easily dispatch with FDA's dramatic assertions that Apotex is somehow asking the Agency to "ignore," "second-guess" or otherwise "reject" a court order. (*See* FDA Mem. at 4-6). Not so. As all parties agree, FDA was not a party to the New York action (*see id*. at 4), and the New York Court did not—and indeed could not—expressly order FDA to do anything, let alone revoke Apotex's final approval. Indeed, Astra has requested such injunctive relief directly against the Agency, but the New York Court has thus far not granted it. What the New York Court did do was enter an order purporting to reset the effective date of Apotex's approval to the expiration of Astra's purported pediatric exclusivity. But there are compelling reasons why there is no pediatric exclusivity to enforce here as to Apotex, reasons that FDA apparently felt it could ignore. In its June 21, 2007 letter, Apotex merely requested that FDA address those reasons and determine in the first instance whether there is any pediatric exclusivity to enforce here, just as FDA did in the amlodipine and fentanyl matters, and just as it is obligated to do here. (*See* AR Tab 3). That is a far cry from asking FDA to ignore or defy a court order. The simple truth is that FDA could and should have implemented the New York Court order by determining that there is no pediatric exclusivity to enforce, and thus no reason to revoke Apotex's approval. That is not defiance, but rather reasoned agency decision-making consistent with FDA's statutory mandate.

Further, for FDA even to suggest that it always follows and implements court orders no matter the circumstances, without considering and fully analyzing the underlying facts, is both disingenuous and untrue. As FDA apparently concedes (*see* FDA Mem. at 5), in a prior matter involving ANDAs for the drug Taxol, FDA specifically analyzed a district court's order and rejected the court's recommendation that FDA toll the time for patent listing, on the ground that FDA was not a party to the litigation and that the court had no jurisdiction. *See Am. Bioscience,*

*Inc. v. Thompson*, 269 F.3d 1077, 1081-82, 1084 n.9 (D.C. Cir. 2001) ("Paradoxically, in rejecting the district court's tolling recommendation [FDA] emphasizes the California district court had no jurisdiction and the FDA was not a party."). Clearly FDA does not always blindly defer to court orders without a reasoned basis, and was not required to do so here.

### A.    FDA Admits That The Agency Alone Has The Statutory Authority To Determine Whether An NDA-Holder Has Pediatric Exclusivity.

FDA concedes that only the Agency has the statutory authority to determine whether an NDA-holder is entitled to pediatric exclusivity. *See Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106, 118 (D.D.C. 2004) ("*Fentanyl I*") (holding that "issues relating to the ANDA's approval and the applicability of the pediatric exclusivity provisions" are "subject areas that have clearly been entrusted to the FDA by Congress"), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *see also* 21 U.S.C. § 355a(d) (granting FDA authority to determine whether pediatric studies submitted by the NDA-holder are sufficient); 21 U.S.C. § 355a(f) (requiring FDA to "publish a notice of any determination that the requirements of subsection (d) of this section have been met and that submissions and approvals under subsection (b)(2) or (j) of section 355 of this title for a drug will be subject to the provisions of this section"); *see also generally* FDA, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999) (setting forth FDA's standards for determining whether a brand manufacturer is entitled to pediatric exclusivity). This is precisely the authority that FDA exercised in the amlodipine and fentanyl matters, and to which the courts deferred. *See, e.g., Mylan (Fentanyl II)*, 389 F.3d at 1284 (deferring to FDA's determination that Mylan was barred by Alza's pediatric exclusivity for Duragesic[®]); *Mylan (Amlodipine)*, 484 F. Supp. 2d at 121-22 (deferring to FDA's determination that Teva was barred by Pfizer's pediatric exclusivity for Norvasc[®] but Apotex was not).

Contrary to FDA's suggestion, it is therefore FDA, and not the New York Court, that is vested with the authority to decide whether pediatric exclusivity applies to Apotex's ANDA. FDA's decision to blindly defer to the New York Court's erroneous assumption and determination in this regard was arbitrary and capricious to say the least. FDA's decision does not even attempt to justify or explain how pediatric exclusivity could possibly affect Apotex's lawful approval. The Agency's absurd footnote, which merely assumes the existence of such exclusivity, does not, and cannot, pass muster in view of FDA's statutory mandate.

**B.    FDA Cannot Shirk Its Duties By Relying Blindly On The New York Court's Construction Of The Pediatric Exclusivity Statute, Which Does Not, And Indeed Cannot, Trump The Agency's Own Interpretation.**

The New York Court's assumptions regarding pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B) cannot override FDA's own precedent, as established by the amlodipine matter, that pediatric exclusivity does not apply to ANDAs with final approval. As such, FDA must adhere to its own interpretation of the pediatric exclusivity statute rather than the interpretation and conclusion of the New York Court. Indeed, FDA was obligated to bring its own expertise and experience to bear on this issue, and was not obligated under any circumstances to blindly accept the New York Court's opinion on this issue.

As an initial matter, the New York Court actually made no explicit determination of the existence of pediatric exclusivity as to Apotex, but merely erroneously assumed that to be the case. But even if the New York Court had engaged in a detailed statutory construction (it clearly did not), as a general matter, a court's construction of a statute does not trump that of an administrative agency. As the Supreme Court recently recognized, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only* if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v.*

*Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (emphasis added); *see also Teva Pharms. USA, Inc. v. FDA ("Pravastatin")*, 441 F.3d 1, 4-5 (D.C. Cir. 2006) (quoting *Brand X*, 545 U.S. at 982). Thus, where a prior judicial determination purports to interpret or apply an ambiguous statute, an administrative agency lawfully may "choose a different construction, since the agency remains the authoritative interpreter (within the limits of reason) of such statutes." *Brand X*, 545 U.S. at 983; *see also Pravastatin*, 441 F.3d at 4 ("In a suit challenging agency action, it is not for the court to choose between competing meanings of an ambiguous statute when the agency charged with its administration has not weighed in first." (internal quotation marks and citations omitted)).

As such, prior judicial determinations, such as the New York Court's judgment, do not bind an administrative agency otherwise entitled to *Chevron* deference, and such determinations cannot substitute for reasoned agency decision making once the issue is submitted to the Agency. *See, e.g.*, *Pravastatin*, 441 F.3d at 4-5. For example, in *Pravastatin*, the D.C. Circuit held that "FDA mistakenly thought itself bound by [our] decisions in *Teva I* and *Teva II*," and thus vacated the Agency's decision as arbitrary and capricious. *Id.* at 5. The court remanded the case to the Agency with instructions to "bring its experience and expertise to bear in light of competing interests at stake and make a reasonable policy choice" notwithstanding the D.C. Circuit's prior interpretation of the Hatch-Waxman Act. *Id.* (internal quotation marks and citations omitted). In other words, the Agency was not bound by the D.C. Circuit's construction; its decision was arbitrary and capricious precisely because it blindly accepted the court's construction, rather than engaging in its own reasoned decision-making in the first instance.

Similarly, in *Brand X*, the Supreme Court upheld an agency interpretation of a statute, despite a court's interpretation to the contrary. *Brand X* involved a challenge to FCC's

administrative decision to classify high-speed internet access ("broadband") as an "information service" rather than a "telecommunications service" under the Telecommunications Act of 1996. Several parties challenged that determination on the ground that FCC's interpretation was foreclosed by a prior Ninth Circuit decision holding that broadband was best considered to be a "telecommunications service"—a conclusion the court had reached despite the fact that it "was not reviewing an administrative proceeding and the [FCC] was not a party." *Brand X*, 545 U.S. at 978-80. When the petitioners' consolidated challenges to FCC's decision were assigned to the Ninth Circuit, that court agreed that its prior interpretation trumped the agency's contrary conclusion and vacated FCC's interpretation as contrary to law. *Id*. at 982.

The Supreme Court reversed, holding that "allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute . . . would allow a court's interpretation to override an agency's," in direct contravention of "*Chevron*'s premise . . . that it is for agencies, not courts, to fill statutory gaps." *Id.* As a result, the Court held, "only a judicial precedent holding that a statute unambiguously forecloses the agency's interpretation . . . displaces a conflicting agency construction," *id*. at 982-83, such that "[b]efore a judicial construction of a statute, whether contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction," *id*. at 985. Because the Ninth Circuit's prior decision was not expressly based on the unambiguous text of the Telecommunications Act, the Court gave FCC's contrary application of the statute full *Chevron* deference and dismissed the petitioners' challenge to FCC's administrative decision.

The same principle applies here. As in *Brand X*, the New York Court in this case concluded that Astra was entitled to pediatric exclusivity despite the fact that (1) it was not reviewing an administrative proceeding; (2) FDA was not a party to the case; (3) the patents-in-

suit had expired; (4) Apotex's ANDA received final approval and was on the market for years prior to the expiration of the patents-in-suit; (5) FDA has never awarded, and indeed could not award, Astra pediatric exclusivity against Apotex; and (6) the court did not solicit FDA's views. Moreover, the New York Court did not even purport to base its assertion that Astra is entitled to pediatric exclusivity on the text (much less the unambiguous text) of the relevant statutory provisions at all.

In sum, in these circumstances, just as FCC was not bound to effectuate the Ninth Circuit's determination that broadband is a "telecommunications service," and just as FDA was not bound by prior D.C. Circuit cases to treat the stipulated dismissal at issue in the *Pravastatin* case as a triggering court decision, FDA was not remotely bound by the New York Court's erroneous determination—reached without the benefit of FDA's views, and in direct conflict with the FDA's recent decision on this very subject—that Astra is entitled to pediatric exclusivity against Apotex.  To the contrary, Astra's eligibility for pediatric exclusivity is a matter that has "clearly been entrusted to the FDA by Congress."  *Mylan (Fentanyl I)*, 332 F. Supp. 2d at 118.

Here, of course, FDA admittedly and blindly deferred to the New York Court's order without regard to whether there was any pediatric exclusivity or not, or any other reason to rescind Apotex's approval until October 20, 2007—all on the ground that FDA was simply following orders.  This "following orders" approach does not cut the mustard under any standard of review.  FDA must have a reasoned and lawful basis for revoking the approval of a safe and effective drug that has been marketed for over three years.  Had the district court's order said that approval must be delayed indefinitely until the cows come home, no one would seriously dispute that FDA could not reasonably implement that order without inquiring into and analyzing the

precise basis for withdrawing approval of a safe and effective drug product indefinitely. The same is true here—FDA cannot simply withdraw Apotex's approval until October 20, 2007, for no reason other than it is "following orders"; rather, the Agency is obligated to determine whether in fact there is pediatric exclusivity to enforce here that would justify, and provide a reasoned basis for, the withdrawal or conversion of Apotex's approval. FDA's admitted and intentional failure to do so is not the stuff of reasoned agency decision-making—far from it in fact, it is the complete abdication of the Agency's statutory responsibility to administer the statute entrusted to it by Congress.

Accordingly, FDA's motion must be denied, because the Agency was not even remotely bound by the New York Court's erroneous determination as it repeatedly insists. Rather, Congress clearly entrusted the issue of Astra's eligibility for pediatric exclusivity and whether Apotex's final approval status was affected in any way by that exclusivity to FDA. *See Mylan (Fentanyl I)*, 332 F. Supp. 2d at 118. That FDA "simply implemented" the New York Court's order, merely for the sake of implementing a court order, violates the most basic principles of reasoned agency decision making. *See Am. Bioscience*, 269 F.3d at 1086 (vacating FDA decision to approve an ANDA due to FDA's failure to adequately explain its decision involving an Orange Book patent listing dispute).

## CONCLUSION

Apotex has not only unequivocally stated a claim for relief under the APA, Apotex also has shown that it is entitled to immediate injunctive relief setting aside the Agency's unlawful decision and reinstating Apotex's final approval. FDA cannot ignore its own binding precedent holding that pediatric exclusivity does not apply to an ANDA—like Apotex's omeprazole ANDA here—that is finally approved before patent expiration and any ruling on infringement or validity. Nor can FDA blindly follow the New York Court's order and abandon its statutory

obligation to independently engage in reasoned agency decision making concerning whether Astra is entitled to exclusivity in the first place.  Because Astra is not entitled to such exclusivity under FDA's own precedent, FDA had no lawful basis to revoke Apotex's final approval, and its decision must be set aside as arbitrary, capricious and contrary to law.  The Court therefore should deny the motion to dismiss and enter immediate injunctive relief for Apotex.

Dated:  September 10, 2007.                          Respectfully submitted,

                                                    APOTEX INC.

                                          By:    /s/ Arthur Y. Tsien
                                                 Arthur Y. Tsien, D.C. Bar No. 411579
                                                 Kathryn E. Balmford, D.C. Bar No. 482279
                                                 OLSSON FRANK WEEDA TERMAN BODE MATZ PC
                                                 1400 16th Street, N.W., Suite 400
                                                 Washington, D.C. 20036-2220
                                                 (202) 789-1212
                                                 (202) 234-3550 (facsimile)

Of Counsel:
William A. Rakoczy, D.C. Bar No. 489082
Amy D. Brody, D.C. Bar No. 478100
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Apotex Inc.*