IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    :
APOTEX, INC.,                                       :
                                                    :          Case No. 1:07-cv-01194-RMU
                    Plaintiff,                      :
                                                    :
           v.                                       :
                                                    :
FOOD AND DRUG ADMINISTRATION, *et al.*              :
                                                    :
                    Defendants.                     :
_____            :


**MEMORANDUM OF POINTS AND AUTHORITIES OF
ASTRAZENECA LP IN OPPOSITION TO APOTEX INC.'S MOTION
FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Peter O. Safir (D.C. Bar No. 217612)
Carolyn F. Corwin (D.C. Bar No. 939355)
Joshua D. Wolson (D.C. Bar No. 473082)
Laura E. Derr (D.C. Bar No. 500344)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. N.W.
Washington, D.C. 20004
(202) 662-6000

*Counsel for Applicants for Intervention as
Defendants AstraZeneca LP*

July 6, 2007

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

       A.     STATUTORY FRAMEWORK........................................................... 3

           1.     The New Drug Approval Process ............................................ 3

           2.     Pediatric Exclusivity ............................................................. 6

       B.     FACTS .................................................................................... 8

STANDARD OF REVIEW ..................................................................................... 11

ARGUMENT .......................................................................................................... 12

I.      APOTEX IS UNLIKELY TO SUCCEED ON THE MERITS. ..................... 12

       A.     FDA Correctly Concluded That Final Approval of Apotex's ANDA Should Be Converted to Tentative Approval......................................... 13

       B.     Apotex's Arguments Lack Merit. ......................................................... 16

           1.     The Amlodipine Decision Is Not Relevant Here. ..................... 16

           2.     Apotex's Argument Is Inconsistent with the Statute. ............... 18

           3.     There is No Basis for Apotex's Assertion that FDA's June 28 Decision Is Procedurally Inadequate. ...................................... 20

II.     THERE IS NO THREAT OF IRREPARABLE HARM TO APOTEX. ......................... 21

III.    THE INJUNCTION WOULD SUBSTANTIALLY INJURE OTHER PARTIES, INCLUDING ASTRA. .................................................................................... 24

IV.    THE PUBLIC INTEREST FAVORS DENIAL OF THE INJUNCTION. ..................... 25

CONCLUSION....................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*ALZA v. Mylan*,
   310 F. Supp. 2d 610 (D. Vt. 2004)................................................................15

*AstraZeneca AB v. Impax Labs., Inc.*,
   __ F. Supp. 2d __, 2007 WL 1612053 (S.D.N.Y. May 25, 2007)..................10, 11, 16, 19

*Barr Labs., Inc. v. Thompson*,
   238 F. Supp. 2d 236 (D.D.C. 2002) ...............................................................5

*Boehringer Ingelheim Corp. v. Shalala*,
   993 F. Supp. 1 (D.D.C. 1997) ......................................................................11

*Buaiz v. United States*,
   Civ. A.  No. 06-1312, 2007 WL 981629 (D.D.C. March 30, 2007)................................12

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)...................................................................................12

*Cobell v. Norton*,
   391 F.3d 251 (D.C. Cir. 2004) ................................................................11, 12

*Gulf Oil Corp. v. Dep't of Energy*,
   514 F. Supp. 1019 (D.D.C. 1981) ..................................................................23

*Hilton v. Braunskill*,
   481 U.S. 770 (1987)...................................................................................22

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)...................................................................................12

*Mylan Labs., Inc. v. Leavitt*,
   __ F. Supp. 2d __, 2007 WL 1875780 (June 29, 2007)........................................12

*Mylan Labs, Inc. v. Leavitt*, 484 F. Supp. 2d 108, 122 (D.D.C. 2007)..........................20

* *Mylan Labs., Inc. v. Thompson*,
   389 F.3d 1272 (D.C. Cir. 2004) ............................................................13, 14, 15

_____
\* Authorities on which Applicants for Intervention chiefly rely

\* *Mylan Labs. v. Thompson*,
    332 F. Supp. 106 (D.D.C.), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004) ...................................13

*Omeprazole Patent Litig. I, In re*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002)..........................................................................9

*Omeprazole Patent Litig. II, In re,*
    __ F. Supp. 2d. __ 2007 WL 1576153 (S.D.N.Y. May 31, 2007)......................................9

*Sanofi-Synthelabo v. Apotex, Inc.,*
    __ F. Supp. 2d __, 2006 WL 2516486 (S.D.N.Y. Aug. 31, 2006) .....................................22

*Serono Labs., Inc. v. Shalala*,
    158 F.3d 1313 (D.C. Cir. 1998) .....................................................................................11

*Virginia Petroleum Jobbers Ass'n v. F.P.C.*,
    259 F.2d 921 (D.C. Cir. 1958) .......................................................................................23

*Wisconsin Gas Co. v. F.E.R.C.*,
    758 F.2d 669 (D.C. Cir. 1985) ..................................................................................21, 23

## STATUTES AND REGULATIONS

Administrative Procedure Act, 5 U.S.C. § 551 et. seq......................................................12
        5 U.S.C. § 705.............................................................................................21
        5 U.S.C. § 706(2) ........................................................................................12

Food and Drug Administration Modernization Act, Pub. L. 105-115, 111 Stat. 2296
        (1997)...................................................................................................2, 6, 7

\* Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*.....................................................3
        § 355a(c)(2)....................................................................................... *passim*
        § 355a(c)(2)(B) ........................................................................................1, 18
        § 355............................................................................................................4
        § 355(j).....................................................................................................4, 5, 6
        § 355(j)(5)(B)(iii)..............................................................................5, 6, 9, 13

Hatch-Waxman Amendments, Pub. L. No. 98-417, 98 Stat. 1585 (1984) .......................4

28 U.S.C. § 2201 .............................................................................................................4

35 U.S.C. § 156...............................................................................................................4

35 U.S.C. § 271...............................................................................................................4

35 U.S.C. § 271(e)(4)(A) ...........................................................................4, 6, 9, 13, 10
11

35 U.S.C. § 282 .........................................................................................................4

21 C.F.R. § 314.105(a).............................................................................................4

21 C.F.R. § 314.105(d) ..........................................................................................5, 14

21 C.F.R. § 314.107(b)(3)(v) ...................................................................................5

57 Fed. Reg. 17950 (1992) ......................................................................................5

## LEGISLATIVE HISTORY

H.R. Rep. No. 107-277 (2001)...............................................................................26

S. Rep. No. 104-284 (1996) ...................................................................................25

S. Rep. No. 105-43 (1997) ...............................................................................6, 7, 25

S. Rep. No. 107-79 (2001) .....................................................................................26

S. Rep. No. 108-84 (2003) ................................................................................25, 26

## MISCELLANEOUS

U.S. Food and Drug Administration, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999)...............................................................................................................7

Applicant for Intervention as Defendant AstraZeneca LP ("Astra") respectfully submits this Memorandum of Points and Authorities in opposition to the motion of plaintiff Apotex, Inc. ("Apotex") for a temporary restraining order and/or preliminary injunction.[1]

## INTRODUCTION

Plaintiff Apotex is a generic drug company that has been adjudicated to be an infringer of two of Astra's patents, U.S. Patent No. 4,786,505 (the "'505 Patent") and U.S. Patent No. 4,853,230 (the "'230 Patent") ("the patents"), that cover the formulation for Prilosec®. Prilosec® is used to treat certain acid-related gastrointestinal diseases, including certain types of ulcers, heartburn and other symptoms associated with gastroesophageal reflux disease, and other serious medical conditions.

On June 14, 2007, the U.S. District Court for the Southern District of New York issued an order providing that, as a result of Apotex's infringement of Astra's patents, the effective date of approval for Apotex's generic product (which had previously received final approval from the U.S. Food and Drug Administration ("FDA")) shall be reset to a date not earlier than October 20, 2007, the date on which Astra's six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B) expires. FDA had earlier granted six months of marketing exclusivity for Prilosec® because, at FDA's request, Astra had conducted difficult, costly and complex research to determine that its drug could be used safely and effectively in children ages 2 to 16 suffering from acid-related gastrointestinal diseases. Following receipt of a

---

[1] As described in the motion to intervene, the intervenor, AstraZeneca LP, is the entity that markets Prilosec® in the United States. Affiliates of Astra held the patents involved in this case and filed the New Drug Application for Prilosec®. For simplicity, in this brief we use the term "Astra" to refer to both AstraZeneca LP and its affiliates, as appropriate.

copy of the June 14 federal court order, FDA set a new approval date for Apotex's generic product no earlier than October 20, 2007.

Apotex asks the Court to compel FDA to set aside FDA's decision lawfully converting Apotex's Abbreviated New Drug Application ("ANDA") for its generic product to tentative approval status; to order FDA to grant its ANDA final approval; and to enjoin FDA from converting the ANDA to tentative approval status in the future.  In support of these requests, Apotex presents arguments that both the Southern District of New York and the Federal Circuit have rejected in connection with Apotex's stay requests.  Moreover, in arguing that FDA should be enjoined, Apotex – an adjudicated patent infringer – disregards governing precedent that supports FDA's action in this matter.  Both this Court and the U.S. Court of Appeals for the District of Columbia Circuit have upheld FDA's action in converting approval of a generic product to tentative status when a federal court has issued an order finding patent infringement and requiring a change in the effective date of approval of the infringing generic product.  It is this authority that governs here, not FDA's decision concerning amlodipine besylate, which did not involve a patent infringement finding or rulings in favor of patent validity.

Apotex's argument challenges the central assumptions of the pediatric exclusivity provisions of the Food and Drug Administration Modernization Act ("FDAMA"), Pub. L. No. 105-115, 111 Stat. 2296 (1997).  In FDAMA, Congress recognized that far too little drug research was being conducted on pediatric populations, and it created an incentive – a six-month period of marketing exclusivity upon patent expiration – for manufacturers that conducted such research.  This reward is designed to apply to any holder of a valid patent that conducts pediatric research at the request of FDA.  This pediatric exclusivity provision has been a resounding success.  Under Apotex's argument, however, pediatric exclusivity could be denied to

manufacturers who did everything requested of them by the statute and by FDA, simply by virtue of a generic producer's infringing conduct and the uncontrollable timing of a court's decision on patent validity and infringement.  There is no support for such a result in the statute, and it would introduce unacceptable uncertainty into the availability of pediatric exclusivity, substantially undermining the legislative scheme to the detriment of children's health.

Ultimately, Apotex's argument is that, as a consequence of Apotex's decision to take the risk of going to market before the patent infringement suit was decided, Astra should lose all the benefit of the pediatric exclusivity period it earned through extensive research efforts. The judge in the patent litigation properly termed such a result anomalous and at odds with the statute.  And it is surely inconsistent with principles of equity for Apotex to turn its own infringing activity into a basis for inflicting further loss on Astra.

Apotex also fails to establish the other requisites for injunctive relief.  Indeed, the injury it alleges derives solely from its own infringing activity.  In short, Apotex has not begun to make the strong showing required to warrant the extraordinary injunctive relief it seeks. Apotex's motion should be denied.

## BACKGROUND

### A.    STATUTORY FRAMEWORK

*1.    The New Drug Approval Process*

The Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), requires a pharmaceutical company seeking to market a new drug to file a New Drug Application ("NDA").  An NDA must contain the results of costly clinical studies, conducted over long periods of time, of the drug's safety and effectiveness.  *See id.* § 355(b).  Since the enactment of the original FDCA in 1938, the safety and effectiveness data of drug developers has been considered proprietary.  Prior to passage of the Hatch-Waxman Amendments to the FDCA in

1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C. § 355, 28

U.S.C. § 2201, and 35 U.S.C. §§ 156, 271, 282), would-be generic drug manufacturers could not

rely on such data, but were required to submit their own data, to establish the safety and

effectiveness of their generic copies.  As a result, there was virtually no generic competition.

       Through the Hatch-Waxman Amendments, Congress sought to facilitate generic

competition while at the same time maintaining the incentive for manufacturers to develop new

drugs.  To promote generic competition, the Act permitted generic manufacturers to file ANDAs

rather than full NDAs.  *See* 21 U.S.C. § 355(j).  An ANDA is "abbreviated" because the

applicant is not required to submit its own data on safety and effectiveness.  Instead, an ANDA

applicant may piggyback on an NDA holder's data if the applicant submits data establishing that

its proposed generic drug is the "same" as, and is "bioequivalent" to, the pioneer drug.  *See id.*

§ 355(j)(2).  As a consequence, submission of an ANDA is significantly less costly than

submission of an NDA.

       FDA is responsible for administering the ANDA review and approval process.

Once FDA concludes that an ANDA meets the technical requirements for approval, it has two

options.  FDA can issue a full and effective approval, which permits the applicant immediately to

begin marketing its generic product.  21 C.F.R. § 314.105(a).  Alternatively, if FDA determines

that patent protections or other marketing exclusivities preclude the applicant from putting its

generic product on the market, FDA can issue a tentative approval, which indicates that the

technical requirements for approval were met as of a particular date, but that approval cannot be

made effective (and marketing is not permitted) until after the occurrence of some future event. 21 C.F.R. § 314.105(d).[2]

Under FDA regulations, any "tentative" approval cannot be made effective – i.e., will not permit the applicant to begin marketing its generic product – until FDA issues a letter granting final, effective approval.  21 C.F.R. § 314.107(b)(3)(v); 57 Fed. Reg. 17950, 17956, 17957 (1992).  *See also Barr Labs., Inc. v. Thompson*, 238 F. Supp. 2d 236, 245-50 (D.D.C. 2002) (affirming FDA's decision that an approval with a delayed effective date is tentative and does not give applicants the right to enter the market on a date certain without further FDA action).

While the Hatch-Waxman Amendments significantly streamlined the approval process for generic drugs, they also created certain procedures designed to safeguard the pioneers' patent rights and thus to maintain the incentive for manufacturers to make significant investments to develop new drugs.  Under the Amendments, NDA applicants provide FDA with information on patents claiming the subject drug (or method of using the drug), and FDA lists the patent or patents in its publication "Approved Drug Products With Therapeutic Equivalence Evaluations," referred to as "The Orange Book."  *See* 21 U.S.C. § 355(b).  When filing an ANDA, the ANDA applicant must make one of four "certifications" to each listed patent that claims the listed drug; the type of certification affects the timing of ANDA approval by FDA. *See id.* § 355(j)(2)(A)(vii); *see also Barr Labs.*, 238 F. Supp. 2d at 239-40.

---

[2]     There are numerous statutory bars to final, effective ANDA approval, including a 30-month stay; a 5-year exclusivity provision; 3-year exclusivity provisions; a 180-day exclusivity provision; and (most relevant here) a six-month pediatric exclusivity provision and a provision under which a patent court "shall order" that the effective date of any approval of an infringing drug be a date "not earlier than" the date the underlying patent expires.  *See* 21 U.S.C. § 355(j)(5)(B)(iii); ; *id.* § 355(j)(5)(F)(ii); *id.* § 355(j)(5)(F)(iii), (iv); *id.* § 355(j)(5)(B)(iv); *id.* § 355a(c); 35 U.S.C. § 271(e)(4)(A).

Only one certification option is relevant here.  A certification under "paragraph IV" ("paragraph IV certification") sets forth the ANDA applicant's view that the patent for the listed drug is invalid or will not be infringed by the manufacture, use, or sale of the new drug.  *See id.* § 355(j)(2)(A)(vii)(IV).  This certification thus signifies that the applicant seeks final approval of its application prior to expiration of the listed patent.  *See id.* §§ 355(j)(2)(B)(iv)(I).  The filing of a paragraph IV certification constitutes a technical act of patent infringement under the Patent Act, *see* 35 U.S.C. § 271(e), and the applicant must give notice of the paragraph IV certification to the patent holder.  *See* 21 U.S.C. § 355(j)(2)(B).  If the patent holder files a suit for infringement within 45 days of receipt of the notice of paragraph IV certification, a statutory stay takes effect, precluding FDA from granting final approval to the ANDA for 30 months following the patent holder's receipt of the notice or until the occurrence of a certain event related to resolution of the patent litigation specified by statute, whichever is earlier.  *See id.* § 355(j)(5)(B)(iii).

If the 30-month stay expires during the pendency of the patent infringement action, or the patent is held invalid or not infringed during the stay, FDA may grant final, effective approval of the ANDA.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).  Conversely, if the patent holder prevails on its infringement claim, "the court *shall* order the effective date of any approval of the . . . product involved in the infringement to be a date which is *not earlier than* the date of the expiration of the patent which has been infringed."  35 U.S.C. § 271(e)(4)(A) (emphasis added).

## 2.    *Pediatric Exclusivity*

In 1997, in order to encourage developers of pharmaceuticals to study the effects of their drugs in the pediatric population, Congress enacted a "pediatric exclusivity" provision, as part of the Food and Drug Administration Modernization Act ("FDAMA"), Pub. L. 105-115,

111 Stat. 2296 (1997). *See* S. Rep. No. 105-43, at 51-52 (1997). Pediatric exclusivity provides

an "incentive for drug [manufacturers] to perform studies for medications which they intend to

market primarily for adults and whose use in children is expected to generate little additional

revenue." *Id.* at 51. If a drug company submits pediatric studies in response to FDA's written

request, it obtains six months of additional marketing exclusivity, and FDA is precluded from

granting final approval to an ANDA for six months following expiration of the listed patent. *See*

21 U.S.C. § 355a(c)(2); *see also* FDA, *Guidance for Industry: Qualifying for Pediatric*

*Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* 13 (Sept. 1999)

(pediatric exclusivity "extends the period during which the approval of an abbreviated new drug

application (ANDA) or [355(b)(2)] application may not be made effective by FDA").

       Thus, Congress explicitly determined that a patent holder's completion of

pediatric studies in response to FDA's request warranted a six-month period of marketing

exclusivity. As FDA has recognized, pediatric exclusivity has been extremely important in

obtaining needed research on drugs for children, and it holds a higher priority than promptly

making generic drugs available on the market . *See* Federal Defendants' Mem. in Opposition to

Plaintiffs' Motions for Preliminary Injunction and Summary Judgment and in Support of Cross-

Motion for Summary Judgment, *Ranbaxy Labs. Ltd. v. FDA*, Civ. Action No. 04-133 (D.D.C.)

(PLF), filed Feb. 20, 1994, at 36 ("In enacting the pediatric exclusivity provisions of FDAMA,

Congress unequivocally trumped any claimed 'right' of generic applicants to be approved upon

patent expiration where an NDA holder has conducted pediatric studies requested by the

agency. . . . Rather, Congress expressed a clear intent to reward companies that had conducted

the pediatric studies that FDA had requested.").

B.    FACTS

Astra submitted NDA No. 19-810 for Prilosec® (omeprazole) delayed-release capsules to FDA on December 21, 1987.  The NDA included extensive data from studies demonstrating the safety and efficacy of Prilosec®.  Astra received FDA approval of its NDA for Prilosec® on September 14, 1989.  Prilosec® is used to treat certain acid-related gastrointestinal diseases, including certain types of ulcers and symptoms associated with gastroesophageal reflux disease.  Astra timely submitted several patents claiming Prilosec® for listing in the Orange Book, including U.S. Patent No. 4,786,505 ("the '505 Patent") and U.S. Patent No. 4,853,230 ("the '230 Patent"), covering the formulation used in the Prilosec® drug product.

On July 1, 1999, FDA issued Astra a formal Written Request for pediatric studies for Prilosec® because FDA determined that information relating to the use of Prilosec® in the pediatric population "may produce health benefits in that population…."  21 U.S.C. 355a(c).  Pursuant to the Written Request, Astra conducted an extensive clinical program to study the use of Prilosec® in children.  Astra conducted clinical, pharmacokinetic, and safety studies in pediatric patients.  *See* Prilosec® Prescribing Information, at 25 ("Pediatric Use"), *available at* http://www.astrazeneca-us.com/pi/Prilosec.pdf.  Astra conducted approximately eight studies in total.  On December 22, 2000, Astra submitted to FDA a supplement (S-074) to its NDA addressing the Written Request and supporting proposed labeling revisions concerning pediatric use of Prilosec®.  FDA approved this supplement on July 12, 2002.  FDA also determined that Astra's pediatric studies were timely submitted, fairly responded to FDA's request, and were reported in accordance with FDA requirements.  Accordingly, FDA granted Prilosec® pediatric exclusivity and published the exclusivity expiration date of the '505 and '230 patents – October 20, 2007 – in the Orange Book.  *See* 21 U.S.C. § 355a(f).

On December 5, 2000, Apotex submitted ANDA No. 76-048 seeking approval to market a generic copy of Prilosec® prior to expiration of the '505 and '230 patents. Apotex's ANDA included paragraph IV certifications pursuant to which Apotex purported to certify either that the '505 and '230 patents were invalid or that Apotex's proposed generic product would not infringe those patents. Upon notice of Apotex's submission of the ANDA to FDA with these paragraph IV certifications, Astra timely sued Apotex for infringement in the U.S. District Court for the Southern District of New York ("the patent court").[3] *See* 21 U.S.C. § 355(j)(5)(B)(iii). Astra alleged that Apotex infringed its patents under 35 U.S.C. § 271(e)(2) and sought, among other things, an order pursuant to section 271(e)(4)(A). *In re Omeprazole Patent Litig.*, M-21-81 (BSJ), __ F. Supp. 2d __, 2007 WL 1576153, at *9 (S.D.N.Y. May 31, 2007) ("*Omeprazole II*").

Astra also brought patent infringement suits against seven other generic omeprazole producers. These suits were consolidated and were litigated in two waves, known as *Omeprazole I* and *Omeprazole II*. *See In re Omeprazole Patent Litig. I*, 222 F. Supp. 2d 423, 432 (S.D.N.Y. 2002), *aff'd* 84 F. App'x 76 (Fed. Cir. 2003) ("*Omeprazole I*"); *Omeprazole II*, 2007 WL 1576153, at * 1 n. 2. Apotex was among the second trial group. (In both cases, Astra's patents were determined to be valid. All told, four defendants in addition to Apotex were found to have infringed Astra's patents.)

FDA granted Apotex's product tentative approval. On October 7, 2003, after expiration of the thirty-month stay granted to Astra pursuant to 21 U.S.C. § 355(j)(5)(B)(iii),

---

[3]     Astra initially sued Apotex in the U.S. District Court for the Northern District of Illinois. The Judicial Panel for Multidistrict Litigation subsequently transferred the case to the Southern District of New York.

FDA granted Apotex final approval of its generic product.  Apotex then began marketing its product, despite the risk that it might ultimately be held to have infringed Astra's patent.

The patent litigation continued, a bench trial was conducted in the first half of 2006, and the case was fully submitted by August 2006.  The '505 and '230 patents expired on April 20, 2007.  Shortly thereafter, another defendant in the consolidated patent litigation, Impax Laboratories, Inc. ("Impax"), filed a motion to dismiss, arguing that expiration of the patents deprived the patent court of subject matter jurisdiction.  On May 25, the patent court denied Impax's motion.  Among other things, the patent court concluded that if it found that the patents had been infringed it had the authority to enter an order pursuant to 35 U.S.C. § 271(e)(4)(A) during the pediatric exclusivity period.  *AstraZeneca AB v. Impax Labs., Inc.*, No. 00.Civ.7597 (BSJ), __ F. Supp. 2d __, 2007 WL 1612053, at * 5-9 (S.D.N.Y. May 25, 2007).

On May 31, 2007, the patent court found the patents to be valid and infringed by two defendants, including Apotex.  *See generally Omeprazole II*.  In an order issued pursuant to 35 U.S.C. § 271(e)(4)(A) dated June 14, 2007, the patent court reset the date for final approval of Apotex's ANDA to no earlier than October 20, 2007.  Wolson Decl. Ex. A.  Apotex filed a letter motion for reconsideration and for a stay on June 15, 2007.  *Id.* Ex. B.  The patent court denied Apotex's motion that same day.  *Id.* Ex. C.  On June 19, Apotex filed an emergency motion in the U.S. Court of Appeals for the Federal Circuit, seeking to stay the patent court's judgment.  *Id.* Ex. D.  After full briefing, the Federal Circuit denied that motion on June 26, 2007.  *Id.* Ex. E.  On June 28, 2007, Apotex filed an "Emergency Motion" asking the Federal Circuit to reconsider its denial.  *Id.* Ex. F.  That motion is pending.

Counsel for Astra transmitted the patent court's June 14 order to FDA on June 15, 2007.  *Id.* Ex. G.  On June 21, Apotex sent a letter to FDA in response, arguing that FDA should

not return the status of Apotex's ANDA to "tentative." *Id.* Ex. H. Astra replied by letter on June 25. *Id.* Ex. I.

On June 28, 2007, FDA notified Apotex by letter that in response to the patent court's order it was converting the final approval of Apotex's ANDA to tentative approval. *Id.* Ex. J. ("June 28 Decision"). FDA further informed Apotex that "[f]inal approval cannot be granted earlier than October 20, 2007." *Id.* The agency also stated that, as noted in the Orange Book, "the pediatric exclusivity periods of [the '505 and '230 patents] are scheduled to expire on October 20, 2007." *Id.*

The patent litigation was submitted to the patent court in the summer of 2006. The timing of that court's decision was not due to any unreasonable conduct on Astra's part. Indeed, Astra waived the right to recover damages from one defendant in order consolidate the second wave bench trial and help permit expeditious resolution of the patent litigation. *See AstraZeneca AB*, 2007 WL 1612053, at * 3.

## STANDARD OF REVIEW

There are four factors that a court must consider in deciding whether to issue a TRO or a preliminary injunction: (1) whether there is a substantial likelihood that the plaintiff will succeed on the merits; (2) whether the plaintiff will be irreparably injured if an injunction is not granted; (3) whether an injunction will substantially injure the other party; and (4) whether the public interest will be furthered by the injunction. *See Boehringer Ingelheim Corp. v. Shalala*, 993 F. Supp. 1, 1 (D.D.C. 1997) (TRO); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998) (preliminary injunction). These four factors interrelate on a sliding scale and should be balanced against each other. *See Serono Labs.*, 158 F.3d at 1318. A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391

11

F.3d 251, 258 (D.C. Cir. 2004); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("a preliminary injunction is an extraordinary and drastic remedy"); *Buaiz v. United States*, Civ. A. No. 06-1312, 2007 WL 981629, at * 1 (D.D.C. March 30, 2007) (quoting *Cobell*, 391 F.3d at 258). In particular, where, as here, a "plaintiff seeks a mandatory injunction, rather than to merely maintain the status quo, the plaintiff must demonstrate (beyond the familiar four-part test for injunctive relief) that it is 'clearly' entitled to the relief it seeks or 'extreme or very serious damage will result.'" *Mylan Labs., Inc. v. Leavitt*, Civ. A. No. 07-579 (RMV), __ F. Supp. 2d __, 2007 WL 1875780, at * 2 (June 29, 2007) (Urbina, J.) (internal citations omitted).

Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq., FDA's action must be affirmed unless the Court finds that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To make this finding a court must consider whether the agency decision was based on "a consideration of the relevant factors" and whether there has been "a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The ultimate standard of review "is a narrow one," and a court "is not empowered to substitute its judgment for that of the agency." *Id*.

## ARGUMENT

The Court should deny Apotex's motion for a temporary restraining order and/or preliminary injunction. The FDA's order is consistent with its prior actions and with precedents of this Court and the D.C. Circuit. Apotex cannot begin to satisfy the heavy burden of showing that it is entitled to the extraordinary remedy it seeks.

## I.    APOTEX IS UNLIKELY TO SUCCEED ON THE MERITS.

Apotex has failed to demonstrate that it is likely to prevail on the merits. FDA correctly concluded that, in light of the patent court's order resetting the effective date of

approval for Apotex's product, the final approval of Apotex's ANDA should be converted to a

tentative approval. This action is consistent with FDA's own precedent and with this Court's

decision in *Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), *aff'd*, 389 F.3d

1272 (D.C. Cir. 2004). Apotex's criticisms of FDA's order are without merit and should be

rejected.

> **A.    FDA Correctly Concluded That Final Approval of Apotex's ANDA Should Be Converted to Tentative Approval.**

In response to a patent court order adjusting the effective date of approval for

Apotex's ANDA for generic omeprazole, FDA properly concluded that the final approval FDA

had granted for that ANDA must be converted to tentative approval. The agency also correctly

determined that final approval of the ANDA could not be granted earlier than October 20, 2007,

the date Astra's period of patent exclusivity will expire.

As described in the Background section, the Southern District of New York

determined, following trial, that Apotex had infringed two of Astra's formulation patents

covering the Prilosec® drug product. Section 271(e)(4) of title 35 of the United States Code,

which sets forth the relief available for acts of infringement under section 271(e)(2), provides

that, upon finding an act of infringement, "the court shall order the effective date of any approval

of the drug or veterinary biological product involved in the infringement to be a date which is not

earlier than the date of expiration of the patent which has been infringed." 35 U.S.C. §

271(e)(4)(A).[4] Pursuant to this statutory authority, the patent court ordered that the effective date

---

[4]    Apotex asserts that section 271(e)(4)(A) relief applies only where a district court decides that a patent is infringed before the expiration of the 30-month stay provided under 21 U.S.C. § 355(j)(5)(B)(iii). *See* Apotex Mem. at 5; *see also id.* at 17 n. 3. This assertion is incorrect. Section 355(j)(5)(B)(iii) concerns the date of final approval of an ANDA submitted with a paragraph IV certification. It has no bearing on whether relief may be sought under 35 U.S.C. (continued…)

for the infringing Apotex products and related ANDAs "shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires."[5]  Wolson Decl. Ex. A, at 4.  FDA had earlier concluded that Astra was entitled to this six-month period of marketing exclusivity, to follow the expiration of its patents, as a result of its performance of studies on use of Prilosec® for children.  *See* page __ above.

Notice of the patent court's order was sent to FDA.  *Id.* Ex. G.  Once FDA received the notice, it properly concluded that, as a result of the patent court's order changing the effective date of the Apotex ANDA, the final approval of that ANDA must be converted to tentative approval at least until October 20, 2007, the date stated in the court's order.[6]  *Id.* Ex. J.  FDA also correctly noted that final approval of the ANDA cannot be granted earlier than October 20, 2007.  This is the date on which the pediatric exclusivity periods of the two infringed patents were scheduled to expire.[7]

FDA's order is consistent with this Court's decision in the *Mylan* case and the D.C. Circuit's affirmance of that decision.  In *Mylan,* the patent court had held that Mylan infringed Alza's patents and had ordered that "the effective date of any approval of Mylan's

---

§ 271(e)(4)(A).  The decision in *Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1275 (D.C. Cir. 2004), confirms that such relief may be sought when no stay is in effect.  In that case the D.C. Circuit upheld relief granted under section 271(e)(4)(A) where the pioneer had not obtained a 30-month stay.

[5]    The statute provides six months of exclusivity "after the date the patent expires (including any patent extensions)" where a drug is the subject of a Paragraph IV certification if "in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed…."  21 U.S.C. § 355a(c)(2)(B).

[6]    FDA regulations provide that "[a]n approval with a delayed effective date is tentative and does not become final until the effective date."  21 C.F.R. § 314.105(d).

[7]    The FDA's prior determination of pediatric exclusivity was reflected in the agency's Orange Book entries for Prilosec®.  The FDA referenced the Orange Book listing of the pediatric exclusivity expiration date in its order.  *See* Wolson Decl. Ex. J, at 1 n.1.

ANDA product shall be no earlier than the date of expiration of the '580 patent family." *Mylan*, 389 F.3d at 1277 (quoting *ALZA v. Mylan*, 310 F. Supp. 2d 610, 637 (D. Vt. 2004)).  The patent court's order did not address whether Mylan was subject to the patent's pediatric exclusivity period or whether it could instead lawfully market its generic product upon patent expiry.  Mylan and Alza then sought a determination from FDA, and the agency concluded that the patent court's finding of infringement and its order under section 271(e)(4) "transformed Mylan's ANDA approval into an approval with a delayed effective date, which is a tentative approval that cannot be made effective until FDA issues a letter granting final effective approval."  *Mylan*, 389 F.3d at 1277 (internal quotations and citations omitted).  This Court and the D.C. Circuit affirmed FDA's determination that Mylan's final approval was converted to a tentative approval following the patent court's order and that final approval would not occur until after the expiration of Alza's pediatric exclusivity period.

        The *Mylan* case establishes that, once a court resets an ANDA approval date under section 271(e)(4), FDA must convert final approval of an ANDA to tentative approval. Although the patent court's section 271(e)(4)(A) order in the *Mylan* case issued before expiration of the patent, the date of patent expiry does not affect FDA's authority or its responsibility to respond to the patent court's order.  Once the patent court decrees under section 271(e)(4) that the effective date of an ANDA approval shall be moved to a future date, the legal situation has changed.  Whether or not the patent has expired, the court-ordered change in the effective date of approval means that there can be no final approval until the date reflected in the court's order. [8]

---

[8]    Here the patent court rejected Apotex's suggestion that it lacked authority to enter an order altering the effective date of an ANDA to a date after expiration of the patents.  As the patent court noted, "[h]ad Congress intended to limit relief under 271(e)(4)(A) to an order mandating the effective date of the ANDA to be the date of the expiration of the patent, it could (continued…)

In these circumstances, regardless of the fact that the patent has expired, there is no basis for

FDA to maintain its final approval of an ANDA.  FDA properly responds to the patent court

order by converting its final approval to a tentative approval, at least until the date permitted by

the patent court order.  FDA's decision here is consistent with the statute and with the *Mylan*

precedent.

      **B.**     **Apotex's Arguments Lack Merit.**

          *1.*     *The Amlodipine Decision Is Not Relevant Here.*

      Apotex's primary argument is based on FDA's recent decision in the amlodipine

besylate matter (FDA Docket No. 2007N-0123) ("the Amlodipine Decision").  Apotex insists

(Mem. at 13-16) that this decision established that an ANDA with final approval cannot be

converted to tentative approval status after the relevant patents expire and that FDA "changes

course" in the decision at issue here.  In fact, the Amlodipine Decision offers ***no*** support to

Apotex's arguments.  It is distinguishable and does not govern this case.

      The Amlodipine Decision involved facts and issues different from those in this

case.  In the amlodipine matter, the Federal Circuit had held that Apotex's tentatively-approved

ANDA did not infringe Pfizer's patent because the asserted claims were invalid.  *See* Wolson

Decl. Ex. K, at 4-5.  The Amlodipine Decision addresses whether Pfizer's pediatric exclusivity

barred approval of Apotex's ANDA, given the Federal Circuit's holding that Apotex had shown

that Pfizer's patent was not infringed because it was invalid.  The FDA concluded that, because

"pediatric exclusivity does not apply when the ANDA applicant *prevails* in its patent

challenge….," Pfizer's pediatric exclusivity would not block Apotex's tentatively-approved

have written the provision to say that.  But it did not."  *AstraZeneca*, 2007 WL 1612053, at * 6.
The patent court concluded that the "clear and unambiguous language of the statute" sets the date
of patent expiration "only as the *earliest* effective date a court may order."  *Id*. (emphasis added).

ANDA after the mandate issued giving effect to the Federal Circuit's decision.  *Id*. Ex. K at 6 (emphasis added).  Here, of course, Apotex did not succeed in its challenge to Astra's patents.

        In the amlodipine matter, Mylan was the only generic company that had a finally-approved ANDA for an amlodipine product.  Mylan's ANDA retained its final approval, even though it was found to infringe Pfizer's patent, because the Federal Circuit issued a stay of the district court's Section 271(e)(4)(A) order before the FDA acted on it.  Thus, the amlodipine matter is inapposite here, where the Federal Circuit has expressly declined to issue a stay of the district court's Section 271(e)(4)(A) order.

        Apotex focuses on FDA's passing reference to Mylan's situation in a footnote in the Amlodipine Decision.  FDA explained there that the agency had been prepared to convert the status of Mylan's ANDA to tentatively approved after the patent court held that Mylan had infringed Pfizer's patents, but such action was not warranted after the Federal Circuit stayed the patent court's decision and the finding of infringement was no longer in effect:

> In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed.  21 U.S.C. § 355a(c)(2)(A)-(B).  One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court.  However, before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation.  After that stay, FDA had no basis to convert the approval status of Mylan's ANDA from approved to tentatively approved.

*Id*. Ex. K, at 5 n. 4 (internal citations omitted).

        Apotex seizes on the first sentence of this footnote, asserting that the Amlodipine Decision establishes a sweeping policy prohibiting an ANDA that has at any point received final approval from ever being subject to pediatric exclusivity.  *See, e.g.*, Apotex Mem. at 2.  But that

sentence cannot be read in isolation. Nowhere in the Amlodipine Decision does FDA state or suggest that an ANDA with final approval may not be converted to tentatively approved after patent expiration. To the contrary, FDA indicates in the final sentences of the footnote that it would have converted Mylan's ANDA from finally-approved to tentatively-approved status, *but for the Federal Circuit's stay*. Here, of course, the Federal Circuit denied Apotex's request for a stay of the patent court's order; the patent court's finding of infringement and order resetting the date of approval remain in effect; and FDA was obligated to respond to the order.

In sum, FDA determined that the Apotex ANDA discussed in the substantive analysis of the Amlodipine Decision was not subject to Pfizer's pediatric exclusivity because Apotex had won a decision from the Federal Circuit that the patent was invalid and therefore not infringed. The Amlodipine Decision has no bearing on the outcome in this case, where a court has ruled that Apotex's ANDA infringes Astra's valid patents. Indeed, if the Amlodipine Decision has any relevance here at all, it supports the view that FDA properly converts an ANDA with final approval to tentative approval when a court has found that the ANDA infringes an innovator's patent and sets a new effective date for the ANDA in the future, consistent with this Court's decision in *Mylan*.

### 2. Apotex's Argument Is Inconsistent with the Statute.

Apotex's claim (Mem. at 16) that the FDA decision in this case violates the plain language of the statute is erroneous. The provision Apotex quotes does not support its argument. That provision states that where a court finds that a patent is valid and would be infringed by a generic product, "the period during which an [ANDA] may not be approved" will be extended by the six-month pediatric exclusivity period. 21 U.S.C. § 355a(c)(2)(B). That language does not suggest that pediatric exclusivity vanishes if a generic producer obtains final approval for its ANDA before the patent court rules. Rather, it supports FDA's conclusion that, once Apotex

was found to have infringed Astra's patents and the patent court reset the approval date, its ANDA could not be approved during the pediatric exclusivity period and FDA was obliged to convert any final approval to tentative approval.

Apotex's reading of the statute – that following the patent court's determination that Apotex infringed Astra's patents, FDA could not enforce Astra's period of pediatric exclusivity simply because Apotex had gained final approval of its ANDA at an earlier stage – makes no sense. In enacting the Hatch-Waxman Amendments and the FDAMA, Congress sought to protect the patent rights of pioneer manufacturers and to provide rewards for those who performed pediatric studies. Under Apotex's reading, however, if a generic producer challenges a patent late in the life of the patent, the 30-month stay expires, the generic producer chooses to proceed to market despite the pendency of the patent litigation, and the patent court issues its determination of infringement only after the patent has expired, the pioneer manufacturer would lose the benefit of the pediatric exclusivity it had earned. The generic producer thus benefits from its infringing activity, and Congress's intent to reward the performance of pediatric research is thwarted.

Congress could not have intended such a result. The patent court noted that an argument that Astra should lose its pediatric exclusivity because the patent had expired before the patent court ruled would "create an anomalous result that is at odds with Congress's goal in enacting § 335a." *AstraZeneca*, 2007 WL 1612053, at * 9. The same is true of the reading Apotex argues for here.[9]

---

[9]     Moreover, the remedy that Apotex requests would strip FDA of its core responsibility under the FDCA to determine the safety and efficacy of drug products, a determination FDA must make when deciding whether to grant final approval of an ANDA. Consistent with FDA's practice when there has been a tentative approval, FDA must issue a new final approval letter (continued…)

      *3.     There is No Basis for Apotex's Assertion that FDA's June 28 Decision Is Procedurally Inadequate.*

Apotex argues (at 19, 24) that FDA's decision was inadequate because the agency allegedly "blindly deferred" to the patent court and failed to provide a full explanation of its reasoning. These arguments are without merit.

FDA did not "blindly defer" to the patent court. As described above, the patent court ordered a change in the effective date of approval of Apotex's ANDA – a remedy authorized by statute. FDA took its own action in response to that order, by converting its final approval to tentative approval. This was not "blind deference," but rather proper administrative action in response to the order of the patent court. *See Mylan Labs, Inc. v. Leavitt*, 484 F. Supp. 2d 108, 122 (D.D.C. 2007) (Urbina, J.) (FDA "relies on court decisions as factual inputs for its own actions").

Nor did FDA defer to the patent court's conclusion regarding the existence of pediatric exclusivity. It was FDA that originally determined that Astra was entitled to pediatric exclusivity for Prilosec®. FDA exercised its statutory authority under 21 U.S.C. § 355a(d) when the agency determined that the pediatric studies Astra submitted were adequate to support pediatric exclusivity and granted pediatric exclusivity in connection with the Astra patents at issue. FDA accordingly published the exclusivity expiration date – October 20, 2007 – in the Orange Book. *See* 21 U.S.C. § 355a(f). Once the agency converted Apotex's final approval to

---

after it has determined afresh that the ANDA is eligible for final effective approval at that time. As FDA informed Apotex in the June 28 Decision, when Apotex believes its ANDA may be considered for final approval, Apotex must submit an amendment to its ANDA identifying "changes, if any, in the conditions under which the product was tentatively approved," and including "updated information such as final printed labeling, chemistry, manufacturing, and controls data as appropriate" so that FDA can make a determination as to the safety and efficacy of the product at the time that the agency determines whether to grant the product final approval. Wolson Decl. Ex. J at 2.

tentative approval, it cited that earlier determination in concluding that final approval could not be granted until October 20, 2007, the expiration of the pediatric exclusivity period.

The FDA order is not deficient in any other respect. There was no need for FDA to spell out its reasoning in great detail in its notification letter. FDA provided the parties the opportunity to make their arguments fully in letters to the agency. The *Mylan* decisions provided a clear precedent for FDA's action in response to the patent court order resetting the effective date, while the authority Apotex cited was plainly inapposite. The agency need not spell out all of its analysis each time it takes similar action.

Apotex's argument that the Court should vacate FDA's decision under 5 U.S.C. § 705 pending FDA's preparation of a "complete response" to Apotex's June 21, 2007, FDA submission is plainly without merit. *See* Apotex Mem. at 24. Apotex has infringed Astra's patents for over three years and has already deprived Astra of a portion of its pediatric exclusivity period. There is no reason to allow Apotex to use empty procedural arguments to infringe further on Astra's rights.

## II.    THERE IS NO THREAT OF IRREPARABLE HARM TO APOTEX.

In order to prove irreparable harm if an injunction is not granted, Apotex must make a "clear showing" that the injury it will suffer is "certain and great," "actual and not theoretical," and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citation omitted) (emphasis in original). Apotex cannot come close to satisfying this substantial burden.

Two courts have already rejected Apotex's claim that it will suffer irreparable injury if it cannot sell its generic omeprazole between now and October 2007. In moving for a stay pending appeal of the patent court's injunction, Apotex argued both to the Southern District

of New York and the Federal Circuit that it would suffer irreparable injury absent a stay.  *See*

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (standard for granting stay pending appeal

requires, *inter alia*, showing of irreparable injury); *see also* Wolson Decl., Exs. B, D (Apotex

briefs).  Both courts denied Apotex's motion.  *Id.* Exs. C, E.  Thus, each court rejected, explicitly

or implicitly, Apotex's argument that it was irreparably injured by resetting approval for its

ANDA to October 2007.  This Court should reject Apotex's third bite at the apple with this

argument.

   Even if this Court revisits the issue of irreparable injury, Apotex cannot make

such a showing.  First, all losses that Apotex claims are the result of its own decision to go to

market with its product in 2003, *before* the conclusion of litigation before the patent court.

When the 30-month stay expired in 2003, Apotex knew that the patent suit was ongoing and that,

if it lost, the patent court was empowered to order deferral of the effective date of Apotex's

ANDA.  Apotex chose to disregard those risks and bring its generic product to market anyway.

Any injury that Apotex now claims results from that strategic decision and from Apotex's

voluntary assumption of the attendant risk.  Apotex cannot rely on injuries of its own making to

justify its application for injunctive relief before this Court.  *See Sanofi-Synthelabo v. Apotex,*

*Inc.*, No. 02.Civ.2255 (SHS), __ F. Supp. 2d __, 2006 WL 2516486, at * 24-25 (S.D.N.Y. Aug.

31, 2006) (discounting Apotex's claimed injury because "Apotex's harms were almost entirely

preventable, and were incurred by the company's own calculated risk" to come to market before

the conclusion of litigation).

   Second, any injury that Apotex is suffering results from the operation of the

pediatric exclusivity statute passed by Congress and the statutorily-authorized relief granted by

the Southern District of New York to remedy Apotex's infringement of Astra's patents.  Any

injury that Apotex suffers as a result of its own loss in a patent infringement action cannot qualify as injury that would warrant preliminary injunctive relief.

Third, the economic loss that Apotex claims is insufficient to justify an injunction. *See, e.g., Wisconsin Gas*, 758 F.2d at 674; *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). Even an *irretrievable* money loss, without more, may not constitute an irreparable harm. *See Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1025-26 (D.D.C. 1981). Rather, when economic harm is alleged, preliminary injunctive relief is proper only if "the monetary injury [is] sufficiently large in proportion to the plaintiff's operations that the loss of the amount of money involved would also cause extreme hardship to the business, or even threaten destruction of the business." *Id.* at 1025.

Apotex has not claimed that a four-month suspension in marketing its copy of Astra's omeprazole will destroy, or nearly destroy, its business. Nor could it. Apotex is Canada's largest pharmaceutical company, with worldwide sales totaling more than $850 million annually.[10] Any monetary loss from a suspension of marketing until October 2007 plainly presents no risk of "destruction of the business." Notably, Apotex provides no quantification of the losses it expects as a result of a relatively brief, four-month suspension from the market, as it must do to satisfy its burden. (*See generally* McIntire Decl. ¶¶ 15-20.) Indeed, it is entirely possible that Apotex has flooded the market with its product in anticipation of FDA's action.

Finally, many of the losses that Apotex claims it will suffer amount to little more than speculation. For example, Apotex claims (Mem. at 26) that the public will "incorrectly

---

[10]    *See* Apotex Corporate Info, available at http://www.apotex.com/CorporateInformation/Default.asp?flash=Yes (last visited July 4, 2007). Apotex reports C$900 million in annual sales on its website. For purposes of this brief, conversion of Canadian dollars to U.S. dollars was performed based on the interbank rate reported on July 4, 2007, at http://www.oanda.com/convert/classic.

believe that there are quality or safety concerns with" Apotex's products. This argument is nothing more than speculation that the public will make a *mistake* in understanding why Apotex's product is not available for sale between now and October. There is no basis for such speculation. Moreover, Apotex can circulate a copy of FDA's order to its customers to avoid any misunderstanding. Apotex also speculates (Mem. at 26) that if it must abide by Astra's pediatric exclusivity, it will lose good will and customer relations that it has worked to establish. Again, however, Astra offers no admissible evidence to suggest that it will not be able to sell its generic omeprazole products to purchasers with whom it has established relationships once Astra's period of pediatric exclusivity expires in a few months (and again, any such loss is of its own making).

Under the circumstances, the harm to Apotex is minimal and is certainly not irreparable. And it is plainly not the sort of harm that would warrant equitable relief.

## III.    THE INJUNCTION WOULD SUBSTANTIALLY INJURE OTHER PARTIES, INCLUDING ASTRA.

As a result of Apotex's infringing activity, Astra has already lost one-third of the period of pediatric exclusivity it earned against Apotex. If the Court were to grant a TRO or an injunction, Astra would lose even more of, and perhaps the entirety of, its pediatric exclusivity rights against Apotex and, with them, the reward to which Astra is statutorily entitled after expending very substantial efforts on studies of the safety and efficacy of its product in children.

In addition, other non-infringing generic manufacturers might lose sales if Apotex continues to market its product during this period. Most importantly, as discussed below, the long-term impact of the injunction Apotex seeks would be to undermine incentives for NDA holders to conduct pediatric studies, causing injury to children who would otherwise benefit from

use of drugs for pediatric purposes and undermining Congress's express intent in passing the FDAMA.

## IV.    THE PUBLIC INTEREST FAVORS DENIAL OF THE INJUNCTION.

The preliminary injunctive relief that Apotex seeks – which would deny Astra the benefit of the pediatric exclusivity it has earned – would be contrary to the public interest for two separate reasons.  First, granting such relief would upset the system of incentives that Congress established to encourage pharmaceutical manufacturers to conduct pediatric studies.  Second, granting such relief would effectively reward a patent infringer for its own infringing activity and deprive the patent holder of important relief that is essential to make it whole – a result that is plainly not in the public interest.

*First*, the injunctive relief that Apotex seeks is contrary to Congress's intent in passing the FDAMA.  As the Senate's Committee on Labor and Human Resources found in recommending the enactment of incentives for pediatric studies of pharmaceuticals, there are so few medications approved and labeled for pediatric use that, "[w]hen it comes to pharmaceuticals, our Nation's children are 'therapeutic orphans.'"  S. Rep. No. 104-284, at 36 (1996); S. Rep. No. 105-43, at 51 (1997); *see also* S. Rep. No. 105-43, errata, at 4 (1997) (additional views of Senator Wellstone) ("It is essential that we encourage manufacturers to explore the uses of drugs in children, and determine the safest method and dosage.").  The cause of the problem, the Committee found, was that there is "little incentive for drug sponsors to perform studies for medications which they intend to market primarily for adults and whose use in children is expected to generate little additional revenue."  S. Rep. No. 104-284, at 36 (1996).

The remedy that Congress chose was the new Section 355a, enacted "to provide a market incentive of 6 months of additional exclusivity to drug sponsors for completing and submitting studies of medicines in children."  S. Rep. No. 108-84, at 3 (2003).  "The new

incentives were intended to address the systemic disincentives that had previously existed to conducting pediatric studies." *Id.*; *see also* S. Rep. No. 107-79, at 1-2 (2001) ("By providing 6 months of additional market exclusivity on a drug for a holder … that has completed pediatric studies of the drug when requested … Congress sought to find an approach that would be more successful than previous efforts to have the pharmaceutical industry study the safety and effectiveness in children of drugs that, without such studies, would be prescribed 'off-label' to children."). Indeed, FDA has recognized the importance of pediatric exclusivity in reports to Congress. *See* H.R. Rep. No. 107-277, 107th Cong., 1st Sess., at 14 (2001) ("In its January 2001 Report to Congress, FDA found that 'the pediatric exclusivity provision has done more to generate clinical studies and useful prescribing information for the pediatric population than any other regulatory or legislative process to date.'").

Astra responded to Congress's incentives and complied fully with the statutory requirements for conduct and submission of pediatric studies. Apotex, however, seeks to undermine the reward to which Astra is entitled. Such a result would disrupt the incentives Congress sought to establish. Were Apotex – an adjudicated infringer of Astra's patents – to succeed in denying Astra the benefit of the exclusivity it has earned, Astra and other NDA holders would be less likely to conduct future pediatric studies, knowing that they could be deprived of the statutory exclusivity if an ANDA applicant or holder filed a paragraph IV certification or otherwise invited patent litigation late in the patent term and the litigation stretched beyond the patent expiration date. Because there is little market incentive to conduct most such studies, children could again become "therapeutic orphans."

Apotex ignores this clear congressional intent. Indeed, it goes so far as to argue (Mem. at 28) that the public interest *favors* an injunction because generic competition will lead

to "lower prices for consumers." That argument ignores the presence of other generic versions of omeprazole already on the market. More importantly, Apotex's argument asks this Court to disregard the fact that Congress has already determined that any public benefit from lower prices is outweighed by the important interest in ensuring medications are safe and effective for children. But Apotex offers no basis to cast aside Congress's resolution of this public policy debate.[11]

       *Second*, an injunction would reward Apotex for its infringing conduct by permitting it to continue its improper conduct by violating Astra's pediatric exclusivity. Public policy strongly favors permitting a patent holder to exploit the patent rights that it lawfully obtains, and it strongly discourages infringing sales. Apotex has been making sales that infringe on Astra's patents since 2003. Public policy does not condone those sales, and it does not permit Apotex to benefit from them. Nor does it permit Apotex to rely on those sales as a basis for injunctive relief in this Court. Accordingly, public policy strongly disfavors the injunction that Apotex seeks.[12]

---

[11]    Apotex's own declarant contradicts herself and undermines Apotex's argument about lower prices. According to Apotex and Ms. McIntire, the "removal of Apotex [from the market] only means that other generic suppliers … not Astra, will absorb Apotex's market share." Apotex Mem. at 27; McIntire Decl. ¶ 21. Yet if Apotex's market share will be filled by other generic manufacturers, then there is no merit to Apotex's and Ms. McIntire's contention that Apotex's presence in the market is needed to provide generic competition and lower prices. *See* Apotex Mem. at 28; McIntire Decl. ¶ 23.

[12]    Apotex's suit in this Court further runs counter to public policy by encouraging duplicative litigation and forum shopping. Apotex has had ample opportunity to litigate its claims – including its argument about irreparable injury – before the Southern District of New York and the Federal Circuit. Public policy does not favor giving Apotex a third bite at the apple.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in FDA's brief in opposition to Apotex's motion, the Court should deny the motion.

Respectfully submitted,

/s/ Joshua D. Wolson

Peter O. Safir (D.C. Bar No. 217612)
Carolyn F. Corwin (D.C. Bar No. 939355)
Joshua D. Wolson (D.C. Bar No. 473082)
Laura E. Derr (D.C. Bar No. 500344)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. N.W.
Washington, D.C. 20004
(202) 662-6000

*Counsel for Applicants for Intervention as Defendant AstraZeneca LP*

Dated:  July 6, 2007

28

## CERTIFICATE OF FILING AND SERVICE

I, Joshua Wolson, hereby certify that on this 6th day of July, 2007, I caused a true and correct copy of the foregoing Memorandum and all accompanying attachments, to be filed with the Court by e-mailing an electronic Copy to the general mailbox for the United States District Court for the District of Columbia, dcd_cmecf@dcd.uscourts.gov.

I further certify that, on the same date, I caused true and correct copy to be served via electronic and first class mail upon the following:

Arthur Y. Tsien
Kathryn E. Blamford
OLSSON, FANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036
atsien@ofwlaw.com

William A. Rakoczy
Amy D. Brody
Natalie G. Mitchell
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60610
wrakoczy@rmmslegal.com
abrody@rmmslegal.com
nmitchell@rmmslegal.com

*Counsel for Plaintiff*

Andrew E. Clark
US DEPARTMENT OF JUSTICE
P.O. Box 386
Washington, DC 20044
andrew.clark@usdoj.gov

*Counsel for Defendants*

/s/ Joshua D. Wolson
Joshua D. Wolson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APOTEX, INC.,

                Plaintiff,

         v.

FOOD AND DRUG ADMINISTRATION, *et al.*,

                Defendants.

                          Case No. 1:07-cv-01194-RMU

## DECLARATION OF JOSHUA D. WOLSON

Joshua D. Wolson declares as follows, pursuant to 28 U.S.C. § 1746:

1.      I am an associate at the law firm of Covington & Burling LLP, counsel to Intervenor AstraZeneca LP ("Astra"). I have personal knowledge of and am competent to testify to the matters set forth herein.

2.      Attached hereto at Exhibit A is a true and correct copy of an order of the U.S. District Court for the Southern District of New York (the "patent court") in *In re Omeprazole Patent Litig.*, No M-21-81 (S.D.N.Y.), dated June 14, 2007 (the "June 14 Order"), entering judgment on behalf of the plaintiffs, including Astra, against Apotex, Inc. ("Apotex").

3.      Attached hereto at Exhibit B is a true and correct copy of a letter-brief submitted to the patent court by Apotex on June 15, 2007, seeking partial reconsideration of and/or a stay of the June 14 Order.

4.      Attached hereto at Exhibit C is a true and correct copy of an order of the patent court dated June 15, 2007, denying Apotex's motion for reconsideration and/or a stay.

5.      Attached hereto at Exhibit D is a true and correct copy of an "Emergency Motion" filed by Apotex in the United States Court of Appeals for the Federal Circuit, dated June 19, 2007, seeking a stay of the June 14 Order.

6.      Attached hereto at Exhibit E is a true and correct copy of an order issued by the Federal Circuit, dated June 26, 2007, denying Apotex's motion for a stay.

7.      Attached hereto at Exhibit F is a true and correct copy of an "Emergency Motion" that Apotex filed in the Federal Circuit, dated June 28, 2007, seeking reconsideration of the Federal Circuit's denial of Apotex's motion for a stay.

8.      Attached hereto at Exhibit G is a true and correct copy of a letter dated June 15, 2007 from counsel for Astra to the United States Food and Drug Administration ("FDA"), without the attachment.

9.      Attached hereto at Exhibit H is a true and correct copy of a letter dated June 21, 2007, from counsel for Apotex to FDA, without the attachments.

10.     Attached hereto at Exhibit I is a true and correct copy of a letter dated June 25, 2007, from counsel for Astra to FDA.

11.     Attached hereto at Exhibit J is a true and correct copy of a letter sent on June 28, 2007, from FDA to Apotex, informing Apotex that FDA was converting Apotex's Abbreviated New Drug Application ("ANDA") No. 76-048 from finally-approved to tentatively-approved status.

12.     Attached hereto at Exhibit K is a letter dated April 18, 2007, from FDA to ANDA applicants/holders for amlodipine besylate tablets.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 6th of July, 2007, in Washington, D.C.

_____
                    Joshua D. Wolson

**WOLSON DECLARATION EX. A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------x
                               :
In re OMEPRAZOLE PATENT LITIGATION :   M-21-81 (BSJ)
                               :   MDL Docket No. 1291
                               :
-------------------------------x
                               :
ASTRAZENECA AB, et al.,        :
                               :
          Plaintiffs,          :   00 Civ. 6749 (BSJ)
                               :
          v.                   :
                               :
MYLAN LABORATORIES INC., et al., :
                               :
          Defendants.          :
-------------------------------x
                               :
ASTRAZENECA AB, et al.,        :
                               :
          Plaintiffs,          :   03 Civ. 6057 (BSJ)
                               :
          v.                   :
                               :
LABORATORIOS DR. ESTEVE, S.A., :
et al.,                        :
                               :
          Defendants.          :
-------------------------------x
                               :
ASTRAZENECA AB, et al.,        :
                               :
          Plaintiffs,          :   00 Civ. 4541 (BSJ)
                               :   03 Civ. 8719 (BSJ)
          v.                   :
                               :
LEK PHARMACEUTICAL AND CHEMICAL :
CO., D.D., et al.,             :
                               :
          Defendants.          :
-------------------------------x
                               :
ASTRAZENECA AB, et al.,        :
                               :
          Plaintiffs,          :   01 Civ. 9351 (BSJ)
                               :
```

```
                    v.                    :
                                          :
     APOTEX CORP., et al.,                :
                                          :
                    Defendants.           :
     ------------------------------x
                                          :
     ASTRAZENECA AB, et al.,              :
                                          :
                    Plaintiffs,           :     00 Civ. 7597 (BSJ)
                                          :     01 Civ. 2998 (BSJ)
                    v.                    :
                                          :
     IMPAX LABORATORIES, INC.,            :
                                          :     Judgment
                    Defendant.            :
     ------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

This matter having come to trial on the merits before the
undersigned Honorable Barbara S. Jones (without a jury), and the
Court having duly rendered its Opinion and Order dated May 31,
2007, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

### APOTEX

1.    Defendants Apotex Corp., Apotex Inc., and TorPharm,
Inc. (collectively "Apotex") have failed to meet their burden of
proving that the asserted claims (claim 1, 5, 6, and 10) of U.S.
Patent No. 4,786,505 ("the '505 Patent") and asserted claims
(claims 1, 6, 7, and 13) of U.S. Patent No. 4,853,230 ("the '230
Patent" are invalid.

2.    Apotex infringed claims 1, 5, 6, and 10 of the '505
Patent, and claims 1, 6, 7, and 13 of the '230 Patent by filing

Abbreviated New Drug Application ("ANDA") No. 76-048 with the
Food and Drug Administration ("FDA") including a certification
under 5)5(j)(2)(A)vii)(IV) of the Federal Food, Drug and
Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).  Apotex's
omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 76-048,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, and
10, and '230 Patent claims 1, 6, 7, and 13.

3.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. : 355a(b)(2)(B) expires.

### IMPAX

4.    Defendant Impax Laboratories, Inc. ("Impax") has
failed o meet its burden of proving that the asserted claims
(1, 5, 6, 8, and 10) of U.S. Patent No. 4,786,505 ("the '505
Patent" and the asserted claims (1, 6, 7, 10, and 13) of U.S.
Patent No. 4,853,230 ("the '230 Patent") are invalid.

5.    Impax infringed claims 1, 5, 6, 8, and 10 of the '505
Patent, and claims 1, 6, 7, 10, and 13 of the '230 Patent by
filing an Abbreviated New Drug Application ("ANDA") No. 75-785
with the Food and Drug Administration ("FDA") including a

certification under 505(j)(2)(A)vii)(IV) of the Federal Food,
Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV).
Impax's omeprazole formulations sold, offered for sale, used and
imported into the United States, described in ANDA No. 75-785,
and which were the subject of the Court's May 31, 2007 Opinion
and Order, literally infringe '505 Patent claims 1, 5, 6, 8, and
10, and '230 Patent claims 1, 6, 7, 10, and 13.

     6.    Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective
date of approval for the aforementioned products and related
ANDAs shall be not earlier than October 20, 2007, the date on
which the six-month period of pediatric exclusivity under 21
U.S.C. § 355a(b)(2)(B) expires.

## MYLAND AND ESTEVE

     7.    Defendants Mylan Laboratories Inc., and Mylan
Pharmaceuticals Inc. (collectively "Mylan"), and Esteve Quimica,
S.A. and Laboratorios Dr. Esteve, S.A. (collectively "Esteve")
have failed to meet their burden of proving that the asserted
claims 1, 3, 4, 5, 6, 7, 10, 11, and 14) of U.S. Patent No.
4,786,505 ("the '505 Patent") and the asserted claims (1, 6, 7,
8, 9, 11, 13 and 15) of U.S. Patent No. 4,853,230 ("the '230
Patent" are invalid.

     8.    The omeprazole formulation described in ANDA No. 75-
876 of Defendants Mylan and Esteve, which was the subject of the
Court's May 31, 2007 Opinion and Order, does not infringe the

asserted claims (1, 3, 4, 5, 6, 7, 10, 11, and 14) of the '505 Patent and the asserted claims (1, 6, 7, 8, 9, 12, 13, and 15) of the '230 Patent, either literally or under the doctrine of equivalents.

9.    Plaintiffs' allegations that Defendants Mylan and Esteve have willfully infringed the '505 and '230 Patents are dismissed as moot.

## LEK

10    The omeprazole formulations described in ANDA Nos. 75-757 and 76-515 of Defendants Lek Pharmaceuticals d.d. and Lek Service; Inc. (collectively "Lek"), which were the subject of the Court's May 31, 2007 Opinion and Order do not infringe the asserted claims (1, 5, 7, 8, 9, and 10) of the '505 Patent and the asserted claims (1, 6, 8, 10, 11, and 13) of the '230 Patent, either literally or under the doctrine of equivalents.

## ALL PARTIES

11    The Parties reserve the right to assert remaining claims not the subject of the Court's previous orders and opinion, and to seek or oppose damages, enhanced damages, attorneys' fees and further relief.

12    There being no just reason for delay, pursuant to Federal Rule of Civil Procedure 54(b), the Clerk of Court shall enter final judgment for Astrazeneca, pursuant to paragraphs 1 through 11.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June /4, 2007

**WOLSON DECLARATION EX. B**



LAW OFFICES

# CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.

PATENTS, TRADEMARKS, COPYRIGHTS

| | | | |
|---|---|---|---|
| ALAN H. BERNSTEIN | SCOTT M. SLOMOWITZ* | MICHAEL J. CORNELISON | COLLEEN R. BUTCHER | A.D. CAESAR (1901-1995) |
| STANLEY H. COHEN | MONA GUPTA | BRUCE J. CHASAN | DOUGLAS PANZER* | CHARLES RIVISE (1900-1951) |
| MANNY D. POKOTILOW | DAVID M. TENER | MARINA E. VOLIN* | | |
| BARRY A. STEIN | SALVATORE R. GUERRIERO* | MARC B. BASSLER | TECHNICAL ADVISOR | COUNSEL |
| MARTIN L. FAIGUS | JAMES J. KOZUCH | WILLIAM C. YOUNGBLOOD* | THOMAS J. CLARE | ALLAN H. FRIED, PH.D. |
| ERIC S. MARZLUF | WILLIAM J. CASTILLO*† | DAVID B. GORNISH* | | |
| ROBERT S. SILVER | FRANK M. LINGUITI | NICHOLAS M. TINARI, JR.* | | * ALSO ADMITTED TO PRACTICE IN NJ |
| MICHAEL J. BERKOWITZ | GARY A. GREENE | JOSEPH F. MURPHY, PH.D. | | † ALSO ADMITTED TO PRACTICE IN NY |

June 15, 2007

The Honorable Barbara S. Jones                  Via Facsimile and
United States District Judge                     First Class Mail
Southern District of New York
United States Courthouse
500 Pearl Street, Room 620
New York, NY 10007

  Re: *In re Omeprazole Patent Litigation,* M-21-81 (BSJ)
    MDL Docket No. 1291

Dear Judge Jones:

  Prior to receiving Your Honor's Order of this morning Apotex had prepared this letter motion requesting, pursuant to Rule 59(e), Fed.R.Civ.P., that the Court reconsider, set aside or correct paragraph 3 of this Court's June 14, 2007 Order and to stay the effect of this Court's Order pending its reconsideration of the issue, and if reconsideration is denied, pending appeal. We submit this letter motion, but in light of Your Honor's Order of this morning urge that, alternatively, Your Honor vacate paragraph 3, or stay its effect, pending resolution of the issues discussed in that Order.

  The seemingly implicit goal of paragraph 3 is to assert jurisdiction over the non-party FDA to act to change the effective date of final approval of Apotex's ANDA products. Apotex's ANDA received final approval from the FDA in 2003 which remained unchallenged by Astra for almost four years. For that status to change, the FDA must act. It is respectfully submitted that the Court should not supplant the role of the FDA where the patents involved have already expired. For all the reasons set forth in Apotex' Objections, Apotex respectfully submits that a court does not have power to issue an order against a governmental agency who is not a party and over whom it has not acquired *in personam* jurisdiction.

  Since the FDA is not now a party, Apotex respectfully submits that a court cannot and should not assert jurisdiction over the FDA to change the effective date of approval of Apotex's ANDA products, to a date earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity expires under U.S.C. §355a(b)(2)(B).

June 15, 2007
Honorable Barbara S. Jones
Page -2-

Furthermore, because the FDA is not presently a party, it is unclear what the effect of the Order is since the FDA issued final approval in 2003. Moreover, if the Court were to entertain a mandatory order against the FDA, it would have the same effect as an injunction against Apotex which Apotex submits is not an available remedy since the patents in suit have already expired. At the very least, it would require that full consideration first be given to the *eBay* factors. *eBay, Inc. v. MercExchange, L.L.C.,*126 S.Ct. 1837 (2006). As the Supreme Court noted, the four *eBay* factors must be addressed before an injunction may issue. *eBay, Inc.,*126 S.Ct. at 1839.

In *eBay*, the Court determined that in a patent case, just like any other case, the plaintiff must satisfy four factors to obtain an injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* at 1839. Astra has made none of the required showings to prove that it is entitled to a permanent injunction. Most particularly, Astra has not and cannot show irreparable harm. An injunction now would only eliminate Apotex as a seller, but it would not restore any sales to Astra. Apotex's sales will go to the non-infringing generic manufacturers, not to Astra.

A permanent injunction can issue only to the extent that Astra has made a sufficient showing under the four traditional equity factors reiterated in *eBay. See Acumed LLC v. Stryker Corp.,* 483 F.3d 800, 811-12 (Fed. Cir. 2007) (vacating permanent injunction and remanding to the district court to consider the four-factor *eBay* test); *Montsanto Co. v. Scruggs,* 459 F.3d 1328, 1342 (Fed. Cir. 2006)(same). Since Astra has not attempted to satisfy any of the factors articulated in *eBay*, an injunction is inappropriate as a matter of law.

For all the foregoing reasons and for those set forth in Apotex's Objections to Astra's Proposed Non-Final Judgment and Order, Apotex respectfully requests that the Court reconsider paragraph 3 of the June 14, 2007 Order and to stay the effect of this Court's Order pending reconsideration, and if reconsideration is denied, pending appeal.

Respectfully submitted,

CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.

By _____
        Robert S. Silver

RSS:bj
cc:
Second Wave Counsel

**WOLSON DECLARATION EX. C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------x
                                     :    M-21-81 (BSJ)
In re OMEPRAZOLE PATENT LITIGATION   :    MDL Docket No. 1291
                                     :
-------------------------------------x
                                     :
ASTRAZENECA AB, et al.,              :
                                     :
              Plaintiffs,            :    00 Civ. 6749 (BSJ)
                                     :
         v.                          :
                                     :
MYLAN LABORATORIES INC., et al.,     :
                                     :
              Defendants.            :
-------------------------------------x
                                     :
ASTRAZENECA AB, et al.,              :
                                     :
              Plaintiffs,            :    03 Civ. 6057 (BSJ)
                                     :
         v.                          :
                                     :
LABORATORIOS DR. ESTEVE, S.A.,       :
et al.,                              :
                                     :
              Defendants.            :
-------------------------------------x
                                     :
ASTRAZENECA AB, et al.,              :
                                     :
              Plaintiffs,            :    00 Civ. 4541 (BSJ)
                                     :    03 Civ. 8719 (BSJ)
         v.                          :
                                     :
LEK PHARMACEUTICAL AND CHEMICAL      :
CO., D.D., et al.,                   :
                                     :
              Defendants.            :
-------------------------------------x
                                     :
ASTRAZENECA AB, et al.,              :
                                     :    01 Civ. 9351 (BSJ)
              Plaintiffs,            :
                                     :

```
                v.                    :
                                      :
APOTEX CORP., et al.,                 :
                                      :
              Defendants.             :
----------------------------------x
                                      :
ASTRAZENECA AB, et al.,               :
                                      :    00 Civ. 7597 (BSJ)
              Plaintiffs,             :    01 Civ. 2998 (BSJ)
                                      :
                v.                    :
                                      :
IMPAX LABORATORIES, INC.,             :
                                      :    **Judgment**
              Defendant.              :
----------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

The Court is in receipt of Defendants Apotex Corp.,
Apotex Inc., and TorPharm, Inc.'s (collectively "Apotex")
letter dated June 15, 2007 requesting the Court reconsider
paragraph 3 of the June 14, 2007 Order and to stay the
effect of the Order pending reconsideration.

As recognized by the Court of Appeals for the District
of Columbia in Mylan v. Thompson, 389 F.3d 1272 (D.C. Cir.
2004), "the patent remedy statute directs that upon a
finding of infringement the district court establish a new
effective date for approval which is 'not earlier than the
date of the expiration of the patent which has been
infringed.'" Id. at 1282 (quoting 35 U.S.C. §
271(e)(4)(A)). Moreover, the Court of Appeals held that
the Food and Drug Administration could change its final

approval of an ANDA following a district court's order finding that the generic version of the drug infringed a patent.

Apotex's argument regarding the issuance of a permanent injunction will be addressed after briefing on the issue is complete.

Application DENIED.

SO ORDERED:

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:        New York, New York
              June 15, 2007

**WOLSON DECLARATION EX. D**

Appeal No. 2007-_____

# United States Court of Appeals

*for the*

# Federal Circuit

## ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, KBI-E, INC., KBI INC. and ASTRAZENECA, LP,

*Plaintiffs-Appellees,*

v.

## APOTEX CORP., APOTEX, INC. and TORPHARM INC.,

*Defendants-Appellants.*

## APOTEX'S EMERGENCY MOTION TO STAY THE JUNE 14 AND 15, 2007 JUDGMENT ORDERS PURPORTING TO EFFECTIVELY RESET THE FINAL APPROVAL DATE OF APOTEX'S ANDA

Appeal from the United States District Court
for the Southern District of New York
The Honorable Barbara S. Jones
District Court Case No. 01-CV-9351 (BSJ)

Robert S. Silver
Bruce J. Chasan
Mona Gupta
William C. Youngblood
Marc B. Bassler
CAESAR, RIVISE, BERNSTEIN,
COHEN & POKOTILOW, LTD.
1635 Market Street
Seven Penn Center – 11th Floor
Philadelphia, PA 19103-2212
Telephone: (215) 567-2010
Facsimile: (215) 751-1142
*Attorneys for Defendants-Appellants
Apotex, Inc., Apotex Corp. and
Torpharm Inc.*

June 19, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

STATEMENT OF RELATED CASES ....................................................iv

I.    INTRODUCTION AND SUMMARY...............................................1

II.    RELEVANT FACTS AND BACKGROUND ..................................3

III.    LEGAL STANDARD FOR GRANTING A STAY ..........................5

IV.    APOTEX'S MOTION FOR A STAY SHOULD BE GRANTED ..................6

    A.    The district court cannot reset the FDA final
        approval date of Apotex's ANDA because (a) it is
        contrary to the plain language of the statute, and (b) the
        FDA is not a party in this litigation and cannot be
        compelled to withdraw approval of Apotex's ANDA ...........................6

        1.    Plain Language of the Statute .......................................7

        2.    An Order imposing a period of pediatric exclusivity
            would conflict with the FDA's position and usurp
            the FDA's primary jurisdiction......................................10

        3.    The district court had no jurisdiction over the FDA ...................14

    B.    A stay is necessary because the patents-in-suit expired
        before the district court's May 31, 2007 Order and therefore
        there is no basis for a remedy of injunctive relief.................................14

    C.    A stay is appropriate because the district court clearly
        erred by failing to address the four-factor e-Bay test .............................15

V.    CONCLUSION................................................................................21

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007) ....................................................... 16

*Alemite Mfg. Corp. v. Staff*,
  42 F.2d 832 (2d Cir.1930) .............................................................. 14

*Alza Corp. v. Mylan Labs., Inc.*,
  310 F. Supp. 2d 610 (D. Vt. 2004), *aff'd*
  391 F.3d 1365 (Fed. Cir. 2004) ................................................... 9, 10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984).......................................................................... 11

*CollaGenex Pharms., Inc. v. IVAX Corp.*,
  375 F. Supp. 2d 120 (E.D.N.Y. 2005)............................................ 18

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*,
  191 F.3d 297 (2d Cir. 1999) ........................................................... 14

*Hybritech Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988) ..................................................... 20

*eBay, Inc. v. MercExchange, L.L.C.*,
  126 S. Ct. 1837 (2006)........................................................ 3, 15, 16

*Kalipharma, Inc. v. Bristol-Myers Co.*,
  707 F. Supp. 741 (S.D.N.Y. 1989) ................................................. 17

*Kearns v. Chrysler Corp.*,
  32 F.3d 1541 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 1032 (1995) ........ 6, 15

*Lans v. Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) ..................................................... 14

*Monsanto Co. v. Scruggs*,
  459 F.3d 1328 (Fed. Cir.  2006) .................................................... 16

ii

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)............................................................... 16

*Mylan Labs., Inc. v. Thompson*
    389 F.3d 1272 (D.C. Cir. 2004)....................................... 10, 11

*Nutrition 21 v. U.S.*,
    930 F.2d 867 (Fed. Cir. 1991) .............................................. 17

*In re Omeprazole Patent Litigation*
    --- F. Supp.2d ---, 2007 WL 1576153
    (S.D.N.Y. May 31, 2007)................................... 1, 3, 4, 17

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007) ........................................... 13

*Pfizer, Inc. v. Mylan Labs., Inc.*,
    2006 WL 2990398 (W.D. Pa. Oct. 18, 2006)....................... 12

*Pfizer, Inc. v. Mylan Labs., Inc.*
    2007 WL 1662640 (Fed. Cir. June 5, 2007)........................ 13

*Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.*,
    307 F. Supp. 2d 15 (D. D.C. 2004)...................................... 10

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ............................................... 5

## FEDERAL STATUTES

21 U.S.C. § 355a ............................................................ 1, 3, 4, 7, 9

21 U.S.C. § 355(j) ....................................................................... 11

35 U.S.C. § 271(e)(4)(A) ...................................... 4, 6, 7, 8, 10, 16

28 U.S.C. § 1292 (c)(1)................................................................. 5

Fed.R.Civ.P. 65(d) ........................................................... 6, 14, 15

## STATEMENT OF RELATED CASE

This dispute arises as a result of various pharmaceutical companies' requests for permission from the Food and Drug Administration ("FDA") to market generic versions of the drug Prilosec®, which was covered by U.S. Patent Nos. 4,786,505 ("'505 patent") and 4,853,230 ("'230 patents") (collectively "the patents-in-suit").

AstraZeneca AB, Aktiebolaget Hässle, KBI-E Inc., KBI Inc., and AstraZeneca, L.P. (collectively "Astra"), the owners of the patents-in-suit, brought patent infringement suits against numerous generic drug companies, accusing them of infringement under the Hatch-Waxman Act. Thus far, two suits have proceeded to trial – the "First Wave" case (*Astra Aktiebolag v. Andrx Pharm.*, Inc. 222 F. Supp. 2d. 423 (S.D.N.Y. 2002), *aff'd*, 84 Fed. Appx. 76 (Fed. Cir. 2003) (unpublished)) and the case at issue here (the "Second Wave" case). *In re Omeprazole Patent Litigation*, --- F. Supp. 2d ---, 2007 WL 1576153, No. M-21-81 (BSJ) (S.D.N.Y. May 31, 2007).

Defendants-Appellants Apotex, Corp., Apotex Inc., and Torpharm, Inc. (collectively "Apotex") were defendants in the Second Wave case as were Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc., Esteve Quimica, S.A., Laboratorios Dr. Esteve, S.A., Lek Pharmaceutical and Chemical Company D.D., Lek U.S.A., Inc., and Impax Laboratories, Inc. Pursuant to 28 U.S.C. § 1407

iv

(2000), the Judicial Panel on Multidistrict Litigation consolidated the Second Wave case for pre-trial purposes after which the case was consolidated for trial.

No appeal from the action involving Astra and Apotex, or to Apotex's knowledge any of the other Second Wave defendants, has previously been before this or any other appellate court.

## I.    INTRODUCTION AND SUMMARY

Apotex moves for an emergency stay of the district court's unprecedented June 14, 2007 (¶ 3) and June 15, 2007 Judgment Orders (A1-A9) ("Judgments") which improperly purport to reset the effective date of final approval for Apotex's ANDA No. 76-048 ("ANDA") for its generic omeprazole (Prilosec®) products to be not earlier than October 20, 2007, the date on which the six-month pediatric exclusivity expires under 21 U.S.C. §355a(b)(2)(B).  The court so ruled even though the patents-in-suit expired on April 20, 2007; that the FDA was not a party to the case; that Apotex received final effective approval in 2003 and has been commercial marketing since that time; and that there is no pediatric exclusivity to apply against Apotex.

The district court held a 2.5 month long trial (April 3, 2006 until June 14, 2006).  Nearly a year later, on May 31, 2007, the court held that Apotex's products infringed the patents-in-suit and that they were valid, but that was <u>after</u> the patents expired on April 20, 2007. *In re Omeprazole Patent Litigation*, --- F. Supp. 2d ---, 2007 WL 1576153 at *144, No. M-21-81 (BSJ) (S.D.N.Y. May 31, 2007).

No longer entitled to the protection of its patents, Astra moved to enforce its rights to pediatric "exclusivity" under 21 U.S.C. § 355a, even though meaningful exclusivity was no longer possible, as it had already ceded 98% of the omeprazole market to generic competitors, several of whom are non-infringing. Even if Astra

1

obtains the requested relief it is unlikely to recover any of its market share, much less ensure anything approaching "exclusivity."

The pediatric exclusivity does not extend Astra's expired patent term. It acts only to prevent the FDA from approving ANDAs of generic competitors in certain situations. Yet the FDA has *already* approved Apotex's ANDA, under which it has sold omeprazole for almost four years. Thus, the apparent aim of the order is to effectively withdraw or change the status of that approval.

The district court's Judgments (A3 at ¶ 3, A8-A9) do not directly order the FDA to withdraw approval of Apotex's ANDA, although Astra has requested this in their proposed Order (A66). And while the district court did not yet expressly issue a permanent injunction, as Astra has requested, it has effectively done so. If the FDA implements the court's effective date of final approval for Apotex's ANDA, as Astra has already requested that the FDA do, the FDA could potentially withdraw final approval of Apotex's ANDA, thereby preventing Apotex from continuing to market its products despite the fact it has done so since receiving final FDA approval in 2003. Astra never moved for a preliminary injunction, likely because it did not want to post an enormous bond. Nor did Astra seek other relief to prevent Apotex from marketing its generic omeprazole.

When a patent expires, so does the patentee's right to injunctive relief. Yet even if the district court had the authority under the patent law to establish a date

2

of effectiveness of the ANDA beyond the scope of the patent (which it doesn't), it has done so pursuant to its equitable power—effectively enjoined Apotex—without addressing the four factors required by *eBay, Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837 (2006), and without ever entering an injunction (which it has no power to do in the first instance after expiration of the patents).

Apotex respectfully submits that the district court's Judgments (A3 at ¶3, A8-A9), purporting to reset the ANDA final approval date, are invalid and should be vacated. Apotex also requests an expedited briefing schedule.

## II.    RELEVANT FACTS AND BACKGROUND

In the Second Wave case, Astra asserted that the '505 and '230 patents were infringed by several defendants (including Apotex) seeking FDA permission to market omeprazole.

Apotex received final FDA approval to market its generic omeprazole products in 2003. The '505 and '230 patents (A128-A149) expired on April 20, 2007.[1] The district court ruled ("May 31, 2007 Order") that Apotex infringed the '505 and '230 patents, and that they were valid. *In re Omeprazole Patent Litigation*, 2007 WL 1576153 at *144. The court ordered Astra to submit by June

---

[1]    Astra received a six-month period of pediatric exclusivity pursuant to 21 U.S.C. § 355a(c)(e)(B), which expires on October 20, 2007.

6, 2007, a proposed judgment, and for any objections to Astra's proposed judgment to be filed by June 11, 2007. *Id.*

Astra submitted its proposed Judgment. (A62-A70). On June 11, 2007, Apotex (and Impax) submitted its Objections. (A41-A127). On June 14, 2007, the district court adopted Astra's proposed Judgment and issued its Judgment (A1-A6) which ordered, adjudged and decreed, in part, that:

> 3. Pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of approval for the aforementioned products and related ANDAs shall be not earlier than October 20, 2007, the date on which the six month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires. (A3).

Despite the fact that Apotex already has an effective approval (and has for *years*), ¶3 purports to make the effective date of approval not earlier than October 20, 2007, the date on which the pediatric exclusivity expires. (A3). While ¶3 does not explicitly order a permanent injunction against further sales, the effect of ¶3 could do precisely that – if the FDA actually implements the order by withdrawing Apotex's effective approval and resetting the effective date as the order suggests. Apotex would thus be effectively enjoined from further marketing its generic version of Prilosec® until at least October 20, 2007, since its product would no longer be approved for sale in the U.S. Thus, if the FDA improperly adopts the district court's effective final approval date, the district court would effectively have enjoined Apotex without ever considering the four factors in *eBay* and

4

without ever explicitly ordering an injunction. It is therefore critical that this Court stay that unlawful order before Apotex is irreparably prejudiced by its potential implementation by the FDA.

On June 15, 2007, Apotex moved the district court to reconsider, set aside or correct ¶3 of the Judgment and to stay the effect of the judgment pending reconsideration of the issue and any appeal (A39-A40) and it was denied (A8-A9). Apotex makes this emergency motion to stay the district court's Judgments purporting to reset the final approval date of Apotex's ANDA.

## III.    LEGAL STANDARD FOR GRANTING A STAY

This Court has jurisdiction under 28 U.S.C. § 1292 (c)(1).

Apotex must show that the following factors weigh in its favor:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). These factors are weighed together, and a strong showing of likely success on the merits requires a lesser showing of harm. *Id.* at 512, 515.

The balance of these factors clearly favors entry of a stay.

5

## IV.    APOTEX'S MOTION FOR A STAY SHOULD BE GRANTED

### A.    The district court cannot reset the FDA final approval date of Apotex's ANDA because (a) it is contrary to the plain language of the statute, and (b) the FDA is not a party in this litigation and cannot be compelled to withdraw approval of Apotex's ANDA.

Co-defendant Impax moved to Dismiss for Lack of Subject Matter Jurisdiction upon expiration of the patents-in-suit which was denied (A13-A38, "Impax Order"), reasoning that subject matter jurisdiction for injunctive relief remains despite patent expiration. (*See* A38). The district court held that it had subject matter jurisdiction to the extent that it retained the power to provide relief to Astra through an order under 35 U.S.C. § 271(e)(4)(A), delaying the effective date of Impax's ANDA (and presumably Apotex's), to account for Astra's period of pediatric exclusivity.

The district court's holding is contrary to the plain language of the statutes. It also disregards that the FDA is not a party in this action and cannot, consistent with Fed.R.Civ.P. 65(d), be "directed" to withdraw or otherwise change the status of Apotex's ANDA effective approval where, as here, Apotex already received effective final approval in 2003 and the patents-in-suit have expired.

If the district court's Judgments are upheld, it will lead to extending the term of an expired patent in violation of *Kearns v. Chrysler Corp.,* 32 F.3d 1541, 1550 (Fed. Cir. 1994), *cert. denied,* 514 U.S. 1032 (1995) and the United States Constitution that gave Congress the exclusive power to grant patents for a limited

6

term. (U.S. Constitution Article I, Section 8 "To promote the Progress of Science and useful Arts, by securing **for limited Times** to Authors and Inventors the exclusive Right to their respective Writings and Discoveries) (emphasis added). Moreover, it will unjustly reward Astra despite its failure to challenge the FDA final approval of Apotex's ANDA <u>before</u> Astra's patent rights expired. In addition, such an order will interfere with the primary jurisdiction of the FDA to interpret the Congressional enactments that define its mission, the effect of which will be to impose a period of delay upon Apotex (and Impax) despite clear indications from the FDA that the agency would not do so itself.

1.    **Plain Language of the Statute**

The Impax Order relied on language from 35 U.S.C. § 271(e)(4)(A): "the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is <u>not earlier than the date of expiration of the patent</u> which has been infringed." (A28, (original emphasis)). The court interpreted that language as permitting it to extend a patent term by including the FDA's pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B). The statute, by its very language, anticipates that the court's decision of infringement and validity would come <u>prior</u> to the expiration date of the patent. Congress obviously recognized that once a patent expires, a court does not have any authority to deal with the post-expiration period. As in any patent

7

case, the court retains jurisdiction over Apotex's sales made before the patents-in-suit expired. But, as with any patent case, once the patent expires, there is no basis for either injunctive relief or damages for post-expiration sales.

The district court interpreted the language "a date which is <u>not earlier than</u> <u>the date of expiration of the patent</u> which has been infringed," 35 U.S.C. § 271(e)(4)(A), to grant it authority to set any date it wished, so long as the date was after the expiration of the patent. But § 271(e)(4) is part of the patent law, and prescribes remedies only for patent infringements. It carefully circumscribes the power of the court, expressly providing that the listed remedies are "the only remedies which may be granted by a court for an act of infringement." There is no basis in patent law for setting a date after the date in § 271(e)(4)(A) itself: "the date of expiration of the patent which has been infringed."

Rather than granting the district court the authority to go beyond the patent law, the "not earlier" language is a *limitation* on the reach of § 271(e)(4)(A), in recognition of the fact that while a finding of patent infringement justifies postponing approval until the patent expires, it provides no basis for ordering that an ANDA must be approved by that date. The FDA may have any number of reasons for approving an ANDA *after* the patent expires, and § 271(e)(4)(A) provides no basis for any constraint on the FDA beyond that approval must be "no earlier than the date of expiration of the patent."

8

The court in *Alza Corp. v. Mylan Labs., Inc.*, 310 F. Supp. 2d 610, 637 (D. Vt. 2004), *aff'd*, 391 F.3d 1365 (Fed. Cir. 2004), recognized the limits of § 271(e)(4)(A) when it simply ordered that "the effective date of any approval of Mylan's ANDA product shall be no earlier than the date of the expiration of the '580 patent family." Similarly, the court here was empowered by § 271(e)(4)(A) only to order that the effective date of Apotex's ANDA be "no earlier than the date of expiration of the patent."

Furthermore, the plain language of 21 U.S.C. § 355a(c)(2)(B) – "the period during which an application may not be approved" – refers to ANDAs that have not yet been approved.  Apotex's ANDA received final approval in 2003 and its omeprazole products have been sold in the market place for almost four years.

Astra could have sought injunctive relief prior to the expiration of the patents-in-suit, but did not.  Astra could also have sued the FDA prior to patent expiration to challenge the approval of Apotex's ANDA, but did not.  As the court itself noted, "[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify departure from the plain and unambiguous language of the statute." (A29), *citing United States v. McGoff*, 831 F. 2d 1071, 1080 and n. 19 (D.C. Cir. 1987), quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). Respect for the plain language of 35 U.S.C. § 271(e)(4)(A) counsels that it should not be construed as a basis for extending a patent term considering the pediatric

9

exclusivity, especially where, as here, there is every indication that such a construction would contradict the position the FDA would take and has taken (*see infra*).

The court erred in its Impax Order by citing *Alza Corp. v. Mylan Labs, Inc.*, 391 F.3d 1365 (Fed. Cir. 2004) for support that it may issue an injunction extending into the pediatric extension. (A31). Rather, in *Alza*, the court merely noted that both parties had conceded that the case would be moot after the pediatric extension expired. *Alza*, 391 F.3d at 1368, n. 3.

Likewise, the court's reliance on *Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.*, 307 F. Supp. 2d 15 (D. D.C. 2004) is misplaced (A33) because in *Ranbaxy*, unlike Apotex here, Ranbaxy had not obtained final FDA approval to market its ANDA product. (A0033); *Ranbaxy,* 307 F. Supp. 2d at 18.

### 2. An Order Imposing a Period of Pediatric Exclusivity Would Conflict With the FDA's Position and Usurp the FDA's Primary Jurisdiction.

The court made clear in *Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004) that a district court's order establishing an ANDA effective approval date after the patent in question has been determined to be valid and infringed, ***does not supplant the role of the FDA*** in determining what the consequences of what a new effective date should be.

10

Mylan was held to infringe <u>before</u> the patent-in-suit expired. The FDA then converted the Mylan final approval to a tentative approval so that upon patent expiration, Mylan's ¶ IV certification would convert to a ¶ II certification, thus subjecting Mylan to the pediatric exclusivity. Mylan then sued the FDA in district court for the District of Columbia. Unlike Apotex here, Mylan challenged the FDA's determination that, as to a patent that *had not yet expired*[2], a period of pediatric exclusivity would be attached to the effective date of the challenger's ANDA following a district court's order that the effective date of the approval of the infringing party's ANDA was not to be earlier than the date of expiration of the patent. *Mylan*, 389 F.3d at 1277. Mylan contended that the FDA's final approval of its ANDA entitled Mylan to market its generic product immediately upon expiration of the patent under 21 U.S.C. § 355(j), without regard to pediatric exclusivity. *Id.* at 1274. The *Mylan* opinion turned on whether, after applying the deference due to administrative agencies under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), the FDA's determination was reasonable. *Mylan*, 389 F.3d at 1284 ("We affirm the district court's judgment because the FDA's decision reasonably resolves the ambiguity in applying the relevant statutes to a factual situation not fully foreseen or provided for by the Congress. . ."). The *Mylan* opinion documented in great detail the

---

[2]    The critical distinction between *Mylan* and here is that here the patents-in-suit expired before the court's decision determining validity and infringement.

11

FDA's reasoning in concluding that the period of pediatric exclusivity in there, *where the patent had not yet expired*, should be accounted for in the ANDA approval effective date.

Here, in sharp contrast, the district court rulings resetting Apotex's final approval date would effectively eliminate the FDA's role if the FDA adopted the new date. Unlike *Mylan*, Astra has not challenged the FDA's action in the district court for the District of Columbia. Nor is the Judgment merely a matter of a court ordering the FDA to do what it would be bound itself to do in any case, since neither the FDA nor any court has <u>ever</u> been asked to consider whether it can change a final approval to a tentative approval <u>after</u> patent expiration.

The FDA recently addressed the issue of how a pediatric extension may or may not affect an already issued ANDA approval in a case involving the drug amlodipine besylate. *See Pfizer, Inc. v. Mylan Labs, Inc.,* 2006 WL 2990398, at *3 (W.D. Pa. Oct. 18, 2006). In a detailed, considered decision, the FDA made clear there is a fundamental distinction between how the pediatric extension should affect an unapproved ANDA versus an approved ANDA. The FDA confirmed that only *"unapproved* ANDAs are currently blocked pediatric exclusivity" – already approved ANDAs, like Apotex's ANDA here, are *not* blocked by pediatric exclusivity (emphasis added) (*See* FDA Amlodipine Decision of April 18, 2007, A114-A127 at A117 at n. 3 and A120 at n. 6). In fact, the FDA considered the

12

significance of whether there had been a court determination prior to patent expiration and whether it had changed the final approval to a tentative approval prior to patent expiration. In the district court Amlodipine Decision, Mylan was found to infringe the patent-in-suit, whose validity was upheld, one month <u>before</u> the patent expired. (A117). However, the FDA did not change Mylan's final approval to a tentative approval before the patent expired and Mylan sought and received a stay of a district court injunction and proceeded to market without being subjected to any pediatric exclusivity. (A117).

This Court found the Pfizer patent invalid in a case against Apotex, three days prior to expiration of the Pfizer patent, but Mylan was not a party there. (A117-A118; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007). In fact, the *Mylan* district court decision was not reversed until recently, more then two months after the Pfizer patent expired. *Pfizer, Inc. v. Mylan Labs., Inc.*, 2007 WL 1662640, No. 2007-1194 (Fed. Cir. June 5, 2007). Here, the district court's Judgments, if not stayed, could compel the FDA to follow a path that conflicts with the FDA's own Amlodipine decision.

### 3.     The District Court Had No Jurisdiction Over The FDA.

The FDA was not a party to the district court case. As a result, the district court cannot grant relief directing the FDA to do anything, much less to reset the ANDA approval date that is already effective. Under Fed.R.Civ.P. 65(d), the

13

district court did not have the authority to compel the FDA to withdraw the final

approval date of Apotex's ANDA. *Doctor's Assocs., Inc. v. Reinert & Duree,*

*P.C.*, 191 F.3d 297, 302 (2d Cir. 1999), *quoting* 11A Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2956, at 335 (2d ed.

1995) ("A court ordinarily does not have power to issue an order against a person

who is not a party and over whom it has not acquired in personam jurisdiction.").

*See also, Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832 (2d Cir.1930) (L. Hand, J.)

(A court cannot "make a decree which will bind any one but a party.").

   **B.    A stay is necessary because the patents-in-suit expired before the
          district court's May 31, 2007 Order and therefore there is no basis
          for a remedy of injunctive relief.**

   The '505 and '230 patents (A128-A1049) expired on April 20, 2007, more

than a month before the district court found the patents-in-suit valid and infringed

by Apotex. When a patent expires, so does the patentee's right to injunctive relief

regarding that patent. *See Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1328 (Fed.

Cir. 2001; *Kearns,* 32 F.32 1541, 1550 ("Thus, when the rights secured by a patent

are no longer protectable by virtue of expiration or unenforceability, entitlement to

injunctive relief becomes moot because such relief is no longer available. . . .

Granting the [injunctive] relief requested by Kearns would impermissibly extend

the statutory term beyond that established by Congress."). The district court erred

in ordering that the effective date of approval for Apotex's ANDA shall be not

14

earlier than October 20, 2007, because that could, in effect, impermissibly extend the life of the expired patents.

**C.     A stay is appropriate because the district court clearly erred by failing to address the four-factor *e-Bay* test.**

In *eBay*, the Court rejected a "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances," and held that a plaintiff seeking a permanent injunction in a patent dispute "**must satisfy** a four-factor test" (in accordance with "well-established principles of equity"). *eBay*, 126 S.Ct. at 1839 (emphasis added).

The district court did not address any of the *eBay* factors and it must discuss them before issuing an injunction.  *See Id.*; Fed.R.Civ.P. 65(d) ("Every order granting an injunction ... shall set forth the reasons for its issuance [and] shall be specific in terms...".).  This fact is acknowledged by the district court's June 15, 2007 Judgment, which states: "Apotex's argument regarding the issuance of a permanent injunction will be addressed after briefing on the issue is complete." The record is devoid of evidence supporting irreparable injury or the unavailability of an adequate legal remedy for Astra.  Nor is there any evidence of any hardship Astra would suffer without an injunction.  That is because there is none.

As discussed, the district court's Judgments, if implemented by the FDA to rest Apotex's effective approval date, would effectively act as an injunction against Apotex. Accordingly, they are subject to the "well-established principles of equity"

15

discussed in *eBay*. 126 S.Ct. at 1839. Moreover, even if the court did have authority under § 271(e)(4)(A) to establish a date after the expiration of the patent, it could do so only pursuant to its equitable powers. It scarcely needs repeating that "[c]ourts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Yet the adequacy of Astra's remedies at law have not even been addressed.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay*, 126 S.Ct. at 1839. A permanent injunction can issue only to the extent that Astra makes a sufficient showing under the four *eBay* factors. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811-12 (Fed. Cir. 2007) (vacating permanent injunction and remanding to consider the four-factor *eBay* test); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1342 (Fed. Cir. 2006) (same). Since Astra has not attempted to satisfy any of the *eBay* factors, an injunction is inappropriate as a matter of law.

Astra cannot show that a permanent injunction is appropriate because it cannot show irreparable harm. It never moved for a preliminary injunction against any of the generic manufacturers currently on the market. As a result, Astra lost the entire market for its omeprazole products to generic manufacturers who now

16

control 98% of that market. (A76, McIntire Decl. at ¶ 16). Apotex launched its omeprazole product in November 2003; Mylan/Esteve and Lek had already launched in August 2003; and Impax launched in September 2004. *See In re Omeprazole Patent Litigation*, 2007 WL 1576153 at *36, *60, *81, *95.

As a general rule, delay in seeking preliminary injunctive relief weighs against a finding of irreparable harm, *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 (Fed. Cir. 1991); *Kalipharma, Inc. v. Bristol-Myers Co.*, 707 F. Supp. 741, 756 (S.D.N.Y. 1989). Here, Astra's delay has altered the omeprazole market in a way that leaves no possibility of remedying any "harm" to Astra through injunctive relief. Astra ceded the market to the generics when it determined not to seek a preliminary injunction. An injunction now would only eliminate Apotex as a seller, but it would not restore any sales to Astra. Apotex's sales will go to the on-infringing generic manufacturers, not to Astra (A77, McIntire Decl. at ¶18).[3]

Astra's failure to seek a preliminary injunction for nearly four years shows that Astra understood that monetary damages were sufficient. Astra cannot claim now that it will be irreparably harmed by Apotex's continued sales over the next four months, when pediatric exclusivity ends. Astra cannot now seek an equitable remedy after it has deliberately sat on its rights for so long. If Astra actually

---

[3]     Astra argued to the district court that Apotex's position that customers unable to obtain Apotex's or Impax's products would necessarily buy a different generic product and not Prilosec® is unsupported. (A158). Apotex disagrees. (A71-A83, McIntire Decl.; A84-A113, Bernatowicz Decl.).

suffers any harm, that harm can be calculated and compensated by monetary damages. *See* Bernatowicz Decl. (A84-A113). *See CollaGenex Pharms., Inc. v. IVAX Corp.*, 375 F. Supp. 2d 120, 139 (E.D.N.Y. 2005) ("[F]inancial loss is not of itself sufficient to establish irreparable harm.").

By contrast, an injunction would have a devastating effect on Apotex and would result in significant public harm. *See*, Declarations of Tammy McIntire (A71-A83) and Frank Bernatowicz (A84-A113), providing a detailed description of the harm Apotex would suffer due to an injunction. Apotex has sold omeprazole for almost four years due to Astra's failure to seek preliminary injunctive relief. Apotex's business would be severely disrupted if it were ordered to stop producing and selling omeprazole for four months. A four month injunction would needlessly interfere with existing business relationships that Apotex has with distributors and pharmacies. These disruptions would affect overall pricing, since pricing and rebates are generally bundled over groups of products and based on overall sales (A78, McIntire Decl. at ¶24-25). Apotex would likely lose customers not just for omeprazole, but for other products as well, and these lost customers would not easily be recovered promptly after expiration of the injunction. (A78, McIntire Decl. at ¶23). The harm emanating from such disruption is certainly irreparable. The harm to Apotex from an injunction far exceeds any alleged benefit to Astra. Moreover, the cost of a recall to Apotex and

18

the consuming public would be even greater. Customers are likely to believe that a recall is the result of quality issues and the harm to goodwill will be dramatic (A77, McIntire Decl. at ¶20-21). In addition, as described in the accompanying declarations, there are substantial actual costs attendant to a recall, including significant payments to customers. These far exceed any possible harm to Astra.

Moreover, as a matter of fairness, an injunction should not issue. Astra made a conscious, calculated decision in 2003 not to seek preliminary injunctive relief once the FDA approved Mylan/Esteve's, Lek's and Apotex's ANDAs. At that time, the parties knew that it would be several years before this case would be decided. Since Astra did not move for a preliminary injunction or extension of the 30 month stay, Apotex justifiably launched its product. Astra chose not to seek a preliminary injunction because it did not want to be liable for damages in the event that Apotex—or the other generics—ultimately prevailed at trial or on appeal.[4] Astra deliberately sat on its rights for almost four years which led to creation of the present position of omeprazole in the web of sales and relationships in which Apotex is engaged. It would be unfair to enjoin Apotex from continuing production and making further sales for the four months with all of its attendant consequences.

---

[4]    Had Astra obtained a preliminary injunction in 2003, and posted the required bonds, Astra would now face enormous damages, as the Court found that Mylan/Esteve and Lek do not infringe.    In hindsight, Astra exercised sound business judgment in 2003 by not seeking a preliminary injunction, and instead relying on monetary damages to the extent it succeeded at trial.

Finally, the public interest is clear. The declarations describe the disproportionate harm to the public that would result from Apotex being enjoined for the limited time period involved. (A74-A78, McIntire Decl. at ¶¶ 9, 12, 19-21). In addition, Apotex will be damaged severely as a competitor in the generic market. The availability of medical treatment is a "critical public interest" (*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)) and the public has a strong interest in obtaining generic drugs at the reduced sales they can afford. *CollaGenex*, 375 F. Supp. 2d at 140-141 (E.D.N.Y. 2005). Removing a generic competitor from the market for four months would not serve the public interest.

## V.    CONCLUSION

Based on the foregoing, Apotex respectfully requests that this Court stay or vacate the district court's June 14, 2007 and June 15, 2007 Judgments purporting to reset the final approval date of Apotex's ANDA to be not earlier than October 20, 2007.

Respectfully submitted,

June 19, 2007                    By

Robert S. Silver
Bruce J. Chasan
Mona Gupta
William C. Youngblood
Marc B. Bassler

20

CAESAR, RIVISE, BERNSTEIN,
COHEN & POKOTILOW, LTD.
1635 Market Street
Seven Penn Center – 11th Floor
Philadelphia, PA 19103-2212
Telephone: (215) 567-2010
Facsimile: (215) 751-1142

*Attorneys for Defendants-Appellants*
*Apotex, Corp., Apotex Inc.,*
*and Torpharm*

21

## STATEMENT OF OPPOSITION TO THE MOTION

Apotex's counsel has discussed this motion with counsel for Plaintiffs-Appellees' counsel who oppose this motion and will file a response.

Dated: June 19, 2007

Respectfully submitted,

By _____

Robert S. Silver
Bruce J. Chasan
Mona Gupta
William C. Youngblood
Marc B. Bassler

CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.

*Attorneys for Defendants-Appellants
Apotex, Corp., Apotex Inc., and Torpharm*

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants APOTEX, CORP., APOTEX INC. and TORPHARM certifies the following:

1.    **The full name of every party or amicus represented by me is:**

APOTEX, CORP., APOTEX INC. and TORPHARM

2.    **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not applicable.  Torpharm was an affiliate of Apotex, Inc., the largest privately held Canadian generic pharmaceutical company.  Torpharm no longer exists.

3.    **All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Not applicable.

4.    **The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

**Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.**
Robert S. Silver
Alan H. Bernstein
Bruce J. Chasan
William Castillo
Allan H. Fried
Lynn M. Terrebonne
William C. Youngblood
Marc B. Bassler

**Pryor Cashman**
Karen J. Bernstein

**Amster, Rothstein & Ebenstein**
Anthony LoCicero
Karen J. Bernstein

Dated: June 19, 2007

## PROOF OF SERVICE BY OVERNIGHT COURIER

I am a citizen of the United States and employed in Washington, D.C. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1750 K Street, NW, Suite 475, Washington, D.C. 20006.

On June 19, 2007, I served two (2) true and correct copies of each of the foregoing documents described as:

(1)    **APOTEX'S EMERGENCY MOTION TO STAY THE JUNE 14 AND 15, 2007 JUDGEMENT ORDERS PURPORTING TO EFFECTIVELY RESET THE FINAL APPROVAL DATE OFAPOTEX'S ANDA**

(2)    **APPENDIX TO APOTEX'S EMERGENCY MOTION TO STAY THE JUNE 14 AND 15, 2007 JUDGEMENT ORDERS PURPORTING TO EFFECTIVELY RESET THE FINAL APPROVAL DATE OF APOTEX'S ANDA**

in a sealed envelope, postage fully paid, addressed as follows:

> Errol B. Taylor, Esq.
> Milbank, Tweed, Hadley & McCloy LLP
> 1 Chase Manhattan Plaza
> New York, NY 10005

On the above date, I sealed the above document(s) in an envelope or package designated by UNITED PARCEL SERVICE and E-mail, an express service carrier, addressed to the above, and I deposited that sealed envelope or package in a box or other facility regularly maintained by the express service carrier, or delivered that envelope to an authorized courier or driver authorized by the express service carrier to receive documents, located in Washington, D.C., with delivery fees paid or otherwise provided for to the parties noted above, whose address is set forth above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2007, at Washington, D.C.

_____
Justin March
The Lex Group

# WOLSON DECLARATION EX. E

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

IN RE OMEPRAZOLE PATENT LITIGATION

2007-1414, -1416

ASTRAZENECA AB, AKTIEBOLAGET HASSLE,
KBI-E, INC., KBI INC., and ASTRAZENECA, LP,

Plaintiffs-Appellees,

v.

APOTEX CORP., APOTEX, INC.,
and TORPHARM, INC.,

Defendants-Appellants,

and

IMPAX LABORATORIES, INC.,

Defendants-Appellants.

ON MOTION

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MAYER, Circuit Judge.

NEWMAN, Circuit Judge.

## O R D E R

Apotex Corp. et al. and Impax Laboratories, Inc. each move for a partial stay, pending appeal, of the June 14, 2007 judgment of the United States District Court for the Southern District of New York. AstraZeneca AB et al. oppose. Apotex replies.

AstraZeneca sued Apotex and Impax for infringement. The patent in suit expired on April 20, 2007. The district court entered judgment of infringement on June 14, 2007. The district court's judgment includes an order that states "the effective date of approval for the . . . products and related ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." Apotex and Impax move to stay that portion of the judgment.

To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor. Hilton v. Braunskill, 481 U.S. 770, 778 (1987). In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990).

The district court indicated it had the authority to issue the disputed portion of the judgment pursuant to 35 U.S.C. § 271(e)(4)(A), which states that the court shall order the effective date of any ANDA to be "not earlier than the date of the expiration of the patent which has been infringed." In a May 25, 2007 order, the district court noted that the statute does not expressly require the date of approval to be the date of expiration of the patent, but instead a date "not earlier than" the expiration of the patent, and thus the district court determined that it had the authority to order that the date of any ANDA approval be not earlier than the expiration of the pediatric exclusivity period. To support its determination, the district court noted that one of the

statutes governing pediatric exclusivity. 21 U.S.C. § 355a(b)(2)(B), states that the period during which an ANDA may not be approved "shall be extended by a period of six months after the date the patent expires".

We have considered the parties' arguments. No challenges to infringement or invalidity determinations have been made. The district court was faced with a difficult question, i.e., what relief may be afforded to a patentee who is entitled to a pediatric exclusivity period after expiration of the patent. Based upon the papers submitted, Apotex and Impax have not shown that they are likely to succeed in showing that the district court erred in reading 35 U.S.C. § 271(e)(4)(A) in conjunction with the pediatric exclusivity statute or that the harms weigh heavily in their favor.

Accordingly,

IT IS ORDERED THAT:

The motions are denied.

**JUN 2 6 2007**

_____
Date

FOR THE COURT

_____
Pauline Newman
Circuit Judge

cc:  Errol B. Taylor, Esq.
     Robert S. Silver, Esq.
     Blair M. Jacobs, Esq.

s8

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

JUN 2 6 2007

JAN HORBALY
CLERK

2007-1414, -1416                    3

WOLSON DECLARATION EX. F

Appeal No. 2007-1414, -1416

## United States Court of Appeals
### *for the*
### Federal Circuit

IN RE OMEPRAZOLE PATENT LITIGATION

ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE,
KBI-E, INC., KBI INC. and ASTRAZENECA, LP,
*Plaintiffs-Appellees,*

v.

APOTEX CORP., APOTEX, INC.
and TORPHARM, INC.,
and

IMPAX LABORATORIES, INC.,
*Defendants-Appellants.*

## APOTEX'S EMERGENCY MOTION TO RECONSIDER THE COURT'S JUNE 26, 2007 ORDER DENYING APOTEX'S MOTION TO STAY

Appeal from the United States District Court
for the Southern District of New York
The Honorable Barbara S. Jones
District Court Case No. 01-CV-9351 (BSJ)

Robert S. Silver
CAESAR, RIVISE, BERNSTEIN,
COHEN & POKOTILOW, LTD.
1635 Market Street
Seven Penn Center – 11th Floor
Philadelphia, PA 19103-2212
Telephone: (215) 567-2010
Facsimile: (215) 751-1142

*Attorneys for Defendants-Appellants*

June 28, 2007

Pursuant to Federal Circuit Rule 27(l), Defendants-Appellants Apotex Inc., Apotex Corp., and TorPharm Inc. (collectively, "Apotex") respectfully move for reconsideration of the Panel's June 26, 2007 Order denying Apotex's emergency motion to stay the district court's June 14 and 15, 2007 Judgments (A1-A9), which purport to reset the effective date of approval of Apotex's omeprazole ANDA to the expiration of Astra's so-called "pediatric exclusivity." Apotex submits that reconsideration is warranted for at least two independent reasons overlooked by the Panel.

*First*, in denying Apotex relief, this Court mistakenly assumed—as the district court did—that Astra is entitled to pediatric exclusivity:

> The district court was faced with a difficult question, i.e., what relief may be afforded to a patentee *who is entitled to a pediatric exclusivity* period after expiration of the patent.

(6-26-07 Order at 3) (emphasis added). With all due respect, however, Astra is not entitled to such exclusivity. As FDA has already determined, a finally approved ANDA (like Apotex's omeprazole ANDA here) is "not blocked by [a brand manufacturer's] pediatric exclusivity ... under the literal terms of the [pediatric exclusivity] statute." (A118 at n.4; *see also* A182-A253). The courts have deferred to this decision. *See Mylan Labs., Inc. v. Leavitt*, --- F. Supp. 2d ---, 2007 WL 1241884, at *8-*9 (D.D.C. April 30, 2007). So here, because Apotex's ANDA was finally approved *years* before the patents expired and before any ruling

2

on infringement and validity, there is simply no pediatric exclusivity to be enforced.    Absent such exclusivity, the district court had no basis, much less jurisdiction, to enter relief under 35 U.S.C. § 271(e)(4).

Thus, Apotex respectfully submits that the Court overlooked the relevant question here.    It is not what relief may be afforded Astra for its pediatric exclusivity, but rather whether Astra is entitled to such exclusivity in the first place.    This reason alone warrants reconsideration and entry of a stay until this fundamental question—on which the district court's judgment is based—can be decided.

*Second*, FDA, not the district court, is vested with the exclusive statutory authority to decide the question of whether Astra is entitled to pediatric exclusivity—a decision to which courts routinely defer.    *See Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106, 118 (D.D.C. 2004) ("issues relating to the ANDA's approval and the applicability of the pediatric exclusivity provisions" are "subject areas that have clearly been entrusted to the FDA by Congress"); *see also Mylan*, --- F. Supp. 2d ---, 2007 WL 1241884, at *8-*9 (deferring to the FDA's determination that Teva was barred by Pfizer's pediatric exclusivity for Norvasc® but Apotex was not).[1]

---

[1] *See also* 21 U.S.C. § 355a(d) (granting the FDA authority to determine whether pediatric studies submitted by a brand manufacturer are adequate); *id.* § 355a(f) (requiring the FDA to "publish a notice of any determination that the requirements

3

For that reason as well, a stay is particularly appropriate here to give FDA an opportunity to decide this important question on which the district court's § 271(e)(4) relief ultimately depends. At the very least, the Court should stay the district court's order and invite FDA to express its views on the matter, both to this Court and the district court. In fact, on June 26, 2007, the district court heard oral argument on whether to enter yet additional injunctive relief based, in part, on Astra's purported pediatric exclusivity. A stay would allow FDA to address this question before the district court awards additional relief based on pediatric exclusivity that may not even exist.

For all these reasons, Apotex respectfully requests that this Court reconsider its June 26, 2007 Order and stay the district court's June 14, 2007 and June 15, 2007 Judgments.[2]

Respectfully submitted,

---

of subsection (d) of this section have been met and that submissions and approvals under subsection (b)(2) or (j) of section 355 of this title for a drug will be subject to the provisions of this section"); FDA, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999) (setting forth the FDA's standards for determining whether a brand manufacturer is entitled to pediatric exclusivity).

[2] The Court also stated that "[n]o challenges to infringement or invalidity have been made." (6-26-07 Order at 3). Apotex also disagrees with the district court's finding of infringement and validity, and intends to challenge those findings on appeal. Apotex challenged only the award of § 271(e)(4) relief in its motion to stay because of the devastating and irreparable harm that Apotex will immediately suffer if that order is implemented by FDA.

4

June 28, 2007                    By _____
                                    Robert S. Silver
                                    Bruce J. Chasan
                                    Mona Gupta
                                    William C. Youngblood
                                    Marc B. Bassler
                                    CAESAR, RIVISE, BERNSTEIN, COHEN
                                    POKOTILOW, LTD.
                                    1635 Market Street
                                    Philadelphia, PA 19103
                                    *Attorneys for Defendants-Appellants*
                                    *Apotex Corp., Apotex, Inc. and Torpharm, Inc.*

5

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants APOTEX, CORP., APOTEX INC. and TORPHARM certifies the following:

1.  **The full name of every party or amicus represented by me is:**

APOTEX, CORP., APOTEX INC. and TORPHARM

2.  **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not applicable.  Torpharm was an affiliate of Apotex, Inc., the largest privately held Canadian generic pharmaceutical company.  Torpharm no longer exists.

3.  **All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Not applicable.

4.  **The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

**Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.**
Robert S. Silver
Alan H. Bernstein
Bruce J. Chasan
William Castillo
Allan H. Fried
Lynn M. Terrebonne
William C. Youngblood
Marc B. Bassler

**Pryor Cashman**
Karen J. Bernstein

**Amster, Rothstein & Ebenstein**
Anthony LoCicero

6

Karen J. Bernstein

## PROOF OF SERVICE BY OVERNIGHT COURIER

I am a citizen of the United States and employed in Washington, D.C. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1750 K Street, NW, Suite 475, Washington, D.C. 20006.

On June 28, 2007, I served two true and correct copies of each of the foregoing documents  described as:

## APPELLANTS' EMERGENCY MOTION TO RECONSIDER THE COURT'S JUNE 26, 2007 ORDER DENYING APOTEX'S MOTION TO STAY

in a sealed envelope, postage fully paid, addressed as follows:

> Errol B. Taylor, Esq.
> Milbank, Tweed, Hadley & McCloy LLP
> 1 Chase Manhattan Plaza
> New York, NY  10005

On the above date, I sealed the above document(s) in an envelope or package designated by UNITED PARCEL SERVICE, an express service carrier, addressed to the above, and I deposited that sealed envelope or package in a box or other facility regularly maintained by the express service carrier, or delivered that envelope to an authorized courier or driver authorized by the express service

carrier to receive documents, located in Washington, D.C., with delivery fees paid or otherwise provided for to the parties noted above, whose address is set forth above.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 28, 2007, at Washington, D.C.

_____
Justin March
The LEX Group DC
1750 K Street, NW Suite 475
Washington, DC 20006

2

WOLSON DECLARATION EX. G

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW    WASHINGTON
WASHINGTON, DC 20004-2401       NEW YORK
TEL 202.662.6000                SAN FRANCISCO
FAX 202.662.6291                LONDON
WWW.COV.COM                     BRUSSELS

PETER O. SAFIR

TEL 202.662.5162
FAX 202.778.5162
PSAFIR@COV.COM

June 15, 2007

**BY FACSIMILE**

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Re:    *In re Omeprazole Patent Litigation*, M-21-81 (BSJ); ANDA Nos. 76-048 and 75-785

Dear Mr. Bradshaw:

      We represent AstraZeneca, Plaintiffs in the *In re Omeprazole Patent Litigation*, M-21-81 (BSJ). On June 14, 2008 the Court entered the attached Judgment ordering that the effective date of approval of ANDA Nos. 76-048 and 75-785 shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires. (See Court Order at ¶¶ 3, 6). The pediatric exclusivities are measured from the April 20, 2007 expiration dates for the two patents-in-suit, U.S. Patent Nos. 4,786,505 and 4,853,230.

      AstraZeneca respectfully requests that, pursuant to the Court's Judgment, the FDA immediately revoke the final approval of ANDA Nos. 76-048 (Apotex Corp. (Torpharm) and ANDA No. 75-785 (Impax Laboratories, Inc.) and return the status of the applications to tentatively approved through at least October 20, 2007, the date that the applicable pediatric exclusivities expire.

      Respectfully submitted,

Peter O. Safir

COVINGTON & BURLING LLP

June 15, 2007
Page 2

Enclosure

cc:    Elizabeth Dickinson, Esq.,
       Office of the Chief Counsel
       5600 Fishers Lane, Room 6-05
       Rockville, Maryland 20857
       301-827-3054 (f)


       Gary Buehler, Director
       Office of Generic Drugs
       7500 Standish Place
       Rockville, MD 20855
       240-276-9327 (f)

       Errol B.Taylor, Esq. Counsel for Plaintiffs
       Milbank, Tweed, Hadley & McCloy LLP
       1 Chase Manhattan Plaza
       New York, NY 10005
       212-822-5545 (f)

       Robert S. Silver, Esq., Outside Counsel for Apotex
       Caesar, Rivise, Bernstein,
       Cohen and Pokotilow, Ltd.
       1635 Market Street
       11th Floor
       Philadelphia, PA 19103-2212
       215-751-1142 (f)

       Jeffrey J. Toney, Esq., Outside Counsel for Impax
       Sutherland, Asbill & Brennann LLP
       999 Peachtree Street, NE
       Atlanta, Georgia 30309-3996
       404-853-8806 (f)

# WOLSON DECLARATION EX. H

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Jay P. Lefkowitz
To Call Writer Directly:
212 446-4970
lefkowitz@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 21, 2007

**BY FACSIMILE AND E-MAIL**

Sheldon T. Bradshaw, Esq.
Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, MD 20857

RE:     *In re Omeprazole Patent Litigation*, M-21-81 (BSJ)
        ANDA Nos. 75-785 and 76-048

Dear Mr. Bradshaw:

On June 15, 2007, counsel for AstraZeneca requested that FDA "immediately revoke the final approval of ANDA No. 76-048 ... and ANDA No. 75-785 ... and return the status of the applications to tentatively approved through at least October 20, 2007, the date that the applicable pediatric exclusivities expire." Letter from P. Safir to S. Bradshaw [the "Safir Letter"], June 15, 2007, at 1 (attached as Exh. 1). On June 18, 2007, FDA requested that Apotex Inc. (the sponsor of ANDA No. 76-048) and Impax Laboratories, Inc. (the sponsor of ANDA No. 75-785) submit a written response to AstraZeneca's request. Apotex and Impax appreciate the opportunity to be heard on this matter, and respectfully submit the following joint response. For the reasons that follow, we believe that the Agency should determine that AstraZeneca is not eligible or entitled to pediatric exclusivity against Apotex or Impax, and thus that there is no basis for rescinding or converting those companies' longstanding final approvals.

As you are aware, the district court overseeing the omeprazole patent litigation, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), recently entered an order directing that "the effective date of approval for the [Apotex and Impax] ANDAs shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires." *See* Judgment, *In re Omeprazole Patent Litigation*, M-21-81 (BSJ), June 15, 2007, at ¶¶ 3 & 6 (attached as Exh. 2). Apotex and Impax have appealed that judgment to the Federal Circuit, and each has moved the Federal Circuit to stay the district court's judgment pending appeal.

Chicago          Hong Kong          London          Los Angeles          Munich          New York          San Francisco

Sheldon Bradshaw
June 21, 2007
Page 2

## KIRKLAND & ELLIS LLP

This matter raises particularly important issues regarding the Agency's authority to make and enforce pediatric exclusivity determinations, and Apotex and Impax thus request that the Agency take this opportunity to offer its own considered views on the matter of AstraZeneca's eligibility for pediatric exclusivity in this case. Given the magnitude of these issues, we hope that the Agency will express its views in response to this letter and, if necessary, directly to the Federal Circuit.

As set forth in greater detail below, we believe that the district court's judgment is based on an erroneous determination that AstraZeneca is entitled to a period of pediatric exclusivity for its Prilosec®-branded omeprazole drug products. *See, e.g.,* Order Denying Impax's Motion to Dismiss for Lack of Subject-Matter Jurisdiction [the "Order on Motion to Dismiss"], *In re Omeprazole Patent Litigation,* M-21-81 (BSJ), May 25, 2007, at 5 (attached as Exh. 3) ("AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B). This period of pediatric exclusivity is set to expire on October 20, 2007."); *id.* at 17-19 (holding that § 271(e)(4)(a) gives the court "power to enforce" the pediatric "period of ... exclusivity"). Given that FDA is charged with the responsibility for administering and enforcing the pediatric exclusivity provisions of the Hatch-Waxman Act, we believe that the Agency is not only authorized, but obligated, to render its own reasoned view on that matter.

By law, FDA is vested with the exclusive statutory authority to determine whether a brand manufacturer is entitled to pediatric exclusivity, and courts thus routinely accord full *Chevron* deference to the Agency's determination of whether a brand manufacturer is entitled to pediatric exclusivity against a particular generic applicant.. *See, e.g., Mylan Labs., Inc. v. Thompson,* 332 F. Supp. 2d 106, 118 (D.D.C. 2004) (holding that "issues relating to the ANDA's approval and the applicability of the pediatric exclusivity provisions" are "subject areas that have clearly been entrusted to the FDA by Congress," and deferring to FDA's determination that Mylan was barred by Alza's pediatric exclusivity for Duragesic®), *aff'd* 389 F.3d 1272 (D.C. Cir. 2004); *see also Mylan Labs., Inc. v. Leavitt,* __ F. Supp. 2d __, 2007 WL 1241884, *8-*9 (D.D.C. April 30, 2007) (deferring to FDA's determination that Teva was barred by Pfizer's pediatric exclusivity for Norvasc® but Apotex was not); *see also* 21 U.S.C. § 355a(d) (granting FDA authority to determine whether pediatric studies submitted by a brand manufacturer are adequate); *id.* § 355a(f) (requiring FDA to "publish a notice of any determination that the requirements of subsection (d) of this section have been met and that submissions and approvals under subsection (b)(2) or (j) of section 355 of this title for a drug will be subject to the provisions of this section"); FDA, *Guidance for Industry: Qualifying for Pediatric Exclusivity Under Section 505A of the Federal Food, Drug, and Cosmetic Act* (Sept. 1999) (setting forth FDA's standards for determining whether a brand manufacturer is entitled to pediatric exclusivity).

In this case, however, the district court determined that AstraZeneca was entitled to pediatric exclusivity—and, thus, that the court could "enforce" that period of pediatric exclusivity under 35 U.S.C. § 271(e)(4)(a)—without the benefit of any input from the Agency. As a result, the district court was not able to defer to the Agency's views on this matter, and Apotex and Impax respectfully submit that it is incumbent on the Agency to set the record straight on this matter.

2

Sheldon Bradshaw
June 21, 2007
Page 3

KIRKLAND & ELLIS LLP

As the district court and AstraZeneca have acknowledged, both of the patents at issue in the omeprazole litigation expired on April 20, 2007—long after FDA had granted final approval to those ANDAs, long after Apotex and Impax had acted on those lawful final approvals by commercially marketing drug products manufactured under their respective ANDAs, and prior to any finding that either of these two parties infringed the expired patents or that the expired patents were valid. Given those circumstances, the district court's determination that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax is erroneous. Indeed, the Agency just recently held in the amlodipine besylate matter (FDA Docket No. 07-N-123) that a finally approved ANDA is "not blocked by [a brand manufacturer's] pediatric exclusivity ... under the literal terms of the [pediatric exclusivity] statute," and that the "ANDA's approval cannot be delayed." Letter from G. Buehler to Amlodipine Besylate ANDA Applicants [the "Amlodipine Decision"], Apr. 19, 2007, at 5 n.4 (citing 21 U.S.C. § 355a(c)(2)(A)-(B)) (attached as Exh. 3). Thus, just as Mylan's ANDA for Norvasc®-equivalent amlodipine besylate tablets was not subject to Pfizer's pediatric exclusivity in that matter, neither Apotex's ANDA nor Impax's ANDA is barred by AstraZeneca's pediatric exclusivity in this case. In the Agency's words, the final approval of those ANDAs "cannot be delayed." Id.

The district court's judgment in the Omeprazole litigation does not preclude the Agency from issuing its own determination regarding AstraZeneca's eligibility for pediatric exclusivity. Indeed, we respectfully submit, the Agency is compelled to do so. As the Supreme Court recently recognized, "a court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference *only* if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." National Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005) (emphasis added). Thus, where a prior judicial determination interprets or applies an ambiguous statute, an administrative agency lawfully may "choose a different construction, since the agency remains the authoritative interpreter (within the limits of reason) of such statutes." Id. at 983.

As a result, prior judicial pronouncements do not bind an administrative agency otherwise entitled to Chevron deference, and such determinations cannot substitute for reasoned agency decisionmaking once the issue is submitted to the Agency. See, e.g., Teva Pharms. USA, Inc. v. FDA [Pravastatin], 441 F.3d 1, 4-5 (D.C. Cir. 2006) (holding that "FDA mistakenly thought itself bound by our decisions in Teva I and Teva II," vacating the Agency's decision as arbitrary and capricious, and remanding case to the Agency with instructions to "bring its experience and expertise to bear in light of competing interests at stake and make a reasonable policy choice" notwithstanding the D.C. Circuit's prior interpretation of the Hatch-Waxman Act) (citations and quotations omitted).

*Brand X* is particularly instructive. That case involved a challenge to FCC's administrative decision to classify high-speed internet access ("broadband") as an "information service" rather than a "telecommunications service" under the Telecommunications Act of 1996. Several parties challenged that determination on the ground that FCC's interpretation was foreclosed by a prior Ninth Circuit decision holding that broadband was best considered to be a "telecommunications service"—a conclusion the court had reached despite the fact that it "was

3

Sheldon Bradshaw
June 21, 2007
Page 4

## KIRKLAND & ELLIS LLP

not reviewing an administrative proceeding and the [FCC] was not a party." *Id.* at 978-80. When the petitioners' consolidated challenges to FCC's decision were assigned to the Ninth Circuit, that court agreed that its prior interpretation trumped the agency's contrary conclusion and vacated FCC's interpretation as contrary to law. *Id.* at 982.

The Supreme Court reversed. It explained that "allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute ... would allow a court's interpretation to override an agency's," in direct contravention of "*Chevron*'s premise ... that it is for agencies, not courts, to fill statutory gaps." *Id.* As a result, the Court held, "only a judicial precedent holding that a statute unambiguously forecloses the agency's interpretation ... displaces a conflicting agency construction," *id.* at 982-83, such that "before a judicial construction of a statute, whether contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction." *Id.* at 985. Because the Ninth Circuit's prior decision was not expressly based on the unambiguous text of the Telecommunications Act, the Court gave FCC's contrary application of the statute full *Chevron* deference and dismissed the petitioners' challenge to FCC's administrative decision.

The same principle applies here. As in *Brand X*, the court in this case concluded that AstraZeneca was entitled to pediatric exclusivity despite the fact that it was not reviewing an administrative proceeding; despite the fact that the Agency was not a party to the case; despite the fact that the patents-in-suit had expired; despite the fact that Apotex and Impax had been approved and on the market for years; despite the fact that the Agency has never awarded, and indeed could not award, AstraZeneca pediatric exclusivity against Apotex or Impax; and without even soliciting the Agency's views. Moreover, the district court did not even purport to base its assertion that AstraZeneca is entitled to pediatric exclusivity on the text (much less the unambiguous text) of the relevant statutory provisions at all. Instead, it purported to base its decision on FDA's prior administrative determination in the fluconazole case—which it then expressly conceded to be distinguishable. *See* Order on Motion to Dismiss at 21-23 (discussing *Ranbaxy Labs. Ltd. v. FDA [Fluconazole]*, 307 F. Supp. 2d 15 (D.D.C. 2004)); *see also id.* at 25 ("Ranbaxy's ANDA is distinguishable from Impax's ANDA").

Thus, pursuant to *Brand X* and under the D.C. Circuit's decision in the *Pravastatin* case, the Agency is not remotely bound by the district court's determination that AstraZeneca is entitled to pediatric exclusivity. To the contrary, it is obligated to "bring its experience and expertise to bear" and render its own reasoned determination regarding AstraZeneca's eligibility for such exclusivity. *See Pravastatin*, 441 F.3d at 5.

Here, of course, there is no basis for awarding AstraZeneca pediatric exclusivity against Apotex or Impax. As the district court itself acknowledged, the *Fluconazole* case is distinguishable. In that case, FDA held that Ranbaxy's *then-tentatively approved* fluconazole ANDA was subject to pediatric exclusivity because Ranbaxy was required to convert its paragraph IV certification to a paragraph II certification upon patent expiration. *Ranbaxy*, 307 F. Supp. 2d at 18. Here, by contrast, both Apotex and Impax had *final approval for years* and actively were engaged in commercial marketing at the time the patents expired.

4

Sheldon Bradshaw
June 21, 2007
Page 5

## KIRKLAND & ELLIS LLP

As a result, neither Apotex nor Impax were required to update their respective patent certifications upon patent expiration. That is the conclusion FDA reached with respect to Mylan's ANDA in the amlodipine case, *see* Amlodipine Decision at 5 n.4—which the district court did not even cite, much less discuss—and it is the same conclusion that the district court eventually reached in this case. *See* Order on Motion to Dismiss at 23 ("Impax's ANDA did not automatically convert from a Paragraph IV to a Paragraph II certification.") (capitalization modified); *id.* at 25 ("Once an application is finally approved, the applicant is no longer under an obligation to amend its patent certification.") (citing 21 C.F.R. § 314.94(A)(12)(viii)(C)(i)).

Nor does the Agency's decision in the fentanyl patch matter require a different result. As the court acknowledged in this case, the district court's 271(e)(4)(a) order in that case issued well *before* patent expiration, *see* Order on Motion to Dismiss at 19—as did FDA's determination that Alza was entitled to a period of pediatric exclusivity for its fentanyl patch drug products. *See Mylan Labs., Inc. v. Thompson [Fentanyl Patch]*, 389 F.3d 1272, 1277 (D.C. Cir. 2004) (noting that the district court issued its 271(e)(4)(a) order on March 24, 2004, some four months prior to the patent's July 23, 2004 expiration, and that FDA determined that Alza was entitled to pediatric exclusivity on June 22, 2004, more than one month prior to the patent's expiration).

While the district court dismissed the significance of those facts, they are dispositive—not only because the Agency squarely held in the amlodipine matter that pediatric exclusivity does ***not*** apply to ANDAs that (like Apotex's and Impax's ANDAs) have final approval at the time of patent expiration, *see* Amlodipine Decision at 5 n.4, but because they call into question the jurisdiction of the district court to enter a 271(e)(4)(a) order in the first instance.[1] Nothing in the statute or the fentanyl patch matter suggests, much less compels the conclusion, that final approvals issued years ago can be rescinded or converted where the Agency determines that the brand manufacturer is not entitled to a period of pediatric exclusivity. To hold otherwise would, by fiat, replace non-existent pediatric exclusivity with an unlawful patent term extension.

Given *Brand X*'s holding that administrative agencies are free to interpret and apply statutes entrusted to their care independent of prior judicial determinations about the meaning and application of those statutes, and *Pravastatin*'s requirement that agencies are obligated to "bring [their] experience and expertise to bear" in these circumstances, Apotex and Impax respectfully submit that the Agency is obligated to address the district court's erroneous determination—reached without the benefit of the Agency's views, and in direct conflict with the Agency's recent decision on this very subject—that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax. This matter has "clearly been entrusted to the FDA by

---

[1]    At least one court has held that patent expiration divests the federal courts of subject matter jurisdiction to enter an effective order under 35 U.S.C. § 271(e)(4). *See Pfizer, Inc. v. Mylan Labs., Inc.*, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006) (dismissing § 271(e)(2)(A) claims against ANDA-filer after patent expiration for lack of subject matter jurisdiction, even though pediatric exclusivity still exists). Given the significance of these issues, FDA at least should stay its hand until the Federal Circuit can address the propriety of the district court's order on appeal.

Sheldon Bradshaw
June 21, 2007
Page 6

**KIRKLAND & ELLIS LLP**

Congress," *Mylan*, 332 F. Supp. 2d at 118, and the Agency has both the authority and obligation to set the record straight by following its recent decision in the amlodipine matter—a decision that already has garnered substantial deference from the courts, *see Mylan*, __ F. Supp. 2d __, 2007 WL 1241884 at *8-*9, and which conclusively rejects the proposition that AstraZeneca is entitled to pediatric exclusivity in this case.

Accordingly, FDA should hold that AstraZeneca is not eligible or entitled to pediatric exclusivity against Apotex or Impax, and thus that there is no basis for rescinding or converting those companies' longstanding final approvals.

Respectfully submitted,

Jay P. Lefkowitz, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
(212) 446-4970 (phone)
(212) 446-4900 (fax)

*Counsel for Impax Laboratories, Inc.*

William A. Rakoczy
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, Illinois 60610
(312) 222-6301 (phone)
(312) 222-6321 (fax)

*Counsel for Apotex Inc.*

cc:   Elizabeth Dickinson, Esq., *Office of the Chief Counsel*
      Gary Buehler, *Office of Generic Drugs*
      Peter Safir, Esq., *Covington & Burling LLP*
      Errol B. Taylor, Esq., *Milbank Tweed Hadley & McCloy LLP*
      Robert S. Silver, Esq., *Caeser, Rivise, Bernstein, Cohen and Pokotilow, Ltd.*
      Jeffrey J. Toney, Esq., *Sutherland, Asbill & Brennan LLP*

# WOLSON DECLARATION EX. I

# COVINGTON & BURLING LLP

1201 PENNSYLVANIA AVENUE NW    WASHINGTON
WASHINGTON, DC 20004-2401    NEW YORK
TEL 202.662.6000    SAN FRANCISCO
FAX 202.662.6291    LONDON
WWW.COV.COM    BRUSSELS

PETER O. SAFIR

TEL 202.662.5162
FAX 202.778.5162
PSAFIR@COV.COM

June 25, 2007

BY FACSIMILE

Sheldon T. Bradshaw, Esq., Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-827-3054 (f)

Elizabeth Dickinson, Esq., Office of Chief Counsel
Food and Drug Administration
5600 Fishers Lane, Room 6-05
Rockville, Maryland 20857
301-443-0739 (f)

       Re:    *In re Omeprazole Patent Litigation*, M-21-81 (BSJ):
            <u>ANDA Nos. 76-048 and 75-785</u>

Dear Mr. Bradshaw and Ms. Dickinson,

      On June 18, 2007, on behalf of AstraZeneca, we requested that FDA, pursuant to the June 15, 2007 Order of the U.S. District Court for the Southern District of New York ("Order"), immediately return the approval status of ANDA No. 76-048 and ANDA No. 75-785 to tentative approval through at least October 20, 2007 – the date that the pediatric exclusivity periods of the applicable patents expire.

      On June 21, 2007, counsel for Impax Laboratories, Inc. ("Impax") and counsel for Apotex Inc. ("Apotex") submitted a letter ("the Impax/Apotex letter") asking FDA to overrule or ignore the court's Order. The arguments asserted in the Impax/Apotex letter are wholly without merit, and returning Impax's and Apotex's ANDAs to tentatively approved status until AstraZeneca's pediatric exclusivity periods expire is both required under applicable law and fully consistent with FDA precedent.

**I.     The district court had proper jurisdiction to decide the case and issue its Order resetting the date of final ANDA approval to no earlier than October 20.**

      The fundamental basis for the Impax/Apotex argument is their disagreement with the district court's May 25, 2007 Order. In the May 25 Order, the court thoroughly explained why Impax's arguments in its Motion to Dismiss for Lack of Subject Matter Jurisdiction

COVINGTON & BURLING LLP

Page 2 of 7

were incorrect, and the court accordingly held, among other things, that the patent infringement case was not moot, and the court had jurisdiction over AstraZeneca's claim for patent infringement under the "artificial" act of infringement patent statute, 35 U.S.C. § 271(e)(2).  *See* May 25, 2007 Order at 12, 26.[1]

As the court held, AstraZeneca's claims for infringement under section 271(e)(2) did not become moot upon expiration of AstraZeneca's patents-in-suit, U.S. Patent Nos. 4,786,505 and 4,853,230.  "Having properly obtained jurisdiction over the present controversy, the court is not automatically divested of it upon the expiration of the patents." May 25, 2007 Order at 13, fn. 5, citing *Corpus Juris Secundum Patents* § 434 and *Rice & Adams Corp. v. Lathrop*, 278 U.S. 509, 514-515 (1929).  In holding that the court retained jurisdiction after the patents expired, the court followed precedent established by the Federal Circuit in *Alza Corp. v. Mylan Labs., Inc.*, 391 F.3d 1365 (Fed. Cir. 2004).  In *Alza*, the Federal Circuit asserted jurisdiction over a patent litigation appeal and ruled on the merits of the case (which upheld the patent's validity and in effect enforced the plaintiff's pediatric exclusivity period) after the patent had expired.  *Alza*, 391 F.3d at 1365.

The district court also properly rejected Impax's argument that the court unlawfully set the date of ANDA approval no earlier than the date that pediatric exclusivity expires. Section 271(e)(4), which sets forth the relief available for acts of infringement under section 271(e)(2), provides that upon finding an act of infringement, "the court shall order the effective date of any approval of the drug or veterinary biological product in the infringement to be a date which is *not earlier than* the date of expiration of the patent which has been infringed."  35 U.S.C. § 271(e)(4)(A) (emphasis added).  As the court noted, "[h]ad Congress intended to limit relief under 271(e)(4)(A) to an order mandating the effective date of the ANDA to be the date of the expiration of the patent, it could have written the provision to say that.  But it did not."  May 25, 2007 Order, at 17.  The court concluded that the "clear and unambiguous language of the statute" sets the date of patent expiration "only as the *earliest* effective date a court may order."  *Id.* (emphasis added).  *See also Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1280 (D.C. Cir. 2004) ("if Congress has directly spoken to the precise question at issue, we must give effect to Congress's unambiguously expressed intent…") (internal citations omitted).

Reading the statutory patent infringement provisions in conjunction with the provisions governing pediatric exclusivity, the court held that it is within the court's power to order an application found to infringe under section 271(e)(2) to not obtain final approval until after the expiration of the pediatric exclusivity period.  May 25, 2007 Order, at 18.  The

---

[1] Impax/Apotex have filed for an emergency stay in the Court of Appeals for the Federal Circuit and have represented to the Court that FDA will not act until the Court has acted on their Motion.  If this representation is correct, AstraZeneca respectfully requests that FDA rule immediately upon being notified of the Court's decision on that Motion.

COVINGTON & BURLING LLP

Page 3 of 7

statute provides six months of exclusivity "after the date the patent expires (including any patent extensions)" where a drug is the subject of a Paragraph IV certification if "in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed...." 21 U.S.C. § 355a(c)(2)(B). As the court observed, "[n]othing in the language of 21 U.S.C. § 355a(c)(2)(B) requires the Court to render its decision prior to the expiration of the patents." May 25, 2007 Order at 18.

The court further rejected Impax's assertion that because the patents had expired before the court had found the patents valid and infringed, one of the necessary requirements for enforcing pediatric exclusivity against an ANDA with a paragraph IV certification – that a "court determine that the patent is valid and would be infringed" – is not satisfied. The court adopted FDA's conclusion noted in *Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.* that "the absence of a [statutory] provision addressing unresolved patent litigations in the Paragraph IV certification context [does] not mean that Congress intended to exclude such circumstances from the pediatric exclusivity provision." May 25, 2007 Order, at 22, quoting *Ranbaxy Labs. Ltd. v. United States Food & Drug Admin.*, 307 F. Supp. 2d 15, 19 (D.D.C. 2007), *aff'd Ranbaxy Labs. Ltd. v. FDA*, 96 Fed. Appx. 1 (D.C. Cir., Apr. 26, 2004). Denying AstraZeneca pediatric exclusivity simply because the patents had not yet been found valid and infringed at the time of patent expiry would "create an anomalous result that it at odds with Congress's goal in enacting § 355a." May 25, 2007 Order, at 23.

In addition, the court rejected Impax's argument that *Pfizer, Inc. v. Mylan Labs., Inc.*, 2006 WL 2990398 (W.D. Pa. Oct. 18, 2006) – the single case cited in the Impax/Apotex letter to suggest that the court may not have jurisdiction to order relief under section 271(e)(4)(A) – dictated dismissal of AstraZeneca's claims under section 271(e)(2). The court discussed and dismissed this argument, noting that "*Pfizer v. Mylan* is not binding precedent on this court. Nor does it consider the detailed statutory analysis, upon which this Court relies." May 25, 2007 Order, at 10, fn. 3.

## II.    Where a district court has proper jurisdiction to decide questions of patent infringement, FDA respects the relief ordered by the court.

It has been settled that, in accordance with *Mylan Labs., Inc., v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004), FDA implements relief ordered by a district court under section 271(e)(4)(A) when the district court had jurisdiction to decide the patent infringement case. *See also* 21 C.F.R. § 314.107(e) (requiring applicants to submit a copy of the entry of the court's order or judgment to the Office of Generic Drugs within 10 working days of a final judgment, presumably so that FDA can give effect to the order).

In the Mylan case, the Vermont district court had held that Mylan infringed Alza's patents, and had ordered that "the effective date of any approval of Mylan's ANDA product shall be no earlier than the date of expiration of the '580 patent family." *Thompson*, 389 F.3d at 1277, quoting *ALZA v. Mylan*, 310 F. Supp. 2d 610, 637 (D. Vt. 2004). The Vermont district court's order did not address whether Mylan was subject to the patent's pediatric

COVINGTON & BURLING LLP

Page 4 of 7

exclusivity period or whether it could instead lawfully market its generic product upon patent expiry. Mylan and Alza then sought a determination from FDA, and the agency concluded that the district court's finding of infringement under section 271(e)(2) "transformed Mylan's ANDA approval into an approval with a delayed effective date, which is a tentative approval that cannot be made effective until FDA issues a letter granting final effective approval." *Thompson*, 389 F.3d at 1277 (internal quotations omitted).

Although the Vermont district court's section 271(e)(4)(A) order in the Mylan case issued before patent expiry, the date of patent expiry in relation to the date of the order is of no moment and does not compel any different result here from that reached by the court in the Mylan case. The only effect of the patent still being in force when the Vermont district court issued its order was on the basis for pediatric exclusivity, not its application. FDA determined that section 355a(c)(2)(A)(i) (the pediatric exclusivity provision for ANDAs with paragraph II certifications) was the appropriate pediatric exclusivity provision because the Vermont district court's order reset the approval date and rendered Mylan's ANDA tentatively approved, therefore, upon patent expiry, Mylan's paragraph IV certification would no longer be accurate and it would convert to a paragraph II certification. *Id.* at 1278.

The Mylan case establishes that once a court resets an ANDA approval date under section 271(e)(4), the approval must be revoked and any previously granted pediatric exclusivity applies. The only effect of the patents having already expired is that pediatric exclusivity blocks Impax and Apotex under 21 U.S.C. § 355a(c)(2)(B) (the provision governing the operation of pediatric exclusivity where an ANDA contains a paragraph IV certification) rather than section 355a(c)(2)(A)(i). Section 355a(c)(2)(B) applies here because at the point that the district court issued its Order granting relief under section 271(e)(4)(A), the Impax and Apotex ANDAs still had final approval (so they had not been required to convert to paragraph II certifications), and section 355a(c)(2)(B)'s requirements for granting relief where the infringing ANDA contains a paragraph IV certification were satisfied. Section 355a(c)(2)(B) sets the pediatric exclusivity period in such cases to six months after patent expiry, and is implemented through the district court Order under 35 U.S.C. § 271(e)(4).

### III.    Contrary to assertions in the Impax/Apotex letter, the district court's Order does not conflict with or usurp FDA's authority.

FDA, not the district court, determined that AstraZeneca is entitled to pediatric exclusivity. Indeed, the district court made no decision regarding whether AstraZeneca was entitled to pediatric exclusivity. *See, e.g.,* the May 25, 2007 Order, at 5 (noting by way of background "[a]s an initial matter" that "AstraZeneca is entitled to a six-month period of pediatric exclusivity under 21 U.S.C. § 355a(c)(2)(B)" which is "set to expire on October 20, 2007."). FDA exercised its statutory authority under 21 U.S.C. § 355a(d) when the agency determined that the pediatric studies submitted by AstraZeneca were adequate to support pediatric exclusivity and granted pediatric exclusivity to the AstraZeneca patents at issue. FDA accordingly published the exclusivity expiration date – October 20, 2007 – in the

COVINGTON & BURLING llp

Page 5 of 7

Orange Book. *See* 21 U.S.C. § 355a(f). The district court simply exercised its power to enforce patent laws by ordering relief under section 271(e)(4)(A). *See, e.g., Thompson,* 389 F.3d at 1279, n. 5 ("[T]he court owes no deference to the FDA's interpretation of 35 U.S.C. § 271(e)(4)(A), a patent statute provision which the FDA is not charged with administering...."). The relief ordered enforces the pediatric exclusivity period that FDA had previously granted to AstraZeneca.

IV.    **The Court's order is fully consistent with FDA's decision in the amlodipine besylate matter.**

The Impax/Apotex letter cites FDA's decision in the recent amlodipine besylate matter (FDA Docket No. 07-N-123) to support its bald assertion that "the district court's determination that AstraZeneca is entitled to pediatric exclusivity against Apotex and Impax is erroneous" given the facts that the patents expired after Apotex and Impax had final approval and had already been marketing their products and before the district court ruled on the patent litigation. *See* Impax/Apotex letter, at 3. The Impax/Apotex letter's reliance on FDA's administrative decision in the amlodipine matter is inapt.

FDA decided in the amlodipine matter that "pediatric exclusivity does not apply when the ANDA applicant *prevails* in its patent challenge...." Letter from Gary Buehler to Amlodipine Besylate ANDA Applicants (Apr. 19, 2007) ("Amlodipine Letter"), at 6 (emphasis added). Contrary to the Impax/Apotex letter's assertion, however, FDA did *not* conclude that "pediatric exclusivity does ***not*** apply" to ANDAs that "have final approval at the time of patent expiration...." Impax/Apotex letter, at 5, citing the Amlodipine Letter at 5, fn. 4 (emphasis in original). Indeed, as FDA noted in the amlodipine decision, the ANDA at issue in that decision would have been subject to the brand name manufacturer's pediatric exclusivity if the generic company had lost its patent litigation in the district court – as here – and had the district court's injunction not been stayed by the Federal Circuit.[2]

---

[2]  FDA noted the following in the amlodipine decision:

> In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. § 355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. However, before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the

(continued...)

COVINGTON & BURLING LLP

Page 6 of 7

The reason that Mylan's approval of amlodipine was not blocked by Pfizer's pediatric exclusivity was because there was no finding in effect that Mylan infringed the Pfizer patent, not that Mylan was already approved. Thus, FDA's decision in the amlodipine matter is consistent with the agency's and the court's position in the Mylan case: an ANDA with final approval converts to tentative approval upon a district court finding the patent valid and infringed. *See Thompson*, 332 F. Supp. 2d at 111.

Here, the Impax and Apotex applications became tentatively approved pursuant to the district court's Order and the court's application of 35 U.S.C. § 271(e)(4)(A). The court's Order setting the effective date of approval of the Impax and Apotex applications to no earlier than October 20, 2007 is a result entirely consistent with the amlodipine decision.

\*        \*        \*

After Impax and Apotex lost their patent litigation suits in the district court, the court properly exercised its jurisdiction and authority in patent infringement litigation to order relief under of 35 § U.S.C. 271(e)(4)(A), and set the effective date of approval to be no earlier than October 20, 2007. The decision in the Mylan case, which did not rest on whether the patent at issue expired before or after the court found the patent valid and infringed, controls in this case. In accordance with the Order and with FDA's traditional respect for judicial decisions in patent matters, FDA must return Impax's and Apotex's ANDAs to tentative approval status, and the applications may not be granted final approval before the expiration of the pediatric exclusivity period.

Respectfully Submitted,

Peter O. Safir

---

approval status of Mylan's ANDA from approved to tentatively approved.

Amlodipine Letter at 5-6, n. 4 (internal citations omitted).

COVINGTON & BURLING LLP

Page 7 of 7

cc:
  Gary Buehler, Director
  Office of Generic Drugs
  7500 Standish Place
  Rockville, MD 20855
  240-276-9327 (f)

  Errol B. Taylor, Esq.
  Counsel for Plaintiff
  Milbank, Tweed, Hadley & McCloy LLP
  1 Chase Manhattan Plaza
  New York, NY 10005
  212-822-5545 (f)

  Robert S. Silver, Esq., Outside Counsel for Apotex
  Caesar, Rivise, Bernstein,
  Cohen and Pokotilow, Ltd.
  1635 Market Street
  11th Floor
  Philadelphia, PA 19103-2212
  215-751-1142 (f)

  Jeffrey J. Toney, Esq., Outside Counsel for Impax
  Sutherland, Asbill & Brennann LLP
  999 Peachtree Street, NE
  Atlanta, Georgia 30309-3996
  404-853-8806 (f)

# WOLSON DECLARATION EX. J

JUN. 26. 2007 12:47PM    CDER/OGD/TO                                    NO. 2190   P. 2/4

    DEPARTMENT OF HEALTH & HUMAN SERVICES

Food and Drug Administration
Rockville, MD 20857

ANDA 76-048

Apotex Corp.
Attention:  Tammy McIntire
2400 N. Commerce Parkway, Suite 400
Weston, FL  33326

Sent by Facsimile and U.S. Mail

Dear Ms. McIntire:

This is in reference to your abbreviated new drug application (ANDA) dated December 5, 2000,
submitted pursuant to section 505(j) of the Federal Food, Drug, and Cosmetic Act (Act), for
Omeprazole Delayed-release Capsules, 10 mg, 20 mg, and 40 mg.[1]

Your ANDA was approved on October 6, 2003, because the 30-month period identified in
section 505(j)(5)(B)(iii) of the Act, during which time FDA was precluded from approving your
ANDA, had expired.  The October 6, 2003 approval pertained to the 10 mg and 20 mg strengths
only; the agency letter of October 6, 2003, tentatively approved the 40 mg strength.  The statute
anticipates that in some cases an ANDA may be approved before litigation concerning the listed
patents is completed.  Section 505(j)(5)(B)(iii).  This leaves open the possibility that, as
happened with these products, the approved drug products will later be found to infringe a listed
patent.

As you know, on June 14, 2007, Judge Barbara Jones of the United States District Court for the
Southern District of New York, issued a Judgment in *In re Omeprazole Patent Litigation*, M-21-
81 (BSJ) that affects the status of your ANDA.  The court ordered that "Pursuant to 35 U.S.C. §
271(e)(4)(A), the effective date of approval for the aforementioned products and related ANDAs
shall be not earlier than October 20, 2007, the date on which the six-month period of pediatric
exclusivity under 21 U.S.C. § 355a(b)(2)(B) expires."  See Judgment, *In re Omeprazole Patent
Litigation*, M-21-81 (BSJ), at ¶ 3.

We are writing to inform you that, in light of this court order, the Agency hereby converts the
final approval of ANDA 76-048 issued on October 6, 2003, to a tentative approval.  Therefore,
your ANDA is now tentatively approved.  Final approval cannot be granted earlier than
October 20, 2007.

---

[1] The reference listed drug (RLD) upon which you have based your ANDA, AstraZeneca's Prilosec Delayed-release
Capsules, is subject to periods of patent protection and pediatric exclusivity.  As noted in the Agency's publication
titled Approved Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book"), the pediatric
exclusivity periods of U.S. Patent Nos. 4,786,505 (the '505 patent) and 4,853,230 (the '230 patent) are scheduled to
expire on October 20, 2007.  The other patents listed in the Orange Book for Prilosec Delayed-release Capsules
were not the subjects of litigation and therefore are not relevant to the action the Agency is taking in this letter.

JUN. 28. 2007 12:47PM    CDER/OGD/IO                            NO. 2790   P. 3/4

Because the Agency is granting a tentative approval for this ANDA, when you believe that your
ANDA may be considered for final approval, you must amend your ANDA to notify the Agency
regarding whether circumstances have or have not arisen that may affect the effective date of
final approval. To reactivate your ANDA, please submit an amendment at least 60 days (but not
more than 90 days) prior to the date your ANDA will be eligible for final approval. This
amendment should identify changes, if any, in the conditions under which the product was
tentatively approved, and should include updated information such as final printed labeling,
chemistry, manufacturing, and controls data as appropriate. Please note that this amendment
should be submitted even if none of these changes were made. The amendment should be
designated clearly in your cover letter as a MINOR AMENDMENT. In addition to this
amendment, the Agency may request at any time prior to the final date of approval that you
submit an additional amendment containing the information described above. Any changes in
the conditions outlined in this ANDA as well as changes in the status of the manufacturing and
testing facilities' compliance with current good manufacturing procedures are subject to Agency
review before final approval of the ANDA will be made.

The drug products that are the subject of this ANDA may not be marketed without final Agency
approval under section 505 of the Act. The introduction or delivery or introduction into
interstate commerce of this drug before the effective final approval date is prohibited under
section 301(d) of the Act.

For further information regarding this issue, please contact Cecelia Parise, R.Ph., Regulatory
Policy Advisor to the Director, Office of Generic Drugs, at (240) 276-9310.

                        Sincerely yours,


                        Gary J. Buehler
                        Director
                        Office of Generic Drugs
                        Center for Drug Evaluation and Research


cc:    Sheldon Bradshaw, Office of the Chief Counsel

JUN. 28. 2007  12:47PM      CDER/OGD/TO                                      NO. 2190   P. 4/4

---
This is a representation of an electronic record that was signed electronically and
this page is the manifestation of the electronic signature.
---
/s/
--------------------------
Gary Buehler
6/28/2007 12:06:26 PM

WOLSON DECLARATION EX. K



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

April 18, 2007

Dear ANDA Applicant/Holder for Amlodipine Besylate Tablets:

This letter addresses issues related to the timing of potential approvals of abbreviated new drug
applications (ANDAs) that reference Norvasc tablets. This letter construes the provisions of the
Drug Price Competition and Patent Term Restoration Act of 1984 (known as the Hatch-Waxman
Amendments or Hatch-Waxman), codified at 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. §§ 156,
271, 282, and does not necessarily apply to changes made in the Medicare Modernization Act
(MMA) of 2003.[1]

As you are aware, Pfizer Inc. (Pfizer) manufactures and markets Norvasc, a besylate salt of
amlodipine, indicated for the treatment of hypertension and angina. Pfizer had listed two
patents with FDA, asserting that they claim Norvasc and would be infringed by the marketing of
generic versions of the product. The later of these patents, Patent No. 4,879,303 ('303 patent),
expired on March 25, 2007, so that these patents, by themselves, no longer bar the marketing
of generic versions of Pfizer's product. Several companies have submitted ANDAs for approval
to market generic versions of Norvasc. Mylan Laboratories, Inc. and Mylan Pharmaceuticals,
Inc. (Mylan) filed the first ANDA to market a generic version of Norvasc and had challenged
Pfizer's patents by submitting the first "paragraph IV certifications" to those patents with its
application. FDA approved Mylan's ANDA in October 2005, and Mylan began marketing its
product on March 23, 2007. On or about the same day, Pfizer began marketing a generic
version of Norvasc.

Pfizer and Mylan now contend that the approvals of the other ANDAs for amlodipine besylate
are blocked by Pfizer's "pediatric exclusivity" until September 25, 2007. Mylan contends,
alternatively, that the approvals of its competitors' ANDAs are blocked by Mylan's "180-day
marketing exclusivity" until September 19, 2007.[2] Resolution of whether pending ANDAs
referencing Norvasc are blocked either by Pfizer's pediatric exclusivity or Mylan's 180-day
exclusivity involves a number of legal issues, some of first impression for the agency. Part of
the analysis requires FDA to determine the effect of a recent Federal Circuit decision in patent
litigation between Pfizer and Apotex Inc. (Apotex), another ANDA applicant for amlodipine
besylate who filed a paragraph IV certification after Mylan had submitted its certification. On
March 22, 2007, the Federal Circuit ruled that the three claims in the '303 patent that Pfizer
asserted that Apotex infringed were invalid as obvious. *Pfizer Inc. v. Apotex, Inc.*, No. 2006-
1261, 2007 U.S. App. LEXIS 6623 (March 22, 2007) (the *Apotex* decision).

---

[1]  The 1984 Hatch-Waxman provisions govern most issues related to ANDA approval for amlodipine
besylate tablets. Although certain provisions of Hatch-Waxman have been superseded by changes made
in the MMA, the 180-day exclusivity provisions of the MMA apply only to applications for which the first
ANDA with a paragraph IV certification was filed after December 3, 2003. Mylan's ANDA was filed before
December 3, 2003, and hence is governed by the pre-MMA provisions with respect to 180-day
exclusivity.

[2]  Mylan has claimed in its submissions to FDA that its 180-day exclusivity commenced on March 23,
2007 and would expire on September 23, 2007. See Petition for Stay of Action, Docket 2006P-0116
(March 26, 2007) (http://www.fda.gov/ohrms/dockets/dockets/07p0116/07p-0116-psa0001-01-vol1.pdf).
However, 180 days after March 23 is September 19.

*2007N-0123*                                                    *LET 2*

The questions presented by the pending applications and exclusivity claims include:  (1) whether the *Apotex* decision is effective upon issuance of the opinion or upon issuance of the mandate, for purposes of determining the application of Pfizer's pediatric exclusivity; (2) *upon the Apotex decision becoming effective, whether Pfizer's pediatric exclusivity bars approval of the Apotex ANDA; (3) upon the Apotex decision becoming effective, whether Pfizer's pediatric exclusivity bars approvals of the remaining ANDAs; and (4) whether Mylan's eligibility for 180-day exclusivity blocks approval of ANDAs after the expiration of Pfizer's patent.  These questions are addressed in turn in the Discussion section below.

Regulatory Background

A.  Patent Listing and Certification

The Hatch-Waxman Amendments permit the submission of ANDAs for approval of generic versions of approved drug products.  21 U.S.C. § 355(j).  Under the procedure established in Hatch-Waxman, NDA sponsors are required to list patents that protect their approved drug substances, drug products, or approved methods of use, 21 U.S.C. § 355(b)(1); FDA publishes those patents in FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" (the Orange Book); and ANDA applicants are required to certify whether their proposed drug products infringe those listed patents.  21 U.S.C. § 355(j)(2)(A)(vii).  As to each patent listed in the Orange Book for the listed drug referenced, an ANDA applicant can certify that 1) such patent information has not been filed (paragraph I certification); 2) the patent has expired (paragraph II certification); 3) the date the patent will expire (paragraph III certification); or 4) the patent is invalid or not infringed by the drug product proposed in the ANDA (paragraph IV certification).  *Id.*

In the case of paragraph I and paragraph II certifications, the patent does not serve as a barrier to ANDA approval.  A paragraph I or paragraph II certification permits immediate effective approval of the ANDA.  21 U.S.C. § 355(j)(5)(B)(i).  If an applicant files a paragraph III certification, approval may be made effective when the patent expires.  21 U.S.C. § 355(j)(5)(B)(ii).

If an applicant seeks to challenge a listed patent and to obtain approval before the patent expires, it must provide a paragraph IV certification certifying that "in the opinion of the applicant and to the best of his knowledge" the patent is "invalid or will not be infringed by the manufacture, use or sale of the [drug described in the ANDA]." 21 U.S.C. § 355(j)(2)(A)(vii)(IV).  The applicant with a paragraph IV certification must notify the patent owner and NDA holder of its paragraph IV certification and of the basis of its belief that the patent is invalid or not infringed.  21 U.S.C. § 355(j)(2)(B).  The filing of a paragraph IV certification "for a drug claimed in a patent or the use of which is claimed in a patent" is an act of infringement.  35 U.S.C. § 271(e)(2)(A).  This enables the NDA holder and patent owner to sue the ANDA applicant.  If the patent owner or NDA holder brings a patent infringement suit against the ANDA applicant within 45 days after receiving notice of the paragraph IV certification, the suit triggers an automatic stay of FDA approval for 30 months from the date the patent owner or NDA holder received notice of the certification ("30-month stay").  21 U.S.C. § 355(j)(5)(B)(iii).  If the patent owner or NDA holder does not bring suit within 45 days after it has received notice of the paragraph IV certification, the unexpired patent will not, by itself, bar FDA's approval of the ANDA, even if patent litigation is subsequently commenced outside the 45-day period and is ongoing at the time the requirements for approval are met.  See *id.*

B. 180-Day Exclusivity

To provide an incentive for ANDA applicants to be the first to challenge a listed patent and remove patent barriers to approval, Congress provided that:

> [I]f the [ANDA] contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection . . . [containing] such a certification, the application shall be made effective not earlier than one hundred eighty days after

> (I)     the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> (II)    the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv)(2002).

Although this statutory provision is commonly characterized as granting "180-day exclusivity" to the first applicant to submit an ANDA containing a paragraph IV certification challenging a patent, the statute does not provide for that result directly. Instead, this end is accomplished by delaying the approval of subsequent ANDAs *containing a paragraph IV certification* until 180 days after the exclusivity period for the first ("previous") applicant has been triggered. If the first applicant's ANDA no longer contains a valid paragraph IV certification when it is ready for approval, the first applicant is not eligible for exclusivity. Similarly, when subsequent applicants' ANDAs do not contain paragraph IV certifications, their approval is not delayed under the plain language of this statutory provision.

C. Pediatric Exclusivity

The pediatric exclusivity statute, enacted as part of the Food and Drug Administration Modernization Act (FDAMA) and renewed in the Best Pharmaceuticals for Children Act (BPCA), provides an incentive for NDA sponsors to conduct pediatric studies that FDA has requested. Although this incentive for doing pediatric studies is commonly referred to as "pediatric exclusivity," a grant of pediatric exclusivity alone does not guarantee that an NDA will be free of generic competition while the exclusivity is in effect. Instead, as FDA has opined and the D.C. Circuit has affirmed, the applicability of pediatric exclusivity to prevent approval of a particular applicant's ANDA depends on the outcome of that applicant's patent challenges, if any. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004). Specifically, the statute states that if the approved product has completed the pediatric exclusivity requirements and is subject to

> (i)     "a listed patent for which a [paragraph II] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires;"
> (ii)    "a listed patent for which a [paragraph III] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B) shall be extended by a period of six months after the date the patent expires;"

3

(iii)        "a listed patent for which a [paragraph IV] certification has been submitted . . . , and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires."

21 U.S.C. § 355a(c)(2)(A)-(B).

<u>Factual Background</u>

On July 31, 1992, FDA approved Pfizer's new drug application (NDA) for amlodipine besylate tablets, which Pfizer began marketing later that year under the brand name Norvasc. Pfizer listed two patents with respect to Norvasc: Patent 4,572,909 ('909 patent), originally due to expire on July 31, 2006, and the '303 patent, originally due to expire on March 25, 2007. Pfizer conducted pediatric studies requested by FDA and, on November 27, 2001, FDA granted Pfizer pediatric exclusivity for Norvasc pursuant to 21 U.S.C. § 355a. Pediatric exclusivity, by delaying approval of ANDAs for six months after the expiration date for a patent, had the potential to block approvals of ANDAs referencing Norvasc until January 31, 2007, with respect to the '909 patent, and until September 25, 2007, with respect to the '303 patent. Because this period with respect to the '909 patent has expired, that patent is no longer relevant to the issues discussed in this letter.

In May 2002, Mylan filed an ANDA for amlodipine besylate, and was the first to file a paragraph IV certification to the '303 patent pursuant to 21 U.S.C. § 355(j)(5)(B)(iv). Pfizer sued Mylan for patent infringement. *Pfizer Inc. v. Mylan Labs. Inc.*, No. 02-cv-1628 (W.D. Pa.). However, because Pfizer did not file its lawsuit within 45 days of receiving notice of Mylan's paragraph IV certification, the filing of the lawsuit did not result in the 30-month stay of approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii). In October 2005, FDA approved Mylan's ANDA.

In February 2007, the district court in the patent litigation between Mylan and Pfizer entered judgment for Pfizer that Mylan had infringed the '303 patent. *Pfizer Inc. v. Mylan Labs., Inc.*, No. 02-cv-1628, 2007 U.S. Dist. LEXIS 14417 (W.D. Pa. Feb. 27, 2007). On March 16, 2007, the district court amended the judgment and enjoined the approval of Mylan's ANDA until the '303 patent expired. *Id.*, 2007 U.S. Dist. LEXIS 18699 (Mar. 16, 2007).[3] Mylan appealed that judgment and sought a stay of the district court's injunction. The Federal Circuit granted the stay. *Pfizer Inc. v. Mylan Labs., Inc.*, No. 2007-1194 (Mar. 23, 2007). Mylan began marketing its product on March 23, 2007.

Apotex, Inc. (formerly Torpharm, Inc.) filed an ANDA for amlodipine besylate, which contained a paragraph IV certification to the '303 patent. On July 20, 2003, Pfizer sued Apotex for patent infringement. In January 2006, the district court held the patent was valid and infringed. *Pfizer, Inc. v. Apotex*, No. 03C 5289, 2006 U.S. Dist. LEXIS 95778 (N.D. Ill. January 29, 2006). The Federal Circuit reversed in the opinion noted above, finding that Apotex's amlodipine besylate

---

[3] When an NDA holder or patent owner sues the ANDA applicant and wins — that is, the court hearing the patent infringement litigation finds the patent valid and infringed — the Patent Code provides that "the court shall order the effective date of any approval of the drug * * * involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A).

tablets did not infringe claims 1-3 of the '303 patent because those claims were invalid for obviousness. See *Apotex* decision. The Federal Circuit did not address the validity of the remaining claims of the patent, presumably because those were not claims on which Pfizer had sued Apotex. On April 5, 2007, Pfizer filed a motion in the Federal Circuit, seeking a rehearing and/or rehearing en banc of the *Apotex* decision. This motion stayed issuance of the mandate pending its resolution under Rule 41(d)(1) of the Federal Rules of Appellate Procedure (FRAP).

At midnight on March 25, 2007, the '303 patent expired. Pfizer submitted a letter to FDA dated March 25, 2007, contending that approval of Apotex's ANDA was barred by Pfizer's pediatric exclusivity, at least until the Federal Circuit's mandate issues.

On March 26, 2007, Mylan submitted to FDA a Petition for Stay of Action requesting that the FDA refrain from taking any action to approve any ANDA for amlodipine besylate tables until Mylan's 180-day exclusivity expires. According to Mylan, the 180-day exclusivity for amlodipine besylate tablets had been triggered when it commenced marketing on March 23, and is due to expire on September 19, 2007. Also on March 26, Mylan sued FDA in the U.S. District Court for the District of Columbia, alleging that it was entitled to 180-day exclusivity as to the '303 patent and requesting that the court enjoin FDA from approving additional ANDAs for amlodipine until the merits of its claim for 180-day exclusivity could be heard. *Mylan Labs., Inc.* v. *Leavitt*, CA No. 07-579 (RMU)(D.D.C.).

FDA determined that it was unprepared to immediately resolve all of the legal questions raised by the pending applications and exclusivity claims, and would benefit from soliciting the views and legal arguments of the interested parties. FDA informed the court that it proposed to seek comments to be submitted by April 4, 2007, and to issue its determination by April 11, 2007. The court memorialized FDA's proposal, and enjoined FDA from implementing any ANDA approval decisions, once made, until 5:00 PM on April 13, 2007 to allow the court to review FDA's decisions. *Mylan Labs.*, CA No. 07-579 (RMU), Order (March 26, 2007). FDA subsequently moved the court for an extension of time, until April 18, 2007, to issue its determination, which the court granted.

By letter dated March 28, 2007, FDA requested comments on five specific questions from Pfizer and the ANDA applicants for amlodipine besylate tablets. FDA created a docket for collecting the comments and posting them on the internet, and posted its letter requesting comments to give other interested parties an opportunity to comment on the questions FDA raised. (http://www.fda.gov/ohrms/dockets/dockets/07n0123/07n0123.htm) Several parties expressed a range of opinions on the questions FDA posed. *See id.* After receiving and considering submissions from interested parties, FDA reaches the following conclusions.

Discussion

1. For Purposes of Pediatric Exclusivity, the *Apotex* Decision Will Not be Effective until Issuance of the Mandate.

Under the language of the statute, pediatric exclusivity operates by delaying the approval of an ANDA for six months after a patent expires.[4] The operative subsection of the statute varies

---

[4]  In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. § 355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. See Comments of Synthon Pharmaceuticals, Inc. at 4. However,

according to the certification submitted by the ANDA applicant. When the ANDA applicant, such as Apotex, submits a paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B). As discussed in greater detail below, FDA has previously opined, and concludes below, that this provision means that pediatric exclusivity does *not* apply when the ANDA applicant prevails in its patent challenge -- that the court determines that the patent is *invalid* or would *not* be infringed, and that construction has been acknowledged as appropriate by a court. Accordingly, this provision governs the application of pediatric exclusivity, at least with respect to Apotex.

In determining the effect of the *Apotex* decision on Pfizer's pediatric exclusivity claim, the first issue that FDA must resolve is to ascertain the meaning of the phrase "the court determines" for purposes of the statutory provision quoted above. Specifically, FDA must decide whether the Federal Circuit "determined" invalidity when it issued its opinion or will not "determine" validity or infringement until the mandate issues. Because the Court of Appeal's opinion is not effective until the mandate issues, Pfizer argues that the Federal Circuit will not have determined invalidity until that time. Apotex and others have asserted that the March 22, 2007 date of the issuance of the Federal Circuit opinion is the operative date.

FDA finds that the operative phrase -- "the court determines" -- is ambiguous as to the action it describes. Congress could have been more precise in indicating the action by the court to which it was referring, as it has done in other statutes. Compare, e.g., 26 U.S.C. § 7481(a) (finality is determined "upon mandate" issued by Court of Appeals or Supreme Court) with 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa)-(bb) (approval "shall be made effective on the date on which the court enters judgment reflecting the decision; or the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed."). Instead, it chose a phrase that, as the comments submitted to FDA reflect, is susceptible to more than one interpretation. On the one hand, the use of the present tense in the word "determines" could suggest that the issuance of the opinion itself is sufficient. Indeed, one dictionary definition of "determine" is "to come to a decision . . . as the result of investigation or reasoning." Webster's Third New International Dictionary (2002) at 616 (definition 1.c). Under this view, a court "determines" validity and infringement when it issues an initial ruling to that effect.

On the other hand, the choice of the word "determines" suggests the fixing or settling of rights and obligations. The dictionary definitions of "determine" include: "to fix conclusively or authoritatively," "to settle a question or controversy about," "to settle or decide by choice of alternatives or possibilities." *Id.* (definitions 1.a, 1.b, and 1.d.). See also Webster's II New Riverside University Dictionary (1994) at 369 ("[t]o end or decide by final, esp. judicial action") (definition 1.b). Under this view, where an appellate court is reversing the district court's judgment below, the parties' rights and obligations continue to be governed by the district court determination until the appellate court issues its mandate effectuating its judgment.

The Federal Rules of Appellate Procedure provide some additional guidance regarding which should be the relevant time frame for determining generally when the Federal Circuit's decision is effective. The rules themselves do not conclusively resolve the issue: FRAP 36 states that a judgment is entered when it is noted on the docket, while FRAP 41(c) states that the mandate is

---

before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the approval status of Mylan's ANDA from approved to tentatively approved.

effective when issued. However, the 1998 advisory committee notes to FRAP 41(c) state that "[a] court of appeals judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." These notes have been cited with approval by courts, *Mercer v. Duke Univ.*, 401 F.3d 199, 212 n.7 (4th Cir. 2005); *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 248 n.5 (N.D.N.Y. 2005); *United States v. Swan*, 327 F. Supp. 2d 1068, 1071-72 (D. Neb. 2004), and no commenters have cited any authority to FDA that would indicate that the advisory committee notes do not state the current rule regarding finality of appellate court decisions.[5] Therefore, under these rules, until the mandate issues, the parties continued to be bound by the district court judgment.

In FDA's view, the phrase "the court determines" in section 355a(c)(2)(B), in the context of a federal court of appeals reversing a district court judgment, should be read as the date the mandate issues for several reasons. When the district court decides a patent issue, FDA applies that decision, unless it is stayed, in determining issues related to ANDA approval. The district court decision continues to control the rights of the parties until the appellate court mandate issues. Thus, the vital date under this scheme is when the rights of the parties become fixed by the decision of the court of appeals, that is, the date the mandate issues. This understanding of the phrase "the court determines" is further supported by the dictionary definitions of "determine" that use the terms "fixing" and "settling," and by the practice under the FRAP, as reflected in the advisory committee notes and as accepted by courts. Furthermore, as a matter of policy, FDA believes that the parties to paragraph IV litigation are best served by a rule that, consistent with the statutory language, errs on the side of greater finality. Such a rule reduces the possibility that an appellate court opinion will be relied on and then overturned (through an adverse opinion after rehearing or rehearing en banc) in very short order. Accordingly, FDA concludes that, in determining the applicability of pediatric exclusivity, this language requires FDA to await issuance of the mandate before giving effect to an appellate court opinion that would overturn a district court's ruling.

In this case, therefore, for purposes of determining the applicability of Pfizer's pediatric exclusivity, FDA will continue to be governed by the district court decision upholding the validity of the patent unless or until the mandate is issued, effectuating the appellate court's judgment.[6] As a result, all of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity. If the mandate does not issue before September 25, 2007, when the pediatric exclusivity expires, Pfizer and Mylan will have no additional competition during the interim period and thus will obtain the full benefit that could be derived under pediatric and 180-day marketing exclusivity. In that event, the remaining issues discussed in this letter will be moot. However, given the possibility that the mandate making the panel decision effective may issue before September 25, 2007, FDA will continue with its analysis.

---

[5] Several commenters have cited an FDA Guidance document issued in March 2000. See, e.g., Mylan Comments at 2; Pfizer comments at 2. FDA is not relying on this guidance document, however, because it relates to a different statutory provision, with different language, context, and purposes.

[6] In this case, the district court found patent validity and infringement and the appellate court opinion found invalidity. Under these circumstances, FDA here declines to give effect to the appellate court's judgment of invalidity until the mandate issues and the patent and pediatric exclusivity attached to the patent block ANDA approvals in the interim. We note, however, that the agency's position on this also suggests that, had the district court found invalidity and the appellate court reached the contrary conclusion of validity and infringement, the converse would also be true: in spite of the appellate court opinion finding validity and infringement, ANDAs could be approved (or could retain their approvals) and neither the patent itself nor pediatric exclusivity would attach to that patent to block such approvals unless and until the mandate issued.

7

<u>2. Apotex will Cease to be Subject to Pfizer's Exclusivity if the Mandate Issues before</u>
<u>September 25, 2007.</u>

This is the first time that FDA has been called upon to determine whether an ANDA applicant is subject to the innovator's pediatric exclusivity when the ANDA applicant has received a *favorable* court decision in its paragraph IV litigation but has not yet obtained final approval when the patent expires. The pediatric exclusivity provisions address several scenarios in terms of the status of the ANDA applications, but there are several scenarios that they fail to address, including this one.

The statute provides that, where the ANDA applicant submits paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B). Based on this language, FDA determines that the converse must also be true - if in paragraph IV litigation a court determines that a patent is *invalid* or *not infringed*, pediatric exclusivity will not bar approval of that applicant's ANDA. This is the implicit meaning and logical interpretation of subsection 355a(c)(2)(B); otherwise, the qualification in that provision regarding the victory for the patent holder in the patent litigation would make no sense and would be superfluous, at least as to any ANDA that did not receive final approval before the patent expired. In addition, this outcome is consistent with the goals of the 180-day exclusivity statute which encourages patent challenges to remove barriers to approval. As noted, FDA had previously opined that this was the logical interpretation of 355a(c)(2)(B), although FDA was not directly applying that interpretation at that time. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d at 124 (D.D.C. 2004) ("As the FDA has correctly noted in its papers, § 355a(c)(2)(B) would apply 'where an ANDA applicant submits a paragraph IV certification, and prevails in the patent litigation.'")(dicta, citing Federal Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction and Summary Judgment and In Support of Cross Motion for Summary Judgment at 38 (July 8, 2004)), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004). FDA therefore concludes that, where an applicant has challenged a patent and has received a decision of invalidity or non-infringement, that applicant will not be subject to the NDA holder's pediatric exclusivity once that decision becomes effective.

FDA has previously been called upon to address other gaps in the pediatric exclusivity provisions. Specifically, the paragraph III and paragraph IV provisions are silent on the applicability of pediatric exclusivity to delay ANDA approvals where an ANDA applicant has a paragraph III or IV certification and has not received final approval at the time the patent expires. In determining the operation of the statute in those circumstances, FDA has relied on the broader certification scheme under Hatch-Waxman.

It has been FDA's longstanding view, that, when a patent expires before pending patent litigation is resolved, ANDA applicants who have not received final effective approval are required under Hatch-Waxman, to change their paragraph III and paragraph IV certifications to paragraph II certifications. Because, upon patent expiry, all ANDA applicants are presumed to have paragraph II certifications, the paragraph II provision of the pediatric exclusivity statute, 21 U.S.C. § 355a(c)(2)(A)(i), would control. The D.C. Circuit has upheld this approach in two recent decisions. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d 106, 124 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

8

In considering these earlier determinations regarding the switch to paragraph II certifications with today's decision regarding the non-applicability of pediatric exclusivity to applicants who prevail in patent litigation, FDA determines as follows. When the '303 patent expired on March 25, 2007, all of the unapproved ANDAs were required to change (or deemed to have changed) to paragraph II certifications and became subject to Pfizer's pediatric exclusivity at that time. That is their status during the period before the mandate issues. However, FDA believes that the language of the statute manifests a clear Congressional intent that pediatric exclusivity not block the approval of an ANDA where the ANDA applicant has prevailed in the paragraph IV patent litigation and therefore creates an exception to the application of the Hatch-Waxman certification provisions. Thus, if and when the mandate finalizing the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.

3.  If the Mandate Issues Before the Expiration of Pediatric Exclusivity on September 25, 2007, ANDAs Other than Apotex May Not be Eligible for Immediate Approval.

Although Apotex is the only ANDA applicant to have obtained a favorable decision on the merits against Pfizer in the amlodipine besylate patent litigation, several commenters maintain that all or some of the other ANDAs should not be blocked by Pfizer's pediatric exclusivity because of the *Apotex* decision. Some maintain that, once the patent is declared invalid, it should be presumed delisted from the Orange Book. See Medco Comments at 7. That would mean that no ANDA applicants would be required to maintain their certifications to that patent, and pediatric exclusivity, by its literal terms, would not bar any approvals.

Others maintain that, once a patent is found invalid in litigation against one party, the patent owner is collaterally estopped from asserting infringement claims based on that patent against additional defendants. See, e.g. *Blonder-Tongue Labs., Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 350 (1971). They argue that, applying collateral estoppel, all applicants who submitted paragraph IV certifications should be considered victorious in their individual patent litigation against Pfizer. At that point, they continue, the analysis applied to Apotex's ANDA should be applied to them as well so that their ANDAs would not be blocked by pediatric exclusivity. This would mean, according to at least one commenter, that ANDAs containing paragraph IV certifications at the time of patent expiration would be eligible for approval, while those containing paragraph III certifications would be blocked. See Teva Comments at 11-13.

Other commenters noted, however, that the *Apotex* decision only claims 1-3 of an 11 claim patent. These commenters assert that the patent should stay listed in the Orange Book because some of the claims have not been declared invalid. See Mylan Comments at 1-2; Daiichi Sankyo Inc. Comments at 2. Nevertheless, another commenter maintains that there are no viable claims remaining for these products once claims 1-3 are declared invalid. See Caraco Pharmaceutical Labs, Ltd. at 3.

Patents are required to be listed in FDA's Orange Book if they claim the approved drug substance, approved drug product, or an approved method of use. 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53. If the remaining claims do not provide a basis on which to list the patent (i.e., do not claim the approved drug substance, drug product, or an approved method of use), the patent would no longer be eligible for listing in the Orange Book. In such a case, the patent must be withdrawn by Pfizer and any pediatric exclusivity that attached to the patent will no longer serve as a barrier to ANDA approval. If, on the other hand, one or more of the remaining claims claims the approved drug substance, approved drug product, or approved method of use, the patent can remain properly listed until the expiration of pediatric exclusivity. In such a case, the patent should remain in the Orange Book and the remaining unapproved ANDAs are potentially subject to Pfizer's pediatric exclusivity.

9

It is not clear to FDA, based on the current record, whether the remaining claims of the '303 patent would provide a valid basis to list the patent if claims 1-3 are invalid. Moreover, FDA has long maintained that its has neither the expertise nor the resources to resolve patent issues and does not make independent determinations of the merits or applicability of patent claims. 59 Fed. Reg. 50338, 50342-43, 50345, 50349, 50352 (1994). FDA's ministerial role in the listing process has been upheld. *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1348-49 (Fed. Cir. 2003); *aaiPharma, Inc. v. Thompson*, 296 F.3d 227, 243 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp 2d 1, 7-8 (D.D.C. 2004).

Because FDA lacks both relevant information and expertise to resolve this issue based on the information before it, in the absence of further judicial or other action clarifying the status of the patent, FDA will assume the '303 patent remains validly listed. If one or more of the remaining claims qualified the patent for listing as of the time the patent expired, all of the remaining ANDAs who had paragraph III and paragraph IV certifications at the time of patent expiry are required to maintain their paragraph II certifications. As such, those ANDAs will be blocked by Pfizer's pediatric exclusivity.

4. Mylan's Eligibility for 180-day Exclusivity Does Not Extend Beyond the Expiration of the Patent.

Mylan asserts that regardless of the applicability of pediatric exclusivity, all of the remaining ANDAs are subject to Mylan's 180-day exclusivity, which, if viable, would expire on September 19, 2007. Most commenters assert that it is well settled that 180-day exclusivity does not extend beyond the expiration of the patent. See, e.g., Apotex Comments at 8; Teva Comments at 6-7. Although Mylan acknowledges FDA's longstanding position that 180-day exclusivity expires with the patent, Mylan urges FDA to change that position, at least in the circumstances here, where the 180-day exclusivity has been triggered and begun to run before the patent expires.

By the terms of the statute, when a listed patent expires, a paragraph IV certification is no longer accurate. In these circumstances, the statute and FDA's regulations require ANDA applicants to change from a paragraph IV certification stating that the patent "is invalid or will not be infringed" to a paragraph II certification stating "that such patent has expired." 21 U.S.C. § 355(j)(2)(A)(vii)(II),(IV); 21 C.F.R. § 314.94(a)(12)(viii)(C) ("an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate"). In cases where an applicant neglects to amend its certification to a paragraph II certification after a patent expires, FDA will treat it as having done so. This approach was upheld in *Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F. Supp. 2d 340 (D.N.J. 2003) and *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

As noted above, applications with paragraph II certifications are eligible for immediate effective approval; the patent ceases to be a barrier to that approval upon its expiration. 21 U.S.C. § 355(j)(2)(A)(ii); 21 U.S.C. § 355(j)(5)(B)(i)(where an applicant files a paragraph II certification, approval of the applicant's ANDA "may be made effective immediately"); 21 C.F.R. § 314.94(a)(12)(viii). Thus, consistent with the statutory language and purpose of 180-day exclusivity, FDA has consistently construed the statute to award 180-day exclusivity based upon paragraph IV certifications only to unexpired patents. See 59 Fed. Reg. 50338, 50348 (stating "a patent is deemed to be relevant [for exclusivity purposes] until the end of the term of the patent or applicable 180-day period, whichever occurs first"). Because only subsequent applicants with valid paragraph IV certifications are blocked by 180-day exclusivity, and

because paragraph IV certifications cease to be accurate once the patent expires, the patent and 180-day exclusivity based on a paragraph IV certification to that patent cease to prevent approval of subsequent ANDAs once the patent expires.[7]  See *Ranbaxy Labs., Ltd.* v. *Leavitt*, 469 F.3d 120, 126 (D.C. Cir. 2006)("[T]he first generic applicant may no longer retain exclusivity when the patent has expired.").

This plain language reading of the statute effectuates the statutory goals.  The 180-day exclusivity provisions were drafted to give ANDA applicants an incentive to be first to challenge a listed patent and remove that patent as a barrier to approval.  Once a listed patent expires and is no longer a barrier to ANDA approval, there is no longer a need to provide an incentive to challenge it in court.  Thus, an expired patent does not serve as the basis for a 180-day exclusivity award and 180-day exclusivity does not extend beyond the life of the patent.

Mylan has argued that 21 U.S.C. § 355(k) compels the conclusion that 180-day exclusivity extends beyond the date the patent expires.  See Mylan comments at 7-8.  That section provides that:

> If [180-day exclusivity period] overlaps with a 6-month [pediatric exclusivity] period . . ., so that the applicant for approval of a drug under section 505(j) entitled to the 180-day period under that section loses a portion of the 180-day period to which the applicant is entitled for the drug, the 180-day period shall be extended from
> > (1)  the date on which the 180-day period would have expired by the number of days of overlap, if the 180-day period would, but for application of this subsection, expire after the 6-month exclusivity period; or
> > (2)  the date on which the 6-month exclusivity period expires, by the number of days of the overlap if the 180-day period would, but for application of this subsection, expire during the six-month exclusivity period.

21 U.S.C. § 355a(k).  On its face, this section is inapplicable here because Mylan is approved and is not subject to Pfizer's pediatric exclusivity and, thus, there is no 180-day exclusivity to restore.  No commenters appear to contend otherwise.

Instead, Mylan argues that, by providing, in circumstances not applicable here, that 180-day exclusivity will follow pediatric exclusivity, Congress must have been assuming that 180-day exclusivity survives patent expiration.  See Mylan comments at 7-8.  If Mylan were correct, then section 355a(k) would conflict with FDA's longstanding understanding of the Hatch-Waxman statutory provisions governing 180-day exclusivity, as discussed above, which FDA believes to be compelled by the plain language of the statute.  Thus, Mylan is essentially arguing that section 355a(k) repealed part of the Hatch-Waxman 180-day exclusivity provisions.

For one federal statute to repeal another:

---

[7] We note that if Mylan were correct and 180-day exclusivity continued to block approvals of ANDAs with paragraph IV certifications after the patent expired (essentially ignoring the automatic switch of the certifications to paragraph II), 180-day exclusivity would block ANDAs containing paragraph IV certification but not those containing paragraph III certifications under the plain language of 21 U.S.C § 355(j)(5)(B)(iv).  This would have the perverse effect of punishing applicants who took the risk of challenging a patent with a paragraph IV certification in order to remove a barrier to approval and to reward those applicants who sat back and waited for the patent to expire.  This result is clearly inconsistent with the intent and logic of Hatch-Waxman.  Thus, the fact that section 355(j)(5)(B)(iv) by its terms blocks only ANDAs containing paragraph IV certifications – the only ANDA that can be approved before the expiration of an applicable patent – indicates that Congress did not intend exclusivity to extend beyond patent expiration.

11

[T]he intention of the legislature to repeal must be clear and manifest. . . . In practical terms, this "cardinal rule" means that in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 189 (1978) (citations omitted). The "irreconcilable conflict" required is a conflict

in the sense that there is a positive repugnancy between [the two statutes] or that they cannot mutually coexist. It is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem.

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (emphasis added). Here, there is no evidence that Congress ever affirmatively indicated that it intended to repeal or change the operation of the 180-day exclusivity provision in enacting section 355a(k).

Nor can Mylan show that the 180-day provisions in Hatch-Waxman and section 355a(k) are irreconcilable because it is possible to construe them in a way that they can mutually coexist. By its terms, section 355a(k) only addresses the curtailment of exclusivity to which the applicant is otherwise "entitled." As explained above, under Hatch-Waxman, the applicant is not entitled to exclusivity after the patent expires. That means, in reconciling the statutes, that the application of section 355a(k) is limited to the situation where there is more than one patent and the two exclusivity periods are each attached to different patents. Thus, one patent may expire, and pediatric exclusivity would start to run, but the ANDA applicant could still be eligible for 180-day exclusivity on a later patent that had not yet expired. If that 180-day exclusivity period were triggered by a court decision on the later patent, it would be running at the same time the ANDA was blocked from approval by the pediatric exclusivity on the earlier patent.

Indeed, the legislative history demonstrates that Congress intended to address this narrow situation by adding 21 U.S.C. § 355a(k) to restore the exclusivity to which the ANDA applicant was entitled but which otherwise would have been lost because the pediatric exclusivity on another patent blocked final effective approval:

The amendment gives the filer of an [ANDA] who challenges a patent no more and no less time to market his drug exclusively before subsequent [ANDAs] for the drug may be approved then it would have received but for the intervening period of pediatric exclusivity.
For example, the committee understands that there may be instances in which 2 patents on a drug are challenged in an [ANDA], and that, in subsequent litigation, a court holds the first patent to expire to be valid and infringed, and the second patent to expire to be invalid. If the section [355(b)(1), 21 U.S.C.] drug is granted a period of pediatric exclusivity with respect to the first patent, and if the court decision, which triggers the beginning of ANDA exclusivity, falls 60 days before that period of pediatric exclusivity begins (that is, 60 days before the first patent will expire), the ANDA exclusivity will overlap with the pediatric exclusivity for 120 days. In the absence of the pediatric exclusivity, the holder of the [ANDA] would enjoy at most 120 days to market its drug before a subsequent [ANDA] for the drug could be approved. But for the amendment, because of pediatric exclusivity, the holder of the [ANDA] would enjoy no ANDA exclusivity, because

12

the first 120 days of the pediatric exclusivity period would run over the last 120 days of its ANDA exclusivity period.

S. Rep. No. 107-79, at 6-7 (2001); see also *id.* at 14 ("[Section 9 of BPCA] specifies that, when the pediatric exclusivity period for a drug overlaps with a period of ANDA exclusivity for the drug, the period of ANDA exclusivity is extended by an amount necessary to ensure that the holder of ANDA exclusivity enjoys the same possibility of exclusive commercial marketing as that the holder would have enjoyed in the absence of pediatric exclusivity, no more and no less."). This language confirms both that Congress intended only the limited application of section 355a(k) and that this section can be construed consistently with the Hatch-Waxman exclusivity provisions. Thus, "[b]ecause the statutes are not irreconcilable and there is no convincing evidence that the later act was intended as a substitute, . . . . a repeal by implication did not occur." *United States v. Williams*, 216 F.3d 1099, 1102 (D.C. Cir. 2000).

Furthermore, the statute also does not distinguish, as Mylan proposes, between situations in which 180-day exclusivity has been awarded and triggered at the time of patent expiry and cases in which it has not. See Mylan Comments at 12-14. Although Mylan correctly notes that the obligation to update a patent certification only applies before the effective date of approval, *id.* at 14; Mylan's Petition for Stay at 3, and thus approved applications (such as Mylan's) have no continuing obligation to update their patent certifications, this does not mean that 180-day exclusivity for an approved application extends beyond the date the patent expires. On the contrary, if all of the remaining unapproved applications change to a paragraph II certification when the patent expires, as they are required to do, they will no longer be applications containing paragraph IV certifications that are blocked by the previous application containing a paragraph IV certification. This is the case regardless of whether Mylan's application, which has been approved, is also required to change its certification. As a result, because all unapproved applications must change to a paragraph II certification when the patent expires, and applications with paragraph II certifications are not blocked by 180-day exclusivity, for all intents and purposes, Mylan's 180-day exclusivity will terminate with the expiration of the patent regardless of the fact that Mylan itself is no longer obligated to change its certification upon patent expiry.

Conclusion

In sum, FDA has concluded:

- All of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity.
- If and when the mandate effectuating the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.
- FDA cannot determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity at that time.
- Mylan's 180-day marketing exclusivity terminated when the patent expired.

13

If you have any questions regarding this letter please contact Cecelia Parise, Regulatory Policy Advisor to the Director, Office of Generic Drugs at 240-276-9319

Sincerely,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research
Food and Drug Administration


cc: Pfizer Inc.

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

APOTEX, INC.,                                  :

                                               :     Case No. 1:07-cv-01194-RMU

                Plaintiff,                     :

                                               :

          v.                                 :

                                               :

FOOD AND DRUG ADMINISTRATION, *et al.*        :

                                               :

             Defendants.                  :

_____ :

### [proposed] **ORDER**

        AND NOW, this ____ day of _____, upon consideration of Apotex

Inc.'s Motion for Temporary Restraining Order and/or Preliminary Injunction and all papers

submitted in support of and in opposition to that Motion, it is ORDERED that the Motion is

DENIED.


        SO ORDERED:


        _____
        Honorable Ricardo M. Urbina
        United States District Court Judge